**CAUSE NO. F07-50318-M**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## MOTION TO CONSOLIDATE ALL OFFENSES
## ARISING FROM THE SAME CRIMINAL EPISODE

COMES NOW WESLEY LYNN RUIZ, Defendant, by and through his attorneys of record, and files this motion to consolidate for trial all offenses for which he has been indicted arising from the same criminal episode and, in support thereof shows the following:

I.

Mr. Ruiz has been charged by indictment in the above-referenced cause with the offense of capital murder alleged to have been committed in Dallas County, Texas on the 23rd day of March, 2007. This matter is set for trial to begin May 27, 2008.

II.

Mr. Ruiz has been charged by indictment in Cause No. F07-50319-M with the offense of aggravated assault on a public servant with a deadly weapon; in Cause No. F07-50320-M with the offense of aggravated assault on a public servant with a deadly weapon; in Cause No. F07-50321-M with the offense of aggravated assault with a deadly weapon; in Cause No. F07-50322-M with the offense of aggravated assault with a deadly weapon; and in Cause No. F07-71750-M with the offense of possession of a controlled substance with intent to deliver. All these offenses are alleged to have occurred in Dallas County, Texas on the 23rd day of March, 2007 and arose out of the same criminal episode.

000523

III.

All the witnesses necessary and relevant to the proof of the offenses listed in paragraph II above will testify at Mr. Ruiz' trial for capital murder, in which the State is seeking the death penalty. It is the State's position that Mr. Ruiz caused the death of Senior Corporal Mark Nix on the date in question and did, at the same time, commit aggravated assault on other officers by firing at them. It is the State's further opinion that Mr. Ruiz possessed certain controlled substances found in his vehicle, with the intent to deliver those substances. It is certain that the officers involved will either testify or be available to testify at Mr. Ruiz's trial for capital murder. Mr. Ruiz will stipulate to the analysis of the alleged controlled substance, so that no lab witness will be necessary.

IV.

Consolidation and joinder of prosecutions are allowed by §3.02(a), TEX. PENAL CODE.[1] It is Mr. Ruiz' contention that consolidation of these matters is within the discretion of the trial court and his motion should be granted in the interest of judicial economy. The Good Lord knows that the Courts and the good citizens of Dallas County have enough to do without hearing the same testimony over and over again in separate trials. Likewise, the police witnesses have their hands full in the enforcement of the law without spending days without number at the courthouse, waiting to tell the same story again and again. No harm can come from a resolution of all these issues at once. In fact, much good will flow to the

---

[1] A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode.

judicial system generally to have done with this multiplicity of charges, once and for all.

WHEREFORE, PREMISES CONSIDERED, Mr. Ruiz prays that his motion be granted and that all the felony offenses arising from the alleged criminal episode of March 23, 2007, be consolidated for trial on May 27, 2008, and for such other relief to which he may show himself entitled.

Respectfully submitted,

Paul Brauchle
State Bar No. 02918000
4131 N. Central Expressway
Suite 680
Dallas, Texas 75204-2102
(214) 742-2332

William E. "Karo" Johnson
State Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955

Douglas H. Parks
State Bar No. 15520000
321 Calm Water Lane
Holly Lake Ranch, TX 75765
(214) 521-2670
(903) 769-3465 - Telefax

*Counsel to Wesley Lynn Ruiz*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing motion on

Kevin Brooks or Andy Beach, Assistant District Attorneys, Dallas County, Texas, on the 27th

day of May, 2008.

Paul Brauchle/Karo Johnson

## ORDER

On the 27th day of May, 2008, came on to be heard the Defendant's Motion for

Consolidation and, after consideration thereof, including argument of counsel, is of the

opinion that it should be GRANTED, DENIED.

JUDGE PRESIDING

THE STATE OF TEXAS

CAUSE NO. F __0750318 -__

VS.

__194th__ DISTRICT COURT ___

_Wesley Lynn Ruiz_

DALLAS COUNTY, TEXAS

### ATTORNEY'S REQUEST FOR BENCH WARRANT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now the undersigned attorney, and requests that the Court issue Bench Warrant in this cause for the following person located at the following place:

_TDC# 1353622_

NAME: _Jose Antonio Tovar w/m/d.o.b 10-06-75_

LOCATION: _Torres Unit (TDC) 125 Private Road_
_#4303 Hondo, TX 78861_

Said person is needed by the undersigned party for the following date and purpose

DATE: _May 30, 2008_

PURPOSE: _Witness_

WHEREFORE, Premises considered, the undersigned party requests the Court issue a Bench Warrant for said person.

Respectfully Submitted,

_Paul Brauchle_

Attorney for ☐ State ☒ Defendant

### ORDER

The foregoing application having been considered by the Court, same is hereby

☒ (GRANTED)   ☐ (DENIED)

JUDGE

_Please Rush._

000527

BENCH WARRANT

THE STATE OF TEXAS                          CAUSE NO. F-0750318-LM
VS.                                         194TH JUDICIAL DISTRICT COURT
WESLEY LYNN RUIZ                            DALLAS COUNTY, TEXAS
OFFENSE:
================================================================================
GREETINGS TO:  THE HONORABLE WARDEN OF TORRES UNIT, HONDO TEXAS

     THE FOLLOWING PRISONER IS SAID TO BE IN YOUR OFFICIAL CUSTODY:

JOSE ANTONIO TOVAR
RACE: W        SEX: M      DOB: 10/06/75    TDC NO: 1353622
INCARCERATION UNIT: TORRES UNIT

THE ABOVE CAUSE IS SET FOR TRIAL/HEARING ON THE FOLLOWING DATE: 053008

     YOU ARE HEREBY REQUESTED AND DIRECTED TO DELIVER TO THE BEARER HEREON,

THE SHERIFF OF DALLAS COUNTY, TEXAS, OR ANY OF HIS DEPUTIES, THE CUSTODY

OF SAID PRISONER SO THAT HE MAY BE TRANSPORTED TO THE DALLAS COUNTY JAIL

PREPARATORY TO HIS APPEARANCE IN THIS COURT.

     WITNESS MY HAND AT DALLAS COUNTY, TEXAS, THIS 30TH DAY OF        MAY,

2008.

                                        _____
                                        JUDGE ERNEST WHITE
                                        194TH JUDICIAL DISTRICT COURT
ATTEST:
GARY FITZSIMMONS, DISTRICT CLERK, DALLAS COUNTY, TEXAS

BY: _____ , DEPUTY
    A THOMPSON
================================================================================
TO:  THE HONORABLE SHERIFF OF
     DALLAS COUNTY, TEXAS

     YOU ARE HEREBY DIRECTED TO RETURN THE ABOVE NAMED PRISONER TO THE
ABOVE CUSTODIAN AS SOON AS DIRECTED BY THE COURT, BUT IN NO EVENT LATER
THAN URGENT   .


          ORIGINAL OF THIS WARRANT TO BE RETURNED TO COURT
              PROMPTLY SHOWING HOW YOU HAVE EXECUTED

                           SHERIFF'S RETURN
CAME TO HAND ON THIS _____ DAY OF _____ A.D., 20 ____ .

RETURNED ON THIS THE _____ DAY OF _____ A.D., 20 ____ .

MILEAGE.....$_____    _____

FEES........$_____    SHERIFF, DALLAS COUNTY, TEXAS

TOTAL.......$_____    BY: _____

                            SQD _____

000528

CAUSE NO. F07-50318-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

### DEFENDANT'S MEMORANDUM OF LAW SUPPORTING ADMISSION OF EVIDENCE REGARDING REPUTATION AND PRIOR BAD ACTS OF MARK NIX

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above entitled and numbered cause by and through his attorneys of record, PAUL BRAUCHLE, WILLIAM E. "KARO" JOHNSON, AND DOUGLAS H. PARKS, and respectfully submits this Memorandum of Law supporting the admission of evidence regarding the general reputation and specific bad acts of the deceased, Mark Nix, whether known or unknown by the Defendant at the time of the offense.

For more than fifty years, Texas courts have held that, in a homicide case where self-defense is an issue, evidence of both the general reputation of the deceased for being a dangerous character and prior specific acts of violence by the deceased was admissible. *See Gutierrez v. State*, 764 S.W.2d 796, 798 (Tex. Crim. App. 1989); *Lowe v. State*, 612 S.W.2d 579 (Tex. Crim. App. 1981); *Beecham v. State*, 580 S.W.2d 588 (Tex. Crim. App. 1979); *Dempsey v. State*, 159 Tex. Crim. 602, 266 S.W.2d 875 (Tex. Crim. App. 1954). Under this common-law rule, known as the *Dempsey* rule, such evidence was admissible under two distinct theories: (1) to show the reasonableness of a defendant's claim of apprehension of danger, or (2) to show that the deceased was the first aggressor a the time of the killing.

*Gutierrez v. State*, 764 S.W.2d at 798; *Thompson v. State*, 659 S.W.2d 649, 653 (Tex. Crim. App. 1983). If the evidence was offered to show that the deceased was the first aggressor, the defendant need not have had knowledge of the acts or statements at the time of the killing. *Lowe v. State*, 612 S.W.2d at 581; *Beecham v. State*, 580 S.W.2d at 590.

The *Dempsey* rule was superseded by the passage of the Texas Rules of Criminal Evidence (now the Texas Rules of Evidence). Rule 404(a) prohibits generally the admission of evidence of a person's character to prove that he acted in conformity with that character at a given time. And Rules 404(b) and 405(a) together prohibit the admission of evidence of specific acts to prove character conformity. Nevertheless, as demonstrated by a line of post-Rules cases from the Court of Criminal Appeals, the spirit of the *Dempsey* rule survived the passage of the Rules of Evidence.

In *Tate v. State*, 981 S.W.2d 189, 191-92 (Tex. Crim. App. 1998), the Court of Criminal Appeals considered whether evidence proffered by the defendant that the deceased had made a threat against the defendant, even if not communicated to the defendant, was admissible under the Rules of Evidence to prove that the deceased was the first aggressor. As the *Tate* court noted, the Rules specifically allow the admission of evidence concerning the pertinent character traits of the deceased, if only through the use of general reputation and opinion testimony. *Id.* at 192; *see* Rule 404(a)(2), Rule 405(a). But the evidence was specific act evidence, disallowed by Rules 404 and 405 to show character conformity. *Id.* at 192. As the court held, however, "[p]roving who was the aggressor in a claim of self-defense is not dependent exclusively upon the character of the victim." *Id.* at 192-93. And

Rule 404(b) permits the admission of evidence of specific bad acts for purposes other than to show character so long as the evidence has relevance *apart from* its tendency to prove character conformity. *Id.* at 193. Thus, evidence of the deceased's uncommunicated threat to the defendant was offered, not to prove the deceased's character and conformity therewith, but to prove the deceased's intent or motive at the time of the killing and thus that the deceased was the first aggressor. The court held that the evidence was admissible under Rule 404(b) and that the trial court had abused its discretion by excluding it. *Id.* at 193.

The Court of Criminal Appeals held in *Mozon v. State* that Rule 404(b) also supports the admission of specific-acts evidence to show *the defendant's* state of mind. 991 S.W.2d 841, 846 (Tex. Crim. App. 1999)(holding admissible under Rule 404(b) - but subject to Rule 403 - assault victim's prior violent acts against *other individuals*, acts of which defendant was aware at time of assault). Even Judge Keller, in dissent, agreed that, had the defendant possessed what Judge Keller viewed as a legitimate claim of self-defense, the defendant may have been entitled to produce the proffered evidence. *Id.* at 848 (Keller, J., dissenting). And in *Torres v. State*, the court ruled upon Rule 404(b) to reverse a trial court's exclusion of evidence relating to the deceased's prior violent acts against individuals other than the defendant (of which the defendant was unaware) to show that the deceased was the first aggressor. 71 S.W.3d 758, 760-62 (Tex. Crim. App. 2002) (*"Torres II"*); *see also Torres v. State*, 117 S.W.3d 891 (Tex. Crim. App. 2003) (*"Torres III"*). As in *Tate*, the court concluded that the proffered evidence was relevant, apart from showing character conformity, in that it demonstrated the deceased's intent, motive, or state of mind. *Torres*

*II*, 71 S.W.3d at 760.

> For purposes of proving that the deceased was the first aggressor, the key is that the proffered evidence explains the deceased's conduct.  As long as the proffered violent acts explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted.

*Torres II*, 71 S.W.3d at 762 (internal citations omitted).  "The proper predicate for the specific violent prior act by the deceased is some act of aggression that *tends* to raise the issue of self-defense, which the violent act may then help to clarify." *Torres III*, 117 S.W.3d at 895 (emphasis in original). *See also Wortham v. State*, 2004 WL 2192189,*2 (Tex. App. - Tyler Sep. 30, 2004) (Unpublished Mem. Op.) (holding in dicta that specific acts of violence may be introduced to demonstrate reasonableness of defendant's fear of danger or that deceased was first aggressor, where self-defense is raised).

The following principles can be gleaned from these cases to apply to cases in which the defendant has raised self-defense:

I.   General reputation and opinion testimony regarding the deceased's bad character is admissible under Rules 404(b) and 405(a) to prove that the deceased acted in conformity with that character at the time of the killing;

II.  Evidence of specific acts or threats of violence known to the defendant at the time of the killing, whether directed against the defendant or other individuals, is admissible under Rule 404(b) as proof of the defendant's state of mind; and

III. Evidence of specific acts or threats of violence, even if unknown to the defendant at

the time of the killing, whether directed at the defendant or other individuals, is admissible under Rule 404(b) as proof of the deceased's motive, intent, state of mind, or absence of mistake.[1]

The State often relies on Rule 404(b) to introduce evidence of prior similar offenses committed by the defendant. And "[n]othing in the language of the rule would lead one to believe that it is a rule intended solely as a benefit for the State to be applied against the defendant...." *Tate v. State*, 981 S.W.2d at 913. Indeed, where the defendant seeks to introduce such evidence, "[h]is right to present a vigorous defense require[s] the admission of the proffered evidence. *United States v. McClure*, 546 F.2d 670, 673 (5th Cir. 1977) (holding that systematic campaign of threats and intimidation against other persons was admissible under Rule 404(b) to show lack of criminal intent of defendant). "Rule 404(b) helps carry out the twin aims of the *Dempsey* rule - to show either the defendant's reasonable apprehension, or ... that the victim was the aggressor." *Tate v. State*, 981 S.W.2d at 193. The Texas Rules of Evidence permit admission of the Defendant's proffered evidence. Due process and the Defendant's right to present a defense compel it.

---

[1] Additionally, article 38.36(a) of the Texas Code of Criminal Procedure provides:

In all prosecutions for murder, the state of the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

The Court of Criminal Appeals has held that such evidence must still meet the requirements of the Rules of Evidence to be admissible. *Garcia v. State*, 201 S.W.3d 695, 702-03 (Tex. Crim. App. 2006). Nevertheless, the above provision counsels in favor of its admission, particularly in a case where self-defense is an issue.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the Court consider the aforesaid Memorandum of Law in ruling on the admission of evidence proffered by the Defense regarding the reputation and prior bad acts of Mark Nix.

Respectfully submitted,

Paul Brauchle
State Bar No. 02918000
4131 N. Central Expressway
Suite 680
Dallas, Texas 75204-2102
(214) 742-2332

William E. "Karo" Johnson
State Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955

Douglas H. Parks
State Bar No. 15520000
321 Calm Water Lane
Holly Lake Ranch, TX 75765
(214) 521-2670

Counsel for Mr. Ruiz

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Memorandum of Law has been delivered to Kevin Brooks, Assistant District Attorney, Dallas County, Texas on the 3 day of JUNE, 2008.

ATTORNEY FOR DEFENDANT

THE STATE OF TEXAS                          CAUSE NO.

VS.                                         IN THE DISTRICT COURT OF

_Wesley Ruiz_                               DALLAS COUNTY, TEXAS

## STIPULATION OF EVIDENCE

Comes now ___Wesley Ruiz___, the defendant in the above entitled and numbered cause, in writing and in open court, and consents to the stipulation of evidence in this cause and in so doing expressly waives the appearance, confrontation and cross-examination of witnesses, and further agrees and stipulates that the following facts are true and correct and constitute evidence in the cause:

_If Daniel Krieter was re-called to testify he would state he was the Dallas Police Dept. Crime Scene officer on this case and that Defendant's exhibit #203 was Mark Nix's second weapon, a Sig Sauer .357 loaded with eight rounds with two additional 12 round clips. Defendant's exhibit #203 was recovered from State's exhibit #83, Mark Nix's ballistic vest, at Parkland Hospital on March 23, 2007_

x _Wesley Ruiz_
DEFENDANT

SWORN TO AND SUBSCRIBED BEFORE ME THE UNDERSIGNED AUTHORITY ON

THIS THE ___5th___ DAY OF ___June___, A.D. 20 _08_.

BILL LONG, CLERK, JUDICIAL
DISTRICT COURTS OF DALLAS
COUNTY, TEXAS

BY: _____DEPUTY

APPROVED:

_____
ATTORNEY FOR DEFENDANT

APPROVED BY THE COURT:

_____
JUDGE PRESIDING

STIPULATION OF EVIDENCE

000535

THE STATE OF TEXAS

VS.

Wesley Ruiz

CAUSE NO. _____

JUDICIAL DISTRICT COURT

DALLAS COUNTY, TEXAS

## DEFENDANT'S AGREEMENT TO STIPULATE EVIDENCE

**TO THE HONORABLE JUDGE OF SAID COURT:**

Comes now Defendant, in person and with counsel, charged herein with a felony offense, and does here and now in open Court and in the trial of this cause agree that the evidence herein may be stipulated orally and in writing and consents to waive and does hereby waive the appearance, confrontation and cross-examination of the witnesses herein and agrees that the stipulated testimony is substantially true and correct.

Respectfully submitted,

X _Wesley Ruiz_____
Defendant

_Paul Brauchle_____
Attorney for Defendant

## ORDER

The foregoing Waiver of Defendant of the appearance, confrontation and cross-examination of witnesses and Agreement to Stipulate the Evidence is approved by the Court.

_____
Judge

000536

NO. F07-50318-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194th JUDICIAL |
| V. | § | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

The defendant, Wesley Lynn Ruiz, stands charged by indictment with the offense of capital murder, alleged to have been committed on or about March 23, 2007, in Dallas County, Texas. The defendant has pleaded not guilty.

Our law provides that I submit the following charge to you in this case. This charge contains all the law necessary to enable you to reach a verdict. If any evidence was presented to raise an issue, the law on that issue must be provided.

### Offense Definitions

Our law provides that a person commits murder when he intentionally or knowingly causes the death of an individual.

Such offense is, however, capital murder when committed upon a peace officer who is acting in the lawful discharge of an official duty and who the person knows is a peace officer.

### Term Definitions

A "deadly weapon" is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury.

A "firearm" means any device designed, made or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use.

"Individual" means a human being who is alive.

1

000537

A "peace officer" means a person employed as a peace officer under Article 2.12 of the Code of Criminal Procedure, Section 51.212 or 51.214 of the Education Code, or other law. A police officer is a peace officer.

A "person" means an individual.

## Mental State Definitions

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. A person acts knowingly, or with knowledge, with respect to circumstances surrounding his conduct when he is aware that the circumstances exist.

## Voluntary Intoxication

Voluntary intoxication does not constitute a defense to the commission of crime.

"Intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

## Causation

A person is criminally responsible if the result would not have occurred but for his conduct.

## Application of the Law to the Facts

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that on or about March 23, 2007, in Dallas County, Texas, the defendant intentionally or knowingly caused the death of Mark Nix, an individual, by shooting Mark Nix with a firearm, a deadly weapon,

2

and that Mark Nix was a peace officer, to-wit: a Dallas police officer, acting in the lawful discharge of an official duty, and the defendant knew Mark Nix to be a peace officer, then you will find the defendant guilty of capital murder.

If you do not so find, or have a reasonable doubt thereof, then you will next consider whether the defendant is guilty of the lesser-included offense of murder.

## Murder

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that on or about March 23, 2007, in Dallas County, Texas, the defendant intentionally or knowingly caused the death of Mark Nix, an individual, by shooting Mark Nix with a firearm, a deadly weapon, then you will find the defendant guilty of murder.

If you do not so find, or have a reasonable doubt thereof, you find the defendant not guilty of murder.

If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder or murder, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of murder.

## Self-Defense

It is a defense to prosecution that the defendant's conduct was justified by law as self-defense.

A person is justified in using force against another in self-defense when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

The use of force against another is not justified to resist an arrest or a search that the defendant knows is being made by a peace officer, even though the arrest or search is unlawful, unless the resistance is justified.

000539

The use of force to resist an arrest or search is justified: (1) if, before the defendant offers any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest or search, and (2) when and to the degree the defendant reasonably believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary.

A person is justified in using deadly force against another: (1) if he is justified in using force against the other in self-defense, (2) if a reasonable person in the actor's situation would not have retreated, and (3) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force.

Where there is more than one assailant, the defendant has the right to act upon the hostile demonstration of either one or all of them and to assault any one of them, if a reasonable person in his situation would not have retreated and if it reasonably appears to him that they are present for the purpose and acting together to take his life or to do him serious bodily injury.

"Deadly force" means force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

"Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.

Therefore, if you find from the evidence beyond a reasonable doubt that the defendant is guilty of the capital murder or murder of Mark Nix, but you further find, or have a reasonable doubt thereof, that the defendant reasonably believed that deadly force, when and to the degree used, was immediately necessary to protect himself against what the defendant reasonably believed was the use or attempted use of unlawful deadly force by Mark Nix and/or other police officers, and that at such time a reasonable person in the defendant's situation would not have retreated, you will find the defendant not guilty.

4

You are further instructed, however, that if you believe from the evidence beyond a reasonable doubt that, at the time and place in question, neither Mark Nix nor any other officer was using or attempting to use unlawful force on the defendant, and that the defendant did not reasonably believe that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force, either real or apparent, as viewed from his standpoint alone, or that a reasonable person in the defendant's position at that time would have retreated, then you will find against the defendant on his plea of self-defense.

### Evidentiary Instructions

At times throughout the trial, the Court has been called upon to pass on the question of whether or not certain offered evidence might properly be admitted. Do not be concerned with the reasons for such rulings or draw any inferences from them. Whether offered evidence is admissible is purely a question of law. In admitting evidence to which an objection is made, the Court neither determines what weight should be given such evidence nor passes on the credibility of the witness. As to any offer of evidence that has been rejected by the Court, you, of course, must not consider the same. As to any question to which an objection was sustained, you must not conjecture as to what the answer might have been or as to the reason for the objection.

The fact that the defendant has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial.

You are instructed that you may consider all relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense alleged in the indictment.

5

000541

You are instructed that if there is any testimony before you in this case regarding the defendant's having committed an offense, if any, other than the offense, if any, alleged against him in the indictment in this case, you cannot consider that testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense, if any was committed; and even then you may only consider the same for the purpose of determining intent, knowledge, or motive of the defendant.

You are instructed that certain evidence was admitted before you in regard to the defendant's having been charged with and convicted of an offense other than the one for which he is now on trial. You are instructed that such evidence cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the credibility of the defendant as a witness for himself in this case, and to aid you, if it does aid you, in deciding upon the weight you will give to him as such witness, and you will not consider the same for any other purpose.

## Presumptions and Burden of Proof

All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The law does not require the defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless you are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in this case.

The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant. The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every

6

000542

element of the offense charged beyond a reasonable doubt. If the State fails to meet its burden, you must acquit the defendant.

The prosecution need not prove guilt beyond all possible doubt. The prosecution's proof must exclude all reasonable doubt concerning the defendant's guilt.

### Concluding Instructions

You are charged that it is only from the witness stand that the jury is permitted to receive evidence regarding the case, and no juror is permitted to communicate to any other juror anything he may have heard regarding the case from any source other than the witness stand.

In deliberating on this case, you are not to refer to or discuss any matter or issue not in evidence before you. Further, you shall not talk about this case to anyone not of your jury.

You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to the testimony, but you are bound to receive and to follow the law from the Court.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff who has you in their charge. You may communicate with this Court in writing, signed by your foreperson, through the bailiff who has you in their charge. Do not attempt to talk to the bailiff, the attorneys, or the Court concerning any question you may have.

