CAUSE NO. F07-50-M

THE STATE OF TEXAS      *    IN THE DISTRICT COURT

vs.      *    194TH JUDICIAL DISTRICT

WESLEY LYNN RUIZ      *    DALLAS COUNTY, TEXAS

- - - - - - - - - - - - - - - - - - - - - - - - - - -

REPORTER'S RECORD

VOIR DIRE EXAMINATION

Volume 3 of 59 Volume(s)

- - - - - - - - - - - - - - - - - - - - - - - - - - -

BE IT REMEMBERED THAT on this the 30th day of November, A.D, 2007, the above-styled and -numbered cause(s) came on for hearing before the HONORABLE ERNEST B. WHITE, III of the 194th Judicial District Court of Dallas County, State of Texas, the following is a true and correct transcription of the proceedings had, to-wit:

(Proceedings Reported by Computerized Machine Shorthand)

Belinda G. Baraka, Official Court Reporter
214-653-5803

```
 1                         A P P E A R A N C E S

 2

 3      HON. KEVIN BROOKS
        Assistant District Attorney
 4      State Bar No. 03070735

 5

 6      HON. ANDY BEACH
        Assistant District Attorney
 7      State Bar No.  01944900

 8                              FOR THE STATE OF TEXAS

 9

10      HON. PAUL BRAUCHLE
        Attorney at Law
11      State Bar No. 02918000

12

13      HON. WILLIAM JOHNSON
        Attorney at Law
14      State Bar No.  10804500

15                              FOR THE DEFENDANT

16

17      Also Present:

18        Jose Arredondo, Interpreter

19

20                              *  *  *  *  *

21

22

23

24

25
```

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*

INDEX

PAGE/VOL.

Proceedings - 11/30/07 ............................. 4/3

Morning Voir Dire Examination - The Court .......... 4

Individual Exemptions/Disqualifications ............ 11

Afternoon Voir Dire Examination - The Court ........ 50

Individual Exemptions/Disqualifications ............ 60


Reporter's Certificate ............................. 98

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*

1       P R O C E E D I N G S
2           (November 30, 2007)
3           THE COURT:   Can everyone hear me?
4           PROSPECTIVE JUROR:   No.
5           THE COURT:   Good morning, ladies and gentlemen,
6    we are going to get the show on the road.
7           I appreciate -- I start with staying, I appreciate all a
8    of you coming here. If you can't hear me, let me know, and I
9    will try to get this microphone to work. The reason you are
10   all here today, obviously is for jury services -- jury
11   service. And this is the first stage in the process of a
12   capital murder case. And you-all are the first folks coming
13   here today. We are going to have questionnaires for you to
14   fill out. There are some comments that I must make according
15   to the law. And we are going to try to get through this
16   process very quickly so that once you have got everything
17   done, you are free to go. And you will be in contact with my
18   coordinator, Reann Fleming.
19          Let me introduce the parties. We have to my left, Kevin
20   Brooks for the State of Texas. Andrea Handley also is for the
21   State of Texas. Andy Beach, and Marshal McCallum.
22          And to my right is Paul Brauchle for the Defense.
23          MR. BRAUCHLE:   Good morning, ladies and
24   gentlemen.
25          THE COURT:   And William "Karo" Johnson for the

1    Defense.
2           MR. BRAUCHLE:   Good morning.
3           THE COURT:   And the accused is seated to my
4    right. His name is Wesley Ruiz.
5           What I am going to do is start handing out the
6    questionnaires. And I will swear you, if I can get everyone
7    to raise their right hand.
8           (Jury panel was duly sworn.)
9           THE COURT:   As I stated earlier, this is a
10   capital murder case, a death penalty case, the State of Texas
11   versus Wesley Ruiz. I will start with going over the
12   indictment.
13          And I will start with the indictment itself is no
14   evidence of guilt. The indictment is essentially a swearing
15   document, an affidavit, a charging document -- somebody
16   doesn't like the sound of the indictment. But what the
17   indictment does is no evidence of proof whatsoever. It serves
18   several purposes. It brings the accused into the 194th,
19   which is my court, for disposition purposes. It let's the --
20   the accused know the allegation he is facing or she is facing,
21   as the case may be. And it also let's him know the manner or
22   means of how the State has accused him of this particular
23   offense.
24          Capital murder can be committed in several ways.
25          The way Mr. Ruiz is charged with the offense of capital

6

1    murder is, he is alleged to knowingly and intentionally have
2    caused the death of Mark Nix, and it was further alleged in
3    the indictment that the decedent was a peace officer in the
4    lawful discharge of his official duty and that the defendant
5    knew that the decedent was a peace officer. The State in this
6    case is seeking the death penalty.
7           We all start with the presumption of innocence in any
8    criminal case. So I will back up a little bit. The fact that
9    Mr. Ruiz has been indicted, has been charged, may or may not
10   have been arrested, does not give any credence to the issue of
11   whether he is guilty of this offense. He is presumed innocent
12   unless the State proves this case beyond a reasonable doubt.
13   Okay. So the old saying or the old notion where there is
14   smoke there is fire does not apply in this case. The charging
15   instrument, the indictment does nothing more than let him know
16   and his attorney know how he is so charged.
17          The burden of proof. The burden of proof is always on
18   the State of Texas. The burden of proof in all criminal cases
19   is beyond a reasonable doubt. Texas does not recognize a
20   definition for that term beyond a reasonable doubt. But it is
21   the higher standard of proof that exists in our legal system.
22          The burden of proof goes to each and every element
23   contained in the indictment. It is a set of ingredients if
24   you will. If the State proves each and every element, then
25   they are entitled to a verdict of guilty. On the other hand

7

1    if they do not prove each and every element beyond a
2    reasonable doubt, then they are not entitled to a verdict of
3    guilty.
4           Right not to testify. The accused in all criminal cases
5    has an absolute right not to testify. And a lot of these
6    issues I am going to really give you the nutshell version.
7    Because as I said, this is the first stage in this process.
8    You-all will have an opportunity later to go over these
9    concepts with the attorneys on both sides, both collectively
10   and individually. What I am doing is just giving you the
11   streamline version, because I know you-all don't want to be
12   here all day.
13          But in all criminal cases, an accused has an absolute
14   right not to testify in a criminal proceeding. The fact that
15   an individual chooses to not testify in his or her proceeding
16   cannot and must not be held against him as a circumstance of
17   guilt. So it is essentially a nonissue if that individual
18   chooses not to testify. And the reason for that again is
19   because the burden of proof is on the State.
20          The accused, all he or she has to do in their trial, in
21   their proceeding is merely show up and they have fulfilled the
22   requirements by law that they are needed to fulfill.
23          Punishment, as I said, essentially this is a death
24   penalty case. The State is seeking the death penalty. I am
25   not going to go into the specifics. But essentially, there

*Belinda G. Baraka, Official Court Reporter*
*214.653.5803*

1  are two outcomes, either death or life without the possibility
2  of parole. And once again once we meet individually and do
3  the individual voir dires, we will go into that in more
4  detail.
5      Last area that I need to cover with respect to the law is
6  that of opinion. In these type of cases, criminal cases,
7  death penalty cases, there may be expert testimony of
8  witnesses that testify for either side. Those testimonies
9  that you hear -- that testimony that you hear can be
10  considered by you, by the jurors as you see fit with respect
11  to the issues that they are testifying. Okay. But they are
12  opinion testimony.
13      What I am going to do at this point now is go to the
14  qualifications. And one of the reasons we had everyone sit
15  down, in addition so that the fire marshal wouldn't come in
16  here and hold us in violation, but I wanted the aisles free
17  because as I go through the disqualifications and the
18  exemptions, if they apply to you, I ask that you go to the
19  back of the room and then come around this wall to my left in
20  single file. I know when you hear that exemption you may want
21  to run up and be the first one, but I think we can get through
22  this more properly if we do it -- try to do it in an orderly
23  fashion as best we can.
24      The first one we are going to do is review the general
25  exemptions to jury service. And as I said, if any of them

1  apply to you, just get up and stand in line to the wall to my
2  left.
3      You must be at least 18 years of age. If we have anyone
4  18 years or younger -- younger than 18 years rather, then that
5  qualification would apply. I heard a little cry from a child
6  earlier, maybe he or she was trying to get out of jury
7  service. Must be a citizen of the State of Texas and Dallas
8  County, must be a citizen of the State of Texas and Dallas
9  County.
10      Must be qualified under the Constitution and laws to vote
11  in Dallas County. Must be qualified to vote in Dallas, Texas.
12      Must be of sound mind and good moral character. Let me
13  just add to that one, if you attempt to use the sound mind, we
14  do need a doctor's note, okay.
15      Must be able to read and write.
16      Has not served on a petit jury for six days during the
17  proceeding six months in county court or during the proceeding
18  six months in district court. Must not have served as a petit
19  juror for six days during the preceding six days in county
20  court or six months in district court. Must not have been
21  convicted of a misdemeanor theft or a felony. Must not have a
22  conviction for misdemeanor theft or a felony. Is not under
23  indictment or any other legal accusation for a misdemeanor
24  theft or a felony.
25      The exemptions. The exemptions basically are as a -- as

1  they say the word is, you get a pass with these exemptions but
2  it is up to you rather you wish to utilize the exemptions or
3  not. Anyone over 70 years of age has an exemption from jury
4  duty.
5      Has legal custody of a child younger than ten years of
6  age, and part two, the person's service on jury service
7  requires leaving the child without adequate supervision. So
8  it is a two-part test to that, child under ten years of age
9  and no adequate supervision if you are on the jury.
10      Individuals enrolled and in actual attendance in an
11  institution of higher education. Enrolled and actually
12  attending.
13      A student of a public or -- public or private secondary
14  school.
15      Do we have any students?
16      An officer or employee of the Senate, House of
17  Representatives, Department Commission Board Office or other
18  agency in the legislative branch of government.
19      Is the primary caretaker of a person who is an invalid
20  and unable to take care of themselves. Now, if you work for a
21  nursing home, that doesn't apply.
22      Anyone a member of the United States military force is
23  serving on active duty and deployed to a location away from
24  the person' home, station and out of the person's county or
25  residence. Those are the exemptions.

1      Does anyone need me to go over them again?
2      And lastly, I should have said this earlier, is there
3  anyone that has trouble understanding English -- if you will
4  get in the line, ma'am, we will have some questions for you.
5      What we are going to do at this point, we are going to
6  hand out the questionnaires to those of you that are seated,
7  and I will ask that you start working on the questionnaires.
8  They are lengthy questionnaires and we are not trying to pry
9  into your personal affairs or personal business or anything
10  along those lines, but obviously this is a serious case and
11  the whole concept, the whole premise that we are starting is
12  that both sides are entitled to a fair trial. And so the
13  questions -- the responses you make to the questionnaires will
14  be instrumental in the process of jury selection.
15      One last thing I forgot to mention, as you are filling
16  out the questionnaire, if you will put the juror number on the
17  top of the front page of the questionnaire.
18      INDIVIDUAL EXEMPTIONS/DISQUALIFICATIONS
19          (Following proceedings interpreted by Jose
20          Arredondo as needed.)
21      THE COURT:   Good morning, ma'am, you do not
22  speak English?
23      PROSPECTIVE JUROR:   I don't speak good English,
24  but I can understand a little bit.
25      THE COURT:   Well, I guess what my question is,

12

13

1   if you understand everything that I have said?
2             PROSPECTIVE JUROR:  I just understood
3   qualifications for being juror.
4             THE COURT:  Okay.  But mostly of what I was
5   saying, you did not understand?
6             PROSPECTIVE JUROR:  Fifty percent.
7             THE COURT:  Okay, you are free to go.
8        Juror 976, is the juror we just finished?
9             PROSPECTIVE JUROR:  I don't speak Spanish.
10            THE COURT:  Do you speak English?
11            PROSPECTIVE JUROR:  I speak English, but I don't
12  understand to the answer no English what you are talking.  I
13  cannot.
14            THE COURT:  And your name is, ma'am?
15            PROSPECTIVE JUROR:  Leyla Efendiyeva.
16            THE COURT:  Your juror number is 1397.
17  Good morning, ma'am.  Your name and juror number?
18            PROSPECTIVE JUROR:  Lidia Esparza, 966.
19            THE COURT:  And you do not understand English?
20            PROSPECTIVE JUROR:  I understand but not
21  everything.  I cannot write it either.
22            THE COURT:  If you will check your juror card.
23  Good morning.
24            PROSPECTIVE JUROR:  Good morning.
25            THE COURT:  Your name -- 2194, Laura Martinez.

1   You do not understand English?
2             PROSPECTIVE JUROR:  No.
3             THE COURT:  Okay.  If you will check your.
4        1752, your name, sir?
5             PROSPECTIVE JUROR:  Javier Martinez.
6             THE COURT:  You do not understand English?
7             PROSPECTIVE JUROR:  Very little.  I have been
8   only six weeks going to school.
9             THE COURT:  Very well, just check your name.
10       Good morning, ma'am?
11            PROSPECTIVE JUROR:  Good morning.
12            THE COURT:  I don't have a juror number.  What
13  is your name?
14            PROSPECTIVE JUROR:  Obdulia Uriostegui, Juror
15  No. 1511.
16            THE COURT:  1566, and her name is Sylvia Cruz?
17            PROSPECTIVE JUROR:  Very little speak English.
18            THE COURT:  Not enough to follow the
19  proceedings?
20            PROSPECTIVE JUROR:  No.
21            THE COURT:  1990?
22            PROSPECTIVE JUROR:  Very little English.
23            THE COURT:  And your name, sir?
24            PROSPECTIVE JUROR:  Jose Concha.
25            THE COORDINATOR:  18, Rosalia Rivera?

14

15

1             PROSPECTIVE JUROR:  50 percent English.
2             THE COURT:  But not enough?
3             PROSPECTIVE JUROR:  No.
4             THE COURT:  Juror No. 18, Rosalia Rivera.
5        Good morning, sir?
6             PROSPECTIVE JUROR:  Good morning.
7             THE COORDINATOR:  Juror 1552, Juan Guerra?
8             PROSPECTIVE JUROR:  I can understand and
9   speak but not enough to follow through.
10            THE COURT:  Okay, sir.
11            THE COORDINATOR:  789, Felipe Gutierrez?
12            PROSPECTIVE JUROR:  Understands very little.
13            THE COURT:  Understands very little?
14            PROSPECTIVE JUROR:  Not able to understand
15  and follow.
16            THE COURT:  Very well, sir, you are exempt.
17            THE COORDINATOR:  684, Elmer Fegale.
18            THE COURT:  Reading and writing?
19            PROSPECTIVE JUROR:  Very little.
20            THE COORDINATOR:  1403, Ramon Elias.
21            PROSPECTIVE JUROR:  Understands but not able
22  to write it down.
23            THE COORDINATOR:  1393, Alfredo Trejo.
24            PROSPECTIVE JUROR:  Doesn't read enough.
25            THE COORDINATOR:  1517, Laura Fleming.