After argument of counsel, you will retire and select one of your members as your foreperson. It is the duty of your foreperson to preside at your deliberations and to vote with you in arriving at a verdict. Your verdict must be unanimous, and after you have arrived at your verdict, you may use one of the forms attached by having your foreperson sign the particular form that conforms to your verdict.

7

000543

JUDGE

8

000544

**VERDICT FORMS**

We, the jury, find the defendant guilty of capital murder, as charged in the indictment.

_____
Foreperson

We, the jury, find the defendant guilty of murder, as included in the indictment.

_____
Foreperson

We, the jury, find the defendant not guilty.

_____
Foreperson

9

000545

EVIDENCE REQUEST

1. WINDSHIELD PHOTO - FROM DA CLOSING
2. HELICOPTER SWAT FOOTAGE.
3. CAR PLACEMENT DIAGRAM.
4. CRUISER FILMS - SIDE BY SIDE.
5. VERONICA'S TESTIMONY

James D. Gage

JAMES D. GAGE

194TH JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS          *
VS                          *     CAUSE NO. F07-50318-M
WESLEY LYNN RUIZ            *

## COURT'S ANSWER TO JURY NOTE NO. 1

LADIES AND GENTLEMEN OF THE JURY:

The Court has received the following Jury Note No. 1:

PER ATTACHED

The Court responds as follows:

Regarding Item No. 5 concerning testimony, the jury must indicate that there is a dispute   and the specific area of the dispute regarding said requested testimony.

_____
ERNEST B. WHITE, III , Judge Presiding

②

Question   1 & page 4
- are 1 & 2 mutually inclusive.
  i.e. do both have to be met

  2 & page 4
- are 1, 2, 3 mutually inclusive
  i.e. do all have to be met.

                    John D. Gage
                    JAMES D. GAGE

194TH JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS      *
VS      *     CAUSE NO. F07-50318-M
WESLEY LYNN RUIZ      *

## COURT'S ANSWER TO JURY NOTE NO. 2

LADIES AND GENTLEMEN OF THE JURY:

You have all the law, please continue your deliberations.

ERNEST B. WHITE, III, Judge Presiding

000549

NO. F07-50318-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY RUIZ | § | DALLAS COUNTY, TEXAS |

## MOTION FOR AUTHORIZATION TO OBTAIN
## THE SERVICES OF A FORENSIC PSYCHOLOGIST

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW WESLEY RUIZ, Defendant in the above-styled and numbered cause and herein respectfully moves this Court to provide funds for the expense of obtaining the services of an expert witness pursuant to Articles 26.05 and 26.052, C.C.P., and in support thereof would show the Court as follows:

I.

Defendant is charged with the offense of capital murder and the State is seeking the death penalty. Defendant is indigent. He cannot afford to hire an expert witness to assist in the evaluation, preparation and presentation of his defense.

II.

*Ake v. Oklahoma*, 470 U.S. 68, 82 (1985), requires the trial court to provide an expert and investigative assistance to an indigent defendant in the evaluation, preparation and presentation of his defense upon a preliminary showing that assistance of the expert or investigator is necessary. In dicta, *Ake* suggests that the defendant ought to be allowed to make his preliminary showing *ex parte*. The Texas Court of Criminal Appeals has held that due process requires that a defendant be allowed to proceed *ex parte*. *Williams v. State*, 958 S.W.2d 186, 194 (Tex.Crim.App. 1997). As recognized in *Williams*, the *ex parte* procedure permits the accused to obtain necessary expert assistance without disclosing his work product, his defensive theories, or his suggested experts, to

his adversary.

### III.

It should be noted that judges are not prohibited from "considering an *ex parte* communication expressly authorized by law." Tx. Code Jud. Conduct, Canon 3B(8)(e). See also Tex. Disciplinary R. Prof. Conduct 3.05(b) (lawyers are not prohibited from initiating *ex parte* communications where "otherwise permitted by law and not prohibited by applicable rules or procedure . . ."). As noted, the *ex parte* procedure sought in this motion is expressly authorized and permitted by the Texas Court of Criminal Appeals in *Williams v. State*.

### IV.

Counsel has contacted Dr. Gilda Kessner, whose affidavit/resume is attached hereto and incorporated herein for all purposes. Dr. Kessner, a forensic psychologist, is needed by the defense in this case in order to evaluate and testify regarding the issues raised by the investigation required by *Wiggins* and *Rompilla*. Attached hereto, as Exhibit A, is Dr. Kessner's resume. Her fees are $200.00 per hour for research, consultation and travel, plus expenses. Her fee for testifying or waiting to testify is $200.00 per hour. An initial estimate of $1,500.00 would apply in the event her testimony is not necessary and an additional $3,000.00 if her testimony becomes necessary. Accordingly, Mr. Ruiz respectfully requests an order authorizing the appointment of Dr. Kessner as an expert witness and authorize payment to her in accordance with the schedule outlined above.

A proposed order has been attached for the Court's convenience.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays the Court grant this Motion, approving the employment of Dr. Gilda Kessner, and payment to her in accordance with her fee schedule as set out herein, and Defendant prays that upon showing of reasonable necessity, the Court authorize additional funds as needed.

Respectfully submitted,

PAUL BRAUCHLE
4131 N. Central Expy., Suite 680
Dallas, Texas 75204
(214) 742-2332
(214) 739-3234 - Fax
State Bar No. 02918000

WM. E. "KARO" JOHNSON
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955
(214) 528-6601 - Fax
State Bar No. 10804500

ATTORNEYS FOR DEFENDANT

## O R D E R

On this the ___ day of June, 2008, came on to be heard Defendant's Motion for Authorization to Obtain the Services of a Forensic Psychologist. The Court is of the opinion that the same should be GRANTED, it is, therefore;

ORDERED that the Defendant is hereby authorized to employ and compensate Dr. Gilda Kessner, in accordance with her fee schedule set out in said Motion, not to exceed $4,500.00 unless, upon showing of reasonable necessity, the Court authorizes additional funds.

JUDGE PRESIDING

000552

# GILDA KESSNER, PSY.D.

PO Box 181954 • Dallas, Texas 75218-1954
Phone: 214/455-7692
gilda_kessner@sbcglobal.net

## EDUCATION

**Doctor of Psychology, Clinical Psychology**, 1996, Baylor University, Waco, Texas (APA accredited)
**M.S., Human Relations and Business**, 1987, Amber University, Dallas Texas
**B.S., Social Work**, 1974, Abilene Christian University, Abilene, Texas

## LICENSED PSYCHOLOGIST

Texas License No.        26886

## CURRENT PRACTICE

**Psychologist - Private Practice, Forensic Psychology Services**
(Dallas, Texas) July 1998 - present

Forensic psychology consultation services to attorneys, courts and probation departments.  Services offered include:

- Court ordered evaluations under Article 46B of the Texas Criminal Code
- Adult criminal forensic consultations/evaluations for capital murder and felony cases
- Expert witness testimony in criminal cases in state and federal court
- Expert witness testimony in civil cases in state court
- Trial consultation for criminal and civil cases
- Juvenile criminal forensic case consultations and evaluations
- Forensic psychological evaluations for county juvenile systems
- Pre-employment evaluations and staff development for law enforcement agencies

## PROFESSIONAL EXPERIENCE

**Director of Treatment - Correctional Services Corporation - Dallas Youth Academy**
(Dallas, Texas) August 1998 - March 1999

Directed the implementation of a treatment program (Dallas County Model) for court-ordered juvenile offenders.  Responsibilities included:

- Hiring and supervision of clinical staff
- Development of policies and procedures for the program
- Training of direct care staff
- Expert witness testimony
- Consulted with attorneys and county juvenile administrators regarding treatment recommendations
- Provision of direct clinical service

**Coordinator - Detention Center Psychology Services - Dallas County Juvenile Services**
(Dallas, Texas) November 1997 - June 1998

000553

**GILDA KESSNER, Psy.D.**
Page 2

Developed and coordinated psychotherapeutic services for detained juvenile offenders, including design and management of a pilot project for treatment and rehabilitation of juveniles with significant criminal histories. Project approved by Dallas County Juvenile Board and Dallas County Commissioners for full implementation.

- Chaired teams of administrators, detention managers and probation officers to review progress of youths in pilot-project
- Wrote manuals and designed treatment materials for pilot program
- Made recommendations regarding staffing of pilot program
- Consulted with attorneys, administrators and probation officers on juveniles' mental status and treatment recommendations
- Conducted psychological evaluations for pre-adjudication disposition planning by the courts
- Provided expert witness testimony
- Participated in multi-agency planning and treatment team meetings for complex multi-jurisdiction cases
- Supervised and trained masters level staff, detention staff and doctoral and masters psychology trainees

**Associate Clinical Psychologist IV - Texas Youth Commission**
(San Saba State School, San Saba, Texas and Hamilton State School, Bryan, Texas) September 1996 - October 1997

Developed and provided a range of consulting and psychological services in maximum-security juvenile prison system. Was instrumental in establishing psychology department in start-up of Texas' largest juvenile prison.

- Designed protocol used to review status of youths entering and exiting the Hamilton facility
- Served on team that reviewed case histories and determined treatment needs for juveniles admitted to the facility
- Advised management on personnel issues and interviewed professional applicants
- Psychological evaluations of adolescent male offenders
- Developed specialized management programs
- Made pre-release recommendations
- Rotated as Active Duty Officer (management responsibility) of San Saba facility
- Provided staff development and clinical supervision of caseworkers and Juvenile Correctional Officers

**Psychology Doctoral Intern - Arkansas Division of Mental Health Services**
(Little Rock, Arkansas) August 1995 - August 1996
Completed American Psychological Association accredited pre-doctoral internship by serving rotations in six clinical settings:

1. **Arkansas State Hospital, Forensic Services, Two Rotations:** Conducted court-ordered psychological evaluations of forensic inpatients to address questions of competency and criminal responsibility in capital and felony cases. Provided clinical supervision. Provided individual and group psychotherapy with patients acquitted by reason of mental illness or defect.

2. **Arkansas State Hospital, Acute Inpatient Rotation:** Designed and managed specialized programs for patients with extensive histories of inpatient treatment and community placement disruption. Presented proposal for specialized programs to hospital administration, professional staff and representatives of

000554

GILDA KESSNER, Psy.D.
Page 3

participating community agencies.  Trained staff for implementation of specialized treatment programs.
Conducted psychological evaluations of patients with acute and chronic mental illness.

3. **University of Arkansas for Medical Sciences, Arkansas Cancer Research Center, Behavioral Medicine Rotation:** Consulted with physicians and treatment teams, primarily on Bone Marrow Transplant inpatient unit, regarding psychological issues and advance directives (withholding or withdrawal of life-sustaining treatment).  Conducted psychological evaluations of gestational surrogate and egg donor candidates.

4. **Little Rock Community Mental Health Center Rotation:** Served on multi-disciplinary treatment team.  Provided short-term and longer-term individual psychotherapy with adults.  Conducted psychological evaluations of adults.

5. **Arkansas State Hospital, Adolescent Inpatient Unit Rotation:** Designed and managed the implementation of behavior modification plans.  Conducted psychological evaluations and group psychotherapy for patients ages 13-18.

6. **University of Arkansas for Medical Sciences, Child Study Center, Outpatient Clinic Rotation:** Evaluated and provided psychotherapeutic services to children and adolescents (4-18) and families.

**Psychology Doctoral Trainee - Baylor University, Clinical Psychology Doctoral Program Practica**
(Waco, Texas) July 1992 - July 1995 (APA accredited)
Completed three years of applied doctoral training by serving in three clinical settings:

1. **Department of Veterans Affairs Medical Center, Waco, Texas,** July 1994 – July 1995
Completed clinical practicum of three rotations with patients ranging from WW1 era to Desert Storm veterans, including Posttraumatic Stress Disorder Inpatient and Outpatient Units, Acute Inpatient Psychiatric Unit, Extended Care Unit.

2. **Heart of Texas Mental-Health Mental-Retardation, Outpatient Program,** July 1993 - June 1994
Conducted evaluations of applicants for county law enforcement positions and consulted with county sheriff's department representatives regarding the findings and selections.  Conducted intake interviews and psychological assessments of adults in a community mental health setting and presented findings to clinical staff.

3. **Baylor University Counseling Services,** July 1992 - June 1993
Provided crisis intervention and emergency services as well as individual assessment and counseling to university students.  Developed and taught course in test anxiety for undergraduate students.

## TRAINING PRESENTATIONS

**Texas Criminal Defense Lawyers Association**
(San Antonio, Texas) Mental Health Seminar, February 2008, "Addressing Antisocial Personality Disorder and Psychopathy in Criminal Cases"
**Hunt County Bar Association**
(Greenville, Texas) November 2006, "How to Select the Right Mental Health Professional for Your Case"

000555

GILDA KESSNER, Psy.D.
Page 4

**Association of Threat Assessment Professionals**
(Arlington, Texas) Texas Chapter, April 2001, "Assessing Dangerousness from a Psychological
Perspective"
**First Annual Texas Capital Defense Conference**
(West Columbia, Texas) March 2001, "Risk Assessment and Future Dangerousness"
**Texas Association of Sex Crimes Investigators**
(Fort Worth, Texas) Annual Conference, June 1999, "Juvenile Sex Offenders"
**Little Rock Police Department**
(Little Rock, Arkansas) Law Enforcement Instructor/Police Recruit Training, 1996, "Police Stress and
Suicide"

## TRAINING AND WORKSHOPS ATTENDED

**Forensic Discussion Group,** 1997-present (monthly), Southern Methodist University, School of Law,
Dallas, Texas
**Advanced Topics in Neuropsychological Assessment:  Meeting Challenges to Expert Testimony,** Texas
Psychological Association, November, 2006, Dallas, Texas
**Advanced Topics in Criminal Forensic Assessment,** American Academy of Forensic Psychology,
February 2006, Houston, Texas
**Motions, Evidence and Experts: Important Elements of an Effective Criminal Defense Practice,** The
Center for American and International Law, July 2005, Plano, Texas
**Young Offenders, Mental Disorders, and Immaturity: Challenges for Lawyers and Mental Health
Professionals,** The Institute for Behavioral Sciences and the Law, January 2005, Ft. Lauderdale, Florida
**Conducting Forensic Evaluations in Capital Cases,** Capacity for Justice, January 2005, Dallas, Texas
**A Closer Look at Evaluating Juveniles for the Courts,** Capacity for Justice, May 2004, Tyler, Texas
**Treatment of Sexually Abusive Adolescents:  Emerging Trends in the Treatment of Males and
Females with Sexual Behavior Problems,** Dallas County Juvenile Department, April 2004, Dallas, Texas
**Severe Emotional Trauma: Neuropsychological Effects,** Texas Psychological Association, November
2003, Dallas, Texas
**Mild Traumatic Brain Injury: Neuropsychological Evaluation and Treatment,** Texas Psychological
Association, November 2003, Dallas, Texas
**Threat Management Conference,** Association of Threat Assessment Professionals, August, 2003,
Anaheim, California
**Psychological Evaluations at Capital Sentencing,** Texas Psychological Association, November 2003,
Dallas, Texas
**Evaluating Trial Competency Under the New Law,** Capacity for Justice, July 2003, Austin, Texas
**Advanced Intensive Workshop,** American Academy of Forensic Psychology, March 2003, Dallas, Texas
**Psychopharmacology: Clinical Skills and Business Aspects,** September 2002, Texas Psychological
Association, Dallas, Texas
**Forensic Psychology Workshop: Current Issues in Assessing and Managing Risk of Violence,**
December 2001, Sam Houston State University, Huntsville, Texas
**Mental Health and the Law in Texas,** August 2001, Dallas, Texas
**First Annual Texas Capital Defense Conference,** March 2001, West Columbia, Texas
**Contemporary Issues in Forensic Psychology,** American Academy of Forensic Psychology, February
2001, San Antonio, Texas
**Homicide and Sexual Violence Seminar,** Texas Police Association, October 2000, Weslaco, Texas
**Advanced Criminal Law Course,** State Bar of Texas, July 2000, San Antonio, Texas

GILDA KESSNER, Psy.D.
Page 5

**Assessing Psychopathy: Clinical and Forensic Applications of the Hare Psychopathy Checklist – Revised (PCL-R),** April 2000, Dallas, Texas

**School Violence Prevention,** March 2000, Dallas, Texas

**Texas Association of Sex Crimes Investigators Annual Spring Conference,** February/March 2000, Fort Worth, Texas

**A Closer Look: Mental Health Issues in Criminal Cases,** December 1999, Austin, Texas

**Forensic Psychology Workshop: Assessment of Sex Offenders,** October 1999, Sam Houston State University, Huntsville, Texas

**False Allegations and Pedophiles,** June 1999, Fort Worth, Texas

**Psychosocial and Behavioral Health in Geriatric Settings,** May 1999, Dallas, Texas

**Dual and Multiple Addictions,** February 1999, Arlington, Texas

**Sexually Violent Offender and Advanced Sexual Offender Profiler Course,** October 1998, Fort Worth, Texas

**Forensic Psychology Workshop: Evaluating Criminal Competencies and Criminal Responsibility,** May 1998, Sam Houston State University, Huntsville, Texas

**Risk Assessment of Sexual Offenders,** March 1998, Dallas, Texas

**Hare Psychopathy Checklist - Revised, Inter-rater Training,** August 1997, Federal Bureau of Prisons, Bastrop, Texas

**Introduction to the Early Memories Procedure,** June 1997, Federal Bureau of Prisons, Bastrop, Texas

**The Clinical and Forensic Use of the Hare Psychopathy Checklist-Revised,** May 1997, Federal Bureau of Prisons, Bastrop, Texas

**Violence and Criminality: A Gathering of Leading Experts,** August 1996, San Diego, California

**Sixth Annual Texas Forensic Mental Health Conference,** April 1996, Vernon State Hospital, Vernon, Texas

**Third Annual Arkansas Forensic Conference,** March 1996, North Little Rock, Arkansas

**Contemporary Issues in Forensic Psychology,** February 1996, San Antonio, Texas

**Forensic Certification Training,** November 1995, Little Rock, Arkansas

## PROFESSIONAL ASSOCIATION MEMBERSHIPS

American Psychological Association
• Division 41 American Psychology-Law Society
Texas Psychological Association
American Association on Intellectual and Developmental Disabilities (AAIDD)

000557

NO.:  F07-50318

| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## DISCOVERY

I hereby acknowledge receipt of the following:

1.     Certificate of Discovery and the materials reflected in the certificate.

_____
Paul Brauchle

6 - 10 - 08
_____
Date

000558

## CERTIFICATE OF DISCOVERY

| LETTER FROM: | LETTER TO: | LETTER DATE: | POSTMARK: |
|---|---|---|---|
| **2 Disks** | | | |
| **Misc.:** | | | |
| Jason Ruiz | Wesley Ruiz | | |
| (single page) | ? | | |
| **Mar-07** | | | |
| Wesley Ruiz | Jae Arr Jones | 29-Mar-07 | |
| Robin Pool | Wesley Ruiz | 30-Mar-07 | 30-Mar-07 |
| Baby G | Wesley Ruiz | | 30-Mar-07 |
| Frances Castaneda | Wesley Ruiz | 30-Mar-07 | 30-Mar-07 |
| **Apr-07** | | | |
| Ltr from child | | | 1-Apr-07 |
| Ltr from child | | | 1-Apr-07 |
| Eric Daimon Ruiz | | | 1-Apr-07 |
| Eric Daimon Ruiz | Wesley Ruiz | 30-Mar-07 | 1-Apr-07 |
| Emily Joaquin | Wesley Ruiz | | 2-Apr-07 |
| Barbara Ruiz | Wesley Ruiz | 5-Apr-07 | 5-Apr-07 |
| Frances Castaneda | Wesley Ruiz | 3-Apr-07 | 5-Apr-07 |
| Cristen Ruiz | Wesley Ruiz | | 6-Apr-07 |
| Jae Arr | Wesley Ruiz | | 7-Apr-07 |
| Jae Arr | Wesley Ruiz | | 7-Apr-07 |
| Jae Arr | Wesley Ruiz | | 7-Apr-07 |
| Jae Arr (signed at end) | Wesley Ruiz | 8-Apr-07 | |
| Tiffani Nixon | Wesley Ruiz | 6-Apr-07 | 9-Apr-07 |
| Wesley Ruiz | Rosanna M. Cardenas | | 10-Apr-07 |
| Jason Ruiz | Wesley Ruiz | 20-Apr-07 | ? |
| Jason Ruiz | Wesley Ruiz | ? | 23-Apr-07 |
| Wesley Ruiz | Carmen Ruiz | 25-Apr-07 | ? |
| Christine Montes | Wesley Ruiz | 24-Apr-07 | 25-Apr-07 |
| Barbara Ruiz | Wesley Ruiz | 27-Apr-07 | 27-Apr-07 |
| Jason Ruiz | Wesley Ruiz | 27-Apr-07 | ? |
| Emily Joaquin | Wesley Ruiz | ? | 27-Apr-07 |
| Wesley Ruiz | Violet Nieto | 27-Apr-07 | |
| Wesley Ruiz | Kyrstel Pacheco | 27-Apr-07 | |
| Wesley Ruiz | Robin Pool | 30-Apr-07 | |
| Wesley Ruiz | Cristen Ruiz | 30-Apr-07 | |
| Wesley Ruiz | Richard Ruiz | 20-Apr-07 | |
| **May-07** | | | |
| Bernice Marquez | Wesley Ruiz | | 2-May-07 |
| Robin Pool | Wesley Ruiz | 1-May-07 | 2-May-07 |
| Chrystle Marie | Wesley Ruiz | 3-May-07 | 4-May-07 |
| Wesley Ruiz | Bernice Marquez | 5-May-07 | |
| Tiffani Nixon | Wesley Ruiz | 14-Apr-07 | 7-May-07 |
| Bernice Marquez | Wesley Ruiz | 5-May-07 | 8-May-07 |
| Wesley Ruiz | Emily Joaquin | 7-May-07 | Mailed May 8, 2007 |

| | | | |
|---|---|---|---|
| Wesley Ruiz | Krystel Pacheco | 7-May-07 | Mailed May 8, 2007 |
| Wesley Ruiz | Richard Ziegenhain | 8-May-07 | |
| Jae Arr | Wesley Ruiz | 9-May-07 | |
| Wesley Ruiz | Krystel Pacheco | 9-May-07 | |
| Wesley Ruiz | Christine Montes | 9-May-07 | |
| Barbara Ruiz | Wesley Ruiz | 14-May-07 | 15-May-07 |
| Bernice Marquez | Wesley Ruiz | 13-May-07 | 15-May-07 |

**Jun-07**

| | | | |
|---|---|---|---|
| Wesley Ruiz | Bernice Marquez "Ruiz" | 7-Jun-07 | |

**Apr-08**

| | | | |
|---|---|---|---|
| Bernice Ruiz | Wesley Ruiz | 22-Apr-08 | 24-Apr-08 |
| Geezy | Wesley Ruiz | | 25-Apr-07 |

CAUSE NO. F07-50318-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MEMORANDUM OF LAW
## SUPPORTING ADMISSION OF EVIDENCE REGARDING
## REPUTATION AND PRIOR BAD ACTS OF MARK NIX

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above entitled and numbered cause by and

through his attorneys of record, PAUL BRAUCHLE, WILLIAM E. "KARO" JOHNSON,

AND DOUGLAS H. PARKS, and respectfully submits this Memorandum of Law supporting

the admission of evidence regarding the general reputation and specific bad acts of the

deceased, Mark Nix, whether known or unknown by the Defendant at the time of the offense.

For more than fifty years, Texas courts have held that, in a homicide case where self-

defense is an issue, evidence of both the general reputation of the deceased for being a

dangerous character and prior specific acts of violence by the deceased was admissible. *See*

*Gutierrez v. State*, 764 S.W.2d 796, 798 (Tex. Crim. App. 1989); *Lowe v. State*, 612 S.W.2d

579 (Tex. Crim. App. 1981); *Beecham v. State*, 580 S.W.2d 588 (Tex. Crim. App. 1979);

*Dempsey v. State*, 159 Tex. Crim. 602, 266 S.W.2d 875 (Tex. Crim. App. 1954). Under this

common-law rule, known as the *Dempsey* rule, such evidence was admissible under two

distinct theories: (1) to show the reasonableness of a defendant's claim of apprehension of

danger, or (2) to show that the deceased was the first aggressor a the time of the killing.