1             PROSPECTIVE JUROR:  My is an unusual
2   circumstance.  I don't fit into the exemptions.I am a firearms
3   examiner with the Dallas County Crime Lab with SWIFS.  I work
4   many homicide cases, I don't recall if this is one of them.  I
5   would certainly have to search.  The complainant's name rings
6   a bell with me.  I don't think I was an examiner on this case;
7   however my coworker would have been.
8             THE COURT:  Let me call the attorneys.  Paul,
9   Kevin.
10       We have an employee with SWIFS, she doesn't know if she
11  worked this case?
12            PROSPECTIVE JUROR:  I am Laura Fleming.  I am a
13  firearms examiner.  I don't think I was a firearm examiner on
14  this case.  However, I may have looked at the evidence from my
15  coworker, I am not asking for an exemption, I just need to let
16  everyone know my involvement.
17            MR. BRAUCHLE:  We will agree to.
18            PROSPECTIVE JUROR:  Thank you.
19            THE COORDINATOR:  493, Mary Burfoot.
20            PROSPECTIVE JUROR:  I can hear some of what you
21  said not everything.  And I couldn't hear either of the other
22  two.
23            THE COURT:  Let me ask you, if you were selected
24  to hear this case, a juror on the case, and we had -- we had a
25  person that could sign language, would that help?

16

1     PROSPECTIVE JUROR:   I don't know what you said,
2   I really, it is bad, it is getting worse, and I will
3   eventually hopefully maybe cochlear implant.  Thank you.
4     THE COORDINATOR:   Number 1515, Wynell
5   Mikesell.
6     PROSPECTIVE JUROR:   I am not a registered voter
7   in Dallas County, I am not a registered voter, so...
8     THE COURT:   Are you qualified to vote?
9     PROSPECTIVE JUROR:   Oh yes, but that's one of
10   the things you said.  I know it is not on there.
11     THE COURT:   No, what I was asking if you are
12   qualified to vote, not a registered voter?
13     PROSPECTIVE JUROR:   Okay.
14     THE COURT:   So if you are qualified to vote, you
15   just aren't registered?
16     PROSPECTIVE JUROR:   Is there anyway that I
17   couldn't do this, I mean I just don't think I could serve.  I
18   just get too nervous.
19     THE COURT:   At this point, you don't fit into
20   disqualifications or exemptions, there will be another process
21   where you will be questioned and then at that point, but right
22   now, you don't fall into.
23     PROSPECTIVE JUROR:   But I am almost 67, I just
24   wish you could make an allowance.
25     THE COURT:   The problem with that is, and I am

17

1   sympathetic, and I understand, if we kind of let everyone --
2     PROSPECTIVE JUROR:   Well, all right, I will try
3   to get through it.
4     THE COURT:   And like I said, there is going to
5   be questioning at different stages, so at that particular
6   point, you may not even make it to -- so right now you
7   qualify.
8     THE COORDINATOR:   972, Yolanda Tonche.
9     THE COURT:   And what are you?
10     PROSPECTIVE JUROR:   I have a misdemeanor.
11     THE COURT:   You have a misdemeanor.  What is the
12   misdemeanor?
13     PROSPECTIVE JUROR:   I brought illegal into the
14   United States.
15     THE COURT:   Is that a federal?
16     PROSPECTIVE JUROR:   No, it was a misdemeanor.
17     THE COURT:   I mean was it in federal court or
18   state.
19     PROSPECTIVE JUROR:   I believe it was federal.
20     THE COURT:   Federal.
21     MR. BRAUCHLE:   Were you at 1100 Commerce.
22     PROSPECTIVE JUROR:   Yes.
23     THE COURT:   If you will sign the form and take
24   it to the clerks.
25     Good morning.

18

1     PROSPECTIVE JUROR:   Good morning.
2     THE COURT:   How are you doing today?
3     PROSPECTIVE JUROR:   Fine.
4     THE COURT:   Okay, and you are --
5     PROSPECTIVE JUROR:   She told me to ask you
6   you said misdemeanor or felony?
7     THE COURT:   Right.
8     THE COORDINATOR:   1700, Dione Clay.
9     PROSPECTIVE JUROR:   I had been charged with a
10   felony and they dropped it to a misdemeanor, terroristic
11   threat.
12     THE COURT:   Terroristic threat, misdemeanor.
13   And what was the outcome?
14     PROSPECTIVE JUROR:   I had did probation.
15     THE COURT:   Did you get deferred?
16     PROSPECTIVE JUROR:   Uh-huh.
17     THE COURT:   That is not a conviction.
18     MR. BRAUCHLE:   The only misdemeanor that would
19   disqualify you is a theft?
20     PROSPECTIVE JUROR:   Okay.  I didn't know,
21   because I do everything else, it comes back and say I have a
22   felony.
23     THE COURT:   No, if you were not convicted of a
24   felony or misdemeanor theft.
25     Thank you for bringing it to our attention.

19

1     Good morning.
2     PROSPECTIVE JUROR:   Good morning.  I live in
3   Collin County.
4     THE COURT:   Collin County?
5     PROSPECTIVE JUROR:   Yeah, I just moved.
6     THE COORDINATOR:   1021, Erica Rankin.
7     THE COURT:   Okay.
8     PROSPECTIVE JUROR:   That's it?
9     THE COURT:   Yes.  If you will take it over
10   there.
11     PROSPECTIVE JUROR:   Thank you.
12     THE COURT:   Good morning.
13     PROSPECTIVE JUROR:   Good morning.  I live in
14   Lewisville.
15     THE COURT:   Okay, this is 1047, Jocelin Muela .
16     MR. BRAUCHLE:   Which part?  Lewisville is in two
17   counties?
18     PROSPECTIVE JUROR:   Corporate Drive.
19     THE COURT:   That's probably Denton County.
20   Ma'am, if you will just take it to the bailiff.
21     Good morning.
22     PROSPECTIVE JUROR:   Good morning.
23     THE COURT:   Juror No. 1069, Kidane Tesengne.
24     PROSPECTIVE JUROR:   I live at this address and
25   it is Collin County.

20

21

1    THE COURT:   Okay.

2    Good morning.

3    PROSPECTIVE JUROR:   You did say you must be a

4    registered voter?

5    THE COURT:   No, qualified to vote.

6    PROSPECTIVE JUROR:   I am not registered.

7    THE COURT:   You qualified to vote.

8    Good morning, sir.  Let's get your name and number.

9    PROSPECTIVE JUROR:   Robert Box, 645.

10   THE COURT:   And how does that apply, you have

11   been convicted of a theft or felony?

12   PROSPECTIVE JUROR:   Yes, sir.

13   THE COURT:   Good morning, ma'am.

14   PROSPECTIVE JUROR:   Good morning.

15   THE COURT:   This is Juror No. 2033.

16   Your exemption is?

17   PROSPECTIVE JUROR:   I live DeSoto.

18   THE COURT:   That's Dallas County.

19   PROSPECTIVE JUROR:   Okay.

20   THE COURT:   You are good, thank you.

21   Good morning, sir.  How are you?

22   PROSPECTIVE JUROR:   Pretty good.

23   THE COURT:   Juror 1458, Sterling Smith.  Your

24   exemption is, cannot read or write?

25   PROSPECTIVE JUROR:   My writing.

---

1    THE COURT:   You are exempt, sir.  If you will

2    give that to the bailiff right to your left.

3    Good morning, sir.

4    PROSPECTIVE JUROR:   I live in Houston.

5    THE COURT:   That's an old address.

6    THE COORDINATOR:   1058, Greg Wilson.

7    THE COURT:   Thank you.  If you will take this to

8    the bailiff.

9    Good morning, sir.

10   PROSPECTIVE JUROR:   Hey, I just want to be

11   honest with you-all, I am always honest, besides believing in

12   the death penalty, at this point in my life, I am under a lot

13   of stress and I am under medication, ulcer, migraine is

14   causing me a little of stress.  I am not being able to think

15   with a clear mind.

16   THE COURT:   What is your juror number?

17   THE COORDINATOR:   You got your summons?

18   THE COURT:   Your name?

19   PROSPECTIVE JUROR:   Donald Shaw.

20   THE COORDINATOR:

21   THE COURT:   It's 1:30.

22   THE COORDINATOR:   Donald Shaw?

23   PROSPECTIVE JUROR:   Yes.

24   THE COORDINATOR:   Juror No. 745.

25   THE COURT:   Go through this door to the left to

---

22

23

1    the bailiff, and just let them know that you have been excused

2    but you didn't bring your summons.

3    Good morning, ma'am.

4    PROSPECTIVE JUROR:   Good morning.  How are

5    you?

6    THE COURT:   Just fine.

7    This is Juror No. 520, Vanessa Byas.  And your exemption,

8    ma'am, you have been convicted of a felony or theft?

9    PROSPECTIVE JUROR:   Theft.

10   THE COURT:   She has been convicted of a theft.

11   Did you receive deferred probation or was it time or do

12   you know?

13   PROSPECTIVE JUROR:   Oh, my God, it was so

14   long ago.

15   THE COURT:   So long ago.  If you received

16   deferred, it is not a conviction.  Did you receive probation?

17   PROSPECTIVE JUROR:   I did a little time.

18   THE COURT:   Where was that -- did you wait in

19   jail until you went to court?

20   PROSPECTIVE JUROR:   Uh-huh.  No, I did pen

21   time.  I did like six weekends.

22   THE COURT:   In jail?

23   PROSPECTIVE JUROR:   Uh-huh.

24   THE COURT:   Okay, here you go.

25   Good morning, ma'am.

---

1    THE COORDINATOR:   Number 1322, Janice

2    Chance.

3    THE COURT:   Your exemption is, ma'am?

4    PROSPECTIVE JUROR:   Reading and writing.

5    THE COURT:   You cannot read or write?

6    PROSPECTIVE JUROR:   I do not read too well, my

7    writing is okay.  But not -- writing sentences and stuff like

8    that, I can't do that.

9    THE COURT:   You can't write in sentences?

10   PROSPECTIVE JUROR:   No.

11   THE COURT:   Go to the bailiff to the left.

12   This is panel member 1235, Oscar Smith.

13   Mr. Smith your exemption is convicted of a theft or

14   felony?

15   PROSPECTIVE JUROR:   Yes.

16   THE COURT:   Did you receive -- was it a theft

17   case?

18   PROSPECTIVE JUROR:   It has been so long, I have

19   forgot, to tell you the truth.

20   THE COURT:   Did you receive probation?

21   PROSPECTIVE JUROR:   Yes, I did.

22   THE COURT:   Okay.  Now, did you receive deferred

23   probation?  Cause if it is deferred probation, it is not a

24   conviction.

25   PROSPECTIVE JUROR:   No, I received probation as

---

24

25

1   far as I know.
2               THE COORDINATOR:   We can look it up.
3               THE COURT:   We will have someone to run to see.
4   Come on down, sir, how are you this morning?
5       This is Juror No. 1366, Donald Brown.  Mr. Brown, you
6   went for two, two exemptions.
7               PROSPECTIVE JUROR:   Well, that happened when
8   I was 18 years old, I am 66 now.  I haven't had any problems
9   since then.
10              THE COURT:   You do not reside in Dallas County?
11              PROSPECTIVE JUROR:   No, sir.  I live in Blooming
12  Grove, Ellis or Hill County or Navaro.  I have been six
13  months, I haven't figured it out.
14              THE COURT:   It ain't Dallas County?
15              PROSPECTIVE JUROR:   No, sir.
16              THE COURT:   You are free to go.
17      Good morning, ma'am.
18      Juror No. 630, Nenita Cuartelon.  And, ma'am, your
19  exemption is?
20              PROSPECTIVE JUROR:   I am in Grand Prairie, and
21  I don't vote here.
22              THE COURT:   What side -- is it Tarrant County?
23              PROSPECTIVE JUROR:   Tarrant County.
24              THE COURT:   Okay.
25              MR. BRAUCHLE:   Not very much is in Tarrant

1   County.
2               THE COURT:   Come on down, sir.  How are you
3   doing this morning?
4               PROSPECTIVE JUROR:   Fine.  I heard you say that
5   you must be able to vote in the city of Dallas.
6               THE COURT:   You have to be qualified to vote.
7               THE COORDINATOR:   1998, Raul Arredondo.
8               THE COURT:   You don't have to be registered.
9               THE COORDINATOR:   I registered in Dallas County,
10  but I moved to Cedar Hill.
11              THE COURT:   Oh, that's Dallas County?
12              PROSPECTIVE JUROR:   I misunderstood.
13              THE COURT:   That means you get to fill out the
14  questionnaire and stay with us.
15      Good morning, ma'am.
16              PROSPECTIVE JUROR:   I have a misdemeanor.
17              THE COURT:   Juror 1899, Jennifer Deleon.  And
18  what type of misdemeanor?
19              PROSPECTIVE JUROR:   I believe it is a Class B.
20              THE COURT:   You know the --
21              PROSPECTIVE JUROR:   DWI.
22              THE COURT:   DWI and conviction?
23              PROSPECTIVE JUROR:   Uh-huh.
24              THE COURT:   Then misdemeanor theft conviction.
25      You are excused.  There you go, ma'am.

26

27

1       Mr. Smith, if you will come down.  Juror No. 1235 did
2   have a conviction, that was set aside.  Forgery, and --
3               MR. BRAUCHLE:   We will agree, Your Honor.
4               THE COURT:   Okay.  Sir, if you will take it to
5   my left and to the bailiff's office.
6       Sir?
7               PROSPECTIVE JUROR:   Disqualification theft.
8               THE COURT:   Juror 2396, and have you been
9   convicted of theft?
10              PROSPECTIVE JUROR:   I pled guilty to theft.
11              MR. BRAUCHLE:   We will agree.
12              THE COURT:   Did you receive probation.
13              MR. BRAUCHLE:   We will agree?
14              PROSPECTIVE JUROR:   No, they fined me.  I paid
15  my fine.
16              THE COURT:   Paid your fines.  You weren't under
17  any theft of probation.
18              PROSPECTIVE JUROR:   No, sir.
19              THE COURT:   Juror 2396, and you are exempt.  If
20  you will go to my left.
21              PROSPECTIVE JUROR:   Thank you, sir.
22              THE COURT:   Ms. Cuartelon, good news, you get to
23  stay with us, you do live in Dallas County?
24              PROSPECTIVE JUROR:   Even if it is Grand Prairie.
25              THE COORDINATOR:   527, Warren Fyffe.