000581

*Gutierrez v. State*, 764 S.W.2d at 798; *Thompson v. State*, 659 S.W.2d 649, 653 (Tex. Crim. App. 1983). If the evidence was offered to show that the deceased was the first aggressor, the defendant need not have had knowledge of the acts or statements at the time of the killing. *Lowe v. State*, 612 S.W.2d at 581; *Beecham v. State*, 580 S.W.2d at 590.

The *Dempsey* rule was superseded by the passage of the Texas Rules of Criminal Evidence (now the Texas Rules of Evidence). Rule 404(a) prohibits generally the admission of evidence of a person's character to prove that he acted in conformity with that character at a given time. And Rules 404(b) and 405(a) together prohibit the admission of evidence of specific acts to prove character conformity. Nevertheless, as demonstrated by a line of post-Rules cases from the Court of Criminal Appeals, the spirit of the *Dempsey* rule survived the passage of the Rules of Evidence.

In *Tate v. State*, 981 S.W.2d 189, 191-92 (Tex. Crim. App. 1998), the Court of Criminal Appeals considered whether evidence proffered by the defendant that the deceased had made a threat against the defendant, even if not communicated to the defendant, was admissible under the Rules of Evidence to prove that the deceased was the first aggressor. As the *Tate* court noted, the Rules specifically allow the admission of evidence concerning the pertinent character traits of the deceased, if only through the use of general reputation and opinion testimony. *Id.* at 192; *see* Rule 404(a)(2), Rule 405(a). But the evidence was specific act evidence, disallowed by Rules 404 and 405 to show character conformity. *Id.* at 192. As the court held, however, "[p]roving who was the aggressor in a claim of self-defense is not dependent exclusively upon the character of the victim." *Id.* at 192-93. And

Rule 404(b) permits the admission of evidence of specific bad acts for purposes other than to show character so long as the evidence has relevance *apart from* its tendency to prove character conformity. *Id.* at 193. Thus, evidence of the deceased's uncommunicated threat to the defendant was offered, not to prove the deceased's character and conformity therewith, but to prove the deceased's intent or motive at the time of the killing and thus that the deceased was the first aggressor. The court held that the evidence was admissible under Rule 404(b) and that the trial court had abused its discretion by excluding it. *Id.* at 193.

The Court of Criminal Appeals held in *Mozon v. State* that Rule 404(b) also supports the admission of specific-acts evidence to show *the defendant's* state of mind. 991 S.W.2d 841, 846 (Tex. Crim. App. 1999)(holding admissible under Rule 404(b) - but subject to Rule 403 - assault victim's prior violent acts against *other individuals*, acts of which defendant was aware at time of assault). Even Judge Keller, in dissent, agreed that, had the defendant possessed what Judge Keller viewed as a legitimate claim of self-defense, the defendant may have been entitled to produce the proffered evidence. *Id.* at 848 (Keller, J., dissenting). And in *Torres v. State*, the court ruled upon Rule 404(b) to reverse a trial court's exclusion of evidence relating to the deceased's prior violent acts against individuals other than the defendant (of which the defendant was unaware) to show that the deceased was the first aggressor. 71 S.W.3d 758, 760-62 (Tex. Crim. App. 2002) (*"Torres II"*); *see also Torres v. State*, 117 S.W.3d 891 (Tex. Crim. App. 2003) (*"Torres III"*). As in *Tate*, the court concluded that the proffered evidence was relevant, apart from showing character conformity, in that it demonstrated the deceased's intent, motive, or state of mind. *Torres*

*II*, 71 S.W.3d at 760.

> For purposes of proving that the deceased was the first
> aggressor, the key is that the proffered evidence explains the
> deceased's conduct.  As long as the proffered violent acts
> explain the outward aggressive conduct of the deceased at the
> time of the killing, and in a manner other than demonstrating
> character conformity only, prior specific acts of violence may be
> admitted.

*Torres II*, 71 S.W.3d at 762 (internal citations omitted).  "The proper predicate for the

specific violent prior act by the deceased is some act of aggression that *tends* to raise the

issue of self-defense, which the violent act may then help to clarify." *Torres III*, 117 S.W.3d

at 895 (emphasis in original). *See also Wortham v. State*, 2004 WL 2192189,*2 (Tex. App. -

Tyler Sep. 30, 2004) (Unpublished Mem. Op.) (holding in dicta that specific acts of violence

may be introduced to demonstrate reasonableness of defendant's fear of danger or that

deceased was first aggressor, where self-defense is raised).

The following principles can be gleaned from these cases to apply to cases in which

the defendant has raised self-defense:

I.      General reputation and opinion testimony regarding the deceased's bad character is

        admissible under Rules 404(b) and 405(a) to prove that the deceased acted in

        conformity with that character at the time of the killing;

II.     Evidence of specific acts or threats of violence known to the defendant at the time of

        the killing, whether directed against the defendant or other individuals, is admissible

        under Rule 404(b) as proof of the defendant's state of mind; and

III.    Evidence of specific acts or threats of violence, even if unknown to the defendant at

the time of the killing, whether directed at the defendant or other individuals, is admissible under Rule 404(b) as proof of the deceased's motive, intent, state of mind, or absence of mistake.[1]

The State often relies on Rule 404(b) to introduce evidence of prior similar offenses committed by the defendant. And "[n]othing in the language of the rule would lead one to believe that it is a rule intended solely as a benefit for the State to be applied against the defendant...." *Tate v. State*, 981 S.W.2d at 913. Indeed, where the defendant seeks to introduce such evidence, "[h]is right to present a vigorous defense require[s] the admission of the proffered evidence. *United States v. McClure*, 546 F.2d 670, 673 (5th Cir. 1977) (holding that systematic campaign of threats and intimidation against other persons was admissible under Rule 404(b) to show lack of criminal intent of defendant). "Rule 404(b) helps carry out the twin aims of the *Dempsey* rule - to show either the defendant's reasonable apprehension, or ... that the victim was the aggressor." *Tate v. State*, 981 S.W.2d at 193. The Texas Rules of Evidence permit admission of the Defendant's proffered evidence. Due process and the Defendant's right to present a defense compel it.

---

[1] Additionally, article 38.36(a) of the Texas Code of Criminal Procedure provides:

> In all prosecutions for murder, the state of the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

The Court of Criminal Appeals has held that such evidence must still meet the requirements of the Rules of Evidence to be admissible. *Garcia v. State*, 201 S.W.3d 695, 702-03 (Tex. Crim. App. 2006). Nevertheless, the above provision counsels in favor of its admission, particularly in a case where self-defense is an issue.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the Court

consider the aforesaid Memorandum of Law in ruling on the admission of evidence proffered

by the Defense regarding the reputation and prior bad acts of Mark Nix.

Respectfully submitted,

Paul Brauchle
State Bar No. 02918000
4131 N. Central Expressway
Suite 680
Dallas, Texas 75204-2102
(214) 742-2332

William E. "Karo" Johnson
State Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955

Douglas H. Parks
State Bar No. 15520000
321 Calm Water Lane
Holly Lake Ranch, TX 75765
(214) 521-2670

Counsel for Mr. Ruiz

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Memorandum
of Law has been delivered to Kevin Brooks, Assistant District Attorney, Dallas County,
Texas on the 3 day of JAN 12, 2008.

ATTORNEY FOR DEFENDANT

CAUSE NO. F07-50318

| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

**STATE'S WITNESS LIST**
**(AMENDED 06/10/08)**

Royce Smithey in place of A.P. Merrilot

Respectfully submitted,

_____

ANDY BEACH
Assistant District Attorney
Dallas County, Texas
Bar No. 01944900

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true copy of the foregoing instrument was delivered to opposing counsel on the _____ day of _____, 2008.

_____

ANDY BEACH

000567

CAUSE NO. F07-50318

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## STATE'S WITNESS LIST
## (AMENDED 06/10/08)

Royce Smithey in place of A.P. Merrilot

Respectfully submitted,

_____
ANDY BEACH
Assistant District Attorney
Dallas County, Texas
Bar No. 01944900

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing instrument was delivered to opposing counsel on the _____ day of _____, 2008.

_____
ANDY BEACH

000568

CAUSE NO. F07-50318-M

*FILED*
*2008 JUN 17 AM*
*GARY FITZSIMMONS*
*DISTRICT CLERK*
*DALLAS CO. TEXAS*
*DEPUTY*

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## DEFENDANT'S SUPPLEMENTAL DESIGNATION OF EXPERTS

COMES NOW WESLEY LYNN RUIZ, Defendant herein, and, pursuant to article 39.14, Texas Code of Criminal Procedure, files his supplemental designation of potential expert witnesses in the above-referenced matter, as follows:

1.    Dr. Gilda Kessner

Respectfully submitted,

Paul Brauchle
State Bar No. 02918000
4131 N. Central Expressway
Suite 680
Dallas, Texas 75204-2102
(214) 742-2332

William E. "Karo" Johnson
State Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955

000569

DOUGLAS H. PARKS
State Bar No. 15520000
321 Calm Water Lane
Holly Lake Ranch, TX 75765
(214) 521-2670
(903) 769-3465 - Telefax

*Counsel to Wesley Ruiz*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Supplemental Designation of Experts was served upon Kevin Brooks, Assistant District Attorney, Dallas County, Texas, by hand delivery, on the 17th day of June, 2008.

COUNSEL FOR WESLEY RUIZ

000570

CAUSE NO. F07-50318-M

THE STATE OF TEXAS

VS.

WESLEY LYNN RUIZ

§
§
§
§
§
§

FILED
2008 JUN 17 AM 8:43
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS
DEPUTY

IN THE 363 JUDICIAL

DISTRICT COURT OF

DALLAS COUNTY, TEXAS

## MOTION TO HOLD STATUTORY DEFINITION OF MITIGATING EVIDENCE UNCONSTITUTIONAL AS APPLIED TO IMPOSE A "NEXUS" LIMITATION, AND TO GRANT DEFENDANT'S REQUESTED INSTRUCTION, ARGUMENT AND MOTION IN LIMINE. *Tennard v. Dretke*

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, WESLEY LYNN RUIZ, Defendant herein, by counsel, and pursuant to the 6th, 8th and 14th Amendments to the United States Constitution and Article I, Sections 3, 10, 13, 19 and 29 of the Texas Constitution and files this, his Motion to Hold Statutory Definition of Mitigating Evidence Unconstitutional as Applied to Impose a "Nexus" Limitation, and to Grant Defendant's Requested Instruction, Argument and Motion in Limine. Defendant invokes each of the above provisions in support of his following claim, and would respectfully show the Court as follows:

I.

The Statutory Definition of Mitigating Evidence is Being Interpreted and Applied to Impose an Unconstitutionally Restrictive "Nexus" Test, Which Prevents the Jury From Considering and Giving Independent Mitigating Effect to Defendant's Constitutionally Relevant Mitigating Evidence.

In *Tennard v. Dretke*, ___ U.S. ___ , 124 S. Ct. 2562 (2004) the Supreme Court rejected the "nexus" test the Fifth Circuit and the Texas Court of Criminal Appeals had been using as a restriction upon independent mitigating evidence in Texas state courts. In the context of deciding that the Texas capital Defendant was entitled to a certificate of appealability (COA) the Court found that the relevance standard applicable to mitigating evidence in capital cases is simply whether the evidence is of such character that it might serve as a basis for a sentence less than death, regardless

of whether the defendant is able to establish a nexus between the evidence and his commission of the crime.

In an opinion issued only shortly before *Tennard v. Dretke*, the Texas Court of Criminal Appeals, after a long and confusing series of opinions, took the position in 2004 that it is "proper" that the jury instructions impose a "nexus" restriction upon the defendant's evidence offered as mitigation under the mitigation special issue. The Court of Criminal Appeals believed that the statutory definition of mitigating evidence, and the "reduces moral blameworthiness" or "nexus" restrictions were consistent with the Supreme Court's 1989 decision in *Penry I*, and even that such limitation is required by *Penry I. Penry v. Lynaugh*, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989) (overruled on other grounds). The Court of Criminal Appeals effectively adopted the very test (including the "nexus" requirement) that the Fifth Circuit employed and the Supreme Court rejected in *Tennard*. *See, Ex parte Smith*, 132 S.W.3d 407 (Tex. Crim. App. 2004) The Supreme Court makes clear in *Tennard* that the nexus limitation is <u>not "proper"</u> and is <u>not</u> required by its *Penry I* decision.

It is of no consequence to Defendant that the Court of Criminal Appeals has found in some cases that the Texas statute <u>on its face</u> allows for a broader scope of mitigating evidence, consistent with Supreme Court jurisprudence, when in reality <u>the operation of the statute</u> conflicts with it. Defendant urges this Court to find that the Texas definition of mitigating evidence in Subsection 2(e) is unconstitutionally restrictive as it is being interpreted and applied by the Court of Criminal Appeals, and to allow Defendant to take the steps that will correct the unconstitutionally narrow operation of the statute, by granting his requests for clarifying voir dire, by admitting his proffered mitigating evidence in accordance with the recognition that there is no "nexus" limitation, by including a clarifying instruction in the jury charge and by granting a motion in limine to prevent any

prosecutorial argument that tells the jury to apply "nexus" or reduces moral blameworthiness" as a test for what they may consider to be mitigating evidence.

The Texas statute directs this Court to instruct capital jurors that in answering the mitigation special issue submitted under Subsection 2(e) of the death penalty statute, they "shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness". When those instructions use "nexus" in the form of "moral culpability or moral blameworthiness" as a restriction upon independent mitigating evidence, a capital defendant like Defendant is unfairly precluded from gaining the jury's effective consideration of his constitutionally relevant mitigating evidence that may not fit the "nexus" test because it cannot be said to have caused or contributed to his commission of the crime; it does not explain or excuse his commission of the crime. The jury may believe that mitigating evidence, defined as reducing a defendant's moral culpability for committing the crime itself, cannot encompass such evidence as his childhood spent in poverty or racial prejudice, his mental slowness or learning disability, his acts of heroism or kindness, his good behavior in jail or prison after committing the crime, as independent mitigating evidence. The prosecutors may (and frequently do) tell the jurors that such evidence is out of bounds and cannot be considered as mitigating in answering the mitigation special issue because of the "reduces moral blameworthiness" or "nexus" language in the 2(e) definition. Jurors may follow the instruction and argument, and put aside the Defendant's proffered mitigation, while at the same time they do not think the death penalty is appropriate, because of that very same evidence.

The Court of Criminal Appeals has in the past seven years interpreted the statutory definition of mitigating evidence as allowing "an open-ended, subjective determination engaged in by each juror," so that Art.37.071, Sec.2(f)(4) does not unconstitutionally narrow the jury's

discretion to factors concerning <u>only</u> moral blameworthiness." *Cantu v. State*, 939 S.W.2d 627

(Tex. Crim. App. 1997), *cert. denied*, 522 U.S. 994 (1997). The Court held similarly in *Shannon*

*v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996), and in *King v. State*, 953 S.W.2d 266, 274

(Tex. Crim. App.1997), when defense counsel argued that the statutory definition was

unconstitutional on its face because it "limits the jury's consideration to factors that render him less

morally blameworthy and thereby narrows the jury's discretion in violation of the Eighth and

Fourteenth Amendment to the United States Constitution". As it had in *Cantu, supra*, the Texas

court found the statutory definition to be broader in scope than it appeared on its face.

In *Tennard v. Dretke, supra*, delivered in June, 2004, the Supreme Court rejected the

"nexus" test the Fifth Circuit and the Texas Court of Criminal Appeals have been using as a

restriction upon independent mitigating evidence, and found that the relevance standard applicable

to mitigating evidence in capital cases is simply whether the evidence is of such character that it

might serve as a basis for a sentence less than death, regardless of whether the defendant is able to

establish a nexus between the evidence and his commission of the crime.

> "As we have explained, the Fifth Circuit's screening test has no basis in our
> precedents and, indeed, is inconsistent with the standard we have adopted for
> relevance in the capital sentencing context." *Id.* at 2572.

II.

<u>The Restrictive Definition of Mitigating Evidence Also Prevents Defendant From Exercising His
Due Process Right to Present a Complete and Vigorous Defensive Case on Mitigation, in Violation
of His Rights Under the Fourteenth Amendment.</u>

The Supreme Court's holdings have long made it clear that the Fourteenth Amendment

guarantees the criminal defendant a meaningful opportunity to present a complete and vigorous

defense. He can be precluded from introducing some kinds of defensive evidence only if the

exclusion is rationally justified for some countervailing reason of state law, and any such state law will be carefully examined in light of the competing interests. *See, Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *Crane v. Kentucky*, 476 U.S.683, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986); *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984); *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

Defendant asks this Court to recognize the special status of a capital defendant's constitutional right to present his defensive case for life, and to grant his requests to submit jury instructions, and conduct argument upon the *Tennard* definition of mitigating evidence, without the "nexus" or "reduces moral blameworthiness" definition as a restriction upon the jury's consideration of his evidence. Of course, Defendant will ask the Court at trial to admit his proffered mitigating evidence as well, without assessing whether Defendant can prove there is any "nexus" to the commission of the crime or whether it tends to "reduce his moral blameworthiness" for the crime. He will certainly ask for admission of all evidence that "is of such a character that it might serve as a basis for a sentence less than death." *See, Tennard v. Dretke, supra.*

The only "competing state rule or law" that would call for keeping such evidence out is the statutory definition of mitigating evidence as interpreted to impose the "nexus" or "reduces moral blameworthiness" language as a limitation upon what is admissible as "*Penry* evidence" and what may be considered as "*Penry* evidence". As argued above, it is quite clear that the Supreme Court has disavowed such restrictive interpretation of its *Penry I* decision, in *Tennard v. Dretke, supra.* The "countervailing state law" is the very one the Supreme Court has invalidated as a reason for exclusion in *Tennard.* The Court of Criminal Appeals' previous findings on the admissibility of such evidence are no longer good authority for excluding Defendant's evidence that he offers as a basis for a sentence less than death, but that he cannot prove relates to his commission of the crime.

Only if this Court applies the correct constitutional standard throughout the trial will Defendant be accorded the due process right to a meaningful opportunity to present a complete and vigorous defensive case of mitigation.

III.

**1.) Request for Instruction**
**2.) Motion in Limine to Prevent Improper Prosecutorial Argument.**

Request For Instruction on *Tennard* Definition of Mitigating Evidence

1.)     Defendant requests that the Court instruct the jury at the close of punishment that the statutory definition of mitigating evidence does not impose any "nexus' or "reduces moral blameworthiness" limitation, either as to whether they may consider the evidence or whether they must accord it particular weight. Defendant requests a separate instruction in the language of *Tennard*, that the jury may consider and give effect to as mitigating "any evidence that may serve as a basis for a sentence less than death, regardless of whether the defendant is able to establish a nexus between the evidence and his commission of the crime." U.S. Const. Amends. 8 and 14, Tex..Const. Secs. 10, 13 and 19.

**After due consideration, it is hereby ORDERED, that said Request is:**

_____     **GRANTED**

_____     **DENIED**

Motion in Limine to Prevent Prosecutorial Argument Contrary to *Tennard* Scope of Mitigating Evidence

2.)     Defendant makes this Motion in Limine, asking that the Court instruct the prosecutors not to make any argument or suggestion to the jurors that would tend to impose the concepts of "nexus" or "reduces moral blameworthiness" as the test for mitigation or the limit upon the scope of what they may consider and give effect to as mitigation, and not to suggest that the language in the statute demonstrates a preferential weight be given to evidence that does have a nexus to the crime, so that the absence of "nexus" evidence calls for special weight, under the statute. U.S. Const. Amends. 8 and 14; Tex. Const. Secs. 10, 13 and 19.

**After due consideration, it is hereby ORDERED, that said Request is:**

_____     **GRANTED, and the prosecutors are instructed not to make**
**any argument or suggestion like that set out in Defendant's Motion in**

Limine, and to approach the bench and secure the Court's ruling before making any argument that might violate the Court's instruction.

_____        DENIED


## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendant prays that upon hearing, this Court sustain

his Motion and allow him to conduct voir dire as requested, grant him the instruction requested and

grant his motions in limine as requested to prevent improper argument, and record its rulings on the

forms provided in the body of this Motion.

Respectfully submitted,


_____

Paul Brauchle
State Bar No. 02918000
4131 N. Central Expressway
Suite 680
Dallas, Texas 75204-2102
(214) 742-2332


_____

William E. "Karo" Johnson
State Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955


COUNSEL FOR THE ACCUSED

000577

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been

furnished to counsel for the State by hand-delivery of a copy of same this the _25_ day of __

April , 2008.


_____
Paul Brauchle

000578

NO. _____

THE STATE OF TEXAS

vs.

_____

IN THE DISTRICT COURT

HARRIS COUNTY, TEXAS

_____ JUDICIAL DISTRICT

## ORDER

On this _____ day of _____, 2004, came on to be heard the Defendant's

MOTION TO HOLD STATUTORY DEFINITION OF MITIGATING EVIDENCE

UNCONSTITUTIONAL AS APPLIED TO IMPOSE A "NEXUS" LIMITATION, AND TO

GRANT DEFENDANT'S REQUESTED CLARIFYING VOIR DIRE, INSTRUCTION,

ARGUMENT AND MOTION IN LIMINE, and after due consideration, the Court is of the opinion,

and it is hereby ORDERED, that the Defendant's requests are GRANTED or DENIED individually

as reflected in the Motion.

SIGNED this the _____ day of _____, 2004.

_____
JUDGE PRESIDING

000578

*Denied*
*6|17|08*

CAUSE NO F07-50318-M

| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
|---|---|---|
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## MOTION TO EXCLUDE EVIDENCE OF EXTRANEOUS OFFENSES AND ALLEGED BAD ACTS
### - GANG RELATED ALLEGATIONS-

### OR, IN THE ALTERNATIVE
### DEFENDANT'S SECOND MOTION FOR CONTINUANCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW WESLEY LYNN RUIZ, Defendant, by and through counsel, and files this, his Motion to Exclude Evidence of Extraneous Offenses and Alleged Bad Acts or, alternatively, Defendant's Second Motion for Continuance and in support thereof would respectfully show:

I.

On May 8, 2008, immediately prior to an ordered pretrial hearing, Defendant was served with the State's Supplement to Notice of Extraneous Offenses, alleging crimes, convictions, wrongs or acts involving membership, participation and allegiance to criminal gangs identified as Midnight Dreamers, Ledbetter 12, and Tango Blast. That supplemental notice contained twenty-two (22) separate allegations from March 29, 1993, through September 26, 1997. Additionally, the supplemental notice contained sixteen (16) other offenses, mostly Class C misdemeanors, alleged to have occurred on or about February 18, 2000.

II.

This matter is set for trial before the already selected jury on May 27, 2008, a mere 19 days, including holidays and weekends, prior to trial. Counsel cannot render effective assistance of counsel with such short notice of so many matters to be investigated before trial.[1]

III.

Mr. Ruiz is on trial for his life. The penalty of death is "unique in both its severity and finality." *Gardner v. Florida*, 430 U.S. 349, 357 (1977). As a result, the Constitution demands "a greater degree of accuracy...than would be true in a noncapital case." *Gilmore v. Taylor,* 508 U.S. 333, 342 (1993). The United States Supreme court has long recognized that this qualitative difference in the severity of the punishment creates a greater need for reliability in the determination that death is the appropriate punishment in a specific case. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). *See also Gregg v. Georgia*, 428 U.S. 153 (1976); *Ford v. Wainwright*, 477 U.S. 399 (1986); *Harmelin v. Michigan,* 501 U.S. 957 (1991); *Monge v. California*, 524 U.S. 721 (1998).

IV.

---

[1]This late filing of a supplemental notice of extraneous offenses and alleged bad acts is the product of an utter breakdown in the adversarial system and can certainly not serve as a road map for counsel's preparation for trial. This is especially true given that counsel operates under onerous constitutional expectations and professional guidelines. *See, inter alia,* ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases §10.10.2 (rev'd ed. 2003) *reprinted in* 31 HOFSTRA L. REV. 913, 1051 (2003); *Draughon v. Dretke,* 2005 WL 2404154 (5th, Cir. 09/30/2005), Slip Op. No. 04-70043 (reversed for counsel's failure to investigation culpability); *Wiggins v. Smith*, 539 U.S. 510 (2003) (finding that counsel has a constitutional duty to conduct an investigation into the defendant's background, as well as, to gather evidence relating to the defendant's personal moral culpability); *Williams v. Taylor*, 529 U.S. 362, 415 (2000) (stating that counsel has a duty to conduct a requisite, diligent investigation into his client's background).