1               PROSPECTIVE JUROR:   Conviction.
2               THE COURT:   Warren Fyffe.  And were you
3   convicted or did you receive probation?
4               PROSPECTIVE JUROR:   Well, I was convicted, I
5   mean I pled.
6               THE COURT:   Misdemeanor theft; is that correct?
7               PROSPECTIVE JUROR:   No, it is not theft, DWI.
8               THE COURT:   DWI.
9               MR. BRAUCHLE:   We will agree.
10              THE COURT:   Okay.
11              THE COORDINATOR:   1429.
12              THE COURT:   Miguel Martinez.
13              PROSPECTIVE JUROR:   I am not a citizen.
14              THE COURT:   Not a citizen.  And you are exempt.
15  If you will take this to the bailiff.
16              PROSPECTIVE JUROR:   Okay.
17              THE COURT:   How are you doing, sir.
18              THE COORDINATOR:   361, Edward Moore.
19              THE COURT:   Exemption you are claiming,
20  convicted of theft or felony?
21              PROSPECTIVE JUROR:   Yeah.
22              THE COURT:   Which is it?
23              PROSPECTIVE JUROR:   Theft.
24              THE COURT:   Did you receive probation?
25              PROSPECTIVE JUROR:   Yeah.

28

1    THE COURT:   Was it deferred probation?
2    PROSPECTIVE JUROR:   Yeah.
3    THE COURT:   Did you live that probation out?
4    PROSPECTIVE JUROR:   Yeah.
5    THE COURT:   It is not a conviction.
6    MR. BRAUCHLE:   We will agree.
7    THE COURT:   Good morning.
8    THE COORDINATOR:   1721, Martha Carroll.
9    THE COURT:   And ma'am, you cannot read or write?
10   PROSPECTIVE JUROR:   Not very good.
11   THE COURT:   Okay.
12   PROSPECTIVE JUROR:   Sixth grade.
13   THE COURT:   Cannot read very well.
14   MR. BRAUCHLE:   Okay.
15   THE COURT:   You are exempt.   You will take this
16   to the bailiff's office.
17   Thank you for coming.
18   Good morning, sir.
19   PROSPECTIVE JUROR:   I am a little confused on
20   here, you said when you were giving out the instructions.
21   THE COORDINATOR:   1395, Charles Stallings?
22   PROSPECTIVE JUROR:   You said felony or
23   misdemeanor.
24   THE COURT:   Conviction.
25   PROSPECTIVE JUROR:   Well, I copped a plea.

29

1    THE COURT:   Do you recall what the offense was?
2    PROSPECTIVE JUROR:   It was, I think it was
3    called keeping a gambling place.
4    THE COURT:   Did you receive probation?
5    PROSPECTIVE JUROR:   Yeah, there was no jail
6    time.
7    THE COURT:   No jail time.   And do you recall if
8    it was deferred probation?
9    PROSPECTIVE JUROR:   I guess.
10   THE COURT:   Okay.
11   MR. BRAUCHLE:   We will agree.
12   THE COURT:   The attorneys have agreed.
13   Good morning, sir.   1770, James Scott.   You said you were
14   convicted of --
15   PROSPECTIVE JUROR:   Served seven calendar.
16   THE COURT:   Okay convicted of -- felony
17   conviction, thank you.
18   Come down, ma'am.   Good morning.
19   PROSPECTIVE JUROR:   Good morning.
20   THE COURT:   Juror 2276, Annette Thompson.
21   Ms. Thompson, caretaker of an invalid.   And who is that?
22   PROSPECTIVE JUROR:   My 93-year-old
23   mother-in-law.
24   THE COURT:   Okay.   Caretaker.   Appreciate you
25   coming down here.   You are free to go.   Take it to the

30

1    bailiff.
2    Good morning, sir.   Find the number, 1935, John Crayton.
3    And, sir, your exemption you are claiming?
4    PROSPECTIVE JUROR:   Carrying a gun, DWI.
5    THE COURT:   Carrying a gun, weapon case, what, a
6    misdemeanor?
7    PROSPECTIVE JUROR:   Yeah, a misdemeanor.
8    THE COURT:   Did you receive probation.
9    MR. BRAUCHLE:   We will agree?
10   PROSPECTIVE JUROR:   Twelve months probation,
11   42 days in jail.
12   THE COURT:   Okay.   You are free to go.
13   Good morning, sir.
14   THE COORDINATOR:   1026, Jesse Molina .
15   THE COURT:   And you are claiming that you have
16   been convicted of a theft?
17   PROSPECTIVE JUROR:   Felony.
18   THE COURT:   Felony conviction?
19   PROSPECTIVE JUROR:   Yes, Your Honor.
20   THE COURT:   You are free to go.
21   PROSPECTIVE JUROR:   Thank you, sir.   Have a
22   nice day.
23   PROSPECTIVE JUROR:   How are you doing?
24   THE COURT:   Juror No. 1035, Chris Teames.
25   PROSPECTIVE JUROR:   DWI conviction.   It is a

31

1    misdemeanor, right?
2    THE COURT:   Misdemeanor, right.
3    PROSPECTIVE JUROR:   Received probation.
4    MR. BRAUCHLE:   We will agree.
5    THE COURT:   Attorneys agree to release you.
6    PROSPECTIVE JUROR:   Oh, okay, thanks.
7    THE COORDINATOR:   144.
8    THE COURT:   And 144, Jennifer --
9    PROSPECTIVE JUROR:   I had a DWI last year, and I
10   am in school.
11   THE COURT:   DWI last year and in school?   Where
12   are you attending school?
13   PROSPECTIVE JUROR:   ATI.
14   THE COURT:   What is your last name?
15   PROSPECTIVE JUROR:   Gragg.
16   THE COORDINATOR:   That's not her juror number.
17   Hold on.   Let me find her.
18   THE COURT:   Gragg, G-r-a-g-g; is that correct?
19   PROSPECTIVE JUROR:   Yes.
20   THE COORDINATOR:   I don't see her.   Was it 1:30?
21   THE COURT:   Were you originally scheduled for
22   1:30 or --
23   PROSPECTIVE JUROR:   I don't know.   My uncle is
24   the one who told me.   He said it was like 9:00.   I didn't want
25   to get in trouble.

32

**Page 32**

1    THE COURT:   You didn't change your name
2  recently?
3    THE COORDINATOR:   Do you have your driver's
4  license?
5    PROSPECTIVE JUROR:   Uh-huh.
6    THE COORDINATOR:   They can run it in there.
7    THE COURT:   If you would take it in there, it
8  would help us.
9    How are you doing, sir?  Juror 669, John Griffis.  And
10 how does this apply to you, sir?
11    PROSPECTIVE JUROR:   I have a couple of
12 misdemeanors.  I didn't know it was capital murder, and my
13 religious beliefs, I can't be on a seeking the death penalty.
14    THE COURT:   Going back to, you said you have a
15 couple of misdemeanors?
16    PROSPECTIVE JUROR:   Right.
17    THE COURT:   What were the misdemeanors?
18    PROSPECTIVE JUROR:   Drunken disorder.
19    THE COURT:   Where were they held?
20    PROSPECTIVE JUROR:   In Garland.
21    THE COURT:   In municipal court?
22    PROSPECTIVE JUROR:   I guess.
23    THE COURT:   What did you get?
24    PROSPECTIVE JUROR:   Jail time.
25    MR. BRAUCHLE:   We will agree.

33

**Page 33**

1    THE COURT:   Okay.  Here you go, sir.  If you
2  will take this to the bailiff's office on the left.
3    Good morning, sir.
4    PROSPECTIVE JUROR:   Good morning.  How are you'
5    THE COURT:   Just fine.  Juror 213, Abel Becerra.
6    And, sir, how does this apply to you, you are over 70
7  years, you wish to claim?
8    PROSPECTIVE JUROR:   Yes, sir.
9    THE COURT:   Over 70 and wish to claim.  If you
10 will take this to the office on the left and they will make a
11 permanent exemption for you.  Thank you.
12    PROSPECTIVE JUROR:   Good morning.
13    THE COURT:   How are you, ma'am?
14    PROSPECTIVE JUROR:   Fine, thank you.  How are
15 you?
16    THE COURT:   Just fine.
17    PROSPECTIVE JUROR:   Good.
18    THE COURT:   Okay.  Juror No. 1845, Millicent
19 Hollis.
20    How does this apply to you?  You have a child under ten
21 years of age.  And if you are on the jury, won't have
22 adequate.  So you are single?
23    PROSPECTIVE JUROR:   Yes, yes.
24    THE COURT:   Exempt.
25    PROSPECTIVE JUROR:   Thank you.

34

**Page 34**

1    THE COORDINATOR:   Here she go, and school and
2  misdemeanor DWI; is that correct?
3    PROSPECTIVE JUROR:   A DUI last year.
4    THE COURT:   Okay, you are free to go.
5    How are you doing this morning, sir?
6    PROSPECTIVE JUROR:   Pretty good.
7    THE COURT:   Juror 2146, Jeffie Haibrook.
8    And conviction of theft or felony?
9    PROSPECTIVE JUROR:   Took a Class C felony for
10 aggravated assault in 1984.
11    THE COURT:   And that was a conviction; is that
12 correct?
13    PROSPECTIVE JUROR:   I pled guilty.
14    THE COURT:   Did you receive probation?
15    PROSPECTIVE JUROR:   Yes, sir, one year.
16    THE COURT:   One year probation, aggravated
17 assault, was it reduced to assault?
18    PROSPECTIVE JUROR:   No -- well, I don't know
19 what the deal was.
20    THE COURT:   Was it in the State of Texas?
21    PROSPECTIVE JUROR:   It was a pretty weak case
22 against my wife.
23    THE COURT:   Did they make it a Class C?
24    PROSPECTIVE JUROR:   She said I attacked her
25 with a machete, I actually ran her head through a dresser.

35

**Page 35**

1    MR. BRAUCHLE:   We will agree.
2    THE COURT:   Come on down, sir.  How are you
3  doing, sir.
4    Your name is?
5    PROSPECTIVE JUROR:   Victor Flores.
6    THE COURT:   And this is your juror number?
7    PROSPECTIVE JUROR:   Yes.
8    THE COURT:   1553.  And how does this exemption
9  apply to you?
10    PROSPECTIVE JUROR:   I have a five-year-old and a
11 two-year-old, I have to take to school, pick them up.  Their
12 mom work and go to school, so I got to watch them.
13    THE COURT:   So you are not a single parent,
14 their mom is in the household; is that correct?
15    PROSPECTIVE JUROR:   Correct.
16    THE COURT:   I don't think that qualifies you.
17    THE COORDINATOR:   Victor Flores.
18    THE COURT:   But there is another parent in the
19 house.
20    PROSPECTIVE JUROR:   She works and go to school.
21    THE COURT:   He is not a single parent, but wife
22 works and goes to school.
23    MR. BEACH:   We will agree.
24    THE COURT:   Okay.  They agreement.  If you will
25 take this to the bailiff's office.

36

1    PROSPECTIVE JUROR:   Thank you.
2    THE COURT:   Good morning, ma'am.  How are you?
3    PROSPECTIVE JUROR:   Just fine.
4    THE COURT:   Okay, this is Juror No. 537,
5  Rosalinda Minnis.
6    And you have custody of a child under ten years of age?
7    PROSPECTIVE JUROR:   She is eight.
8    THE COURT:   And are you a single parent?
9    PROSPECTIVE JUROR:   I am married.
10    THE COURT:   So is there someone to --
11    PROSPECTIVE JUROR:   No.  My husband
12  self-employed.
13    THE COURT:   You are free to go, take it to the
14  bailiff's office.
15    PROSPECTIVE JUROR:   Thank you.
16    PROSPECTIVE JUROR:   I left the other part of my
17  summons in the car.
18    THE COURT:   Then you have to stay.  That's the
19  penalty for that.  Your name is?
20    PROSPECTIVE JUROR:   Bryan Weaver.
21    THE COURT:   And you recall your number?
22    PROSPECTIVE JUROR:   I don't remember the
23  number that is on there.  I apologize.
24    THE COURT:   That's quiet all right.
25    THE COORDINATOR:   Juror No. 2348.

37

1    THE COURT:   How does those exemptions apply to
2  you, sir?
3    PROSPECTIVE JUROR:   I got a misdemeanor or two
4  on my record.
5    THE COURT:   And what did you get for those?
6    PROSPECTIVE JUROR:   What were they?
7    THE COURT:   Yeah.
8    PROSPECTIVE JUROR:   DUI, possession.
9    THE COURT:   Were you convicted?
10    PROSPECTIVE JUROR:   Well, I -- I -- what it
11  was --
12    MR. BRAUCHLE:   We will agree.
13    THE COURT:   You don't have to go any further,
14  they have agreed.  You are free to go.
15    1760 Alice Hollywood.  Ms. Hollywood, how does this apply
16  to you?
17    PROSPECTIVE JUROR:   Misdemeanor possession of
18  marijuana.
19    THE COURT:   And what did you receive, what was
20  your sentence?
21    PROSPECTIVE JUROR:   A year probation, 24 hours
22  community service.
23    THE COURT:   Was it deferred?
24    MR. BRAUCHLE:   We will agree.
25    THE COURT:   You are free to go.