In addition to counsel's Sixth Amendment duty to render effective assistance of counsel, counsel also have a Fifth Amendment duty to ensure that Mr. Ruiz receives a fair trial, which encompasses additional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments, including but not limited to the right to present a defense, to confront and cross-examine witnesses and to avoid cruel and unusual punishment.

V.

The state has provided undersigned counsel with untimely discovery. Clearly, the defense cannot investigate allegations or facts that have not been timely provided. Once discovery is provided, the time-consuming process of an independent investigation will be impossible with trial to begin in less than less than three weeks.

Under the Sixth Amendment, counsel has the responsibility to conduct an adequate and independent investigation. Indeed, a thorough pretrial investigation is "[o]ne of the primary duties defense counsel owes to his client." *Magill v. Dugger*, 824 F.2d 879, 886 (11th Cir. 1987). For that reason, "[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness." *Osborn v. Shillinger*, 861 F.2d 612, 627 (10th Cir. 1988)(quoting *Blake v. Kemp*, 758 F.2d at 533 (11th Cir. 1985)). Unless counsel undertakes "a reasonably substantial, independent investigation into the circumstances and the law from which potential defenses may be derived," he cannot provide effective assistance. *Baldwin v. Maggio*, 704 F.2d 1325, 1332-33 (5th Cir. 1983).

VI.

To begin hearing testimony on May 27, 2008, while substantial investigation and preparation remains to be done would deny Mr. Ruiz the "basic tools of an adequate defense. . . ." *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *see also Mason v. Arizona*, 1345, 1351 (9th Cir. 1974) (constitutional right to investigative assistance), in violation of his most fundamental rights under the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13 & 19 of the Texas Constitution.

VII.

Under the circumstances here, to force Mr. Ruiz to begin testimony before his case has been adequately investigated would "render [his] right to defend with counsel an empty formality." *Chandler v. Fretag*, 348 U.S. 3, 75 S. Ct. 1, 99 L. Ed. 4 [1954].

Undersigned counsel represents to the Court that, for the reasons that are set out above, he is not prepared to provide effective assistance of counsel to Mr. Ruiz on the date that this case is set for trial <u>unless the Court excludes evidence of extraneous offenses and prior bad acts as set out in the State's Supplement to Notice of Extraneous Offenses</u> served upon defense counsel on May 8, 2008. Unless the Court excludes such evidence or unless the Court continues the trial of the case, Mr. Ruiz will be prejudiced by this inadequate preparation time.

WHEREFORE, PREMISES CONSIDERED, Mr. Ruiz prays that upon hearing that the Court excludes the evidence set out in the State's Supplement to Notice of Extraneous Offenses or, alternatively, the trial of this case be continued and that he have such other or

further relief to which he may be entitled.

Respectfully submitted,

Paul Brauchle
State Bar No. 02918000
4131 N. Central Expressway
Suite 680
Dallas, Texas 75204-2102
(214) 742-2332

William E. "Karo" Johnson
State Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955

Douglas H. Parks
State Bar No. 15520000
321 Calm Water Lane
Holly Lake Ranch, TX 75765
(214) 521-2670
(903) 769-3465 - Telefax

*Counsel to Wesley Lynn Ruiz*

000584

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing motion on

Kevin Brooks or Andy Beach, Assistant District Attorneys, Dallas County, Texas, on the 8th day

of April, 2008.

_____
Paul Brauchle

CAUSE NO F07-50318-M

FILED
2009 JUN 17 AM 9:33
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## MOTION TO EXCLUDE ALLEGED "BAD ACT"
## OF DEADLY CONDUCT AS EVIDENCE OF FUTURE DANGEROUSNESS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, WESLEY LYNN RUIZ, by and through his attorneys of record

and pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the UNITED

STATES CONSTITUTION; Article 1, sections 3, 10, 13, 15 and 19 of the TEXAS

CONSTITUTION; and Tex. C. Crim. Proc. Articles 1.05, 1.06, 1.09, and 37.0711 and

Rules 403, 404(b) of the Texas Rules of Evidence, makes this his Motion to preclude his

alleged "bad act" of deadly conduct, alleged to have been committed on March 8, 1997,

should a punishment phase of the trial be necessary. In support thereof, Mr. Ruiz would

show the Court the following:

### I.

### FACTUAL STATEMENT

Mr. Ruiz has been indicted for capital murder, and the State is seeking the death

penalty. Because this is a capital case, the Eighth Amendment to the UNITED STATES

CONSTITUTION requires a greater degree of accuracy and fact finding than would be true in

a non-capital case. *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Woodson v. North Carolina*,

MOTION TO EXCLUDE MISDEMEANOR ESCAPE - RUIZ        PAGE 1

428 U.S. 280, 305 (1976).

The State has given notice that it intends to offer evidence of Mr. Ruiz' alleged participation in Cause No. F97-31481-M, deadly conduct, alleged to have occurred on March 8, 1997, in Dallas County, Texas. This cause was dismissed by the State on January 27, 1998, a copy of which is attached hereto for all purposes.

## II.

## MOTION AND ARGUMENT

Subsection 2(a)(1) of Article 37.071 of the TEXAS CODE OF CRIMINAL PROCEDURE sets out evidence that may be offered during the punishment phase of a capital trial, including "any matter that the court deems relevant to sentence, including evidence of the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty." This section goes on to provide: "This subdivision shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Texas."

As noted above, the State is alleging that Mr. Ruiz was involved in deadly conduct, for which he has never been convicted. Any suggestion that Mr. Ruiz was involved that offense should be precluded. The evidence in the case is wholly insufficient to prove to a jury that Mr. Ruiz was involved, the only evidence being the uncorroborated statement of an alleged co-defendant. The law requires the State to prove alleged extraneous offenses and bad acts beyond a reasonable doubt. Here, the State cannot do that, as a matter of law.

MOTION TO EXCLUDE MISDEMEANOR ESCAPE - RUIZ        PAGE 2

000587

**A.**

## THIS COURT HAS A "GATEKEEPING" OBLIGATION WITH RESPECT TO EXTRANEOUS OFFENSES

This Court has an obligation to scrutinize the admissibility of extraneous acts.

Specifically, the Court of Criminal Appeals has held:

> The trial judge performs a limited gatekeeping function
> with respect to extraneous offenses: before allowing the
> admission of such offenses into evidence (and hence
> their placement before the jury), the trial judge must determine
> that there is a clear proof that the offenses were committed and
> that the defendant was the perpetrator.

*Kutzner v. State*, 994 S.W. 2d 180, 189 (Tex. Crim. App. 1999).

This Court must also be satisfied that the evidence is relevant and that it has not been

obtained in violation of any Constitutional right protecting Mr. Ruiz. *See* Tex.C.CRim.P.

Art. 37.0711.

For any offenses that the court deems to be relevant and otherwise admissible, this

Court should make a finding as to whether or not the probative value of the evidence is

substantially outweighed by the danger of unfair prejudice, confusion of the issues or

misleading the jury. In Sum, the admission of extraneous acts during a capital trial must be

closely scrutinized. *Davis v. State*, 597 S.W. 2d 358, 361 (Tex. Crim. App. 1980).

**B.**

## MORE THAN TEN YEARS HAVE ELAPSED SINCE THE ESCAPE CONVICTION

000588

Should this Court find that evidence of Mr. Ruiz's participation in the alleged deadly conduct offense is relevant to the question of whether Mr. Ruiz poses a future danger and should, therefore, be executed, the evidence should nonetheless be excluded based on the fact that more than ten years have elapsed since the commission of the alleged offense.

Any conviction that is more than 10 years old is stale, remote and is precluded for impeachment purposes. Tex. R. Evid. 609.

Nor should there be a less stringent rule for punishment phase purposes as indeed death is different and there is a heightened need for accuracy in the sentencing process. *Woodson v. North Carolina,* 428 U.S. 280, 305 (1976).

If more than 10 years has elapsed since the alleged commission of the offense, evidence as to such crime should be suppressed or precluded for all purposes.

Because death is different, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." In addition, the Supreme Court has invalidated procedures which have "tended to diminish the reliability of the [capital] sentencing determination" on due process grounds. *Beck v. Alabama,* 447 U.S. 625, 638 (1980).

## C.

## IN THE ALTERNATIVE TO EXCLUDING EVIDENCE OF THE ALLEGED DEADLY CONDUCT, THIS COURT SHOULD HOLD A HEARING TO DETERMINE ADMISSIBILITY OF THE EVIDENCE

As discussed above, this Court has a "gatekeeping" obligation to ensure that evidence of prior convictions is relevant. Should the Court consider allowing evidence of the alleged offense, either during the merits phase or punishment phase of this trial, Mr. Ruiz requests

MOTION TO EXCLUDE MISDEMEANOR ESCAPE - RUIZ          PAGE 4

000589

the Court, in performing its "gatekeeping" function with respect to extraneous offenses, to hold a hearing, in advance of trial, to determine whether or not the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.

In submitting and arguing this motion, Mr. Ruiz does not waive any other objections to the admissibility of prior convictions or unadjudicated offenses during the trial to determine whether Mr. Ruiz lives or dies.

WHEREFORE, PREMISES CONSIDERED, Mr. Ruiz prays that this Court enter an order:

1. Finding that the evidence of his participation in the alleged deadly conduct is insufficient as a matter of law, misleading and irrelevant and therefore its admission is denied;

2. Granting such other and further relief to which Mr. Ruiz is entitled in law or in equity.

Respectfully submitted,

PAUL BRAUCHLE
Texas Bar No. 02918000
4131 N. Central Expy., Suite 680
Dallas, Texas 75204-2102
(214) 521-2670

000590

WILLIAM E. "KARO" JOHNSON
Texas Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955
(214) 528-6601 - Telefax

*Counsel to Wesley Lynn Ruiz*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing motion was served upon Kevin Brooks, Assistant District Attorney, by United States mail or by hand delivery on the _25th_ day of _April_, 2008.

PAUL BRAUCHLE or
WILLIAM E. "KARO" JOHNSON

MOTION TO EXCLUDE MISDEMEANOR ESCAPE - RUIZ          PAGE 6

000591

Denied    6/17/08
Ouvu

CAUSE NO. F07-50318-M

| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

**MOTION TO INTRODUCE THE DEFENDANT'S STATEMENT OF ALLOCUTION, FREE FROM CROSS-EXAMINATION BY THE STATE, REFLECTING HIS REMORSE FOR THE OFFENSE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, WESLEY LYNN RUIZ, by Counsel, and offers the following in support of this Motion:

THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 '13 AND '19 OF THE TEXAS CONSTITUTION REQUIRE THAT A CAPITAL DEFENDANT SHOULD HAVE THE RIGHT TO PRESENT A PERSONAL STATEMENT OF ALLOCUTION TO THE JURY, FREE FROM CROSS-EXAMINATION FROM THE STATE. THIS IS PARTICULARLY SO IN TEXAS BECAUSE THE MITIGATION ISSUE IS NOT SUBJECT TO REVIEW FOR SUFFICIENCY OR PROPORTIONALITY, AND REMORSE IS A STATUTORILY RECOGNIZED MITIGATING FACTOR.

**Summary of Argument**

Increasing numbers of jurisdictions within the United States are recognizing a capital defendant's right to testify during the punishment phase of trial, free from cross-examination by the prosecution. These courts have recognized that the right to allocution is required by the eighth and fourteenth amendments of the Constitution, and in some instances by common law or statutory law. They have also recognized that statements of allocution are peculiar to capital trials, and that they present issues which are wholly collateral to the merits of the charges against the defendant and more general mitigation.

Texas has recognized that there may be constitutional or statutory exceptions to the general rule

000592

that a defendant who takes the stand can be cross-examined by the prosecution. It is submitted that subsequent development of constitutional guarantees and statutory law as applicable to capital defendants have extended the exceptional circumstances applicable to defendants in capital trials, and have fortified the right to allocution in Texas. Based on the sound reasoning of courts in other jurisdictions in the United States, and the development of capital law in Texas, the defendant should be permitted to present a statement of allocution to the jury.

**Constitutional requirement of a right to allocution**

It is well settled that due process protects rights are "deeply rooted in this Nation's history and tradition", *Moore v City of East Cleveland*, 431 U.S. 494, 503 (1977) (finding that reasonable doubt requirement was protected by due process because firmly entrenched in history of Anglo-American trial). Few rights are more deeply rooted in the traditions of Anglo-American justice than the right of allocution; *see McGautha v. California,* 402 U.S. 183, 217 (1971) (right is "of immemorial origin"), *United States v. Behrens,* 375 U.S. 162 (1963) (right is "ancient law"), *DeAngelo v. Schneider,* 757 P.2d 1355, 1356 (Or. 1988) ([a]llocution…is of such ancientness that it is difficult, if not impossible, to discover its historical origin").

While the Supreme Court has yet to rule that denial of allocution violates due process, several lower federal courts have held that it does, on the basis that the right is so firmly rooted in the history and traditions of the Anglo-American trial, *see Boardman v. Estelle,* 957 F.2d 1523, 1523-30 (9th Cir. 1992) ("[W]e hold that allocution is a right guaranteed by the due process clause of the Constitution", limited to circumstances in which the defendant affirmatively requests opportunity to allocute).

Because allocution is mitigating in nature, its denial also violates the prohibition of cruel and unusual punishment in both the United States and the Texas constitution. *See Young,* 853 P.2d at 376

(noting that the Supreme Court has not decided whether denial of allocution violates post-*Furman* Eighth Amendment safeguards and concluding that "[f]oreclosing the jury's opportunity to hear [the defendant's] personal statement prevented the jury from making the individualized sentencing determination required by the Eighth Amendment"). In *United States v. Myers*, 150 F.3d 459, 461-62 (5th Cir. 1998) the court recognized defendant's personal statement to sentencer as opportunity for mitigation of punishment.

### Recognition of the limited nature of allocution

This concept of limited allocution has been recognized by courts outside Texas; In *State v. Cazez*, 875 S.W.2d 253, 266 (Tenn. 1994) the court agreed with the analysis of the Third Circuit in *Lesko v. Lehman*, 925 F.2d 1527 (3d Cir. 1991), *cert. denied* 502 U.S. 898, which held that the fifth amendment right against self-compelled incrimination and the eighth amendment right of a capital defendant to place mitigating evidence before a jury were very much in play in a request to permit only limited or no cross-examination of a defendant. The Tennessee court, while recognizing the general rule that a testifying defendant could be cross-examined on any matter relevant to the issue in the case, nevertheless found that:

> "...[W]e are also cognizant of the gravity of a capital sentencing proceeding and the <u>constitutional mandate</u> to ensure that all relevant mitigating circumstances be presented to a sentencing body. We thus conclude that, <u>only in the limited sphere of a death penalty sentencing hearing</u>, a capital defendant's testimony regarding mitigating factors that are <u>wholly collateral to the merits of the charges</u> against him does not operate as a complete waiver of the privilege against self-incrimination. Accordingly, a defendant has a right to limited cross-examination if he or she wishes to testify about <u>only collateral mitigating circumstances</u> at the penalty phase of a capital trial. We reiterate, however, that even in such special situations, a defendant may be completely and thoroughly cross-examined about all testimony given or fairly raised by that defendant on direct examination".

*State v. Cazez, supra.*

000594

The concept of 'partial waiver' is particularly appropriate in the circumstances of this particular type of testimony in the special arena of a capital trial.

**The Position in Texas**

Defendant recognizes the following general rule as stated in *Huffman v. State*, 747 S.W.2d 212 (Tex. Crim. App. 1988), and submits that the underlined exception should be applicable in this case:

> "It is well established that a defendant who takes the stand as a witness on the trial on the merits may be cross-examined and impeached in the same manner as any other witness. McCormick and Ray, *Texas Law of Evidence*, Vol. 1, Chapter 8, SS 643, p. 487; 1 Branch's Ann. P.C., 2nd Ed., SS 168, p. 170, and cases ther ecited; 62 Tex.Jur.2d, Witnesses, SS 205, p. 130: *Shelton v. State*, 397 S.W.2d 850 (Tex. Crim. App. 1965); *Cevda v. State*, 26 S.W. 922 (1894). See also *Davis v State*, 478 S.W.2d 958 (Tex. Crim. App. 1972); *Dunlap v State*, 440 S.W.2d 672 (Tex. Crim. App. 1969). Thus such a defendant may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter and treated in every respect as any other witness except when there are overriding constitutional and statutory provisions. *Taylor v. State,* 612 S.W.2d 566, (Tex. Crim. App. 1981), *Williams v. State*, 607 S.W.2d 577(Tex. Crim. App 1980); *Myre v. State*, 545 S.W.2d 820 (Tex. Crim. App. 1977) *Sensabaugh v. State,* 426 S.E.2d 224 (Tex. Crim. App. 1968); *Gonzales v. State*, 160 Tex. Crim. 548, 272 W.E.2d 524 (1954)."

> Once the defendant testifies "the interests of the other party and regard for the function of the courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination". *Brown v. United States,* 356 U.S. 148 (1958). *See also*, *Fitzpatrick v. United States*, 178 U.S. 304 (1900)".

**New constitutional and statutory provisions, since Huffman, override the State's right to cross-examine the capital defendant's statement in mitigation.**

When *Huffman,* supra was decided, in 1988, the "constitutional and statutory provisions" that might override the State's right to cross-examine a testifying defendant were different from and less than they are today. After the Supreme Court's decisions in *Penry v. Lynaugh*, 492 U.S. 302, 109

S. Ct. 2934, 106 L. Ed. 2d 256 (1989) and *Penry v. Johnson*, 532 U.S. 782, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (overruled on other grounds), and the Texas legislature's passage of the statute granting the capital defendant independent consideration of his proffered mitigating evidence in the special issue, the Texas capital defendant gained a greater interest, guaranteed by constitutional and statutory provisions, in presenting his personal statement in mitigation, free from cross-examination by the state.

The State's interest in cross-examination; to contradict, impeach, discredit and attack a witness and to make him give evidence against himself, did not change. The regard for the function of the courts to ascertain the truth did not change. Only the capital defendant's interest was enlarged and secured by the Eighth Amendment decisions of the supreme court affecting the scope of his mitigation rights and the actions of the Texas legislature codifying those rights. Therefore it has become the capital defendant's interest in placing mitigation before the jury that "prevail(ed) in the balance of considerations" determining the scope of his right to testify in mitigation without being cross-examined by the prosecutor. The *Huffman* balancing of interests may remain the same, but the scales have shifted.

It is clear that with regard to this very unusual type of 'testimony' offered in capital trials, which the defendant seeks to present, the State does not have a justifiable interest in cross-examination in its usual sense. Defendant's statement of remorse to the jury is simply not the kind of historical fact that cross-examination is designed to test, in a search for the truth. Even the additional use of cross-examination, as a tool for revealing a witness's motive to lie, is but a corollary to the search for the truth. It has no legitimate role in a capital trial punishment phase, when the defendant is making a statement to the jury revealing his remorse, his character, his apology, the feelings in his heart, the effect on him of the crime he committed, and perhaps a plea for mercy. The defendant has a right to offer his statement to the jury as a basis for finding a life sentence more appropriate than death.

New factors of Victim Impact/Character evidence, admissible after *Huffman*, gives a capital defendant greater interest in making personal statement of allocution, free from cross-examination.

The Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. 808 (1991) followed by the decision in *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999), established the admissibility of victim impact/victim character evidence at the punishment phase of a capital trial. Although defendant argues the irrationality and the unfairness of this rule, the reality of trial is that this jury will hear from the victim's survivors how they miss their loved one and what harm they have suffered from his loss. (Although in theory the victim's survivors are subject to cross-examination, even the Supreme Court recognized that the 'prudent' defense lawyer will likely refrain from such action; the witnesses are in effect free from cross-examination). Defendant wants to tell the jury that he is sorry and he wants to apologize for the harm he has caused. He should be able to do so without being attacked on "cross-examination" by the prosecutors.

At the time *Huffman* was decided in 1988, balancing the interests of the State and the defendants, the defendant had no secured constitutional and statutory right to present independent mitigating evidence and submit the question to the jury as a basis for sparing his life. The Texas Court of Criminal Appeals later decided to place the prize of victim impact evidence upon the mitigation question, and this court should recognize the changed conditions for the defendant in determining now that he has an even greater need to be able to address the jury personally and make his statement in mitigation as it relates to the victim and his survivors.

The mitigation special issue is not subject to review, so this is the only opportunity the Defendant will have to present this type of mitigation.

In the Texas "non-weighing" capital murder statute, there is no list of aggravating and mitigating factors for the jury, and the statutory definition of mitigating evidence restricts the jurors to

considering only that evidence which they "might regard as reducing the defendant's moral blameworthiness", Art. 37.071, Sec.2(f)(4), V.A.C.C.P. The mitigation verdict is not reviewable for sufficiency and there is no proportionality review. In these circumstances, it is obvious that this capital defendant has one and only one chance to gain a benefit from evidence he proffers as mitigating. If he does not persuade the jury, he will have no chance of persuading any reviewing court. This emphasizes the constitutional importance of giving him this opportunity now.

Defendant therefore asks the court to acknowledge that the law in Texas since *Huffman* has been altered, by the restructuring of the special issue and the decisions in *Penry* and *Mosley,* supra. Based on those considerations and the sound reasoning in other courts on this issue, defendant urges the court to allow him to present his personal statement in mitigation to the jury.

Respectfully submitted,

_____

Paul Brauchle
State Bar No. 02918000
4131 N. Central Expressway
Suite 680
Dallas, Texas 75204-2102
(214) 742-2332

_____

William E. "Karo" Johnson
State Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955

COUNSEL FOR THE DEFENDANT

000598

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of

_____, 2008.


_____

Paul Brauchle



CAUSE NO. F07-50318-M

| | |
|---|---|
| **THE STATE OF TEXAS** | § **IN THE 194TH JUDICIAL** |
| | § |
| **VS.** | § **DISTRICT COURT OF** |
| | § |
| **WESLEY LYNN RUIZ** | § **DALLAS COUNTY, TEXAS** |

## MOTION TO EXCLUDE VICTIM IMPACT/CHARACTER EVIDENCE IN ABSENCE OF SPECIFIC LEGISLATIVE AUTHORITY AND TO EXCLUDE SUCH EVIDENCE AS IRRELEVANT TO TEXAS PUNISHMENT SPECIAL ISSUES

## REQUESTS TO VOIR DIRE/REQUESTED INSTRUCTIONS/MOTIONS IN LIMINE, RELATED TO CLAIMS IN THIS MOTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, WESLEY LYNN RUIZ defendant, by counsel, and pursuant to the 6th, 8th and 14th Amendments to the U.S. Constitution and Art. I, Sections 10, 13, and 19 of the Texas Constitution and files his Motion to Exclude Victim Impact/Character Evidence in Absence of Specific Legislative Authority and Procedures, and to Exclude Such Evidence as Irrelevant to Texas Punishment Special Issues and Violative of the Eighth Amendment. Defendant would show the Court as follows:

> In the absence of specific legislative authorization, admission of Victim Impact/Character evidence, at a capital trial, on the general "relevant to punishment" language, at the Trial Court's discretion, violates constitutional principles of Due Process and Equal Protection, as well as the prohibition against Cruel and Unusual Punishment;

> The admission of the Victim Impact/Character evidence in Defendant's case violates the Eighth Amendment and Fourteenth Amendment Due Process because

> The evidence is not relevant to any punishment special issue;
> The evidence encourages jurors to answer the special issues on improper considerations; and
> There are insufficient procedural safeguards to prevent, identify and correct improper use.