38

1  You may come down, ma'am.
2    PROSPECTIVE JUROR:   Hello.
3    THE COURT:   Good morning.  How are you?
4    PROSPECTIVE JUROR:   Fine.
5    THE COURT:   Juror No. 2122, Kimberly Darwin.
6  How does this apply to you?
7    PROSPECTIVE JUROR:   I attend college.
8    THE COURT:   You attend college, full time?
9    PROSPECTIVE JUROR:   Uh-huh.
10    THE COURT:   Attending college, where are you
11  going to school?
12    PROSPECTIVE JUROR:   University of Phoenix.
13    THE COURT:   What are you taking?
14    PROSPECTIVE JUROR:   For my M.B.A.
15    THE COURT:   Congratulations.  You are free to
16  go.
17    How are you doing, sir?
18    PROSPECTIVE JUROR:   Pretty good.  You?
19    THE COURT:   I am doing well.
20    This is Juror No. 1230, Randy Aguirre.  You are enrolled
21  in or attending college; is that correct?
22    PROSPECTIVE JUROR:   Yeah.
23    THE COURT:   Where are you going to school?
24    PROSPECTIVE JUROR:   Eastfield.
25    THE COURT:   And you are going full time?

39

1    PROSPECTIVE JUROR:   Yes.
2    THE COURT:   Attending college --
3    MR. BRAUCHLE:   We will agree.
4    THE COURT:   Good luck to you.
5    Juror No. 358, Keith Yun.  And cannot read or write
6  English; is that correct?
7    PROSPECTIVE JUROR:   Some but not --
8    MR. BRAUCHLE:   We will agree.
9    THE COURT:   There you go, sir.  If you will take
10  this to the bailiff's office.
11    How are you doing this morning?
12    PROSPECTIVE JUROR:   All right.  Yourself?
13    THE COURT:   1614, Ceyla Santana.  And you are
14  attending college?
15    PROSPECTIVE JUROR:   Yeah.
16    THE COURT:   Enrolled.  You are free to go.
17    PROSPECTIVE JUROR:   Okay.
18    PROSPECTIVE JUROR:   Good morning.
19    THE COURT:   Good morning, sir.  How are you?
20    PROSPECTIVE JUROR:   Just fine.  And you?
21    THE COURT:   David Richards, 1934.  And you are
22  attending college?
23    PROSPECTIVE JUROR:   Yes, sir.
24    THE COURT:   Where are you attending?
25    PROSPECTIVE JUROR:   Houston Community College

**Page 41**

1  online program.

2  THE COURT:  You are free to go.  Good luck to

3  you.

4  How are you doing this morning, sir?

5  PROSPECTIVE JUROR:  Pretty good.

6  THE COURT:  Juror 447, James Pomes, P-o-m-e-s.

7  And you say you have been convicted of theft other felony?

8  PROSPECTIVE JUROR:  Yes, sir.

9  THE COURT:  Which, is it a theft or felony?

10  PROSPECTIVE JUROR:  It was a felony.

11  THE COURT:  A felony.

12  MR. BRAUCHLE:  We will agree.

13  THE COURT:  There you go, sir.  Thank you.

14  PROSPECTIVE JUROR:  Hi.

15  THE COURT:  How are you doing, sir?

16  PROSPECTIVE JUROR:  I'm okay.

17  THE COURT:  Juror No. 992, Jorge Vasquez.  And

18  cannot read or write?

19  PROSPECTIVE JUROR:  I read better than write.

20  MR. BRAUCHLE:  We will agree.

21  THE COURT:  You are free to go.

22  Did you get a army uniform just so you can get out of

23  duty.  I am just giving you a hard time, okay?

24  PROSPECTIVE JUROR:  Twenty years in this

25  uniform, I wouldn't wear it just for fun.

**Page 41 (right column)**

1  THE COURT:  706, Adam Gaona.  And military

2  service.

3  Good morning.

4  THE COORDINATOR:  277.

5  THE COURT:  Lilly Segura, and enrolled in

6  college?

7  PROSPECTIVE JUROR:  Yes.

8  THE COURT:  Richland?

9  PROSPECTIVE JUROR:  Yes.

10  THE COURT:  There you go.  Take it to the

11  bailiff's office to the left?

12  PROSPECTIVE JUROR:  Good morning, Judge.

13  THE COORDINATOR:  593, Sammy Kennedy.

14  PROSPECTIVE JUROR:  I didn't sign my paper yet,

15  because I am a pastor, and I also work in the school district

16  and I work a lot of the political and legislative figures.

17  That's what I do.  If that exempts me.

18  THE COURT:  No, that is not an exempt.

19  PROSPECTIVE JUROR:  Okay.

20  THE COURT:  Thank you for bringing that to our

21  attention.

22  THE COORDINATOR:  491, Stacy Miller.

23  THE COURT:  Ms. Miller, how are you?

24  PROSPECTIVE JUROR:  I was a trouble maker, I

25  have been convicted of a DWI.  I received a ticket for theft.

**Page 42**

1  I was not arrested.

2  THE COURT:  Ticket for theft.  What happened

3  with that?

4  MR. BRAUCHLE:  We will agree.

5  PROSPECTIVE JUROR:  I paid the fine.

6  THE COURT:  The attorneys agreed, you are free

7  to go?

8  PROSPECTIVE JUROR:  Thank you.

9  THE COURT:  If you will take it to the bailiff's

10  office to my left.

11  Come on down, sir.

12  PROSPECTIVE JUROR:  Good morning, Your Honor.

13  THE COURT:  Your name, sir.

14  PROSPECTIVE JUROR:  Tomas Ramos.  My

15  problem is I cannot read and write.

16  THE COURT:  Cannot read and write.

17  MR. BRAUCHLE:  We will agree.

18  THE COURT:  You are free to go.  Go to the

19  bailiff's window.

20  THE COORDINATOR:  That is number 120?

21  PROSPECTIVE JUROR:  Good morning, Your Honor.

22  THE COORDINATOR:  1270?

23  PROSPECTIVE JUROR:  I had a minor

24  misdemeanor 36 years for attempting to buy beer as a miner

25  with a fake I.D.  They told me it would be expunged from my

**Page 43**

1  record, but due to the seriousness of this, I thought I would

2  bring it to your attention.

3  THE COURT:  I appreciate you bringing it to our

4  attention.  And I think you are still qualified to be on our

5  juror.

6  How are you doing, sir?

7  PROSPECTIVE JUROR:  Just fine.

8  THE COURT:  Juror No. 739, Peter Kisner,

9  enrolled in and attending college.

10  PROSPECTIVE JUROR:  I am.

11  THE COURT:  Where are you going to school?

12  PROSPECTIVE JUROR:  Going to Richland, and I

13  will be going to the college of chiropractic next semester.

14  THE COURT:  If you will just take this to the

15  bailiff.

16  Good morning, sir.  How are you?

17  PROSPECTIVE JUROR:  Good morning.

18  THE COORDINATOR:  944.

19  THE COURT:  James Davis.

20  PROSPECTIVE JUROR:  Yes, sir.

21  THE COURT:  Mr. Davis, how do these apply to

22  you?

23  PROSPECTIVE JUROR:  I just don't think my

24  reading and writing skills are good enough.

25  MR. BRAUCHLE:  We will agree.

1       THE COURT:   You are free to go, sir.
2    How are you, sir?
3        PROSPECTIVE JUROR:   How are you?
4        THE COORDINATOR:   851.
5        THE COURT:   And Bernard Kim.  And how does it
6    apply -- cannot read or write?
7        PROSPECTIVE JUROR:   Not perfectly.
8        THE COURT:   Mr. Kim, what do you do?
9        PROSPECTIVE JUROR:   Framing.
10       THE COURT:   Okay.  I thought I recognized you.
11   You are free to go.  Tell your wife I said hello.
12       THE COORDINATOR:   1320.
13       THE COURT:   Kelly Keeling.  How are you doing?
14       PROSPECTIVE JUROR:   Good.  How are you?
15       THE COURT:   Have custody of a child under ten?
16       PROSPECTIVE JUROR:   Yeah, 11 months.  We are
17   between babysitters.
18       THE COURT:   Okay.  Attorneys are in agreement.
19   And you are free to go.
20       PROSPECTIVE JUROR:   Thank you, sir.
21       THE COURT:   Thank you for coming.
22       691, Javier Guajardo.  And how does this apply to you?
23       PROSPECTIVE JUROR:   DWI.
24       THE COURT:   When did you have that DWI?
25       PROSPECTIVE JUROR:   Like nine years ago.

1        THE COURT:   Nine years ago.
2        MR. BRAUCHLE:   Agree.
3        THE COURT:   You are free to go, sir.
4        THE COORDINATOR:   513, Sue Craig.
5        PROSPECTIVE JUROR:   The word invalid gives me
6    pause, because I think of bed fast.  My husband has health
7    problems and it make me very uncomfortable to leave him alone.
8    He is not bed fast.
9        THE COURT:   The attorneys will agree, Ms. Craig,
10   and you are free to go.
11       PROSPECTIVE JUROR:   Do you need to sign that
12   thing on the back?
13       THE COURT:   No, because -- they are agreeing to
14   let you go.
15       PROSPECTIVE JUROR:   So what do I do with this?
16       THE COURT:   Take it to the bailiff's office to
17   my left and you are free to go.
18       PROSPECTIVE JUROR:   Thank you.
19       THE COURT:   Thank you for coming down.
20       THE COORDINATOR:   2399, Claudia Martin.
21       THE COURT:   Ms. Martin, if you will come down.
22   Okay.  And the exemption is primary caretaker?
23       PROSPECTIVE JUROR:   Well, he is 20 years old,
24   but he is going to have surgery on the 19th that is
25   extensive jaw surgery.  He will be totally incapacitated and

46

1    have to take a special liquid diet and will take about three
2    or four weeks to recover.
3        THE COURT:   The attorneys have agreed and you
4    are free to go.  Thank you for coming down.
5        PROSPECTIVE JUROR:   Thank you.
6        THE COURT:   Good morning, 1534.  I have you
7    pronounce your name, ma'am?
8        PROSPECTIVE JUROR:   Varsha Jayswal.
9        THE COURT:   And cannot read or write English; is
10   that correct?
11       PROSPECTIVE JUROR:   Correct.
12       THE COURT:   Okay.  There you go, ma'am, if you
13   will take this to the bailiff's office, to the left.
14       PROSPECTIVE JUROR:   Now we can go home?
15       THE COURT:   You are free to go.
16       THE COORDINATOR:   1631, Anjela Stock.
17       THE COURT:   How are you doing today, ma'am?
18       PROSPECTIVE JUROR:   Fine.  How are you?
19       THE COURT:   Just fine.  And which is it, how
20   does it apply, theft or felony?
21       PROSPECTIVE JUROR:   Misdemeanor.
22       THE COURT:   Did you receive probation?
23       PROSPECTIVE JUROR:   Uh-huh.
24       THE COURT:   Was it deferred probation?
25       PROSPECTIVE JUROR:   No, I had to see a

47

1    probation officer.
2        THE COURT:   There are two types.  There is
3    straight probation, regular probation, and then there is
4    deferred.  Deferred, if you complete it successfully, you do
5    not have a conviction?
6        PROSPECTIVE JUROR:   I have not completed it.
7        THE COURT:   She is currently on it.
8    You are free to go.
9        THE COORDINATOR:   1611.
10       THE COURT:   Good morning, ma'am, Teresa Penn.
11   And how does this apply to you, ma'am?
12       PROSPECTIVE JUROR:   Well, my problem is my
13   mother is very sick right now.  And is possibly going to go
14   into hospice care and I will be taking care of her.
15       MR. BRAUCHLE:   We will agree.
16       THE COURT:   You are free to go.  Thank you.
17   Good luck to your mother.
18       THE COORDINATOR:   384.
19       THE COURT:   Good morning, ma'am.
20       PROSPECTIVE JUROR:   Good morning.
21       THE COURT:   How are you today?
22       PROSPECTIVE JUROR:   Good.
23       THE COURT:   This is Lashaunda Coleman.  How
24   does this apply to you?
25       PROSPECTIVE JUROR:   A pending DUI.

48

49

1    THE COURT:   Pending DUI, DWI pending.
2    MR. BRAUCHLE:   We will agree.
3    THE COURT:   The attorneys have agreed.  You are
4    free to go.
5    Good morning, ma'am.
6    THE COORDINATOR:   1866, Brenda Davis.
7    THE COURT:   How you today?
8    PROSPECTIVE JUROR:   All right.  I served as a
9    juror in Grand Prairie in September, Dallas County, and I
10   don't mind serving today.  But I left my glasses and I can't
11   fill out no forms, I can't see.
12   MR. BRAUCHLE:   We will agree.
13   THE COURT:   The attorneys have agreed.  You are
14   free to go.
15   PROSPECTIVE JUROR:   All right, I appreciate it.
16   THE COURT:   Sure thing.  Thank you.
17   How are you doing this morning?
18   PROSPECTIVE JUROR:   Fine.  I don't know how to
19   say it.
20   THE COURT:   Juror No. 1596, Thresiamma Johnson.
21   MR. BRAUCHLE:   We will agree.
22   THE COURT:   Okay, the attorneys have agreed.
23   You are free to go.
24   PROSPECTIVE JUROR:   Thank you so much.
25   THE COURT:   Good morning.

1    THE COORDINATOR:   887, Michele Garcia.
2    PROSPECTIVE JUROR:   It's not one of the ones on
3    there.  My mom is in the hospital, she has stage four of colon
4    cancer.
5    THE COURT:   Okay.
6    MR. BRAUCHLE:   We will agree.
7    THE COURT:   Thank you for coming down.
8    PROSPECTIVE JUROR:   How are you doing.
9    THE COURT:   All right, sir.
10   PROSPECTIVE JUROR:   I can't fill it out good.
11   THE COURT:   Juror No. 379, Ramirez Eulalio.  And
12   cannot read and write, sir?
13   PROSPECTIVE JUROR:   I cannot read.
14   THE COURT:   Cannot read, okay.  And you are free
15   to go.
16   How are you doing?  Juror No. 1139, Lorenzo Garza.
17   And how do these apply to you, the exemptions,
18   disqualifications, how do they apply to you?
19   PROSPECTIVE JUROR:   What do you mean?  You
20   mean being fair?
21   THE COURT:   No.
22   MR. BEACH:   We will agree.
23   THE COURT:   The attorneys agree.  If you will
24   take this the bailiff's office on the left.
25   Last but not least.  How are you doing, sir?