## STATE LEGISLATURES MUST PROVIDE GUIDANCE

The Supreme Court of Wyoming in an opinion issued April 14, 2003 held that neither that state's death penalty statute nor its general victim impact statute authorized the introduction of victim impact evidence during capital sentencing, so that the trial court had erred in admitting it. *Olsen v. State*, 67 P.3d 536 (Wyo. 2003). The citizens of Texas are entitled to no less protection. The Court in *Olsen* wrote,

> "If the long march of death penalty jurisprudence means anything, it is that it is the <u>legislature's</u> obligation to carefully structure a <u>statutory procedure</u> which achieves the twin goals of individualized sentencing and channeled discretion in the sentencing authority and which avoids arbitrary and capricious action by that sentencing authority. Obviously, at the heart of that statutory procedure lies those matters which are deemed relevant to a determination of the sentence. Those matters can only be identified and authorized by the legislative representatives of the people, <u>not by the courts</u>." *Id.* 67 P.3d at 595 (emphasis added).

The Wyoming Court noted that the dissenting Supreme Court Justices in *Booth v. Maryland*, 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987) (in which the Court held that the Maryland statute authorizing victim impact testimony at capital sentencing was unconstitutional), who four years later would be among the majority in *Payne*, wrote,

> "that the legislature's judgment to allow a capital sentencing jury to consider victim impact evidence is entitled to particular deference; determinations of appropriate sentencing considerations are peculiarly questions of legislative policy, ... and the Court should recognize that in a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people."

*Olsen v. State, supra*, 67 P.3d at 595 (citing *Booth v. Maryland, supra*, 482 U.S. at 515, 107 S. Ct. at 2539) (White, J., dissenting, joined by Rehnquist, C.J., O'Connor and Scalia, J.J.) (citations and internal quotation marks omitted).

The Supreme Court in *Payne, supra*, overruled *Booth* in part, and held that the Eighth Amendment does not erect a *per se* bar on victim impact/character evidence at capital sentencing <u>if a state chooses to authorize</u> its introduction. In the wake of *Payne's* holding, the Texas legislature did not act to amend the death penalty statute to authorize the introduction of such evidence, although the legislatures of several other states did do so.

In those States that did enact legislation, the statutes provide procedural rules, definitions and guidelines for the defense, the prosecution and the trial courts to consult before and during trial.

<u>TEXAS STATUTES PROVIDE NO GUIDANCE</u>

In Texas, by contrast, the participants in a capital trial engage in the kind of protracted arguments that will take place in Defendant's case if victim impact is admitted: wrangling over such matters as: whether the defense is entitled to discovery; whether the court will hear the proposed witnesses in person before they may testify, in order to rule on the permissible scope and content of their testimony and assess their ability to maintain an appropriate demeanor; whether the testimony shall be in written form and be read to the jury by a neutral party; how many witnesses may testify and how close their relationship to the deceased must be; whether the court must give cautionary instructions to the jury and what the instructions must say. In Defendant's trial, as in all other Texas capital trials, the answers to those questions depends upon the skill of the defense counsel in raising the issues, the particular prosecutors' disposition, the particular judge's inclinations on the issues and the

evolving and shifting opinions of the (also-changing) members of the Court of Criminal Appeals.

In stark contrast, where statutes have been enacted to authorize victim impact/character evidence, they are accompanied by particular basic guidelines and procedures; all parties, and the trial courts, can consult the statutes and tailor their requests and decisions accordingly.

EXISTING VICTIM STATUES INAPPLICABLE

It is readily apparent that in Texas (as in Wyoming) the legislature has not, in either the death penalty statute's "empty vessel" terms authorizing the admission of evidence "as to any matter the court deems relevant to sentence" or in the general victim impact/victim's rights statutes, made the determination that victim impact/character evidence is particularly a matter relevant to capital sentencing.

Chapter 6 of the Code of Criminal Procedure, entitled "Rights of Crime Victims" is lengthy and detailed. Article 56.03, within that Chapter, titled "Victim Impact Statement" clearly has no application to the capital sentencing process, and is designed, in part, to provide information to the court, after assessment of punishment, for its use in deciding whether to probate the sentence. In no way does that chapter or that article pertain to, much less authorize the use of victim impact/character testimony as punishment evidence in a capital trial. It is recognized that where a general statute and a specific statute speak to the same matter, the terms of the specific statute prevail. *See also, Simpson v. United States*, 435 U.S. 6, 15, 98 S. Ct. 909, 914, 55 L. Ed. 2d 70 (1978)

Further, the Texas legislature has enacted a statute that speaks specifically to the matter of victim impact "testimony", a kind of "victim allocution" statute, and has expressly authorized the victim or the close relative of a deceased victim to address the defendant, <u>not</u> the jury, and to do so only <u>after</u> sentence has been pronounced and the jury has been dismissed. Moreover, the statute specifically directs that the victim's or relative's statements not be recorded. Tex. Code Crim. Proc. art. 42.03, Sec. 1(b). The full text of the statute is as follows:

> (b) The court shall permit a victim, close relative of a deceased victim, or guardian of a victim, <u>as defined</u> by Article 56.01 of this code, to appear in person to present <u>to the court and to the defendant</u> a statement of the person's <u>views about the offense, the defendant,</u> and <u>the effect of the offense on the victim</u>. The victim, relative, or guardian may not direct questions to the defendant while making the statement. <u>The court reporter may not transcribe the statement</u>. The statement must be made:
>
> > (1) <u>after</u> punishment has been assessed and the court has determined whether or not to grant community supervision in the case;
> > (2) <u>after</u> the court has announced the terms and conditions of the sentence; and
> > (3) <u>after</u> sentence is pronounced.

(emphasis added).

The legislature knows how to address the matter of victim impact statements, defining the category of persons who may speak, controlling the timing of the statement and the persons to whom it may be addressed (not the jury) to insure that it <u>does not affect</u> the punishment decision. While it is true that this statute, like the general victims' rights statutes, does not speak to the capital sentencing procedure specifically, it does express a clear

legislative determination that <u>if</u> a victim or relative of a deceased victim is permitted to speak in person about his views about the offense and about the defendant and give an account of <u>the effect of the offense upon himself,</u> he may do so only at a time and in a manner that will <u>prevent his statement from entering into the determination of punishment.</u>

In *Brown v. State*, 875 S.W.2d 38, 40 (Tex.App.—Austin 1994, no pet.) the Court of Appeals held that the terms of Art. 42.03, Sec. 1(b) did not necessarily prevent the State from offering evidence of a victim's emotional or physical injury at the punishment stage of a criminal trial as a "circumstance of the offense," <u>so long as</u> the factfinder may <u>rationally attribute moral culpability for that injury to the accused.</u>

These statutes, insofar as they speak to the legislature's assessment of victim impact testimony, reflect a judgment that such factors have a place only <u>outside</u> the arena of the criminal trial and are allowed into the category of legitimate evidence only if the jury may "<u>rationally attribute</u>" the injurious effects to the accused as a circumstance of the offense. The Texas legislature, then, has certainly not "chosen" to authorize the admission of victim impact/character evidence at capital sentencing, or at any criminal punishment trial unless the specific impact is so closely tied to the defendant's personal culpability that it is a "circumstance of the offense."

CAPITAL PROCEDURE UNIQUE

The legislature has set out the capital sentencing scheme separately in Tex. Code Crim. Proc. art. 37.071, undoubtedly in recognition of the fact, in providing for the possibility of the death penalty, that it is unique in its irrevocability, unique in its rejection of rehabilitation as a basic goal of criminal justice and unique in its absolute renunciation of all that is embodied in our concept of humanity. *Furman v. Georgia,* 408 U.S. 238, 306 (Stewart, J., concurring). The Texas legislature enacted the broad provision that, that evidence may be presented by the state and the defendant or defendant's counsel as to <u>any matter that the court deems relevant to sentencing,</u> including evidence of the defendant's background or character or the circumstances of the offense <u>that mitigates against the imposition of the death penalty.</u>" Tex. Code Crim. Proc. art. 37.071, Sec. 2 (a)(1).

The statute specifically authorizes the admission of a particular kind of evidence: the defense mitigating evidence, and it specifically prohibits the use of any evidence secured in violation of the United States or Texas Constitution, or the State's offering any evidence to establish that the race or ethnicity of the defendant makes it likely that he will engage in future criminal conduct. *Id.*; and subsection 2(a)(2).

The Court in *Mosley v. State, supra*, relied upon the statute's general authorization of the "presentation" of evidence "as to any matter that the court deems relevant to trial" as a basis for choosing to admit victim impact/character evidence because of its deemed relevancy as rebuttal to the defendant's mitigation evidence. Defendant submits that the statute's broad language provides no adequate basis for admitting victim impact/character evidence at capital

sentencing. First, the quoted language has been in the Texas statute since its passage shortly

after *Furman v. Georgia,* in 1972, long before victim impact evidence made its first

appearance in Supreme Court jurisprudence, in *Booth v. Maryland,* the 1987 case in which

the Supreme Court struck down the Maryland <u>statute</u> that had specifically authorized victim

impact/character evidence at capital sentencing. *See*, Justice Stevens's comments in *Payne*

*v. Tennessee,* 501 U.S. at 858 (Stevens, J., dissenting). So, when *Booth* struck down victim

impact Texas did not have to revise its statute because the legislature had never authorized

it. Thus, from a historical perspective it would not be warranted to presume that the Texas

legislature had intended this language to encompass victim impact evidence.

Defendant recognizes that the legislature has not "chosen" to act in the wake of

*Payne*, to codify any particular rules regarding victim evidence at capital trials, either

forbidding it altogether or authorizing it according to specific limits of relevancy (as it has

for noncapital cases, in Tex. Code Crim. Proc. art. 42.03) or providing for particular

discovery rules or limiting instructions. It may be that the legislature is comfortable leaving

those matters to the Court of Criminal Appeals, and that it is intentionally declining to act.

In accord with the presumption that the legislature acts with full knowledge of existing law,

including decisions of the courts, it is possible to conclude that the legislators, having

remained silent on this highly political, highly emotional issue since *Payne* removed the

constitutional barrier to such evidence in 1991, are expressing a deliberate disinclination to

place any limits whatever on the prosecution in this, the acknowledged death penalty capital

of the civilized world, especially when their constituency, to whose will and moral values they were elected to respond, is undoubtedly composed of more victims than defendants.

Nevertheless, those legislators are the body that a democratic society constitutes to express the collective moral values of its people, rather than for this Court to be left the task of evaluating and assessing the extremely varied instances of trial judge's discretion that arise in this large and busy death jurisdiction of Texas. The members of the Court of Criminal Appeals have not agreed and still do not agree, as to the permissible scope and nature of victim related evidence, so that in the clamor of a capital trial, where the statute itself leaves relevance to the trial court's discretion, and trial judges differ from court to court and from one capital case to another as to what they deem relevant, and whether they choose to grant discovery, screen the victim testimony, limit prosecutorial argument and/or limit the jury's use of the evidence, there is almost no possibility of achieving the kind of consistent relevancy determinations that assure a channeled and non-arbitrary determination of the death penalty.

Additionally, the Texas Court of Criminal Appeals has held that "if it is not in the death penalty statute" then it is not applicable to the death penalty process. "The Legislature, through its broad power to classify crimes and those who stand accused of crimes, chose not to permit the defense of "sudden passion in the context of capita murder". *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000); *See also Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999) (holding that Tex. Code Crim. Proc. art. 37.071 governs the death penalty process). If it is not in Art. 37.071 or in Tex. Penal Code 19.03, then it is not

admissible in the prosecution of one for a capital crime unless the same violates the U. S. or State constitutions.

OTHER AUTHORITY

In *Commonwealth v. Fisher*, 681 A.2d 130, 145-147 (Pa. 1996), in language cited by the Wyoming Supreme Court in *Olsen, supra*, the Pennsylvania Supreme Court, guided by the fundamental principle of statutory construction that penal provisions are to be strictly construed, held that "the imposition of capital punishment may not rest on a mere supposition that the Legislature intended victim impact evidence to be considered by a jury, but only upon the clear and unambiguous language of the death penalty statute." *Olsen*, 67 P.3d at 598

The Pennsylvania legislature was one of those that reacted to the *Payne* decision by amending its statute specifically to authorize admission of victim impact evidence, in addition to its "any other matter the court deems relevant to sentence" language. This Court should take the same position and find that until it is statutorily declared "relevant" it will not be admitted in Defendant's case or in any capital case; the Court should leave it to the Texas legislature to craft a clear body of law prescribing the rules for admitting and controlling victim impact/character evidence at capital sentencing. Of course, the legislature may choose not to authorize such evidence, or it may choose to stay with its present choice, which limits victim testimony to the post-sentencing address to the defendant, admitting it as testimony only if it is an impact or effect that can be rationally attributed to the defendant's conduct.

As of now, the State has not "chosen" through its legislative branch, to admit the victim evidence that is typically offered in a capital case. For that reason alone, the trial court would err in admitting it.

Defendant urges the Court not to depend upon the harmless error theory as a reason to admit the evidence over his objection. Any application of that standard is highly inappropriate in these circumstances. Defendant argues that the statute, if it existed, and if it provided authority for the State to introduce victim impact/character evidence would have an entire array of controls that the legislature deemed appropriate. Defendant would have the benefit of those controls and guidelines in every aspect of his case, from voir dire through closing argument. He would certainly be in a better position to evaluate the value of any plea bargain offers. In the best of possibilities, from Defendant's standpoint, the legislature, given the opportunity, might refuse admission of victim evidence altogether, or restrict it in ways that the Court of Criminal Appeals has not done through its opinions.

Request to exclude Victim Impact/Character Evidence Because Not Statutorily Authorized

1.) Defendant moves the Court to exclude Victim Impact/Character evidence in this death penalty proceeding because in Texas (as in Wyoming) the legislature has not, in either the death penalty statute's "empty vessel" terms authorizing the admission of evidence "as to any matter the court deems relevant to sentence" or in the general victim impact/victim's rights statutes, made the determination that victim impact/character evidence is particularly a matter relevant to capital sentencing, so that its admission on the general "relevant to punishment" language, at the trial court's discretion, violates constitutional principles of due process and equal protection, as well as the prohibition against cruel and unusual punishment. U.S. CONST. Amends. 14 and 8; TEX.CONST. Art. I, Secs. 19 and 13.

After due consideration, it is hereby ORDERED, that said Motion is:

_____    **GRANTED, and such evidence shall not be admitted**

_____    **DENIED**

2.) THE ADMISSION OF VICTIM IMPACT/ CHARACTER EVIDENCE IN DEFENDANT'S CASE VIOLATES THE EIGHTH AMENDMENT AND FOURTEENTH AMENDMENT DUE PROCESS BECAUSE:

> THE EVIDENCE IS NOT LOGICALLY RELEVANT TO EITHER PUNISHMENT SPECIAL ISSUE;
> THE EVIDENCE ENCOURAGES JURORS TO ANSWER THE MITIGATION SPECIAL ISSUE FOR IMPROPER PURPOSES;
> THERE ARE INSUFFICIENT PROCEDURAL SAFEGUARDS TO PREVENT, IDENTIFY AND CORRECT THE IMPROPER USE OF THE VICTIM IMPACT/CHARACTER EVIDENCE

Although the Supreme Court in *Payne v. Tennessee, supra*, held that if a State chooses to admit victim evidence at the punishment stage of a capital trial, the Eighth Amendment erects no per se bar, the facts of *Payne* itself establish a constitutional bar, setting limits in addition to the Due Process "not-to-be-offered-to-encourage-decision-based-on-comparative-worth-of-victim" limitation that the Court articulated in the opinion.

The evidence in Defendant's case far exceeds the scope of *Payne's* authorization, and the Court in *Mosley* exceeded those limits itself. Appellant asks this Court to distinguish *Mosley* to the extent that it passed the limits set by *Payne* and to recognize that admission of the victim evidence in Defendant's case does violate not just the Eighth Amendment but also Due Process and Equal Protection principles.

It is a general rule that the language of an opinion must be construed with reference to the facts presented, and the positive authority of the case is coextensive only with such facts. *See, e.g., Jackson (James Lewis) v. State*, 33 S.W.3d 828 (Tex. Crim. App. 2000) in which did not use the *Mosley* opinion as positive authority for the scope of relevancy for all victim impact/character testimony. Because the facts of *Mosley* involved impact testimony that was <u>not</u> known to the defendant at the time he committed the offense, the scope of *Mosley's* authority on the relevancy question was limited to such facts. So, although *Mosley* had pronounced victim related evidence "patently irrelevant" to the future dangerousness special issue, the Court in *Jackson, supra,* noted that the appellant Jackson had killed his wife and two stepdaughters with knowledge, if not actual intent that his conduct would have a particular impact upon the remaining family members (specifically the wife's ex-husband, the father of the girls). The scope of admissibility of victim impact/character evidence in that case, then, was different from the limits announced in *Mosley*, because of its different facts.

Therefore, to determine the scope of *Payne's* real authority, it must be considered in light of its own facts. The Supreme Court did speak of "moral relevancy" in broad terms, but the evidence it found to have moral relevancy was no more than the kind of facts already recognized in Texas and most other states as relevant, to wit: the effects either known to the defendant at the time he committed the crime, intended by him or reasonably foreseeable to him are attributable to him in the logical sense that the jury could reasonably hold him morally blameworthy for the harm. *See, e.g., Brown v. State* (cited in the foregoing argument in which it was held that the existence of a "victim allocution" opportunity under the Texas statute, after the sentence was pronounced, did not prevent the State from offering victim impact testimony as punishment evidence in that non-capital trial so long as that impact was reasonably attributable to the defendant). That holding is consistent with the opinion in *Jackson (James Lewis) v. State,* also cited *supra,* in which the Court suggested that such evidence, of the impact upon the survivors of Jackson's victims, his wife and two stepdaughters, was an impact which Jackson knew of and possibly even intended, so that it might be admissible under the longstanding rule of logical relevancy governing impact evidence at sentencing in a criminal trial. Evidence of that kind, the majority commented, would thus have a relevancy to the continuing threat special issue, apart from any relevancy to the mitigation issue. Defendant does not dispute that logical relevancy <u>may</u> apply to authorize admission of <u>one kind</u> of victim impact/character evidence. He <u>does dispute</u> the authorization of any evidence the State seeks to offer in his case, which he did not know, did

not intend and could not have foreseen, under the "moral relevancy" and "rebuttal of defense mitigation" theory that underlies the Court's *Mosley* opinion.

Defendant asks the Court to acknowledge that insofar as the victim evidence in Defendant's case is argued to be admissible because of <u>moral relevancy</u> and as <u>rebuttal</u>, such a finding is simply wrong.  The evidence has no real relevance to the Texas capital murder issues; it is admitted solely to encourage the very kind of comparison that Due Process and the Eighth Amendment prohibit:  one that allows the decision to turn upon a factor that is arbitrary, random and bears no relation to the defendant's actual, individual blameworthiness in the circumstances of Defendant's case.

*Payne* involved a single victim impact witness who testified about effects of the murder of a mother and her two-year-old daughter on the woman's three-year-old son.  The witness, the boy's grandmother, testified that he cried for his mother and little sister, worried about his sister and could not seem to understand why his mother didn't come home.  *Payne v. Tennessee,* 501 U.S. at 811-815.

## VICTIM IMPACT/CHARACTER TESTIMONY NEEDS SAGEGUARDS

To be consistent with the facts and holding of *Payne*, the admission of victim-related evidence, if it is allowed at all, must be attended by the safeguards present in that case, including limitations on the nature of the evidence, in order to minimize its recognized prejudicial effect and confine its influence to providing information that is legitimately relevant to the Texas special issues.  There are three such safeguards that apply to the nature of the evidence itself,

First, to be consistent with *Payne*, victim impact evidence should be limited to the testimony of a single witness, like the grandmother in *Payne*. The Court of Criminal Appeals has recognized that victim impact evidence can become unduly prejudicial through sheer volume, *e.g., Salazar v. State*, 90 S.W.3d 330 (Tex. Crim. App. 2002) but has not imposed the reasonable limit called for by *Payne's* facts. The one-witness limitation is imposed by judicial decision in New Jersey, *State v. Muhammad*, 678 A.2d 164, 180 (N.J. 1996), and by statute in Illinois. *See People v. Richardson*, 751 N.E.2d 1104, 1106-1107 (Ill. 2001). The New Jersey court observed that absent extraordinary circumstances, one witness should be adequate to fulfill the legitimate purpose of providing the jury with a brief glimpse of the victim's uniqueness and to help the jurors make an <u>informed</u> assessment of the defendant's moral culpability. *State v. Muhammad,* 678 A.2d at 180.

Second, again considering the facts in *Payne*, victim impact testimony should be limited to that which describes the effect of the murder on a family member who was present at the scene during or immediately after the crime, and third, the evidence should be limited to those effects that were intended, known or reasonably apparent to the defendant at the time he committed the crime or were properly introduced to prove the charge at the guilt phase of trial. Again, the facts of *Payne* support such limits on victim impact/character testimony. Payne knew the woman he murdered knew both the children and tried to kill all three in the same vicious rampage. He was surely morally culpable for the continued suffering and confusion of the little boy who survived. Again, the Court of Criminal Appeals has recognized that such evidence has a logical relevancy to the moral question of a defendant's

blameworthiness in a capital case, under the existing rules for admitting victim impact or character evidence. *See, e.g., Ford v. State*, 919 S.W.2d 107 (Tex. Crim. App. 1997), decided before the Court's *Mosley* opinion, in which the Court disagreed about the admissibility of victim evidence at capital sentencing <u>except for</u> the testimony of a witness who was present during the crime and survived to testify.

As Defendant has already argued, these limits are not only consistent with the holding in *Payne*, they are necessary to avoid expanding the aggravating circumstances of the Texas death penalty statute to the point that they become unconstitutionally broad, arbitrary and unreviewable. If this evidence is found to be admissible, under any theory of relevancy, then Art. 37.071 is unconstitutionally broad, and allows the death penalty to be imposed on an arbitrary and capricious manner, based on the random factor of the victim's worth, possibly including the victim's race, rather than upon the particular deathworthiness of the individual defendant and his individual moral responsibility.

The evidence of victim impact and victim character, while it may not be lengthy compared to that in other reported cases, derives its power from its content rather than its volume. In truth, it often illustrates how even a "brief glimpse" can be as devastating and as affecting as voluminous testimony. When the evidence concerning the victim's character and the loss to his family, friends and community is so compelling, there exists a risk that arbitrary and irrelevant (thus impermissible) comparisons will influence the jury's deliberations and their decision. It is wrong to allow "such a decision <u>to turn upon</u> the perception that the victim was a sterling member of the community rather than someone of

questionable character." *Booth v. Maryland*, 482 U.S. 496, 506. The decision in *Payne* did not disavow that bedrock principle of *Booth*; the majority simply thought that the risk of that impermissible result could be controlled by the States. Texas has failed to provide the constitutionally required control.

Whether the comparison is phrased as one between victims or a comparison between the victim and the defendant, the result is the same; the result is a death sentence that is arbitrary and is a violation of Equal Protection.

Other factors than the character of the victim might qualify a crime as a death case, or even recommend it, and the extent of a defendant's criminal record is surely a permissible consideration, but the character of the victim is <u>not</u>. As the Supreme Court cautioned in *Payne*, evidence about the victim's character and the loss to his family and the community, is not <u>generally</u> offered to encourage jurors to base their verdict on their perception that the victim is particularly worthy as compared to other victims who "won't be missed."

Defendant submits that victim evidence in his case <u>inevitably</u> encourages such comparisons and inevitably affects the jury's considerations. "Human nature being what it is," as Chief Justice Rehnquist wrote in *Payne*, Defendant submits that no juror in his case or in any case could fail to compare the value of the victim's life, measured by his own accomplishments and the grief of those he left behind, to the value of other lesser victims, and to allow their feelings, even if unconsciously, to affect their answers to the special issues. Defendant submits that, as the prosecutors seem to recognize, jurors (at least death-qualified jurors) in today's society are probably incapable of even-handedness in situations involving

either extreme in victim impact or victim character evidence.  Because his case represents the risk that the improper use of victim evidence will influence his jury to compare and reject his mitigation evidence, Defendant asks the Court to exclude the victim evidence.