50

51

1    PROSPECTIVE JUROR:   I'm fine.
2    THE COURT:   Let me get your juror card, if I
3    may.  Juror No. 1063, Hammad Haider?
4    PROSPECTIVE JUROR:   Yes, sir.
5    THE COURT:   Okay.  How does this apply to you,
6    sir?
7    PROSPECTIVE JUROR:   Well, I can read and write,
8    but I really don't understand a lot of law stuff, all these
9    questions are very confusing, because of the language barrier.
10   MR. BRAUCHLE:   We will agree.
11   THE COURT:   The attorneys have agreed.  And if
12   you will take these --
13   PROSPECTIVE JUROR:   I tried to answer.
14   THE COURT:   We appreciate that.
15   (Recess taken.)
16   **Voir Dire Examination - Afternoon Session**
17   THE COURT:   I never thought I would see so many
18   smiling faces.  If you have trouble hearing me, raise your
19   hand and I will speak a little louder.
20   My name, name is Ernest White.  I welcome you the first
21   time, even those that have been here before to the Frank
22   Crowley courthouse.  The reason why we have accumulated so
23   many of you down here, this is the first step of several steps
24   in the jury selection process for a death-penalty case.  And
25   we have done an earlier session this morning with a group just

1    as large as you-all here.  So hopefully we got the bugs out of
2    it just a little bit and we will move you along a lot swiftly
3    than we did this morning.
4    The process shouldn't take too long, but there are steps
5    that we do have to go through.  I am going to speak with you
6    briefly.  We have a questionnaire.  We will go through the
7    exemptions and disqualifications.  Once you have filled out
8    the questionnaire, you are free to go.  I will say this again,
9    but as you fill out the questionnaire, if you will put the
10   juror number on the top of the front page of the
11   questionnaire.  You don't have them at this time.  But once
12   they are distributed to you, if you will do that.
13   Let me introduce the parties.  My name as Ernest White.
14   You may have seen my name on the summons.  Individuals seated
15   to my far left, Marshall McCallum.
16   MR. MCCALLUM:   Good afternoon?
17   THE COURT:   Andrea Handley.
18   MS. HANDLEY:   Good afternoon.
19   THE COURT:   Andy Beach.
20   MR. BEACH:   Good afternoon.
21   THE COURT:   And Kevin Brooks.
22   MR. BROOKS:   Good afternoon.
23   THE COURT:   All of those individuals that I just
24   introduced are Assistant District Attorneys that will be
25   involved in presenting the case once we get further down the

52

53

1  road and start presenting evidence.
2       The individuals to my right are Paul Brauchle.
3              MR. BRAUCHLE:   Good afternoon, ladies and
4  gentlemen.
5              THE COURT:   And William Karo Johnson.
6       MR. JOHNSON:   Howdy.
7              THE COURT:   Those two individuals represent the
8  defendant, the citizen accused, Wesley Ruiz, who is seated to
9  my immediate right.
10      As I said earlier -- you need me to speak a little
11 louder.  Those individuals that are seated to my right, the
12 individuals seated to my right is Wesley Ruiz, he is the
13 individual that is charged.  He is the defendant in this
14 matter.  The defendant accused.
15      And I must go over a few principles of law.  I am going
16 to streamline them.  Because once we get in a more private
17 setting, the attorneys on both sides will go over these
18 issues.
19             Mr. Ruiz is charged with the offense of capital murder.
20 And the allegation that he is facing is that he committed the
21 offense knowingly and intentionally caused the death of Mark
22 Nix.  And it is further alleged that the decedent, Mark Nix,
23 was a peace officer acting in the lawful discharge of official
24 duty, and that the defendant, Mr. Ruiz, knew at the time at
25 the commission of the offense that the defendant was a peace

1  officer.
2       In this matter, the State is seeking the death penalty.
3       Mr. Ruiz is charged by a document known as an indictment.
4  And I am sure many of you have heard this term before.  And
5  what the grand jury indictment or return of an indictment
6  essentially means is that another group of individuals heard
7  testimony and made the decision that there is sufficient
8  evidence to hold Mr. Ruiz in this charge over for trial.  An
9  indictment, the return of a grand jury indictment in and of
10 itself is not evidence.  You can't say where there is smoke,
11 there is fire.  He must have done something; so therefore, he
12 is guilty of something.  It is basically a charging document
13 that let's the accused know the nature of the offense that he
14 is standing charged with.  It let's him know the manner and
15 means or how the State says that he has done this particular
16 offense.
17      And lastly, it brings the Court -- the charge and the
18 accused into my particular court for disposition purposes.
19 That's all it is.  It is no evidence and it cannot be
20 considered in any form or fashion as evidence.
21      All individuals charged with a criminal offense are
22 presumed to be innocent.  They have what is known as the
23 presumption of innocence.  And what that means, ladies and
24 gentlemen, is that unless the State proves this case or any
25 other case beyond a reasonable doubt, the threshold of the

54

55

1  burden that they must meet in all criminal cases, the accused
2  is presumed innocent.  So once again you can't say, well, he
3  is here, he must have been arrested, he is charged, he has
4  been indicted, none of that factors, none of those factors are
5  any evidence of guilt whatsoever and all individuals charged
6  with a criminal offense start with the presumption of
7  innocence.
8       The burden of proof as I said earlier is upon the State
9  of Texas.  The burden of proof is beyond a reasonable doubt.
10 It is the standard used in all 50 states.  It is the highest
11 burden of proof that exists in our criminal justice system --
12 or our legal justice system I should say.  The burden is not
13 100 percent proof.  But it is the highest standard of proof.
14      Texas used to recognize a definition for beyond a
15 reasonable doubt.  Texas no longer recognizes a definition for
16 this term.  That's the burden of proof however that will be
17 applied in this particular case as it is in all criminal
18 cases.
19      The accused in all cases, all criminal cases, has an
20 absolute right not to testify in their proceeding.  What is
21 important about that right is that if during the course of a
22 trial, an individual elects to exercise his Fifth Amendment
23 right and not take the stand and not testify, that right, the
24 fact that he does not testify, cannot and must not be used
25 against him.  It is essentially a nonissue.  It can't be

1  considered against him.  You can't say, well, he must be
2  guilty of something, he must be hiding something because he
3  didn't testify or she didn't testify.  That's a right
4  guaranteed to everyone charged with a criminal offense in this
5  country.
6       The punishment and I will just state briefly because we
7  will go into it individually during the second phase when you
8  will be questioned by the attorneys in a more private setting,
9  two options, life without parole or death, that's the two
10 options for this particular case that we will be trying.
11      During the course of the trial, I would suspect that
12 there will be different experts that may be testifying and you
13 will hear expert testimony on certain matters and issues.
14 Those testimonies come in the form of opinion testimony, which
15 you are entitled to hear and should also go into evaluating
16 how you reach your decision based upon everything that has
17 been presented.
18      As I said, those little concepts of law that I just
19 discussed with you, I am doing so in a nutshell version, I am
20 streamlining it for you, because I know each of you want to
21 get out of here as quickly as you can.  And once again when
22 you meet with the attorneys in a more private setting, they
23 will good over them in greater detail and more depth.
24      What I am going to do at this point now is start going
25 through the exemptions and disqualifications.  If any of those

56

1    items that I bring up apply to you, if you will go line up on
2    the wall to my left, your right. And as opposed when you hear
3    one, you may want to run down and be the first one down here
4    and be the first one to leave. But if we do it in orderly
5    fashion, I think everyone will get to go. It won't take much
6    longer and the process will be a lot smoother. If you think
7    one of the exemptions apply to you and you don't know, come on
8    up, we will address it. And if it does apply, you will be
9    free to go; and if it does not, you will have to fill out the
10   questionnaires. They will start handing out the
11   questionnaires in a few minutes. Once again as you start
12   filling out the questionnaire, if you will put your juror
13   number on the top of that questionnaire.
14        Okay. The exemptions, I will start with the exemptions.
15   And let me just point out, the exemptions are an aspect that
16   you are entitled to use to be exempt from jury duty. If you
17   choose not to exercise that exemption, you have that ability
18   to do so. If one of the exemptions apply to you, but you feel
19   like you would like to serve on this jury or any other jury,
20   you can just let us know, you still have the right to remain
21   in the panel.
22        Number one, if you are over the age of 70 years, that is
23   a legal exemption recognized in the State of Texas. So if
24   that applies to you, you can use that if you wish to be
25   excused at this time.

57

1        If you have legal custody of a child younger than ten
2    years of age and being on a jury or serving on the jury
3    requires you leaving the child without -- or children without
4    adequate supervision.
5        You are a student of public or private or secondary
6    school.
7        You are a person enrolled in and actually attending -- in
8    attendance at an institution of higher education. If you are
9    attending college basically is what that means.
10       If you are an officer or an employee of the Senate, the
11   House of Representatives or any department, commission board,
12   office or other agencies in the legislative branch of
13   government.
14       If you are the primary caretaker of a person who is
15   invalid and unable to care for themselves. And if you work in
16   a nursing home, that does not apply.
17       If you are a member of the U.S. military forces serving
18   on active duty and about to be deployed -- I'm sorry, sir.
19            PROSPECTIVE JUROR:  What about a parent son
20   who just undeployed from Iraq, he just came home yesterday.
21            THE COURT:  Why don't you get in the line, sir,
22   and we will address that.
23       Okay, if we have anyone in here younger than 18 years,
24   that's a disqualification, you may go to the line to my left.
25       You must be a citizen of this state and the county of

58

1    Dallas County. Just to make things move a little smoother,
2    this morning we had folks that lived in Grand Prairie, Cedar
3    Hill, DeSoto, all part of Dallas County.
4        You must be qualified under the Constitution and laws to
5    vote in the county -- in Dallas County essentially, and
6    what -- that doesn't mean if you are not registered you don't
7    get out. I don't know if that is your question, sir.
8            PROSPECTIVE JUROR:  I was just going to ask.
9    what if someone was planning to move out of state in the next
10   month?
11            THE COURT:  Go ahead and line up and we will
12   address that.
13       Yes, sir?
14            PROSPECTIVE JUROR:  What about if you have to
15   pick up your child from school?
16            THE COURT:  That is not an exemption. But why
17   don't you go ahead and line up, I think -- in all honesty, I
18   think that is not going to cut it?
19            PROSPECTIVE JUROR:  The reason why, I was
20   supposed to be here this morning, but what happened traffic
21   was so bad from 830, so I took my son to school so I don't
22   have anybody to pick him up.
23            THE COURT:  Why don't you get in the line and we
24   will discuss that issue. That doesn't fall under the legal
25   disqualifications or exemptions. We will at least address it

59

1    and do what we can in that respect.
2        You must be of sound mind and good moral character. And
3    let me say this, if you are intending on using the sound mind
4    aspect, we want a doctor's note.
5        You must be able to read and write. And I will add on to
6    that, the English language. So you must be able to read and
7    write English.
8        Must not have served on a jury in county court during the
9    last three months or district court during the last six
10   months. Must not have been a juror in either county court for
11   the past three months or preceding three months or district
12   court for the preceding six months.
13       Must not have been convicted of a misdemeanor theft or a
14   felony. No misdemeanor theft convictions or felony
15   convictions.
16       And you must not be currently under indictment or legal
17   accusation for a misdemeanor theft or felony.
18       If we can hand out the questionnaires at this time. And
19   this is, folks, for you filling out the questionnaires, this
20   is obviously a very important process, this is a serious case,
21   and attorneys on both sides as well as the accused have the
22   absolute right to a fair trial. So the questionnaire is
23   very -- somewhat lengthy, but I do ask you to take the time to
24   answer the questions. So if you do have any questions, let us
25   know. Thank you.

60

1    And for those of you against the wall, we will be calling
2   you up, because the interpreter has to leave, we are going to
3   deal with the non-English speaking folks first. But to make
4   the process move a little swiftly, if you can have your juror
5   number, because we have to record that, if you will have that
6   when you come up, that helps speed up the process.
7    One additional thing on the qualifications, if you can
8   put a "B" after the juror number, that would help us out as
9   well.
10   __INDIVIDUAL EXEMPTIONS/DISQUALIFICATIONS__
11    (Following proceedings interpreted by Jose
12    Arredondo as needed.)
13    PROSPECTIVE JUROR:  I don't read that good.
14    THE COURT:  Juror No., do you have your juror
15   number?
16    PROSPECTIVE JUROR:  Uh-huh.
17    THE COURT:  Were you in the line?
18    THE COORDINATOR:  1051.
19    THE COURT:  Okay. And if I can get defense
20   counsel.
21    PROSPECTIVE JUROR:  I got an eighth grade
22   education.
23    THE COURT:  Juror No. 1051, Robert Eugene
24   Chadwick. Mr. Chadwick, you said you do not read?
25    PROSPECTIVE JUROR:  No, sir, not that good.

61

1    THE COURT:  And how far did you go in school,
2   sir?
3    PROSPECTIVE JUROR:  I went to ninth, I didn't
4   graduate, I quit when I was 15.
5    THE COURT:  And as far as the information -- you
6   haven't seen the questionnaire.
7    Mr. Brauchle.
8    MR. BRAUCHLE:  We will agree.
9    THE COURT:  If you will take this to the
10   bailiff's office on the left. Thank you.
11    PROSPECTIVE JUROR:  Thank you.
12    THE INTERPRETER:  Vietnamese speaker.
13    THE COURT:  Juror No. 631 speaks Vietnamese,
14   does not understand English. And we excuse you.
15    THE COORDINATOR:  Your last name?
16    PROSPECTIVE JUROR:  S-i-u.
17    THE COURT:  What language?
18    PROSPECTIVE JUROR:  Dry (phonetic).
19    THE COORDINATOR:  Juror No. 451.
20    THE COURT:  And ma'am, the language that you
21   speak if you could say for the court reporter.
22    PROSPECTIVE JUROR:  Dry.
23    THE COORDINATOR:  1614.
24    THE COURT:  Sir, how does the exemption -- do
25   not speak English?

62

1    PROSPECTIVE JUROR:  No, no English.
2    THE COURT:  1614, Dejesus Rojas is excused as do
3   not speak English.
4    THE COORDINATOR:  2102, Idaneo Montes.
5    PROSPECTIVE JUROR:  I can't understand very,
6   very well the English nor write either.
7    MR. BRAUCHLE:  We will agree.
8    THE COURT:  You are free to go.
9    THE COORDINATOR:  2065.
10    THE COURT:  This is Maria Garcia, 2065. Does
11   not speak English?
12    PROSPECTIVE JUROR:  No.
13    THE COURT:  Thank you very much.
14    If you will come up, sir. How are you doing?
15    PROSPECTIVE JUROR:  I work out at Northwest
16   Division.
17    THE COURT:  1354, is the officer that worked
18   with Officer Nix. And we will excuse you, sir?
19    PROSPECTIVE JUROR:  Thank you.
20    THE COORDINATOR:  105.
21    THE COURT:  Epifanio Soto. And you do not speak
22   English?
23    PROSPECTIVE JUROR:  No, I really don't.
24    THE COURT:  Juror No. 105 is excused.
25    THE COORDINATOR:  748, Sonia Barbosa.