## VICTIM v. DEFENDANT COMPARISONS

The Court of Criminal Appeals commented in its opinion in *Jackson v. State*, 33 S.W.3d 828, 834 (Tex. Crim. App. 2000) that there was no error in allowing the prosecutor to urge the jurors to compare the worth of the victim's life to the worth of the defendant's life, because the Supreme Court in *Payne* "discourages" only the measuring of the value of the victim's life against the lives of other members of society.  Defendant submits that the nature of the risk is the same and the risk itself far greater when the victim is compared to the defendant.  In both instances the risk of arbitrariness is the risk to be avoided; the decision is not to turn upon the comparative worth of the victim, that is, his worth compared to anyone else in society, including the defendant.  In each instance it is the worth of the victim (almost always an arbitrary factor) that determines the penalty, when that should not be the case.

Other courts considering the issue have decided that the victim-versus-defendant comparison is improper. *E.g., State v. Koskovich*, 776 A.2d 144, 182 (N.J. 2001) (citing *State v. Muhammad*, 678 A.2d at 179) (holding generally, "Victim impact testimony may not be used as a general aggravating factor or as a means of weighing the worth of the defendant against the worth of the victim.").  Similarly, the Missouri Supreme Court held that a prosecutor's invitation to the jury to compare the value of the capital defendant's life to the

value of the deceased victim's life (much like the argument in *Jackson, supra*) was improper, that the comparison was not among the wide array of aggravating or mitigating circumstances the jury was permitted to consider. *State v. Storey*, 901 S.W.2d 886, 902 (Mo. 1995)

The federal appellate court in *Moore v. Kemp*, 809 F.2d 702, 748 (11th Cir. 1987) found the kind of comparison between the defendant and the female victim whose father had testified briefly about her achievements and aspirations to be "error of the grossest sort." *Id.* (Johnson, J., concurring and dissenting).

Finally, a more familiar and invidious form of discrimination lurks in the admission of victim impact/character evidence – discrimination based on race.

"Because of the range of discretion entrusted to a jury in a capital sentencing hearing, there is a unique opportunity for racial prejudice to operate but remain undetected." *Turner v. Murray*, 476 U.S. 28, 35, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986) (overruled in part on other grounds). That danger is particularly acute in cross-racial crimes like this one, where the victim is white and the defendant is black.

Neither the race of the victim nor the race of the defendant is a constitutionally permissible factor in capital sentencing. *McCleskey v. Kemp*, 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987) (race of victim); *Zant v. Stephens*, 462 U.S. 862, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983) (race of defendant). Nevertheless, the sad reality is that, "Prosecutors and jurors tend to place a premium on the value of white lives and a discount

on the value of black ones." Garvey, *ARTICLE: THE EMOTIONAL ECONOMY OF CAPITAL SENTENCING*, (2000) 75 N.Y.U. L. Rev. 26, 44, fn. omitted.

Evidence which emphasizes the victim's virtues exacerbates this disparity. In *Moore v. Kemp, supra*, neither the victim character evidence nor the prosecutor's argument mentioned race expressly. (*Id.* 809 F.2d at 747-748 and n.12) Even so, Judge Johnson readily concluded that

> "It could not but help inflame the prejudices and emotions of the jury to be confronted with a father's testimony of the virtuous life of his white daughter violated and then mercilessly snuffed out by this black defendant."

*Id.* at 749 (Johnson, J., concurring and dissenting)

Overt prejudice is not the only danger. There are many subtle ways in which conscious or unconscious racism can color the jurors' perception of the defendant, their evaluation of his defenses, and their assessment of the seriousness of his crime. *See Turner v. Murray,* 476 U.S. at 35. Evidence which focuses the jury's attention on the character of the victim gives these improper influences free rein, causing majority jurors to view the crime as especially serious because they empathize and identify with the white victim. *See,* Berger, Pain and Suffering – A Personal Reflection and a Victim-Centered Critique (1992) 10 Fla. St. U. L.Rev. 21, 25, 48:

> "A death sentence is surely unconstitutional "if it discriminates against [the defendant] by reason of his race ... or if it is imposed under a procedure that gives room for the play of such prejudices." *Furman v. Georgia*, 408 U.S. 248, 242, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972) (Douglas, J., concurring) Therefore, while it may be impossible to eliminate the pernicious effect of race from capital sentencing altogether, the courts should engage "in 'unceasing efforts' to eradicate racial prejudice from our criminal justice system" and

disapprove any procedures which create an <u>unnecessary risk</u> that racial prejudice will come into play. *Batson v. Kentucky*, 476 U.S. 79, 99, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); *McCleskey v. Kemp*, 481 U.S. at 208, 309, 314."

FURTHER REQUESTS TO EXCLUDE
VICTIM IMPACT/CHARACTER EVIDENCE

<u>Request to exclude Victim Impact/Character Evidence as Irrelevant,
Violative of Fourteenth Amendment Due Process</u>

3.) Defendant moves the Court to exclude Victim Impact/Character evidence in this death penalty proceeding, because such evidence is logically irrelevant to both the continuing threat special issue and the mitigation special issue, and because it is irrelevant under the facts and holding of *Payne v. Tennessee*, in violation of Defendant's Fourteenth Amendment right to due process of law and his state constitutional right to due course of law. U.S. CONST. Amend. 14; TEX.CONST. Art. I, Sec. 19.

**After due consideration, it is hereby ORDERED, that said Motion is:**

    _____         **GRANTED, and such evidence shall not be admitted**

    _____         **DENIED**

<u>Request to exclude Victim Impact/Character Evidence, Even if
Relevant, as Primarily Encouraging Decision Based on Improper
Comparative Worth of Victim,  Violative of Fourteenth Amendment
Due Process and Texas Rules of Evidence.</u>

4.) Defendant moves the Court to exclude Victim Impact/Character evidence in this death penalty proceeding, even if the Court finds such evidence is relevant to the special issues, because it has the inevitable effect, under the Texas death penalty scheme, of encouraging the kind of improper comparison of the victim's worth that the Supreme Court held in *Payne v. Tennessee* would constitute a denial of due process, in violation of Defendant's Fourteenth Amendment right to due process of law and his state constitutional right to due course of law. U.S. CONST. Amend. 14; TEX.CONST. Art. I, Sec. 19. That improper effect of the victim evidence constitutes "unfair prejudice" sufficient to warrant exclusion under the Texas Rules of Evidence. Tex. R. Evid. Rule 403.

After due consideration, it is hereby ORDERED, that said Motion is:

_____        GRANTED, and such evidence shall not be admitted

_____        DENIED

Request to exclude Victim Impact/Character Evidence – Violative of
Eighth Amendment

5.)   Defendant moves the Court to exclude Victim Impact/Character evidence in this
death penalty proceeding, because under the particular Texas special issues, and
the Texas "non-weighing" death penalty scheme, such evidence creates an
inevitable risk of encouraging a death verdict based upon the improper basis of
the worth of the victim and the degree of loss suffered by his survivors, which
factor is wholly arbitrary and unrelated to the individualized assessment of the
Defendant required by the Eighth Amendment and the parallel Texas
constitutional protection. U.S. CONST. Amend. 8; TEX.CONST. Art. I, Sec. 13.

After due consideration, it is hereby ORDERED, that said Motion is:

_____        GRANTED, and such evidence shall not be admitted

_____        DENIED

REQUESTED INSTRUCTIONS/ MOTION IN LIMINE, RELATED TO
CLAIMS IN THIS MOTION

Request For Limiting Instructions on Use of Victim Impact/Character Evidence –
Limiting to Evidence That Has Logical Relevance to Issues

5.)   Defendant requests that the Court instruct the jury at the close of punishment that
they may not use the Victim Impact/Character evidence to support a yes answer to
continuing threat, or as aggravating evidence to weigh against mitigating evidence
unless, and only to the extent that, the evidence has a logical relevance to those issues,
rather than a "moral relevance", that is, relevance based on a showing that Defendant
knew of and/or intended to cause the specific impact in evidence, or that he was aware
of the special character of the deceased victim when he caused the death. Defendant
bases this request on the constitutional authority listed in the first paragraph of this

Motion, and the above Supreme Court decisions. U.S. CONST. Amends. 6, 8 and 14, TEX.CONST. Secs. 10, 13 and 19.

**After due consideration, it is hereby ORDERED, that said Motion is:**

_____    **GRANTED, and such evidence shall not be admitted**

_____    **DENIED**

6.)   Defendant further requests a limiting instruction telling the jurors that they are not to use the Victim Impact/Character evidence to evaluate or compare the worth of the victim to the worth of other members of society or other victims, or to the worth of Defendant, as a basis for answering the special issues. Defendant bases this request on the constitutional authority listed in the first paragraph of this Motion, and upon the above-cited Supreme Court decisions.   U.S. CONST. Amends. 6, 8 and 14, TEX.CONST. Secs. 10, 13 and 19.

**After due consideration, it is hereby ORDERED, that said Request is:**

_____    **GRANTED, and the limiting instructions are to be given at time of testimony and in the final jury charge.**

_____    **DENIED**

Motion in Limine to Prevent Improper Prosecutorial Argument

7.)   Defendant makes this Motion in Limine, asking the Court to instruct the prosecutors not to make any argument that tells the jurors or suggests to them that they are allowed to use Victim Impact/Character evidence <u>itself</u> as aggravating evidence on continuing threat, tending to prove Defendant would be a continuing threat, when there is no evidence that he knew of or intended the particular impact or suffering or harm, <u>or</u> that they are allowed to use that evidence as non-statutory aggravating evidence against Defendant's mitigation evidence to conclude that because he caused such harm, impact or suffering, or that because he killed a person of particular character, his mitigating evidence is insufficient to warrant a life sentence.

Defendant bases this request on the constitutional authority in the first paragraph of this Motion, and upon the above Supreme Court decisions. U.S. CONST. Amends. 6, 8 and 14; TEX.CONST. Secs. 10, 13 and 19

**After due consideration, it is hereby ORDERED, that said Request is:**

_____   **GRANTED, and the prosecutors are instructed not to make any argument or suggestion like that set out in Defendant's Motion in Limine, and to approach the bench and secure the Court's ruling before making any argument that might violate the Court's instruction.**

_____   **DENIED**

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendant prays that upon hearing, this Court sustain his Motion and exclude Victim impact/character evidence at punishment as reflected in the rulings made in the body of the Motion.

If the Court does not exclude such evidence, Defendant prays that the Court allow him to conduct voir dire as requested, grant him the instructions requested and grant his motions in limine as requested to prevent improper argument, and record its rulings on the forms provided in the body of this Motion.

Respectfully submitted,

_____

Paul Brauchle
State Bar No. 02918000
4131 N. Central Expressway
Suite 680
Dallas, Texas 75204-2102
(214) 742-2332

000624

William E. "Karo" Johnson
State Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955

COUNSEL FOR DEFENDANT

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _25th_ day of _April_, 2008.

Paul Brauchle

### ORDER

On this _____ day of _____, 2008, came on to be heard the Defendant's Motion to Exclude Victim Impact/Character Evidence in Absence of Specific Legislative Authority and Procedures, and to Exclude Such Evidence as Irrelevant to Texas Punishment Special Issues and Violative of the Eighth Amendment, and after due consideration, the Court is of the opinion, and it is hereby ORDERED, that the Defendant's requests are GRANTED or DENIED individually as reflected in the Motion.

000625

SIGNED this the _____ day of _____, 2008.

_____
JUDGE PRESIDING

000826

CAUSE NO F07-50318-M

FILED
2008 JUN 17 AM 8:34
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## MOTION TO EXCLUDE MISDEMEANOR CONVICTION
## FOR ESCAPE AS EVIDENCE OF FUTURE DANGEROUSNESS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, WESLEY LYNN RUIZ, by and through his attorneys of record and

pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the UNITED STATES

CONSTITUTION; Article 1, sections 3, 10, 13, 15 and 19 of the TEXAS CONSTITUTION; and Tex.

C. Crim. Proc. Articles 1.05, 1.06, 1.09, and 37.0711 and Rules 403, 404(b) of the Texas Rules

of Evidence, makes this his Motion to preclude his conviction for misdemeanor escape, should a

punishment phase of the trial be necessary. In support thereof, Mr. Ruiz would show the Court

the following:

### I.

### FACTUAL STATEMENT

Mr. Ruiz has been indicted for capital murder, and the State is seeking the death penalty.

Because this is a capital case, the Eighth Amendment to the UNITED STATES CONSTITUTION requires

a greater degree of accuracy and fact finding than would be true in a non-capital case. *Gilmore v.*

*Taylor*, 508 U.S. 333 (1993); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

The State has given notice that it intends to offer evidence of Mr. Ruiz' conviction in Cause

No. M97-19802-H, for misdemeanor escape, alleged to have occurred on September 12, 1997, in

MOTION TO EXCLUDE MISDEMEANOR ESCAPE - RUIZ        PAGE 1

000627

Dallas County, Texas. Mr. Ruiz entered a plea of guilty and was sentenced to serve 90 days in the Dallas County jail on February 17, 1998.

## II.

## MOTION AND ARGUMENT

Subsection 2(a)(1) of Article 37.071 of the TEXAS CODE OF CRIMINAL PROCEDURE sets out evidence that may be offered during the punishment phase of a capital trial, including "any matter that the court deems relevant to sentence, including evidence of the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty." This section goes on to provide: "This subdivision shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Texas."

As noted above, the State is alleging that Mr. Ruiz was involved in an escape. Any suggestion that Mr. Ruiz was involved in an escape during his incarceration in Dallas County jail should be precluded. Mr. Ruiz has never been involved in an escape from incarceration. Any suggestion to the contrary would be misleading, irrelevant and highly prejudicial.

## A.

## THIS COURT HAS A "GATEKEEPING" OBLIGATION WITH RESPECT TO EXTRANEOUS OFFENSES

This Court has an obligation to scrutinize the admissibility of extraneous acts. Specifically, the Court of Criminal Appeals has held:

> The trial judge performs a limited gatekeeping function
> with respect to extraneous offenses: before allowing the
> admission of such offenses into evidence (and hence
> their placement before the jury), the trial judge must determine that
> there is a clear proof that the offenses were committed and that the

MOTION TO EXCLUDE MISDEMEANOR ESCAPE - RUIZ        PAGE 2

000628

defendant was the perpetrator.

*Kutzner v. State*, 994 S.W. 2d 180, 189 (Tex. Crim. App. 1999).

This Court must also be satisfied that the evidence is relevant and that it has not been obtained in violation of any Constitutional right protecting Mr. Ruiz. *See* Tex.C.CRim.P. Art. 37.0711.

For any offenses that the court deems to be relevant and otherwise admissible, this Court should make a finding as to whether or not the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. In Sum, the admission of extraneous acts during a capital trial must be closely scrutinized. *Davis v. State*, 597 S.W. 2d 358, 361 (Tex. Crim. App. 1980).

**B.**
**MORE THAN TEN YEARS HAVE ELAPSED SINCE THE ESCAPE**
**CONVICTION**

Should this Court find that evidence of the misdemeanor escape conviction is relevant to the question of whether Mr. Ruiz poses a future danger and should, therefore, be executed, the evidence should nonetheless be excluded based on the fact that more than ten years have elapsed since the conviction.

Any conviction that is more than 10 years old is stale, remote and is precluded for impeachment purposes. Tex. R. Evid. 609.

Nor should there be a less stringent rule for punishment phase purposes as indeed death is different and there is a heightened need for accuracy in the sentencing process. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

If more than 10 years has elapsed since the alleged commission of the offense, evidence as to such crime should be suppressed or precluded for all purposes.

MOTION TO EXCLUDE MISDEMEANOR ESCAPE - RUIZ          PAGE 3

Because death is different, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." In addition, the Supreme Court has invalidated procedures which have "tended to diminish the reliability of the [capital] sentencing determination" on due process grounds. *Beck v. Alabama,* 447 U.S. 625, 638 (1980).

### C.

### IN THE ALTERNATIVE TO EXCLUDING EVIDENCE OF THE ATTEMPTED ESCAPE, THIS COURT SHOULD HOLD A HEARING TO DETERMINE ADMISSIBILITY OF THE EVIDENCE

As discussed above, this Court has a "gatekeeping" obligation to ensure that evidence of prior convictions is relevant. Should the Court consider allowing evidence of the misdemeanor conviction, either during the merits phase or punishment phase of this trial, Mr. Ruiz requests the Court, in performing its "gatekeeping" function with respect to extraneous offenses, to hold a hearing, in advance of trial, to determine whether or not the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.

In submitting and arguing this motion, Mr. Ruiz does not waive any other objections to the admissibility of prior convictions or unadjudicated offenses during the trial to determine whether Mr. Ruiz lives or dies.

WHEREFORE, PREMISES CONSIDERED, Mr. Ruiz prays that this Court enter an order:

1. Finding that the misdemeanor conviction for "escape" is misleading and irrelevant and therefore its admission is denied;

2. Granting such other and further relief to which Mr. Ruiz is entitled in law or in equity.

MOTION TO EXCLUDE MISDEMEANOR ESCAPE - RUIZ        PAGE 4

Respectfully submitted,

PAUL BRAUCHLE
Texas Bar No. 02918000
4131 N. Central Expy., Suite 680
Dallas, Texas 75204-2102
(214) 521-2670

WILLIAM E. "KARO" JOHNSON
Texas Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955
(214) 528-6601 - Telefax

*Counsel to Wesley Lynn Ruiz*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing motion was served upon Kevin Brooks, Assistant District Attorney, by United States mail or by hand delivery on the 25th day of April, 2008.

PAUL BRAUCHLE or
WILLIAM E. "KARO" JOHNSON

MOTION TO EXCLUDE MISDEMEANOR ESCAPE - RUIZ          PAGE 5

000631

NO.: F07-50318

| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

### DISCOVERY

During the punishment phase the State intends to offer the following statements made by the defendant:

1.  06/07/08. "Were they nice to you when you went back to your cell? They don't want nothing." 2:13

2.  06/03/08. "You know...what I don't really feel bad I was a ho ass nigga anyway" 7:27

    "I ain't letting this shit get to me but I'm telling you what's gonna happen. It don't faze me a bit." 8:39

3.  05/15/08. "Hey, man. Do you know Manny Fresh?" "Yea, I know that ho ass bitch." "Did you rob that fool?" "Hell yeah I did." 6:51

4.  05/30/08. "Did it look bad on the news when I was chucking up the deuce?" 4:01

    "Other than them catching me throwing up the deuce to y'all, I guess it's going all right." 5:46

5.  05/06/08. "You know what it has in the newspaper today? Them laws that I got into it with, they going to Washington D.C. on May 12 to get awarded for heroism...trying to kill me. They should be charged with Attempted Murder...knowing they a bunch of dick suckers." 7:29

6.  05/08/08. "You ain't knocking Erica out...you ever knocked her out?" "Yeah." 12:19

7.  06/06/08. "What they say on the news...fuck them and their sentencing phase." 3:50

    "That's, that ho ass Judge." 10:54

8.  05/07/08. "They gonna transfer me to Washington so I can get my award." 1:07

"The cops are gonna go to Washington and get honored as hero's on the 12[th] of this month.  The cops are gonna look like heroes at my trial for trying to kill me." 11:57

9.  06/05/08.  "Fuck them people...fuck them people.  That jury's full of shit.  Fuck them too."  8:38

"Yea, I'm gonna get on the stand.  I'm a tell em I ain't here to beg for my life...I don't want to live in this bitch ass world if I can't defend myself...I ain't begging for my life."  8:48

"I don't give a fuck, both of them about the same... bitch, you think I wanna spend rest of my life in prison without parole?  Fuck that."  11:31.

_Kevin M. Brooks_
Assistant District Attorney
Dallas County, Texas
Bar Card No.:  03070735

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion was (personally served), (mailed), (faxed) to Paul Brauchle the Defendant's attorney of record at the following address/fax number: 214-739-3234 on June 27, 2008.

_Kevin M. Brooks_
Assistant District Attorney

CAUSE NO F07-50318-M

THE STATE OF TEXAS

VS.

WESLEY LYNN RUIZ

IN THE 194TH JUDICIAL

DISTRICT COURT OF

DALLAS COUNTY, TEXAS

## MOTION IN LIMINE
## TO PRECLUDE TESTIMONY ABOUT VIOLENT ACTS BY OTHERS

COMES NOW WESLEY LYNN RUIZ, the Defendant, by counsel, and pursuant to Tex.R.Evid. 104 and the 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution, and Articles 1.05, 1.06 and 1.09, Tex.C.Crim.Proc. and moves the Court to preclude the testimony of Royce Smithy and in support hereof would show the Court the following:

I.

Movant reasonably anticipates that the State will offer evidence concerning the "potential" for violence in the Texas Department of Criminal Justice (TDCJ), probably through the testimony of Royce Smithy. This testimony will include isolated incidences of violence in maximum security facilities. These acts were committed by others in the past, under often unknown security rules, measures and regulations, and as such have no relevancy to Mr. Ruiz.

II.

These alleged incidents of violence will have naturally occurred prior to Mr. Ruiz ever entering TDCJ. They may be isolated and never occur again if TDCJ successfully implements policies of intervention and prevention that are designed to prevent them

000634

occurring again. This whole analysis reveals how simplistic and speculative that such evidence can make the sentencing process. The speculation that is inherent in the anticipated testimony denies to the Court, and Mr. Ruiz, the heightened reliability in the sentencing requirement that is mandated by the 8th and 14th Amendments to the United States Constitution.

III.

The jury's consideration of such evidence will violate the Constitutional requirement that sentencing of a defendant in a capital case be "individualized" as to that defendant. *Jurek v. Texas*, 428 U.S. 262 (1976) and *Woodson v. North Carolina*, 428 U.S. 280, 303-305 (1976).

IV.

As the Court of Criminal Appeals held in a case involving the admission of a lengthy video tape that dealt only with a person being housed in administrative segregation, "Texas Rule of Evidence 401 defines relevant evidence as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Further, except as otherwise provided by statute or rule, a jury is entitled to have before it all possible relevant information about the individual defendant whose fate it must determine. *Matson v. State*, 819 S.W.2d 839, 850 (Tex.Crim.App. 1991). The video tape was not offered as information about the individual defendant or about how the individual defendant might be handled. Rather, as the judge noted, it portrayed only one aspect of an entire system and offered only

general information about some procedures used in that system. That others have been controlled in the prison system or that certain procedures are in place without specifically connecting those procedures to appellant was not evidence of consequence to the jury's factual determination of whether *appellant* would pose a continuing threat to society. (Emphasis by the Court). *Sells v. State,* 121 S.W.3d 748 (Tex.Crim.App. 2003).

The same rationale can be applied to the testimony by the State's witness that offers to "scare" the jurors by providing anecdotal evidence about the "potential" or "opportunity" for violence that is entirely unrelated to Mr. Ruiz and which all occurred prior to the witness' testimony. It cannot be imagined that the Court of Criminal Appeals would have one rule that would govern admission of evidence offered by the defense and a contrary rule that would govern evidence that is offered by the State.

WHEREFORE PREMISES CONSIDERED, Movant prays that upon hearing hereof, this Court order that during the penalty phase of Mr. Ruiz' trial, the State be precluded from offering on direct exam, or eliciting on cross-exam, any evidence of prior acts of violence in TDCJ that have been committed by offenders other than Mr. Ruiz and any other evidence that is not otherwise individualized to Mr. Ruiz.

Respectfully submitted,

PAUL BRAUCHLE
Texas Bar No. 02918000
4131 N. Central Expy., Suite 680
Dallas, Texas 75204-2102
(214) 521-2670

000636

WILLIAM E. "KARO" JOHNSON
Texas Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955
(214) 528-6601 - Telefax

DOUGLAS H. PARKS
State Bar No. 15520000

*Counsel to Wesley Lynn Ruiz*

### CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing motion was served upon Kevin Brooks, Assistant District Attorney, by United States mail or by hand delivery on the 20th day of July, 2008.


_____
PAUL BRAUCHLE or
WILLIAM E. "KARO" JOHNSON

000637

CAUSE NO. F07-50318-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | | IN THE 194TH JUDICIAL |
| VS. | | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | | DALLAS COUNTY, TEXAS |

## MOTION TO SUPPRESS TELEPHONE RECORDINGS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW WESLEY LYNN RUIZ, Defendant, and moves the Court to Suppress the alleged telephone recordings of Defendant, as more specifically set out hereunder, and in support thereof would respectfully show the following:

I.

On July 1, 2008, Mr. Ruiz was furnished, by telefax, a list of alleged statements made by him and recorded by the Dallas County Sheriff. A copy of that list is attached hereto as Exhibit A.