63

1    THE COURT:  You do not speak English?
2    PROSPECTIVE JUROR:  No, just a little bit.
3    THE COURT:  Okay, Juror 748 is excused.
4    THE COORDINATOR:  2220.
5    THE COURT:  And Jose Castellanos, you do not
6   speak English?
7    PROSPECTIVE JUROR:  No.
8    THE COURT:  You are free to go, sir.
9    PROSPECTIVE JUROR:  Thank you, sir.
10    THE COORDINATOR:  727.
11    THE COURT:  And Rosa Rodriguez. Do you not
12   speak English?
13    PROSPECTIVE JUROR:  A little bit, not much.
14    THE COURT:  Juror 727 is excused.
15    THE COORDINATOR:  2245.
16    THE COURT:  Mr. Ramirez, how are you, sir? You
17   do not speak English; is that correct?
18    PROSPECTIVE JUROR:  No, just a little bit.
19    THE COURT:  And you also indicated that you
20   cannot read or write; is that correct?
21    PROSPECTIVE JUROR:  Yeah.
22    THE COURT:  2245 is excused.
23    THE COORDINATOR:  2000.
24    THE COURT:  I believe the attorneys have agreed
25   to excuse you. Thank you for coming down.

64

1     THE COORDINATOR:   623-B, Samara Allen.
2     THE COURT:   How do those disqualifications apply
3  to you?
4     PROSPECTIVE JUROR:   I have two small children.
5     THE COURT:   Single parent?
6     PROSPECTIVE JUROR:   Yes, sir, I am.
7     THE COURT:   You are excused, ma'am.
8     PROSPECTIVE JUROR:   Thank you.
9     PROSPECTIVE JUROR:   Hello.
10    THE COURT:   Hello.  Juror No. 437 Marta
11  Salazar-panigua.
12    PROSPECTIVE JUROR:   Salazar is fine.
13    THE COURT:   How do the exemptions apply?
14    PROSPECTIVE JUROR:   I just got custody two of my
15  grandchildren, one is six and the other one is nine, and I am
16  a graduate student at Texas A&M Commerce.
17    THE COURT:   How are you doing, sir?
18    PROSPECTIVE JUROR:   I am doing good.  And you.
19    THE COURT:   Juror 2196.  How do the exemptions
20  apply to you.
21    PROSPECTIVE JUROR:   I have two kids, a
22  three-year-old daughter and a five-year-old son, and only one
23  vehicle, plus I work for Dallas County, in the sheriff's
24  department and I watch this guy over in the West Tower.
25    MR. BRAUCHLE:   We will agree.

65

1     THE COURT:   How are you doing?
2     PROSPECTIVE JUROR:   Fine.
3     THE COURT:   1868, Elsie Anthony.  How does the
4  exemption apply to you?
5     PROSPECTIVE JUROR:   I am a single parent.
6     THE COURT:   Children under the --
7     PROSPECTIVE JUROR:   I'm sorry.
8     THE COURT:   How old are your children?
9     PROSPECTIVE JUROR:   I have a nine-year-old.
10    THE COURT:   There you go.
11  Hello, ma'am, how are you?
12    PROSPECTIVE JUROR:   I have a nine- and
13  six-year-old.
14    THE COURT:   This is Juror No. 1238, Ivette
15  Alonzo, and a nine- and six-year-old.  And are you a single
16  parent?
17    PROSPECTIVE JUROR:   I am in the middle of the
18  divorce.
19    THE COURT:   There you go.
20  How are you doing, sir?
21    PROSPECTIVE JUROR:   Did I hear you say the age
22  of 70?
23    THE COURT:   Yes, sir.
24    PROSPECTIVE JUROR:   I am 72, but I do have a
25  health issue too.

66

1     THE COURT:   He is a picture of good health.  In
2  fact when you go to the room in the back, if you no longer
3  wish to come down at all, claim it and you shouldn't even get
4  these notices, just go to the window right there.
5     Hello, sir.  Yes, sir?
6     PROSPECTIVE JUROR:   I have a nine-year-old girl
7  that I have to take care of her.
8     THE COURT:   This is Juror 1274, Bienvenido
9  Liriano.  And, sir, you say you have custody of a child under
10  ten?
11    PROSPECTIVE JUROR:   Yes.
12    THE COURT:   And are you a single parent?
13    PROSPECTIVE JUROR:   I am married.  My wife
14  works 12 hours a day.
15    THE COURT:   Agreed.  Here you go, sir.
16  How are you, sir?
17    PROSPECTIVE JUROR:   All right.  And you.
18    THE COURT:   Just fine.  Juror No. 380, Ronald
19  Shaw.  How does the exemption apply to you?
20    PROSPECTIVE JUROR:   I have a child under ten
21  and I am in college now.
22    THE COURT:   Child under ten and in college.  If
23  you will take these to the bailiff's office, please.
24    Hello.
25    PROSPECTIVE JUROR:   How are you?

67

1     THE COURT:   Just fine.  How are you?  Juror No.
2  1101, Brahama Seth?
3     PROSPECTIVE JUROR:   Yes, sir.
4     THE COURT:   And how do these exemptions --
5     PROSPECTIVE JUROR:   I work full time, I am also
6  doing my masters degree and taking a class and doing my
7  thesis.
8     MR. BRAUCHLE:   Didn't hear.
9     THE COURT:   Works full time and also working on
10  her master degree and doing her thesis.
11    MR. BRAUCHLE:   Were you attending school?
12    PROSPECTIVE JUROR:   I am doing it at the
13  University of Texas at Arlington, but I work in Mesquite.
14    MR. BRAUCHLE:   We will agree.
15    THE COURT:   Hello, sir.  How are you?
16    PROSPECTIVE JUROR:   All right.
17    THE COURT:   Juror No. 1093, Shelton Jose.  How
18  does the exemption apply to you?
19    PROSPECTIVE JUROR:   I don't have nobody to watch
20  my son.
21    THE COURT:   You are a single parent?
22    PROSPECTIVE JUROR:   Yeah.
23    THE COURT:   How old is your son?
24    PROSPECTIVE JUROR:   Nine months.
25    MR. BRAUCHLE:   Agree.

1    THE COURT:   Okay, there you go, sir.

2    How are you, sir?

3        PROSPECTIVE JUROR:   Exemption on the back for

4    child under ten.

5        THE COURT:   Juror No. 2347, Anthony Jackson.

6    You say you have a child under ten?

7        PROSPECTIVE JUROR:   Yes, sir.

8        THE COURT:   And you are the sole caretaker for

9    the child.

10       PROSPECTIVE JUROR:   Yes, sir.

11       THE COURT:   There you go, sir.

12   How are you today, ma'am?

13       PROSPECTIVE JUROR:   Fine.  And how are you?

14       THE COURT:   Just fine.  This is Juror No. 1569,

15   April Simmons.  And how does the exemption apply to you.

16       PROSPECTIVE JUROR:   A child under the age of

17   ten.

18       THE COURT:   And are you a single parent?

19       PROSPECTIVE JUROR:   Yes I am.

20       THE COURT:   Single parent, child under the age

21   of ten.  Here you go, ma'am.

22       PROSPECTIVE JUROR:   Thank you.  Have a good

23   day.

24       THE COURT:   You too, thank you.

25   Sir, if you will come up.  How are you doing today?

---

1        PROSPECTIVE JUROR:   I am doing good.  I left my

2    reading glasses.

3        THE COURT:   I'm lost without mine.  So I know

4    how you feel.  Juror No. 451, Clayton Brooks.  And Mr. Brooks

5    how do the exemptions apply to you?

6        PROSPECTIVE JUROR:   Can I just repeat what I

7    said to you.

8        THE COURT:   Okay, he forgot his reading glasses.

9        MR. BEACH:   Actually, Judge, I know Mr. Brooks,

10   so it is probably good we agree.

11       THE COURT:   If I didn't need mine I would say

12   you didn't need mine.

13       THE COORDINATOR:   What was his number again?

14       THE COURT:   451.

15       THE COORDINATOR:   He was for 8:30.

16       THE COURT:   You are free to go, just go to my

17   left.  That person before him.

18   Okay, Juror 1269, Nakia Wallace.  How does the exemption

19   apply to you?

20       PROSPECTIVE JUROR:   I have two children, ten and

21   five.  And I don't have adequate care for them after school.

22       MR. BRAUCHLE:   We will agree.

23       THE COURT:   Okay.  Ms. Wallace, you are free to

24   go.

25       PROSPECTIVE JUROR:   Okay.

---

1        THE COURT:   How are you doing, ma'am?

2        PROSPECTIVE JUROR:   I'm great.  How are you?

3        THE COURT:   Just fine.  Juror 667, Christion

4    Cofer.  And Ms. Cofer, how does this apply to you?

5        PROSPECTIVE JUROR:   I have a four- and

6    five-year-old that once they get out of school, I don't have

7    anyone to get them.

8        MR. BRAUCHLE:   Agree.

9        THE COURT:   You are free to go.  If you will

10   just take this to the bailiff's office?

11       PROSPECTIVE JUROR:   Thank you.

12       THE COURT:   Thank you for coming down.

13   Hello.

14       PROSPECTIVE JUROR:   I actually was already here

15   this morning, I just got misinformation.  I already did the

16   big packet, I shouldn't be here.

17       THE COURT:   You are all done, but you are

18   claiming no exemption?

19       PROSPECTIVE JUROR:   No.

20       THE COURT:   You are free to go, do I need to

21   take that or...

22       THE COORDINATOR:   Juror No. 462.

23       THE COURT:   Mr. Bridgewater, David Bridgewater.

24   Mr. Bridgewater.

25       PROSPECTIVE JUROR:   I go to Dallas Christian

---

1    College.

2        THE COURT:   Okay.  You are excused, sir.

3    Juror No. 1785, Steven Nguyen.

4        PROSPECTIVE JUROR:   Yes, sir.

5        THE COURT:   Mr. Nguyen, how do the exemptions

6    apply to you?

7        PROSPECTIVE JUROR:   I have two daughters, six

8    and two years old.

9        MR. BRAUCHLE:   We will agree?

10       PROSPECTIVE JUROR:   And I am currently a student

11   at T.C.C.

12       THE COURT:   Okay, sir, you are free to go.  If

13   you will just take this to the bailiff's office.

14       THE COORDINATOR:   1639.

15       THE COURT:   Dan Prasasouk?

16       PROSPECTIVE JUROR:   Yes, sir.

17       THE COURT:   How do the exemptions apply to you?

18       PROSPECTIVE JUROR:   What does that mean?

19       THE COURT:   Why do you feel that you are not

20   eligible to be on the jury?

21       PROSPECTIVE JUROR:   Probably I won't understand.

22       THE COURT:   Won't understand?

23       PROSPECTIVE JUROR:   Yes, sir.

24       THE COURT:   All right.  Sir, I will excuse you.

25   If you will take this to my left to the bailiff's office.

72

73

```
1        PROSPECTIVE JUROR:   Hello.
2        THE COURT:   Hello, ma'am.  How are you?
3        PROSPECTIVE JUROR:   Fine.  You?
4        THE COORDINATOR:   1393.
5        THE COURT:   Shajuana Small.  How do the
6   exemptions apply to you?
7        PROSPECTIVE JUROR:   I am a college student.
8        THE COURT:   You are free to go.
9        PROSPECTIVE JUROR:   Thank you.
10       THE COURT:   Thank you for coming down.
11   Hello, sir.
12       PROSPECTIVE JUROR:   Hello.
13       THE COURT:   You doing all right?
14       PROSPECTIVE JUROR:   Yes, sir.
15       THE COURT:   Juror No. 1668, Daren Coutee.  And
16   how do the exemptions apply to you?
17       PROSPECTIVE JUROR:   Just one, I have a child
18   that is under ten.
19       THE COURT:   Are you a single parent?
20       PROSPECTIVE JUROR:   No, sir.  But my wife and I
21   work kind of odd shifts and it would be a lapse time in
22   between where the day care he is at is able to watch him.  So
23   we don't have family here.
24       THE COURT:   To take care of him?
25       PROSPECTIVE JUROR:   Yes, sir.
```

```
1        THE COURT:   Okay, you are free to go.  If you
2   will take this to the bailiff's office to my left.
3        Hello, sir?
4        PROSPECTIVE JUROR:   Hi.
5        THE COURT:   How are you doing?
6        PROSPECTIVE JUROR:   I'm fine.
7        THE COURT:   Juror No. 1780, Howard Perkins.
8   Mr. Perkins, how do the exemptions apply to you?
9        PROSPECTIVE JUROR:   I'm over 70.
10       THE COURT:   I would say not a day over 60.  Sir,
11   if I can, if you want to make it a permanent exemption, when
12   you go to the office to my left, the bailiff's office, let
13   them know you want to make it permanent?
14       PROSPECTIVE JUROR:   How are you?
15       THE COURT:   Just fine.  How are you doing, sir?
16       THE COORDINATOR:   2263.
17       THE COURT:   You are Jerome Williams?
18       PROSPECTIVE JUROR:   Yes, sir.
19       THE COURT:   How does this apply to you?
20       PROSPECTIVE JUROR:   I have a family, relative
21   who might be executed right now due to a murder charge and
22   this is like a real personal --
23       MR. BRAUCHLE:   Agree.
24       THE COURT:   You are free to go.
25       THE COORDINATOR:   1293.
```