II.

The communications were unlawfully intercepted by the Sheriff in violation of §16.02 of the Texas Penal Code and are inadmissible under the provisions of Art. 18.20(2), TEX. CODE CRIM. PROC.

III.

The alleged statements are not relevant evidence, as defined by Rule 401, TEX. R. EVID., in the jury's determination of the future dangerousness special issue or the mitigation issue.

Mtn Heard 7/8/08                    Mtn Denied

July 8, 2008

000638

IV.

To the extent that this Honorable Court may find the alleged statements to be relevant to either of the special issues, the evidence should be excluded under the provisions of Rule 403, TEX. R. EVID., because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by undue delay or needless presentation of cumulative evidence.

WHEREFORE, PREMISES CONSIDERED, Mr. Ruiz prays the Court suppress the evidence contained in Exhibit A and for such other and further relief to which he may be entitled.

Respectfully submitted,

DOUGLAS H. PARKS
State Bar No. 15520000
321 Calm Water Lane
Holly Lake Ranch, TX 75765
(214) 521-2670
(903) 769-3465 - Telefax

*Counsel to Wesley Ruiz*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Motion to Suppress Telephone Recordings was served upon Kevin Brooks, Assistant District Attorney, Dallas County, Texas, by hand delivery, on the 7th day of July, 2008.

DOUGLAS H. PARKS

NO.:  F07-50318

| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## DISCOVERY

During the punishment phase the State intends to offer the following statements made by the defendant:

1.  06/07/08.  "Were they nice to you when you went back to your cell?"  "They don't want nothing."  2:13

2.  06/03/08.  "You know...what I don't really feel bad I was a ho ass nigga anyway."  7:27

    "I ain't letting this shit get to me but I'm telling you what's gonna happen. It don't faze me a bit."  8:39

3.  05/15/08.  "Hey, man. Do you know Manny Fresh?"  "Yea, I know that ho ass bitch."  "Did you rob that fool?"  "Hell yeah I did."  6:51

4.  05/30/08.  "Did it look bad on the news when I was chucking up the deuce?"  4:01

    "Other than them catching me throwing up the deuce to y'all, I guess it's going all right."  5:46

5.  05/06/08.  "You know what it has in the newspaper today? Them laws that I got into it with, they going to Washington D.C. on May 12 to get awarded for heroism...trying to kill me.  They should be charged with Attempted Murder...knowing they a bunch of dick suckers."  7:29

6.  05/08/08.  "You ain't knocking Erica out...you ever knocked her out?"  "Yeah."  12:19

7.  06/06/08.  "What they say on the news...fuck them and their sentencing phase."  3:50

    "That's, that ho ass Judge."  10:54

8.  05/07/08.  "They gonna transfer me to Washington so I can get my award."  1:07

"A"

"The cops are gonna go to Washington and get honored as hero's on the 12th of this month. The cops are gonna look like heroes at my trial for trying to kill me." 11:57

9.      06/05/08. "Fuck them people...fuck them people. That jury's full of shit. Fuck them too." 8:38

"Yea, I'm gonna get on the stand. I'm a tell em I ain't here to beg for my life...I don't want to live in this bitch ass world if I can't defend myself...I ain't begging for my life." 8:48

"I don't give a fuck, both of them about the same... bitch, you think I wanna spend rest of my life in prison without parole? Fuck that." 11:31.

Kevin M. Brooks
Assistant District Attorney
Dallas County, Texas
Bar Card No.: 03070735

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion was (personally served), (mailed), (faxed) to _Paul Brauchle_ the Defendant's attorney of record at the following address/fax number: _214-739-3234_ on _June 27_, 2008.

Kevin M. Brooks
Assistant District Attorney

CAUSE NO. F07-50318-M **FILED**

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | 2008 JUL 10  PM 3: 26 IN THE 194TH JUDICIAL |
| | § | GARY FITZSIMMONS |
| **VS.** | § | DISTRICT COURT OF |
| | § | DEPUTY |
| **WESLEY LYNN RUIZ** | § | DALLAS COUNTY, TEXAS |

*Defendant's Proposed* **CHARGE OF THE COURT**

Members of the Jury:

By your verdict returned in this case you have found Wesley Lynn Ruiz guilty of the offense of capital murder, which was alleged to have been committed on or about the 23rd day of March, 2007 in Dallas County, Texas. In order for each juror to assess the proper punishment, it is necessary now for each of you to consider, from all the evidence in the case, the answers to certain questions, called "Special Issues," contained in this charge. The Court instructs you in considering these "Special Issues" as follows:

The punishment options for the offense of capital murder of which you have found the defendant guilty is confinement in the Texas Department of Criminal Justice, Institutional Division, for life or death. In considering the questions, or special issues, submitted to you, each of you shall consider evidence and circumstances offered in the punishment phase of the trial that relates to the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty in addition to any other circumstance that any of you think justifies a sentence of life.

You may consider as a mitigating circumstance, any personal moral judgment you may have to grant mercy to Wesley Lynn Ruiz._____.

000642

The State must prove Special Issue No. 1 submitted to you beyond a reasonable doubt, and If you are able to agree on an answer to Special Issue No. 1 you shall return a Special Verdict of "NO" or "YES" on Special Issue No. 1.

In deliberating on Special Issue No. 1, you shall consider all the evidence admitted at the  punishment stage of the trial that you find to be relevant to Special Issue No. 1.

You may not answer Special Issue No. 1 "YES" unless you agree unanimously. None of you have to agree on why you vote "NO" on Special Issue No. 1.  You are further instructed that you are not to be swayed by mere sentiment, conjecture, or sympathy for the deceased or family of the deceased, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 1.

If you are unable to agree on an answer to this Special Issue No. 1, you are to immediately inform the court of your inability to agree.  You are instructed that if you answer "YES" answer to Special Issue No. 1, then, and only then, are you to consider Special Issue No. 2.

You are instructed that in considering special Issue No. 2, you may answer the issue "YES" or "NO" or notify the court if you are unable to agree.

You may not answer Special issue No. 2 "NO" unless you agree unanimously.

You do not have to agree on what circumstance justifies a sentence of life in prison when considering the mitigation issue, Special Issue No. 2.

In considering Special Issue No. 2 you shall consider mitigating evidence to be any circumstance that would justify a sentence of life.

You are again instructed that you are not to be swayed by mere sentiment, conjecture, or sympathy for the deceased or family of the deceased, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 2.

You are instructed that the defendant may testify in his own behalf if he chooses to do so, but if he elects not to do so, that fact cannot be taken by you as a circumstance against him nor prejudice him in any way. The defendant has elected not to testify in this punishment phase of trial, and you are instructed that you cannot, and must not, refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever.

During your deliberations upon the Special Issue, No.1 you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

In considering your answers to the "Special Issues" submitted, it will not be proper for you to decide by any method other than a full, fair and free exchange of the opinion of each individual juror. The opinion of each juror is to be respected. No juror shall bully, harass or intimidate another for any reason. Should any juror feel that he or she is being bullied or intimidated, he or she is to inform the court by passing a note to the presiding

000644

juror who shall deliver such note to the bailiff who will immediately deliver the note(s) to the Court. After this charge is read aloud you shall not be permitted to talk with anyone who is not a member of your jury. After argument of counsel, you will retire and consider your answers to the "Special Issues" submitted to you. It is the duty of your Foreman to preside in the jury room and vote with you when considering the "Special Issues" submitted.

You are the exclusive judges of the facts proved and the credibility of the witnesses and the weight to be given to their testimony, but you are bound to receive the law which has been given to you by this Court and you are bound by that law.

## SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Wesley Lynn Ruiz, would commit criminal acts of violence that would constitute a continuing threat to society?

## ANSWER

We, the jury, unanimously find and determine beyond a reasonable doubt that there is a probability that Wesley Lynn Ruiz would commit criminal acts of violence that would constitute a continuing threat to society and therefore we each individually answer "YES" to this special issue.

_____

Foreman of the Jury

OR

We, the jury, because we are unable to agree as to the probability that Wesley Lynn Ruiz, would commit criminal acts of violence that would constitute a continuing threat to society, determine that the answer to this Special Issue is "NO."

_____
Foreman of the Jury

If the jury has answered Special Issue No. 1 "YES", then and only then, shall the jury consider Special Issue No. 2.

In considering a response to the next Special Issue, you are advised that a mitigating circumstance is anything that justifies a life sentence. Jurors do not have to agree on what each may find to be a mitigating circumstance. In considering this issue, you are instructed that you are to consider all the evidence in determining whether a mitigating circumstance or circumstances exist. Each juror is to decide how much weight is to be given to each circumstance, but no juror can fail to consider each circumstance by giving it no weight.

## SPECIAL ISSUE NO. 2

Are each of you convinced beyond a reasonable doubt that there is no mitigating circumstance that would justify a sentence of life for Wesley Lynn Ruiz?

### RESPONSE

We, the jury, because we find at least one mitigating circumstance that justifies a sentence of life without parole for Wesley Lynn Ruiz, answer this Special Issue "YES"

_____
Foreman of the Jury

OR

### RESPONSE

We, the jury, unanimously find that there is no circumstance that would justify a sentence of life without parole for Wesley Lynn Ruiz and therefore, the answer to this Special Issue is "NO"

_____
Foreman of the Jury

000647

CAUSE NO. F07-50318-M

| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## MOTION FOR INSTRUCTED VERDICT AT PUNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, by and through Defendant's Attorney of Record, who makes and files the above captioned motion, at the conclusion of all the evidence in the punishment phase of the case, and after the State and the Defendant have rested and closed, and before the charge of the court has been read to the jury at punishment, and would show the court as follows:

1.    The Defendant, convicted of capital murder, makes and files this motion at the conclusion of all the evidence in the punishment phase of the case.

2.    The state seeks to impose death by lethal injection as a punishment.

3.    The Defendant moves the court to instruct the jury to return a life verdict on the grounds set forth in the following paragraphs.

4.    The evidence is insufficient to establish the elements of the special issue inquiring about "**future dangerousness**" beyond a reasonable doubt. (Special Issue No. 1)

5.  The evidence is insufficient to establish the element of "probability" in the first special issue inquiring about "future dangerousness" beyond a reasonable doubt, as that term has been defined by the Court of Criminal Appeals, to wit: **"more likely than not"**.

6.  The evidence is insufficient to establish the element of "probability" in the first special issue inquiring about "future dangerousness" beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty in violation of Eighth Amendment of the Constitution of the United States of America. See *Furman v. Georgia*, 408 U.S. 238 (1972).

7.  The evidence is insufficient to establish a **95%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

8.  The evidence is insufficient to establish a **90%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

9.  The evidence is insufficient to establish a **85%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing

threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

10. The evidence is insufficient to establish a **80%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

11. The evidence is insufficient to establish a **75%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

12. The evidence is insufficient to establish a **70%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

13. The evidence is insufficient to establish a **65%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

14. The evidence is insufficient to establish a **60%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing

threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

15. The evidence is insufficient to establish a **55%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

16. The evidence is insufficient to establish a **50%** "probability" that the defendant would commit criminal acts of violence that would constitute a continuing threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

17. The evidence is insufficient to establish that the defendant would commit **serious** criminal acts of violence, **[not just property damage, but causing serious bodily injury or death to another; not reckless or negligent criminal activity]** that would constitute a continuing threat to society beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

18. The evidence is insufficient to establish that the defendant would commit criminal acts of violence that would constitute a threat to society **over a substantial period of time,** beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

19.   The evidence is insufficient to establish that the defendant would commit criminal acts of violence that would constitute a **threat to prison society**, beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

20.   The evidence is insufficient to establish that the defendant would commit criminal acts of violence that would constitute a **threat to prison society**, [even taking into account the usual methods of suppressing violence available to prison personnel], beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

21.   The evidence is insufficient to establish that the defendant would commit criminal acts of violence that would constitute a **threat to free society**, beyond a reasonable doubt, so as to reserve death for the worst of the worst and avoid the arbitrary infliction of death as a penalty.

22.   The evidence is insufficient to establish that a life verdict is **not warranted** by reason of the mitigating circumstances shown in the evidence.

23.   The evidence is insufficient to **exclude all doubt** of the death worthiness of the defendant and allows for the arbitrary infliction of death as a penalty.

24.   The evidence is insufficient to **exclude all doubt** that the elements of the first special issue have been established, and allows for the arbitrary infliction of death as a penalty.

25.   Defendant further urges this motion pursuant to the Fifth, Sixth, Eighth, and

Fourteenth Amendments to the United States Constitution, and Article 1,

Sections 10, 13, & 19 of the Texas Constitution.

WHEREFORE, PREMISES CONSIDERED, Defendant moves the

Court grant this Motion in all things, and instruct the jury to complete the

verdict form in such a way as to require a life verdict in this case.

Respectfully submitted,


Paul Brauchle
State Bar No. 02918000
4131 N. Central Expressway
Suite 680
Dallas, Texas 75204-2102
(214) 742-2332


William E. "Karo" Johnson
State Bar No. 10804500
3300 Oak Lawn, Suite 600
Dallas, Texas 75219
(214) 824-9955


Counsel for Mr. Ruiz

CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was

delivered to the office of the District Attorney, Dallas, Texas, on this the _15th_ day of

_April_, 2008.

Paul Brauchle

000654

CAUSE NO. F07-50318-M

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## O R D E R

BE IT REMEMBERED, that on the __10__ day of __July__, 2008, came on to be considered the above and foregoing Motion at the conclusion of all the evidence in the case and after the State and the Defendant have rested and closed, and before the charge of the court has been read to the jury at punishment. After consideration of the same, it is the opinion of the Court that Defendant's Motion be and the same is hereby:

( )   GRANTED, and the jury is ordered to complete the verdict form in such a way as to return a life verdict.

(x)   DENIED as to all relief not expressly granted above, to which ruling the Defendant excepts under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 10, 13, & 19 of the Texas Constitution.


_____
JUDGE PRESIDING

000655

FILED •

194TH JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

2008 JUL 11 AM 11: 15

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | |
| VS | * | CAUSE NO. F07-50318-M |
| WESLEY LYNN RUIZ | * | |

## CHARGE OF THE COURT FOR THE PUNISHMENT PHASE

LADIES AND GENTLEMEN OF THE JURY:

By your verdict in this case you have found the defendant, Wesley Lynn Ruiz, guilty of the offense of capital murder, alleged to have been committed on or about March 23rd, 2007, in Dallas County, Texas. It is now your duty to determine, from all the evidence in the case, answers to certain questions called special issues.

You are instructed that the punishment for the offense of capital murder is either confinement in the Institutional Division of the Texas Department of Criminal Justice for life without parole or death.

Two special issues, numbered one and two, are included in this charge. You are instructed to answer these two special issues either "Yes" or "No" in accordance with the instructions given in this charge. The special issues are as follows:

Punishment Charge - 1

000656

Special Issue No. 1: Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Wesley Lynn Ruiz, would commit criminal acts of violence that would constitute a continuing threat to society?

Special Issue No. 2: Do you find, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, Wesley Lynn Ruiz, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed?

## INSTRUCTIONS REGARDING SPECIAL ISSUE NO. 1

In deliberating on your answer to Special Issue No. 1, you are instructed that the State has the burden of proving beyond a reasonable doubt that Special Issue No. 1 should be answered "Yes."

If you do not find and believe from the evidence beyond a reasonable doubt that the answer to Special Issue No. 1 should be "Yes," or if you have a reasonable doubt thereof, then you shall answer the special issue "No."

Punishment Charge - 2

000657

You shall consider all evidence admitted during the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You may not answer Special Issue No. 1 "Yes" unless the jury agrees unanimously, and you may not answer Special Issue No. 1 "No" unless 10 or more members of the jury agree. The members of the jury need not agree on what particular evidence supports a negative answer to Special Issue No. 1.

If you have answered "No" to Special Issue No. 1, then you shall cease your deliberations. If you have answered "Yes" to Special Issue No. 1, then you shall next consider Special Issue No. 2.

## INSTRUCTIONS REGARDING SPECIAL ISSUE NO. 2

If you answer that a circumstance or circumstances warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed, the Court will sentence the defendant to imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life without parole.

A defendant sentenced to confinement for life without parole is ineligible for release from the department on parole.

Punishment Charge - 3

In deliberating on your answer to Special Issue No. 2, you are instructed that you may not answer Special Issue No. 2 "No" unless the jury agrees unanimously, and you may not answer Special Issue No. 2 "Yes" unless ten (10) or more members of the jury agree. The members of the jury need not agree on what particular evidence supports an affirmative answer to Special Issue No. 2.

In arriving at your answer, you shall consider mitigating evidence to be evidence that a juror might regard as reducing the Defendant's moral blameworthiness.

## INSTRUCTION REGARDING ALL SPECIAL ISSUES

You are instructed that if the jury answers "Yes" to Special Issue No. 1 and "No" to Special Issue No. 2, the Court shall sentence the defendant to death.

If the jury answers "No" to Special Issue No. 1 or "Yes" to Special Issue No. 2, then the Court shall sentence the Defendant to confinement in the Institutional Division of the Texas Department of Criminal Justice for life without parole.

If the jury's answers to the Special Issue Nos. 1 and 2 are unanimous, then the presiding juror may sign each special issue for the entire jury. If any answer or answers are not unanimous, but agreed to by at least ten (10) members of the jury, as set out above, then the ten (10) or more jurors who agree shall individually sign

Punishment Charge - 4

the special issue.

During your deliberations upon the special issues, you must not consider, discuss, nor relate any matters not in evidence before you. You shall not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

In arriving at the answers to the special issues, it will not be proper for you to fix the same by lot, chance, or any other method other than by a full, fair, and free exchange of the opinion of each individual juror.

You are not to be swayed by mere sentiment, conjecture, sympathy, passions, prejudices, public opinion, or public feeling in considering all the evidence before you and in answering the special issues.

In determining your answers to the special issues, you shall consider all the evidence submitted to you in this whole trial, which includes that phase of the trial wherein you were called upon to determine the guilt or innocence of the Defendant, and this punishment phase of the trial wherein you are now called upon to determine the answers to the special issues submitted to you by the Court.

Punishment Charge - 5

000660

## GENERAL INSTRUCTIONS

You are further instructed that if there is any evidence before you in this case regarding the defendant having committed an offense or offenses other than the offense alleged against him in the indictment, you cannot consider this evidence for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the answers to the special issues.

You are further instructed the law allows the defendant to testify in his own behalf at this phase of the trial, but a choice on his part not to do so is not a circumstance against him and no presumption can be indulged in by the jury for a choice on his part not to do so. You are instructed in this case not to consider, discuss or even refer to the choice on the part of the defendant not to testify during your consideration of this case.

After the reading of this Charge, you shall not talk with anyone not of your jury. After the argument of counsel, you will retire to consider your answers in the special issues submitted to you. It is the duty of your presiding juror to preside in the jury room and vote with you on the answers to the special issues submitted.

Punishment Charge - 6

You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to the testimony; but you are bound to receive the law from the Court, which is herein given you, and be governed thereby.

Ernest B. White, III, Judge Presiding
194th Judicial District Court

Punishment Charge - 7

## SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Wesley Lynn Ruiz, would commit criminal acts of violence that would constitute a continuing threat to society?

Answer: _YES_

_James D. Gage_
PRESIDING JUROR
JAMES D. GAGE

If your answer to this special issue is "No," and is not unanimous, then the ten (10) or more jurors who agree should sign individually below:

_____         _____

_____         _____

_____         _____

_____         _____

_____         _____

If your answer to Special Issue No. 1 is "Yes," you shall proceed to answer Special Issue No. 2.

If your answer to Special Issue No. 1 is "No," you shall cease your deliberations.

Punishment Charge - 8

000663

## SPECIAL ISSUE NO. 2

Do you find, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed?

Answer: _____ NO _____

_James D. Gage_

PRESIDING JUROR

JAMES D. GAGE

If your answer to this special issue is "Yes," and is not unanimous, then the ten (10 ) or more jurors who agree should sign individually below:

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

Punishment Charge - 9

000664



①

Evidence Request #1

FILED
2008 JUL 11 PM 2: 06
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS
_____ DEPUTY

- State's evidence # 104
- lists of evidence - State + defense

Gary D. Bush

000665

FILED

194TH JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS 2008 JUL 11 PM 2:06

GARY ... Z SIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | |
| VS | * | CAUSE NO. F07-50318-MTY |
| WESLEY LYNN RUIZ | * | |

## <u>COURT'S ANSWER TO JURY NOTE NO. 1</u>

LADIES AND GENTLEMEN OF THE JURY:

Request No. 1 is provided.

Request No. 2, at this time there is no such list in evidence.

_____
ERNEST B. WHITE, III, Judge Presiding

(2) Is a prisoner classified before entering prison to serve their term? If not, how long does it take to be classified by the board?

*John A. Boyd*

FILED

2008 JUL 11 PM 4:55

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

DEPUTY

Judge, 194

000667

194TH JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS          *
VS                          *      CAUSE NO. F07-50318-M
WESLEY LYNN RUIZ            *
                            *

## COURT'S ANSWER TO JURY NOTE NO. 2

LADIES AND GENTLEMEN OF THE JURY:

The Court has received the following Jury Note No. 2:

PER ATTACHED

The Court responds as follows:

The jury must indicate that there is a dispute and the specific area of the

dispute regarding said requested testimony.

ERNEST B. WHITE, III , Judge Presiding

3

We would like to see the dash-cam video
as seen from Officer Nix's car.- frame by frame.
We want the courtroom to be empty of
spectators

James Brf

000669

Ⓗ

Whats were the details of the incident discussed
by Hector Martinez regarding the incident of
the defendents evading arrest, about 10 days
before the shooting of Officer Nix?


We would also like the testimony from Hector
Martinez stating that the defendent hid
a car at Hector's home.

*[signature]*

FILED
2008 JUL 11 PH 6:58
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS
_____ DEPUTY

000670

194TH JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS        *
VS                        *        CAUSE NO. F07-50318-M
WESLEY LYNN RUIZ          *

<u>COURT'S ANSWER TO JURY NOTE NO. 4</u>

LADIES AND GENTLEMEN OF THE JURY:

The Court has received the following Jury Note No. 4:

PER ATTACHED

The Court responds as follows:

The jury must indicate that there is a dispute and the specific area of the
dispute regarding said requested testimony to both questions.

_____
ERNEST B. WHITE, III , Judge Presiding

000871

(5)

Please provide the Bluebacks admitted as
State's evidence.

*John Rage*



FILED
2008 JUL 11 PM 8:00
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS
_____DEPUTY

000672



VOL 672 PAGE 166

## CASE NO. F-07-50318-M
INCIDENT NO./TRN: 910812745

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194th JUDICIAL DISTRICT |
| | § | |
| V. | § | COURT |
| | § | |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |
| | § | |
| STATE ID NO.: TX05787087 | § | |

---

# JUDGMENT OF CONVICTION BY JURY

| Judge Presiding: **HON. Ernest White** | Date Judgment Entered: **7/11/2008** |
|---|---|
| Attorney for State: **Kevin Brooks** | Attorney for Defendant: **Paul Brauchle** |

| Offense for which Defendant Convicted: |
|---|
| **CAPITAL MURDER OF A PEACE OFFICER** |

| Charging Instrument: **INDICTMENT** | Statute for Offense: **19.03 Penal Code** |
|---|---|

| Date of Offense: |
|---|
| **3/23/2007** |

| Degree of Offense: **CAPITAL FELONY** | Plea to Offense: **NOT GUILTY** |
|---|---|
| Verdict of Jury: **GUILTY** | Findings on Deadly Weapon: **YES, A FIREARM** |
| Plea to 1st Enhancement Paragraph: **N/A** | Plea to 2nd Enhancement/Habitual Paragraph: **N/A** |
| Findings on 1st Enhancement Paragraph: **N/A** | Findings on 2nd Enhancement/Habitual Paragraph: **N/A** |

| Punishment Assessed by: **JURY** | Date Sentence Imposed: **7/11/2008** | Date Sentence to Commence: |
|---|---|---|

| Punishment and Place of Confinement: | **Death INSTITUTIONAL DIVISION, TDCJ** |
|---|---|

**THIS SENTENCE SHALL RUN CONCURRENTLY.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **N/A** .

| Fine: **$ N/A** | Court Costs: **$ 236** | Restitution: **$ N/A** | Restitution Payable to: ☐ VICTIM (see below) ☐ AGENCY/AGENT (see below) |
|---|---|---|---|

Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62.