74

75

```
1        THE COURT:   Juror No. 1293, Kimberly Hermes?
2        PROSPECTIVE JUROR:   Sharp now.  I don't know if
3   it falls in play or not.  My husband got laid off, and he has
4   been doing job interviews and he is waiting to hear from two
5   different places, so I won't have anybody to watch my
6   two-and-a-half-year-old if he gets the job.
7        MR. BRAUCHLE:   Fine with me.
8        THE COURT:   If you will take that to the
9   bailiff's office.
10       THE COORDINATOR:   959.
11       THE COURT:   Ms. Hedgeman, if you will come a
12   little closer.  How do the exemptions apply to you?
13       PROSPECTIVE JUROR:   I go to grad school.
14       THE COURT:   Grad school.  Where are you going.
15       PROSPECTIVE JUROR:   Texas A&M Commerce.
16       THE COURT:   What are you taking?
17       PROSPECTIVE JUROR:   Going to become a math
18   teacher, college algebra.
19       THE COORDINATOR:   2348.
20       THE COURT:   Billy Morrison.  Mr. Morrison how
21   are you doing today.  Are you claiming over 70?
22       PROSPECTIVE JUROR:   No, I'm 64.  Just had one.
23   I wish I could.  No, I am taking care of my brother at this
24   time.  He had colon cancer surgery and he is staying with me.
25       THE COURT:   He is invalid.
```

```
1        PROSPECTIVE JUROR:   Yes.  Has to be bandaged
2   and open.
3        THE COURT:   Okay, you are free to go.  If you
4   will take that to the bailiff's office.
5        How are you doing, ma'am?
6        PROSPECTIVE JUROR:   1489, Willie Jones.
7        THE COURT:   Ms. Jones, what exemption are you
8   claiming today?
9        PROSPECTIVE JUROR:   I take care of a little old
10   lady.
11       THE COURT:   You need to speak a little bit
12   louder, so the attorneys can hear you?
13       PROSPECTIVE JUROR:   I take care of a 73-year-old
14   lady.  She can't get around, anything.
15       MR. BRAUCHLE:   We will agree.
16       THE COURT:   All right.
17       How are you doing?
18       PROSPECTIVE JUROR:   I am the parent with the
19   soldier that just came home yesterday.
20       THE COURT:   Okay.  This is the father of the
21   soldier that just came home yesterday.
22       MR. BRAUCHLE:   We will agree?
23       PROSPECTIVE JUROR:   Thank you.
24       THE COURT:   2371.
25       1024, Ms. Arias, how are you doing today?
```

*Belinda G. Baraka, Official Court Reporter*
*214.653.5803*

1    PROSPECTIVE JUROR:   Fine, thank you.
2    THE COURT:   What is your exemption?
3    PROSPECTIVE JUROR:   My mother just moved in
4  she is 80 years old.  She is very brittle diabetic.  I am a
5  nurse and I take care of her.  I inject her four times a day,
6  and it is harder if I am not around.
7    MR. BRAUCHLE:   We will agree.
8    PROSPECTIVE JUROR:   Thank you.
9    THE COURT:   Thank you.
10    THE COORDINATOR:   1813.
11    THE COURT:   How are you doing, Ms. Clanton?
12    PROSPECTIVE JUROR:   I usually don't ask to get
13  out of jury duty.  I really need to.  I don't have much -- my
14  husband has bone cancer.
15    MR. BRAUCHLE:   We will agree.
16    THE COURT:   You know you don't have to go any
17  further, we appreciate you coming down for that.
18    PROSPECTIVE JUROR:   If it was for a day, it
19  would be fine.
20    THE COURT:   We understand.
21    PROSPECTIVE JUROR:   Thank you.
22    THE COURT:   Best of luck to you.
23    THE COORDINATOR:   696.
24    THE COURT:   Frank Pope.  Mr. Pope, how are you
25  doing, sir?

1    PROSPECTIVE JUROR:   If I was doing any better, I
2  would think the deck was stacked.  Your Honor, my bride of 41
3  years is disabled with a brain tumor, two of us worked --
4    MR. BRAUCHLE:   We will agree.
5    THE COURT:   Sorry to hear that?
6    PROSPECTIVE JUROR:   Well, I wasn't looking for
7  sympathy, but I appreciate your --
8    THE COURT:   Certainly.  And we appreciate you
9  coming down.  If you will just take it to the bailiff's
10  office.
11    THE COORDINATOR:   211.
12    THE COURT:   Tyrese Hamilton.  Mr. Hamilton, how
13  are you doing today?
14    PROSPECTIVE JUROR:   Fine.  How about yourself?
15    THE COURT:   You are not a resident of Dallas
16  County?
17    PROSPECTIVE JUROR:   No.
18    THE COURT:   What county are you a resident of?
19    PROSPECTIVE JUROR:   Tarrant County.
20    THE COURT:   Take this to the bailiff's office.
21    THE COORDINATOR:   2101.
22    THE COURT:   Mr. Battiest, how are you doing?
23    PROSPECTIVE JUROR:   Fine.
24    THE COURT:   Not a resident of Dallas County?
25    PROSPECTIVE JUROR:   I live in Mansfield, but I

78

1  receive my mail in Grand Prairie.
2    THE COURT:   You are exempt.  Thank you very
3  much for coming down.
4    PROSPECTIVE JUROR:   Thank you.
5    THE COORDINATOR:   1876.
6    THE COURT:   Salina Perez, how are you doing
7  today?
8    PROSPECTIVE JUROR:   Not good.
9    THE COURT:   I'm sorry to hear that.
10    PROSPECTIVE JUROR:   I just recently had a
11  miscarriage a few days ago, and I am still having a lot of
12  cramping.
13    MR. BRAUCHLE:   We will agree.
14    THE COURT:   I appreciate you coming down.  Sorry
15  to hear about that.
16    PROSPECTIVE JUROR:   Thank you.
17    THE COORDINATOR:   1216.
18    THE COURT:   Mr. Jackson, how are you doing
19  today?
20    PROSPECTIVE JUROR:   Good.  How are you?
21    THE COURT:   And your exemption?
22    PROSPECTIVE JUROR:   I am living in California,
23  moving to Santa Monica, California in January.
24    THE COURT:   Thank you for coming down.  If you
25  will take it to the bailiff's office.

79

1    How are you doing, sir?
2    PROSPECTIVE JUROR:   I left my top part in the
3  pickup.
4    THE COURT:   We will have you here.
5    THE COORDINATOR:   John Davis, Juror No. 2219.
6    THE COURT:   And your exemption, sir?
7    PROSPECTIVE JUROR:   I have trouble reading and
8  writing, mostly writing.
9    THE COURT:   Okay, we will excuse you, you are
10  exempt.  If you will let them know in the bailiff's office,
11  just tell them that the Judge said it was okay, since you
12  don't have any paperwork.
13    PROSPECTIVE JUROR:   Thank you.
14    THE COORDINATOR:   1946.
15    THE COURT:   Jeffrey Stanski.  How are you doing
16  Mr. Stanski?  How does the exemption apply to you?
17    PROSPECTIVE JUROR:   Misdemeanor theft.
18    THE COURT:   Did you receive probation on that?
19    PROSPECTIVE JUROR:   Yes.  And I also stay in
20  Collin County too.
21    THE COURT:   There you go?
22    PROSPECTIVE JUROR:   That's it?
23    THE COURT:   That's it.
24    THE COORDINATOR:   2159.
25    PROSPECTIVE JUROR:   I'm leaving the State,

**Page 80**

```
1    moving out.
2              THE COURT:   Where are you moving to?
3              PROSPECTIVE JUROR:   Alabama.
4              THE COURT:   And when are you moving?
5              PROSPECTIVE JUROR:   Close on our house on the
6    11th of December.
7              THE COURT:   You are free to go, sir?
8              PROSPECTIVE JUROR:   That's a lot, I appreciate
9    it.
10             THE COORDINATOR:   Seventy-six.
11             THE COURT:   Nebiyou Sirak, how does the
12   exemption apply to you, sir?
13             PROSPECTIVE JUROR:   I will be traveling to
14   Ethiopia next month.
15             MR. BRAUCHLE:   Agree.
16             THE COURT:   If you will let the office know, go
17   to the bailiff's office, just take this.
18             THE COORDINATOR:   455.
19             THE COURT:   Ms. Bridges, how are you?
20             PROSPECTIVE JUROR:   I'm fine.  How are you?
21             THE COURT:   Just fine.  How do the exemptions
22   apply to you?
23             PROSPECTIVE JUROR:   My husband is having
24   chemo injections --
25             MR. BRAUCHLE:   We will agree.
```

**Page 81**

```
1              THE COURT:   Take to the bailiff's office.
2              THE COORDINATOR:   1199.
3              THE COURT:   Alvin Boyd.  Mr. Boyd, how are you
4    doing today?
5              PROSPECTIVE JUROR:   Fine.
6              THE COURT:   How do the exemptions apply to you?
7              PROSPECTIVE JUROR:   My education bad, and then
8    I had a stroke.
9              MR. BRAUCHLE:   We will agree.
10             THE COURT:   Okay, if you will take this to the
11   bailiff's office to my left, you are free to go.
12             THE COORDINATOR:   164.
13             THE COURT:   Mr. Nguyen, how are you?
14             PROSPECTIVE JUROR:   Hello, Your Honor.
15             THE COURT:   How do the exemptions apply to you?
16             PROSPECTIVE JUROR:   I have a four-year-old son
17   who is not in school yet.  My wife is a pharmacist, she works
18   different days, nights and weekends.  And during the day when
19   she is working I take him into my office there.  And nights
20   and weekends when she is working, I am the only one that takes
21   care of him.
22             THE COURT:   Okay.  If you will take this to the
23   bailiff's office, you are free to go.
24             THE COORDINATOR:   862.
25             THE COURT:   How do you pronounce your first
```

**Page 82**

```
1    name?
2              PROSPECTIVE JUROR:   Neyda.
3              THE COURT:   How do the exemptions apply to you?
4              PROSPECTIVE JUROR:   As a Christian, I am not
5    allowed to, my conscience doesn't allow me to judge my fellow
6    man.
7              MR. BRAUCHLE:   We will agree.
8              THE COURT:   If you will take this to the
9    bailiff's office.
10             THE COORDINATOR:   2310.
11             THE COURT:   Charles Allison.  Allison, how are
12   you doing?
13             PROSPECTIVE JUROR:   All right.
14             THE COURT:   And how does the exemption apply to
15   you, sir?
16             PROSPECTIVE JUROR:   Convicted of a theft or
17   felony.
18             THE COURT:   Which is it?
19             PROSPECTIVE JUROR:   A felony.
20             THE COURT:   And did you receive time on it?
21             PROSPECTIVE JUROR:   Yes.
22             THE COURT:   You are free to go, sir.  If you
23   will take it to the bailiff's office on your way out.
24             THE COORDINATOR:   514.
25             THE COURT:   Ms. Owns, how are you doing, ma'am.
```

**Page 83**

```
1              PROSPECTIVE JUROR:   Fine, thank you.
2              THE COURT:   How do the exemptions apply to you?
3              PROSPECTIVE JUROR:   Misdemeanor.
4              MR. BRAUCHLE:   I'm sorry, we couldn't hear?
5              PROSPECTIVE JUROR:   Misdemeanor.
6              THE COURT:   You have a conviction on it or?
7              PROSPECTIVE JUROR:   No, it was a N.F.G.
8              MR. BRAUCHLE:   We will agree.
9              THE COURT:   If you will take this to the
10   bailiff's office, you are free to go.
11             THE COORDINATOR:   2208.
12             THE COURT:   Ms. Leonard, how are you doing
13   today?
14             PROSPECTIVE JUROR:   Fine, and you?
15             THE COURT:   How do the exemptions apply to you?
16             PROSPECTIVE JUROR:   Change of address.
17             THE COURT:   You currently reside?
18             PROSPECTIVE JUROR:   Cedar Hill.
19             THE COURT:   You know what, that is Dallas
20   County.  You are eligible for a questionnaire.
21             THE COORDINATOR:   522.
22             THE COURT:   Robert Spence.  Mr. Spence, how are
23   you doing today?
24             PROSPECTIVE JUROR:   Pretty good.  How about you,
25   sir?
```

1  THE COURT:  Just fine.  How do the exemptions
2  apply to you, sir?
3  PROSPECTIVE JUROR:  Well, my dad and I have a
4  business together, and he has had three strokes, he can't
5  drive.  I had to take his car keys away.  The only way he can
6  get back and forth to work is me bringing him back and forth
7  to work.  And so -- and my mom works, and I am basically the
8  only one that can get him back to work.
9  THE COURT:  What are his work hours, like 9:00
10  to 5:00.
11  PROSPECTIVE JUROR:  Yeah.  I can tell him -- he
12  can probably get on DART.  But he gets out, he doesn't have
13  any peripheral vision, he can't see.  And he gets turned
14  around, he gets lost.
15  MR. BRAUCHLE:  We will agree.
16  PROSPECTIVE JUROR:  I have to kind of walk him
17  around.
18  THE COURT:  You are free to go.
19  PROSPECTIVE JUROR:  Thank you, sir.
20  THE COURT:  If you will just take it to the
21  bailiff's office.
22  THE COORDINATOR:  808.
23  THE COURT:  Jeremy Duncan?
24  PROSPECTIVE JUROR:  Right.
25  THE COURT:  Mr. Duncan, how do the exemptions

1  apply to you?
2  PROSPECTIVE JUROR:  They don't.  I just fail to
3  understand why information of my children is relevant to the
4  case, I am not comfortable answering these questions.
5  THE COURT:  You have to answer the questions on
6  the questionnaire.  If you are concerned about anyone having
7  access to them, the attorneys will be the only ones that have
8  access to the questionnaire.  But you do have to answer the
9  questions?
10  PROSPECTIVE JUROR:  Even questions about my
11  children, how old they are, when they were born, my brothers
12  and sisters.
13  THE COURT:  Yes, sir.  You have to answer those.
14  As I said if you are concerned about safety or someone
15  ascertaining that information --
16  PROSPECTIVE JUROR:  I am concerned about safety.
17  And concerned about pertinence.
18  THE COURT:  I declare that as pertinent since I
19  approved the questionnaire.  Safety, no one but the attorneys
20  will have access to the information.  The accused, if that is
21  what you are concerned about or his family having any access
22  to it, he will not.
23  PROSPECTIVE JUROR:  So I don't have a choice, I
24  got to answer the question?
25  THE COURT:  You probably wouldn't like the other

86

1  choice?
2  PROSPECTIVE JUROR:  Thank you very much.
3  THE COURT:  You are welcome.
4  THE COORDINATOR:  917.
5  THE COURT:  William Eaton?
6  PROSPECTIVE JUROR:  Yes, sir.
7  THE COURT:  Mr. Eaton, how are you doing today?
8  PROSPECTIVE JUROR:  I am doing pretty good.
9  THE COURT:  How are the exemption?
10  PROSPECTIVE JUROR:  Actually it was a
11  misdemeanor theft.
12  THE COURT:  Did you receive probation on it?
13  PROSPECTIVE JUROR:  Yes -- no, actually I did
14  not.  Before then, 1973.
15  THE COURT:  Misdemeanor theft conviction.
16  MR. JOHNSON:  He is disqualified.
17  THE COURT:  If you will take it to the bailiff's
18  office.
19  THE COORDINATOR:  1898.
20  THE COURT:  Elmasry, how are you doing today,
21  ma'am?
22  PROSPECTIVE JUROR:  Good.
23  THE COURT:  You are unable to read or write?
24  PROSPECTIVE JUROR:  No English.
25  THE COURT:  Juror No. 1898 unable to read or

87

1  write.  You are free to go, ma'am.  If you will take it to the
2  bailiff's office.
3  THE COORDINATOR:  1903.
4  THE COURT:  Judd Kennedy.  How are you doing,
5  sir?
6  PROSPECTIVE JUROR:  Good.  I am presently
7  enrolled in community college, English 1301, my final is
8  Tuesday.
9  THE COURT:  Good luck on your final?
10  PROSPECTIVE JUROR:  I appreciate that.
11  THE COURT:  We appreciate you coming down.
12  THE COORDINATOR:  1389.
13  THE COURT:  Hello, ma'am.
14  THE COORDINATOR:  What is the last name?
15  PROSPECTIVE JUROR:  Taylor.
16  THE COURT:  If you will say your full name?
17  PROSPECTIVE JUROR:  That name y'all have on
18  there, I don't like it.  Can I just say Marilyn Taylor.
19  THE COURT:  We go with what we have access to.
20  PROSPECTIVE JUROR:  I am going to get all that
21  changed.
22  THE COURT:  How do the exemptions apply to you?
23  PROSPECTIVE JUROR:  I am a caretaker of my 21
24  M.R. son.
25  MR. BRAUCHLE:  We will agree.