The age of the victim at the time of the offense was **N/A** .

| | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. |
|---|---|
| Time Credited: | From **3/23/2007** to **7/11/2008** From    to    From    to |
| | From    to    From    to    From    to |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. |
| | **N/A DAYS**    NOTES: **N/A** |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in Dallas County, Texas. The State appeared by her District Attorney.

**Counsel / Waiver of Counsel (select one)**

☒ Defendant appeared in person with Counsel.
☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

    It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The INDICTMENT was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

000673



The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

The Court received the verdict and **ORDERED** it entered upon the minutes of the Court.

**Punishment Assessed by Jury / Court (select one)**

☒ **Jury**. Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☐ **Court**. Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election**. Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court **FINDS** Defendant committed the above offense and **ORDERS, ADJUDGES AND DECREES** that Defendant is **GUILTY** of the above offense. The Court **FINDS** the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court **ORDERS** Defendant punished as indicated above. The Court **ORDERS** Defendant to pay all fines, court costs, and restitution as indicated above.

**Punishment Options (select one)**

☒ **Confinement in State Jail or Institutional Division.** The Court **ORDERS** the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ.** The Court **ORDERS** Defendant to be confined for the period and in the manner indicated above. The Court **ORDERS** Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court **ORDERS** that upon release from confinement, Defendant proceed immediately to the Dallas County District Clerk Felony Collections Department. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court **ORDERS** Defendant immediately committed to the custody of the Sheriff of Dallas County, Texas on the date the sentence is to commence. Defendant shall be confined in the Dallas County Jail for the period indicated above. The Court **ORDERS** that upon release from confinement, Defendant shall proceed immediately to the Dallas County District Clerk Felony Collections Department. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY.** The Court **ORDERS** Defendant to proceed immediately to the Office of the Dallas County District Clerk Felony Collections Department. Once there, the Court **ORDERS** Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

**Execution / Suspension of Sentence (select one)**

☒ The Court **ORDERS** Defendant's sentence **EXECUTED**.

☐ The Court **ORDERS** Defendant's sentence of confinement **SUSPENDED**. The Court **ORDERS** Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court **ORDERS** that Defendant is given credit noted above on this sentence for the time spent incarcerated.

**Furthermore, the following special findings or orders apply:**

The Court FINDS Defendant used or exhibited a deadly weapon, namely, firearm, during the commission of a felony offense or during immediate flight there from or was a party to the offense and knew that a deadly weapon would be used or exhibited. **TEX. CODE CRIM. PROC. art. 42.12 §3g**

---

**Signed and entered on July 11, 2008**

X _____

Ernest White
JUDGE PRESIDING

Right Thumbprint*

Clerk: A. THOMPSON

000074

**JUDGMENT**
**CERTIFICATE OF THUMBPRINT**

**THE STATE OF TEXAS**

CAUSE NO. F 07-50318 -M

**VS.**

JUDICIAL 194th   **DISTRICT COURT** ____

Wesley Lynn Ruiz

**DALLAS COUNTY, TEXAS**



**RIGHT THUMB**

DEFENDANT'S _RT_ HAND

THIS IS TO CERTIFY THAT THE FINGERPRINTS ABOVE ARE THE ABOVE-
NAMED DEFENDANT'S FINGERPRINTS TAKEN AT THE TIME OF DISPOSITION
OF THE ABOVE STYLED AND NUMBERED CAUSE.

DONE IN COURT THIS 11 DAY OF July , 20 08.

D-1 G.a. 787

**BAILIFF/DEPUTY SHERIFF**

*INDICATE HERE IF PRINT OTHER THAN DEFENDANT'S RIGHT THUMBPRINT IS PLACED IN BOX:

_____ LEFT THUMBPRINT            _____ LEFT/RIGHT INDEX FINGER

_____ OTHER, _____

SIGNED AND ENTERED ON THIS 11 DAY OF July , 20 08.

**PRESIDING JUDGE**

000675

FILED

2008 JUL 11 AM 10: 06

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS

_____DEPUTY

38

675
132

*F07 5D318L*

THE STATE OF TEXAS

VS.

*Wesley Lynne Ruiz*

CAUSE NO. *F08-34134-J*

*194th*_____DISTRICT COURT_____

DALLAS COUNTY, TEXAS

### DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes the Defendant in the above cause and by his Attorney, and moves the Court

to grant him a New Trial herein for the good and sufficient reason that the verdict is contrary to

the law and the evidence.

Wherfore, Defendant prays the Court grant a new trial herein.

Respectfully submitted,

_____
Attorney for Defendant

### ORDER

The above Motion is hereby (granted) (overruled).

_____
Judge

*August 5, 2008*

000676

Cause No. _F07-50318-M_

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | ☐ | **IN THE** _194th_ |
| **VS.** | ☐ | **DISTRICT COURT** |
| _Wesley Ruiz_ | ☐ | **DALLAS COUNTY, TEXAS** |

## TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL*

I, judge of the trial court, certify this criminal case:

☒  is not a plea-bargain case, and the defendant has the right of appeal, [or]

☐  is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial, and not withdrawn or waived, and the defendant has the right of appeal, [or]

☐  is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal, [or]

☐  is a plea-bargain case, and the defendant has NO right of appeal, [or]

☐  the defendant has waived the right of appeal, [or]

☐  other (please specify): _____

_Date Signed_  _7-21-08_

Judge

I have received a copy of this certification. I have also been informed of my rights concerning any appeal of this criminal case, as set forth below, including any right to file a *pro se* petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure. I have been admonished that my attorney must mail a copy of the court of appeals judgment and opinion to my last known address and that **I have only 30 days** in which to file a *pro se* petition for discretionary review in the court of appeals. Tex. R. App. P. 68.2. I acknowledge that, if I wish to appeal this case and if I am entitled to do so, it is my duty to inform my appellate attorney, by written communication, of any change in the address at which I am currently living or any change in my current prison unit. I understand that, because of appellate deadlines, if I fail to timely inform my appellate attorney of any change in my address, I may lose the opportunity to file a *pro se* petition for discretionary review.

Defendant
Mailing Address: _IN JAIL_

Telephone #:
Fax # (if any):

Defendant's Counsel
State Bar No.: _0291 8000_
Mailing Address: _4131 N. Central Expy_
_Suite 680 Dallas 75204_
Telephone #: _21/742-2331_
Fax # (if any):

*A defendant in a criminal case has the right of appeal under these rules. The trial court shall enter a certification of the defendant's right to appeal in every case in which it enters a judgment of guilt or other appealable order. In a plea bargain case ---- that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant ---- a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal." TEXAS RULE OF APPELLATE PROCEDURE 25.2(a)(2). In order to perfect an appeal a written notice of appeal must be filed with the trial court clerk within **30 days (90 days if a timely motion for new trial is filed)** after the day sentence is imposed or suspended in open court or after the day the trial court enters an appealable order.

000677

Mr. Paul Brauchle
4131 N. Central Expressway, Ste. 680
Dallas, Texas 75204

Wesley Ruiz
999536 Polunsky Unit
3872 F.M. 350 South
Livingston, Tx. 77351-8580

FILED

2008 AUG 26 PM 1: 30

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS

20-August-2008

RE: Enclosed 'forms' from Court

Dear Mr. Brauchle:

Please be advised that the Court has sent me these 'forms' with a letter asking me to 'sign and return them to the court'; I am signing one, and forwarding them to you to return to the Court.

I am signing the form regarding the Appeal on the 'probation-revokation case' because I do want you to pursue an appeal on that.

The gist of the 'revocation' is that I was convicted of capital-murder in Cause No.F07-50318-M, However, should I get the 'capital-murder' conviction overturned, As I do belive believe I should, than there is no basis for the revocation, Thus, the 'revocation-process' should NOT have been conducted when it was, but rather should await the FINAL-outcome of the capital-case.

As to the 'capital-case', I am not signing that form, because it is not necessary, pursuant to Texas Code of Criminal Procedure Article 37.071 §2(h); EX PARTE Jackson, 187 S.W.3d 416, (Tex.Crim.App.2005); Of course 'the Court should be aware of this' but apparently is not, or the DA is pressuring the Clerk to get this signed one; Either way, it shows 'The Court is committing error' in the case, and is not significantly-aware of what the law is with regards to 'capital-cases', and I believe this may also be raised on my 'Direct-Appeal' to show the court wase unaware of the legal-principals envolved in capital-litigation.

I assume you are the attorney who will handle the appeal, on the probation-revocation, sense you are the one who signed the form; If not please forward this to whom-ever that will be; ALSO Please forward a copy of ALL THE PAGES (encluding this letter) to Mr. Doug Parks, Attorney-at-Law, there in the Dallas area, who will be handling the 'capital-appeal' for me.

I appreciate your time and assistance in this matter.

SINCERELY YOURS

Wesley Ruiz

Wesley Ruiz

000673

8710046187 RR Donnelley ©2007. All rights reserved. - 0657

Cause No. _F07-50318-M_

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | ☐ | IN THE _194th_ |
| **VS.** | ☐ | **DISTRICT COURT** |
| _Wesley Ruiz_ | ☐ | **DALLAS COUNTY, TEXAS** |

### TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL*

I, judge of the trial court, certify this criminal case:

☒ is not a plea-bargain case, and the defendant has the right of appeal, [or]

☐ is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial, and not withdrawn or waived, and the defendant has the right of appeal, [or]

☐ is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal, [or]

☐ is a plea-bargain case, and the defendant has NO right of appeal, [or]

☐ the defendant has waived the right of appeal, [or]

☐ other (please specify): _____

_____                     _7-21-08_
Judge                                          Date Signed

I have received a copy of this certification. I have also been informed of my rights concerning any appeal of this criminal case, as set forth below, including any right to file a *pro se* petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure. I have been admonished that my attorney must mail a copy of the court of appeals judgment and opinion to my last known address and that **I have only 30 days** in which to file a *pro se* petition for discretionary review in the court of appeals. Tex. R. App. P. 68.2. I acknowledge that, if I wish to appeal this case and if I am entitled to do so, it is my duty to inform my appellate attorney, by written communication, of any change in the address at which I am currently living or any change in my current prison unit. I understand that, because of appellate deadlines, if I fail to timely inform my appellate attorney of any change in my address, I may lose the opportunity to file a *pro se* petition for discretionary review.

_____                     _____
Defendant                                      Defendant's Counsel
Mailing Address: _IN JAIL_                      State Bar No.: _02918000_
                                               Mailing Address: _4131 N. Central Expy._
Telephone #: _____                      _Suite 680 Dallas 75204_
Fax # (if any): _____                     Telephone #: _2/742-2333_
                                               Fax # (if any): _____

*A defendant in a criminal case has the right of appeal under these rules. The trial court shall enter a certification of the defendant's right to appeal in every case in which it enters a judgment of guilt or other appealable order. In a plea bargain case - --- that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant ---- a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal." TEXAS RULE OF APPELLATE PROCEDURE 25.2(a)(2). In order to perfect an appeal a written notice of appeal must be filed with the trial court clerk within **30 days (90 days if a timely motion for new trial is filed)** after the day sentence is imposed or suspended in open court or after the day the trial court enters an appealable order.

Ernest White, Judge,
194th Judicial District Court
Frankl Crowley Courts BLDG.
133 N. Industrial Blvd.
Dallas, Tx. 75207-4313

FILED
2008 AUG 14 AM 11:18

9-August-2008

Wesley Ruiz
999536 Polunsky Unit
3872 F.M. 350 South
Livingston, Tx. 77351-8580

F07-50318

RE: Cause No. F-05-56472-M

The Honorable Judge White:

Your-Honor, I'd like to thank you for your letter dated July 25, 2008, in which your kind enough to sned a COPY of: "TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT TO APPEAL*"; Upon which it appears You and Mr. Paul Brauchle Attorney signed.

In your letter, you asked that I sign this 'copy' and return it; However, I must decline your request because there is 'no original' with the Motion You request that I sign, AND there is no 'copy' which I may keep for my files, and I have learned enough to know that I will NOT sign anything which I am not provided a copy of for my own file; Thus, I return this letter simply to acknowledge your letter and request and to inform you of my position as to your request.

I hope that you will understand my position, as You are the one who put me in this position.

RESPECTFULLY YOURS

Wesley Ruiz

Wesley Ruiz

000680



## ERNEST WHITE , JUDGE
## 194th JUDICIAL DISTRICT COURT

DATE:   August 6, 2008

Defendant:  Wesley  Lynn  Ruiz          Cause No(s):   F07- 50318- M
RE: Attached Correspondence is        ___ Illegible
                                      ___ Unclear as to your question / problem

☐   Your Motion for _____   has been denied
☐   Back time in the above case(s) has been corrected to include _____

☐   Back time credit has been reviewed and is correct according to Dallas County Jail
     Records
☐   If you feel you are entitled to credit for time served in any jail facility other than
     Dallas County, you must contact that facility for written verification and forward it
     to this court for consideration.
☐   Back Time Credit from date of sentence to date to transfer to State Jail or
     Penitentiary is calculated and credited by the Texas Department of Criminal
     Justice.
☐   No Credit is given for time served in SAFPF or Drug Treatment Center

☐   This Court has no Jurisdiction over time calculation
☐   All cases are run concurrent unless otherwise specified
☒   Other:  **PLEASE SIGN ATTACHED FORM & MAIL IT
              BACK TO :
              194TH JUDICIAL DISTRICT COURT  - ATTN.
              CLERKS
              133 N. INDUSTRIAL BLVD.
              DALLAS, TX. 75207- 4313.**

_____

000681



### GARY FITZSIMMONS
### DALLAS COUNTY DISTRICT CLERK

August 15, 2008


Mr. Wesley Ruiz
#999536
Polunsky Unit
3872 F.M. 350 South
Livingston, TX    77351

RE:   Trial Court Certification Forms
      F05-56472-QM & F07-50318-LM


Mr. Wesley,

I am sending you the forms that need your signature, and I am also including
copies for you to keep.

Please sign and return to us As Soon As Possible.

Respectfully,


Ana McDaniel
Clerk


cc:    File

133 North Industrial Blvd. LB 12- DALLAS, TEXAS  75207– (214) 653-5959
FAX (214) 653-5986
Web Site: www.dallascounty.org/department/districtclerk/districtclerk_index.html

000082

JUDGMENT SENTENCE DATE _7/11/08_

MOTION FOR NEW TRIAL FILED ✓ YES____ NO DATE_____

~~Deputy District Clerk~~

FILED

2008 JUL 23 PM 2:04

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO. TEXAS

DEPUTY

DRAWER #40

THE STATE OF TEXAS

VS.

_Wesley Ruiz_

CAUSE NO. _F 07 - 50318 - M_

_194th_ DISTRICT COURT_____

DALLAS COUNTY, TEXAS

## DEFENDANT'S NOTICE OF APPEAL AND PAUPER OATH

### APPOINTMENT OF ATTORNEY ON APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Defenant in the above cause and states: I am the defendant in the above cause; I was convicted in this cause and now give Notice of Appeal to the Texas Court of Appeals for the Fifth Supreme Judicial District of Texas of Dallas, Texas, and that I am penniless, destitute and indigent person, too poor to employ counsel to represent me on the appeal, and too poor to pay for or give security for the Statement of Facts and a true copy thereof herein.
WHEREFORE, I pray that the Court will appoint an attorney to represent me in this appeal and that the Court will order the Court Reporter of this Court to prepare and deliver me or my appointed Counsel the original and a true copy of the Statement of Facts in this case, together with all exhibits attached thereto if practical.

_Wesley Ruiz by Paul Blauuch_
Defendant

BEFORE ME, the undersigned authority, personally appeared the above Defendant, known to me to be the person whose signature appears above, and after being duly sworn on oath states that he is the defendant in the above cause, and that the matters and things set forth in the foregoing are true and correct in all things.

JIM HAMLIN
DISTRICT CLERK
Dallas County, Texas

By_____
Deputy District Clerk

## ORDER

The Defendant having requested the Court to appoint Counsel,

it is Ordered the Honorable _Douglas Parks_

Address: _321 Calm Water Ln, Holly Lake Ranch, Tx_
a regular licensed and practicing attorney of Texas, be, and he/she is hereby appointed to represent Defendant in prosecuting his/her appeal herein, and it is further Ordered that the Court Reporter is hereby directed to transcribe all of the notes as same may appertain to this cause and as taken during the trial of this cause which began on

_____, _____, and make Statement of Facts in duplicate and furnish same to defendant or his appointed Counsel.

_____
Judge

000683

FORM 40

CAUSE NO.  F07-50318                    FILED

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | IN THE 194TH JUDICIAL |
| **VS.** | § | DISTRICT COURT |
| **WESLEY RUIZ** | § | DALLAS COUNTY, TEXAS |

## NOTICE OF APPOINTMENT OF WRIT COUNSEL

The Court, having taken judicial notice of the prior proceedings in this cause, finds that the defendant, Wesley Ruiz, is indigent and that counsel should be appointed pursuant to Article 11.071 of the Code of Criminal Procedure.  The Court therefore has appointed the following counsel for the purpose of preparing and filing a writ of habeas corpus on defendant's behalf in the above numbered and styled cause:

       Lydia Brandt
       P. O. Box 850843
       Richardson, TX  75085
       Telephone # (972) 699-7020

The Clerk of this Court is directed to send a copy of this notice to the Texas Court of Criminal Appeals, Austin, Texas, along with a certified copy of the judgment in this case.

**SIGNED** this ___5 4th___ day of August, 2008.

          **ERNEST WHITE, JUDGE**
          **194TH JUDICIAL DISTRICT COURT**
          **DALLAS COUNTY, TEXAS**

000684

FILED

NO. F07-50318-M

2008 JUL 18 AM II: 51

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO, TEXAS

_____ DEPUTY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| V. | § | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## DESIGNATION OF RECORD ON APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant and files this Designation of Record on Appeal, pursuant to the Texas Rules of Appellate Procedure, and requests that the Clerk and Court Reporter of this Court make and prepare the following matters for inclusion in the appellate record:

1.      Indictment or criminal information.

2.      All motions and pleadings filed by the Defendant.

3.      State's pleadings, including Motions and all rulings of the Court thereon.

4.      Court's docket sheet and all docket entries made by the Court.

5.      List of venire persons, including the lists of the Court, the State, and the Defendant.

6.      The strike list reflecting the strikes made by the State and the Defendant, and the list reflecting the names of the venire persons who sat as jurors at this trial.

7.      Transcription of the Voir Dire Examination of the jury panel, including all statements and arguments made by the Court, the State, the Defendant, the defense counsel, and the venire persons.

8.      Transcription of any hearing challenging the composition of the jury on Constitutional and statutory grounds, including *Batson* grounds, and the ruling of the Court thereon.

9.      Transcription of the Opening Statements made by counsel for the State and counsel for the Defendant.

000685

10.  Transcription of the testimony of all witnesses, and all evidence introduced, during all pre-trial hearings and trial hearings, including the following:

    a.  hearings on the Defendant's Motions to Suppress.

    b.  hearings on admissibility of in court identification.

    c.  hearings on admissibility of extraneous offenses.

    d.  hearings on admissibility of a Defendant's statement.

    e.  hearings challenging the sufficiency of the indictment or criminal information.

    f.  all hearings conducted on each defense motion.

11.  Transcription of the testimony of all witnesses, and all evidence introduced during the trial, including the hearings to determine guilt/innocence and the punishment.

12.  Transcription of the testimony of all witnesses and all evidence introduced at hearings held outside the presence of the jury, including the rulings of the Court.

13.  All verbal and written communications between the Trial Court and the jury.

14.  All communications between the Trial Court, the Defendant, counsel for the Defendant, and counsel for the State.

15.  All defense objections, verbal and in writing, made by the Defendant to the Court's Charge submitted to the jury during the trial, on the issues of guilt/innocence and punishment, and all rulings of the Court thereon.

16.  All defense requested instructions, verbal and in writing, made by the Defendant to the Court's Charge submitted to the jury during the trial on the issues of guilt/innocence and punishment and all rulings of the Court thereon.

17.  All jury arguments of counsel for the State and counsel for the Defendant, and the Defendant, during the hearings to determine guilt/innocence and punishment.

18. The respective verdicts of the jury at the hearings to determine guilt/innocence and punishment.

19. All notes and other communications sent by the jury to the Court, the Court's responses thereto and all defense objections and requested instructions made by the defense to each such jury note and the response of the Court.

20. A transcription of all hearings in conjunction with pretrial matters.

21. The judgment and sentence of the Court.

22. Defendant's original Motion for New Trial and all amended Motions for New Trial.

23. Transcription of all testimony and all evidence introduced at the hearing on the Defendant's Motion for New Trial and Amended Motion for New Trial, and the Order of the Court thereon.

24. Defendant's Notice of Appeal.

25. The originals of all exhibits introduced into evidence before the jury.

26. The originals of all exhibits introduced into evidence before the Court.

27. Defendant's affidavit of Indigency and Motion for Free Transcript.

28. Defendant's Designation of Record on Appeal.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that the Clerk and the Court Reporter of this Court will make and prepare the foregoing materials and include them in the appellate record in this cause on appeal.

000687

Respectfully submitted,

DOUGLAS H. PARKS
State Bar No. 15520000
321 Calm Water Lane
Holly Lake Ranch, Texas 75765
(214) 521-2670
Fax (903)769-3465

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was deposited in the United States Mail, first class, in an envelope property addressed to the Dallas County, District Attorney's Office, Appellate Division, Frank Crowley Courts Building, 133 North Industrial Boulevard, Dallas, Texas, 75207, and stamped, or hand delivered on this the ____ day of _____, 2008.

DOUGLAS H. PARKS

**DESIGNATION OF RECORD ON APPEAL - Page 4**

F07-50318-LM

ORIGINAL

REVOCATION

**THE STATE OF TEXAS**
**VS.**

**OFFENSE:** F07-50318

WESLEY LYNN RUIZ

CAPITAL MURDER OF A PEACE OFFICER, A CAPITAL
FELONY OFFENSE AS CHARGED IN THE INDICTMENT

**INDICTMENT FILED**
MAY 1 0 2007
DATE

Appellant Attorney
(appointed/retained)

Doug Parks

Court Reporter

Atty. for State

Atty. for Defendant

Judge E. White (VISITING/MAGISTRATE)

(VISITING/MAGISTRATE)

TRN - 91081274 5 X

CERTIFIED COPY OF INDICTMENT DELIVERED
TO THE SHERIFF TO BE SERVED ON DEFENDANT
IN THE COUNTY JAIL ON
MAY 1 0 2007
DATE

SID # 05767087

**MEMORANDUM OF PAPERS FILED**

| Date | |
|---|---|
| 1' 7/11/08 | |
| 2. 7/23/09 A Ntn | |
| 3. A Nlapeal | Mtn for New Trial - Denied 7/23 |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| 9. | |
| 10. | VERIFIED 8/29/08 |
| 11. | |
| 12. | |
| 13. | |
| 14. | |
| 15. | |

**Judgment Rendered** July 11 20 08
Cap Jr Death

DATE OF
OFFENSE: 3/23/07

VOL 1072 PAGE 166

**Sentenced**

**BEGINNING ON DATE OF:**

**CREDIT FOR TIME SERVED:** 3/23/07 — 7/11/08

Attorney

Address

Received Copy of Indictment on ____ Date

```
THESE ARE DISTRICT COURT PAPERS
AND MUST NOT BE REMOVED
FROM THE DISTRICT CLERK'S OFFICE
```

000689

F07-50318-LM

# CERTIFICATION

**The State of Texas** §

**County of Dallas** §

I, Gary Fitzsimmons, Clerk of the _194th JUDICIAL DISTRICT COURT_ of Dallas County, Texas do hereby certify that the documents contained in this record to which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5 (a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5 (b).

GIVEN UNDER MY HAND AND SEAL at my office in Dallas County, Texas this _3rd_ day of _OCTOBER_ , _2008_ .

Signature of Clerk: *Ana McDaniel*

Name of Clerk: Ana McDaniel

Title: Deputy Clerk

000690