1  THE COURT:  You are free to go, ma'am.  Just
2  stop at the bailiff's office on the way out.
3  THE COORDINATOR:  736.
4  THE COURT:  Ms. Champion, how are you doing?
5  PROSPECTIVE JUROR:  Andrews.
6  THE COURT:  You have custody of a child under
7  ten years of age?
8  PROSPECTIVE JUROR:  Yes.
9  THE COURT:  And you are the sole care provider?
10  PROSPECTIVE JUROR:  Yes.  Now, my last name
11  is Andrews, what do I need to do to change that?
12  THE COURT:  These I understand are generated
13  from driver's license.
14  PROSPECTIVE JUROR:  Okay.
15  THE COORDINATOR:  1228.
16  THE COURT:  Mr. Blaylock, how are you doing,
17  sir?
18  PROSPECTIVE JUROR:  Fine.
19  THE COURT:  And Juror No. 1228, how do the
20  exemptions apply to you, sir?
21  PROSPECTIVE JUROR:  The fact is, that I am the
22  only one at the airport that can sign off anything, I am a one
23  man show.  I don't mean it wrong.  But I do all the work and I
24  sign off everything for FAA for the airplanes.  I can't be off
25  work for anyone reason, I can't even get sick.  I can give you

1  a number to call.  FAA or any one of them.  I'm sorry, the job
2  is not an exemption, but I have tried to get off of jury
3  pools.  They keep sending them to me for some reason.
4  MR. BRAUCHLE:  We will agree.
5  THE COURT:  1161?
6  PROSPECTIVE JUROR:  I have sent via internet
7  because I coach soccer and I coach in the afternoons, and they
8  told me when I came in this morning that I can't be deferred
9  through the internet.  So I just want to be deferred because I
10  can't do it in the afternoons because I am a soccer coach
11  besides my regular job.
12  THE COURT:  That is not an exemption, sir.
13  PROSPECTIVE JUROR:  Okay.
14  THE COURT:  We appreciate you coming down.
15  THE COORDINATOR:  1136.
16  THE COURT:  Shannon Horner.  How are you doing,
17  Ms. Horner?
18  PROSPECTIVE JUROR:  I'm good.  How are you?
19  THE COURT:  Just fine.  Your exemption, you have
20  custody of a child under the age of ten?
21  PROSPECTIVE JUROR:  She is four.
22  THE COURT:  And are you a single parent?
23  PROSPECTIVE JUROR:  Yes.
24  THE COURT:  There you go.
25  THE COORDINATOR:  1262.

90

1  THE COURT:  Mr. McDaniel, how are you doing,
2  sir?
3  PROSPECTIVE JUROR:  Good.
4  THE COURT:  How are you -- exemption applies to
5  you?
6  PROSPECTIVE JUROR:  Well, it is not one of the
7  ones here.  I have a brother that is on a ventilator in
8  critical condition and it doesn't look good.  And I am --
9  don't think I could stand being in trial.  I don't know if
10  that applies or not.
11  MR. BRAUCHLE:  Sounds like he would be
12  distracted.
13  THE COURT:  You are free to go, if you will take
14  it to the bailiff's office.
15  THE COORDINATOR:  650.
16  THE COURT:  Mr. Julian?
17  PROSPECTIVE JUROR:  Yeah.
18  THE COURT:  How are you doing, sir?
19  PROSPECTIVE JUROR:  All right.  I just want to
20  know, I got a family and nothing in law enforcement.  It used
21  to exempt you, but it don't no more.
22  THE COURT:  No, that is not an exemption.  Now,
23  down the road, you may not wound up on the jury.
24  PROSPECTIVE JUROR:  That's cool.  I filled it
25  out so I could go.

91

1  THE COORDINATOR:  897.
2  THE COURT:  Ms. Montgomery?
3  PROSPECTIVE JUROR:  Yes.
4  THE COURT:  How are you doing, ma'am?
5  PROSPECTIVE JUROR:  Pretty good.  I guess I am
6  asking to be dismissed because I am undergoing cancer
7  treatment so I have to go every three weeks.
8  MR. BRAUCHLE:  Agree.
9  THE COURT:  Wish you the best with your
10  treatment.
11  THE COORDINATOR:  Sixty-two.
12  THE COURT:  Mr. Thornton, how are you doing,
13  sir?
14  PROSPECTIVE JUROR:  Doing good, sir.  I just
15  would not be able to call it fair because --
16  THE COURT:  Well, what we are dealing with right
17  now are the exemptions.  And if you qualified, we will get to
18  this.  This is another step in the process?
19  PROSPECTIVE JUROR:  I just didn't know.
20  THE COURT:  We understand that people have
21  varying views, so that's why we bring in so many.  But none of
22  the legal exemptions or qualifications?
23  PROSPECTIVE JUROR:  No.
24  THE COURT:  Once you have it filled in
25  completely, turn it in and you are free to go.

1    How are you doing, sir?
2             PROSPECTIVE JUROR:   My wife is pregnant with
3    twins, she is due any week, and she is considered high risk
4    pregnancy and I am on standby.
5             THE COURT:   His wife, if you didn't here, is
6    pregnant with twins and due in about a week.  I don't think
7    you are going to Dodge the bullet because we won't even start
8    picking the jury till about mid-January.  Probably March or so
9    by the time we start the trial?
10            PROSPECTIVE JUROR:   Okay.
11            THE COURT:   Is that -- sir, is your name?
12            PROSPECTIVE JUROR:   Ryan Ward, W-a-r-d, the
13   last name.
14            THE COORDINATOR:   1765, Ryan Ward.
15            THE COURT:   Thank you, Mr. Ward.
16            THE COORDINATOR:   363.
17            THE COURT:   Mr. Ashley, how are you doing, sir?
18            PROSPECTIVE JUROR:   Fine, sir.  My wife was
19   involved in an accident, and she is at home right now.  There
20   is no one to take care of her.
21            THE COURT:   His wife was involved in an accident
22   and she is home now.
23       This happened today?
24            PROSPECTIVE JUROR:   Yesterday.
25            THE COURT:   She is not hospitalized?

1             PROSPECTIVE JUROR:   She was, but they released
2    her yesterday.
3             THE COURT:   That wouldn't be an exemption.  What
4    you need to do is continue filling out your questionnaire?
5             PROSPECTIVE JUROR:   I am almost done.
6             THE COURT:   We are going to start picking the
7    jury in January, and probably won't actually start the trial
8    until March, so those are issues we can address if she still
9    need caretaker?
10            PROSPECTIVE JUROR:   She may not.
11            THE COURT:   I appreciate you letting us know.
12            THE COORDINATOR:   2122.
13            THE COURT:   Ms. Patel, how are you doing,
14   Ms. Patel?
15            PROSPECTIVE JUROR:   Fine.  I don't understand
16   much.
17            THE COURT:   I'm sorry.  You do not understand?
18            PROSPECTIVE JUROR:   That's why I don't write, I
19   don't want to be lying.
20            THE COURT:   So you are unable to fill out?
21            PROSPECTIVE JUROR:   Yes, that's why I was in the
22   line.  What I understand I did.  But what I don't understand,
23   I don't write it.
24            THE COURT:   We are going to release you.  If you
25   will take this to the office to your left and you are free to

---

1    go.
2             PROSPECTIVE JUROR:   Thank you.
3             THE COORDINATOR:   771.
4             THE COURT:   Jessie Zamora.  Mr. Zamora, how are
5    you doing, sir?
6             PROSPECTIVE JUROR:   Pretty good.  How are you
7    doing?
8             THE COURT:   I'm doing just fine.
9             PROSPECTIVE JUROR:   I was asking why do I
10   have to fill this out, it is more or less an invasion of
11   privacy.
12            THE COURT:   You have to fill it out, basically I
13   am ordering you to fill it out.  If you are concerned about
14   the information contained in there, it will only be released
15   to the attorneys or the investigator, the accused will not
16   have access to that information.  Now, on the other hand if
17   you don't fill it out, you may would up in jail, those are
18   your options -- you may take this with you, sir.
19            PROSPECTIVE JUROR:   Thank you.
20            THE COORDINATOR:   2229.
21            THE COURT:   This is Kelly McNight?
22            PROSPECTIVE JUROR:   Yes.
23            THE COURT:   How are you doing, Ms. McNight?
24            PROSPECTIVE JUROR:   I'm good.  A little warm.
25            THE COURT:   Yeah, it is a little warm in here.

1    You are claiming, what is it?
2             PROSPECTIVE JUROR:   I'm very pregnant.
3             THE COURT:   I already put my foot in my mouth
4    today, so I am not going to do it again.  When are you due?
5             PROSPECTIVE JUROR:   At the end of January.
6             MR. BRAUCHLE:   We will agree.
7             THE COURT:   Here you go, if you will take it to
8    the bailiff's office.
9        If we may get your name?
10            PROSPECTIVE JUROR:   2104-J, Leslie Passarelli.
11   My 23-year-old daughter lives with me, has down syndrome and
12   is schizophrenic.  I take her to an adult day care center, I
13   can't drop her off before seven.  If court doesn't start the
14   before 8:30, I can make it.  I can drop her off and get here,
15   otherwise I got nothing to do with her.
16            MR. BRAUCHLE:   We will agree.
17            THE COURT:   Your attorneys agree.  So you are
18   free to go.  You look disappointed?
19            PROSPECTIVE JUROR:   I am.  Man, okay, I was
20   hoping 8:30, I can make it in an hour and a half.
21            THE COURT:   Court starts 8:30 to 9:00, but they
22   have agreed already.  So I am get getting stares.
23            PROSPECTIVE JUROR:   They are going, wait a
24   minute, we have somebody who actually wants to serve on this,
25   you haven't read this yet.  What do you think?

---

*Belinda G. Baraka, Official Court Reporter*
*214.653.5803*

1    THE COURT:   You are free to go, ma'am.

2    PROSPECTIVE JUROR:   My civic duty, something I

3    feel very strongly about.  There is just that one little area,

4    cause it is not like I can just drop her off and wait for them

5    to open.  Being late to your court wouldn't go over real well.

6    We will just proceed while we are ahead.

7    MR. BRAUCHLE:   You can take your questionnaire

8    with you if it make you feel better?

9    PROSPECTIVE JUROR:   Fine, I will take it down.

10   THE COORDINATOR:   1751.

11   THE COURT:   Karen Rosson, No. 1751?

12   PROSPECTIVE JUROR:   My mother is a nursing

13   home and I oversee all her care, make all her decisions.  She

14   hasn't been doing very well.  And my fear is if I get stuck on

15   a case, what do I do.

16   THE COURT:   In case y'all didn't hear.

17   MR. JOHNSON:   I heard.  We will agree.

18   THE COURT:   The attorneys have agreed to release

19   you.

20   Juror No. 200, Emily Tomas.  Ms. Tomas, when are you due?

21   PROSPECTIVE JUROR:   Sometime in the next two

22   to three weeks.

23   THE COURT:   Let me ask you, we anticipate

24   starting jury selection in mid-January?

25   PROSPECTIVE JUROR:   Okay.

1    THE COURT:   The trial following that perhaps in

2    March?

3    PROSPECTIVE JUROR:   Okay.

4    THE COURT:   How does that affect you?

5    PROSPECTIVE JUROR:   Well, I don't know who would

6    take care of the baby.

7    THE COURT:   Okay.  You would be affected?

8    PROSPECTIVE JUROR:   Yeah.

9    THE COURT:   And you are free to go.

10   PROSPECTIVE JUROR:   Okay.

11   THE COURT:   Good luck.

12   PROSPECTIVE JUROR:   Thank you very much.

13   (Court recessed for the day.)

14

15

16

17

18

19

20

21

22

23

24

25

---

98

1    THE STATE of TEXAS )

2    COUNTY of DALLAS   )

3    I, BELINDA G. BARAKA, Official Court Reporter in and

4    for the 194th Judicial District Court of Dallas County, State

5    of Texas, do hereby certify that the foregoing contains a true

6    and accurate transcription of all portions of evidence and

7    other proceedings requested in writing by counsel for the

8    parties, to be included in this volume of the Reporter's

9    Record, in the above-styled and -numbered cause(s), all of

10   which occurred in open court or in chambers and were reported

11   by me.

12   I further certify that this Reporter's Record of the

13   proceedings truly and correctly reflects the exhibits, if any,

14   admitted by the respective parties.

15   I further certify that the total cost for the

16   preparation of this Reporter's Record was paid by the

17   State/Defense.

18   WITNESS MY OFFICIAL HAND this the 30th day of

19   May_____, A.D., 2009.

20

21

22   BELINDA G. BARAKA, CSR #5028

23   Official Court Reporter

     133 N. Industrial

24   Dallas County, Texas 75207

25   Certification Expires: 12-31-09