```
                    CAUSE NO. F07-50318-M

THE STATE OF TEXAS          *      IN THE DISTRICT COURT

vs.                         *      194TH JUDICIAL DISTRICT

WESLEY LYNN RUIZ            *      DALLAS COUNTY, TEXAS
```

- - - - - - - - - - - - - - - - - - - - - - - - - - -

REPORTER'S RECORD

<u>VOIR DIRE EXAMINATION</u>

Volume 7 of 59 Volume(s)

- - - - - - - - - - - - - - - - - - - - - - - - - - -

BE IT REMEMBERED THAT on this the 16th day of January, A.D, 2008, the above-styled and -numbered cause(s) came on for hearing before the HONORABLE ERNEST B. WHITE, III of the 194th Judicial District Court of Dallas County, State of Texas, the following is a true and correct transcription of the proceedings had, to-wit:

   (Proceedings Reported by Computerized Machine Shorthand)

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*

```
 1                    A P P E A R A N C E S

 2

 3   HON. ANDY BEACH
     Assistant District Attorney
 4   State Bar No. 01944900

 5

     HON. ANDREA HANDLEY
 6   Assistant District Attorney
     State Bar No. 08898800
 7                                    FOR THE STATE OF TEXAS

 8

 9

10   HON. PAUL BRAUCHLE
     Attorney at Law
11   State Bar No. 02918000

12

13   HON. WILLIAM "KARO" JOHNSON
     Attorney at Law
14   State Bar No. 10804500

15                                    FOR THE DEFENDANT

16

17

18                         * * * * *

19

20

21

22

23

24

25
```

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*

```
1                           I N D E X

2                                                          PAGE/VOL.

3   Proceedings - 01/16/08 .............................    4/7

4   CYNTHIA CARR

5     Voir Dire Examination - Mr. Beach ................     4

6     Dismissed by Agreement ...........................    10

7   BRIAN REID

8     Voir Dire Examination - Mr. Beach ................    11

9     Dismissed by Agreement ...........................    14

10  ROBERT HART

11    Voir Dire Examination - Mr. Beach ................    14

12    Dismissed by Agreement ...........................    16

13

14  Reporter's Certificate .............................    17
```

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*

```
                        PROCEEDINGS
                      (January 16, 2007)
              (Prospective juror entered the courtroom.)
         THE COURT:  You may be seated.
         Good morning, Ms. Carr, the attorneys from both sides may
have some questions.
         You may proceed, Mr. Beach.
                        CYNTHIA CARR
was called as a prospective juror, after having been
previously sworn by the Court, testified under oath as
follows:
                    VOIR DIRE EXAMINATION
BY MR. BEACH:
         MR. BEACH:  Cynthia Carr?
         PROSPECTIVE JUROR:  Yes, sir.
         MR. BEACH:  My name is Andy Beach.  I am an
Assistant District Attorney, along with Andrea Handley and
Marshall McCallum.
         Karo Johnson and Paul Brauchle are attorneys here in
town.  They have the responsibility of representing the
defendant in this case.  He is the man at the end of counsel
table, Wesley Ruiz.
         We are going to get into how you feel about certain
aspects we know are going to come into play, Ms. Carr.  I
know it has been about six weeks since you came down and
```

```
filled out that lengthy questionnaire that you have been
reviewing.
         First of all, there have been a couple of jurors that
have told us since they filled out the questionnaire, their
curiosity got the best of them, they went on the internet to
try to learn some more about the case.  Did you do any that
have?
         PROSPECTIVE JUROR:  No, I haven't.
         MR. BEACH:  Do you remember anything about the
case when you came and filled out the questionnaire?
         PROSPECTIVE JUROR:  No.  I handled it just like
any other time I have come in for jury duty.  I was really
shocked when I got a phone call back, because most of the time
I don't.
         MR. BEACH:  One thing I want to talk to you
about, I know Judge White when you were down here with the
rest of the 500 or so people, went through the exemptions.
And we understand that you have two kids under the age of ten;
is that correct?
         PROSPECTIVE JUROR:  That is correct.
         MR. BEACH:  And you have the ability to take
care of them if you are down here for jury duty?
         PROSPECTIVE JUROR:  During the day, yes, if ever
you needed me after hours, I would have to work out some other
circumstances.
```

6

```
         MR. BEACH:  That's what I want to talk to you
about.  If you were selected to be on this jury, you will be
free to go today.  We anticipate that the trial is going to
start some time the first, middle of April.  So about three
months from now anticipate the actual trial starting.  We
think anywhere from a five-to-eight-working-day trial.  And
normal working hours, you would be down here during the
regular part of the trial be just basic business hours 9:00 to
5:00, so that wouldn't be a problem?
         PROSPECTIVE JUROR:  No, sir.
         MR. BEACH:  The kicker would be if by chance and
a very real possibility in a case like this, it is going to
have heavy publicity, that you might end up being sequestered.
We don't know that sitting here today.  But basically being
sequestered mean you would be taken to a hotel with the other
11 jurors, you couldn't go home or talk to any of the outside
world, pretty much isolated with the outside world.
         Would that be an issue if something like that happened?
         PROSPECTIVE JUROR:  Maybe.
         MR. BEACH:  That's why we talk to you-all up
front.  Because again we can't really predict all the
potentiality that may come into play.  We have to have 12
people that can fully devote their attention and not have any
outside distractions?
         PROSPECTIVE JUROR:  No, of course.  With you
```

7

```
predicting it possibly being in April, I could probably work
something out with my roommate if something of that nature
does take place.
         MR. BEACH:  So let's assume that you might be
put in a hotel for two or three nights or something like that?
         PROSPECTIVE JUROR:  I would explain to the
kiddos mom has got to go on vacation and I will see you when I
get back.
         MR. BEACH:  Very good.  They could handle it?
         PROSPECTIVE JUROR:  Yes.
         MR. BEACH:  And your roommate would be okay with
that?
         PROSPECTIVE JUROR:  Yeah.
         MR. BEACH:  I also see that you applied for a
dispatch job at Mesquite one time; is that correct?
         PROSPECTIVE JUROR:  That is correct.
         MR. BEACH:  How long ago was that?
         PROSPECTIVE JUROR:  Four or five months ago.
         MR. BEACH:  Okay.  And did not get it; is that
correct?
         PROSPECTIVE JUROR:  Last I heard, I was still in
the running.
         MR. BEACH:  Okay.
         PROSPECTIVE JUROR:  But with the background
checks of everything, it takes a considerable lengthy amount
```

*Belinda G. Baraka, Official Court Reporter*
*214.653.5803*

```
 1   of time. She said it could be anywhere from six months or
 2   more before I got a return call.
 3           MR. BEACH: And they are probably going to be
 4   more concerned than I am going to be if here in the next three
 5   months or so if you get a phone call from the police
 6   department and you are down there working around police
 7   officer everyday and talking about police officer?
 8           PROSPECTIVE JUROR: I very much enjoy the
 9   current employer I am with, and it would take a lot of
10   convincing for me to leave.
11           MR. BEACH: A couple of things on the
12   questionnaire I want to talk to you about. On page five --
13   and you have your questionnaire in front of you?
14           PROSPECTIVE JUROR: Yes, sir.
15           MR. BEACH: Page five -- excuse me -- down there
16   in those last segment of questions where you are asked to
17   check boxes.
18           PROSPECTIVE JUROR: Okay.
19           MR. BEACH: The second one there says does
20   criminal justice system fairly protects the rights of persons
21   accused of committing crimes you say disagree, you see that
22   there.
23           PROSPECTIVE JUROR: I do see that.
24           MR. BEACH: Tell me what you mean, what came to
25   mind that caused you to check that box disagree?
```

```
 1           MR. BEACH: Right.
 2           PROSPECTIVE JUROR: You could possibly be
 3   putting them in some form of harms way if not careful and I
 4   don't see the reason for that. That's mainly the media and
 5   the press and that nature.
 6           MR. BEACH: Versus prosecutor and police?
 7           PROSPECTIVE JUROR: Yes.
 8           MR. BEACH: And you are looking at media how
 9   they exploit the situation?
10           PROSPECTIVE JUROR: Yeah. And it makes it very
11   hard for the police department to control that.
12           MR. BEACH: Let's talk about how you feel about
13   the death penalty -- Judge, we have an agreement.
14       Thank you, ma'am.
15           THE COURT: Ms. Carr, you are free to go.
16           (Prospective juror retired from the courtroom.)
17           (Recess taken.)
18           (Prospective juror entered the courtroom.)
19           THE COURT: Good afternoon Mr. Hart.
20           PROSPECTIVE JUROR: Reid.
21           THE COURT: Good afternoon, Mr. Reid?
22           PROSPECTIVE JUROR: Good afternoon.
23           THE COURT: The attorneys have some questions to
24   ask you touching based on your qualifications as a juror.
25       Mr. Beach.
```

```
 1           PROSPECTIVE JUROR: Well, I guess in regards to
 2   possibly the media and so forth. Because I don't understand
 3   the reasoning to have to exploit people's personal lives and
 4   so forth in order to achieve a guilty or non-guilty plea. And
 5   for some people they think that the media can help sway people
 6   in some manner. I look at it as you are also jeopardizing the
 7   people that are going for or against the case. And --
 8           MR. BEACH: Give me an example, are you talking
 9   about Martha Stewart or a little more local case?
10           PROSPECTIVE JUROR: Just in general. If you
11   really want an example. You know, I am going to be honest
12   with you, I haven't been paying much attention to the news
13   lately.
14           MR. BEACH: Me either.
15           PROSPECTIVE JUROR: It is getting depressing.
16           MR. BEACH: Except for Brittney Spears -- go
17   ahead.
18           PROSPECTIVE JUROR: Well, let's see, if you want
19   to go with the Martha Stewart thing, I think I remember some
20   bits and pieces of that. The media exploited her in so many
21   different manners -- okay, wait I got a better one, there was
22   a recent court case where three people went to jail for
23   something embezzlement of money or something and, you know,
24   depending on what those's people's personal lives involved,
25   which is none of my business.
```

```
 1           MR. BEACH: May it please the Court?
 2               BRIAN REID
 3   was called as a prospective juror, after having been
 4   previously sworn by the Court, testified under oath as
 5   follows:
 6             VOIR DIRE EXAMINATION
 7   BY MR. BEACH:
 8       Mr. Reid, my name is Andy Beach. I am an Assistant
 9   District Attorney. Along with Andrea Handley, Marshall
10   McCallum, we represent the State in the capital murder
11   prosecution.
12       Kevin Brooks is another Assistant District Attorney, he
13   is not in the courtroom right now. He will be responsible
14   once the trial begins in putting on the evidence the State is
15   going to bring in this case.
16       Karo Johnson in the red tie. Paul Brauchle next to him.
17   They have the responsibility of representing the defendant in
18   this case. He is the man at the end of the table. That's
19   Wesley Ruiz.
20       Mr. Reid, we are going to find out how you stand on some
21   issues we know are going to come into play this afternoon. It
22   has been six weeks or so since you filled out this
23   questionnaire. A couple of people have told us that curiosity
24   got the best of them. They got on the internet to see if they
25   could find out something about the case. Did you do anything
```

**Page 12**

1  like that at all?
2          PROSPECTIVE JUROR: No.
3          MR. BEACH: Very good. You indicated on your
4  questionnaire, sir, you do believe the death penalty is
5  appropriate in some murder cases; is that correct?
6          PROSPECTIVE JUROR: Yes.
7          MR. BEACH: And anything about that opinion
8  changed here in the last six weeks?
9          PROSPECTIVE JUROR: I have thought a lot about
10 it, especially after I got the call that I would be coming
11 down here. I don't know how much detail you need -- cause it
12 is a very, it is a pretty deep question.
13         MR. BEACH: Deep question. And unfortunately as
14 you know we can't go into the facts of this case, so we are
15 going to have to talk theoretically?
16         PROSPECTIVE JUROR: Theoretically, I have
17 significant reservations about returning a death -- a verdict
18 of -- would invoke the death penalty. It would have to be
19 extreme circumstances. I think there would have to be no --
20 no remorse on the part of the person who is being accused. It
21 would have to be very clear that that person would have no
22 remorse at all and would probably go do it again if asked. I
23 think there would have to be no possibility of rehabilitation.
24 I am not a psychologist or how they go about determining that.
25 I would rely on expert people to tell me that this person has

**Page 13**

1  absolutely no possibility of rehabilitation.
2          MR. BEACH: Yes, sir.
3          PROSPECTIVE JUROR: And it also -- you know the
4  circumstances under which the crime was committed. I mean, it
5  would have to be very heinous and something that the person --
6  you know was almost enjoying doing what he was doing.
7          MR. BEACH: Yes, sir.
8          PROSPECTIVE JUROR: That's -- there are some
9  serious reservations behind that statement. But in some cases
10 when all those things and other things are true, then I could
11 be in a position of saying, yes, I could support that.
12         MR. BEACH: As you know I had been reviewing the
13 questionnaire and what Judge White told you back in December,
14 this case involves -- the allegedly the murder of a police
15 officer in the line of duty. I believe on your questionnaire
16 you indicated that you agreed with the law in the State of
17 Texas, that would be one of those categories, again depending
18 on the facts, that if you believe an individual knowingly,
19 intentionally murdered a police officer, knowing that police
20 officer was in the line of duty, again that could be the type
21 of case where you could return a death penalty if it was
22 appropriate under the facts?
23         PROSPECTIVE JUROR: With those other caveats
24 that I put in there and probably some others I haven't thought
25 about, I could see myself in certain circumstances doing that.

**Page 14**

1          MR. BEACH: We have an agreement, sir. I
2  appreciate you coming down. I know you put a lot of thought
3  into this, appreciate you coming down. Good luck.
4          PROSPECTIVE JUROR: All right.
5          THE COURT: Thank you, Mr. Reid. You are free
6  to go.
7          (Prospective juror retired from the courtroom.)
8          (Prospective juror entered the courtroom.)
9          THE COURT: You may be seated.
10 Good afternoon, Mr. Hart. How are you?
11         PROSPECTIVE JUROR: Fine.
12         THE COURT: The attorneys may have some
13 questions for you?
14         PROSPECTIVE JUROR: Okay.
15                    **ROBERT HART**
16 was called as a prospective juror, after having been
17 previously sworn by the Court, testified under oath as
18 follows:
19                **VOIR DIRE EXAMINATION**
20 BY MR. BEACH:
21     Mr. Hart, good afternoon. My name is Andy Beach. Along
22 with Andrea Handley, along with Marshall McCallum here are
23 Assistant District Attorneys, we are going to be representing
24 State of Texas in the jury selection phase. Kevin Brooks is
25 another Assistant District Attorney. Once the trial actually

**Page 15**

1  starts, he will be responsible for putting the evidence on.
2      Karo Johnson and Paul Brauchle are the attorneys to the
3  table to my left. They have the responsibility to represent
4  the defendant in this case. He is the man at the end of the
5  counsel table, Wesley Ruiz.
6      Mr. Hart you indicated on your questionnaire that you
7  filled out about six weeks ago anyway -- you didn't think you
8  knew anything about the facts of this case from the media; is
9  that correct?
10         PROSPECTIVE JUROR: Correct.
11         MR. BEACH: Nothing rang a bell when Judge White
12 was talking to you about the case?
13         PROSPECTIVE JUROR: No.
14         MR. BEACH: A couple of jurors have told us
15 since they left in December, curiosity got the best of them
16 and got on the internet and tried to find out some more about
17 the case. Have you done anything about that?
18         PROSPECTIVE JUROR: Yes, I have. When I left
19 here that day, I went to work, got on the internet and just
20 searched.
21         MR. BEACH: Google search?
22         PROSPECTIVE JUROR: Right.
23         MR. BEACH: Obviously that doesn't automatically
24 disqualify you, but from what you saw during your internet
25 activity, that led you to form in your mind an opinion one way

| | |
|---|---|
| 1 | or the other as to the guilt or innocence of the defendant, we |
| 2 | would need to know that? |
| 3 | PROSPECTIVE JUROR: Okay. |
| 4 | MR. BEACH: When you looked at the internet |
| 5 | articles, did that cause you to form an opinion one way or the |
| 6 | other at this time as to how this case should be resolved? |
| 7 | PROSPECTIVE JUROR: Yes. I mean the stories |
| 8 | that were on the internet were pretty concise. |
| 9 | MR. BEACH: Thank you, sir, I appreciate your |
| 10 | time. |
| 11 | THE COURT: You are free to go. |
| 12 | MR. BEACH: Thank you. |
| 13 | (Prospective juror retired from the courtroom.) |
| 14 | (Court recessed for the day.) |

---

1  THE STATE of TEXAS )
2  COUNTY of DALLAS )
3      I, BELINDA G. BARAKA, Official Court Reporter in and
4  for the 194th Judicial District Court of Dallas County, State
5  of Texas, do hereby certify that the foregoing contains a true
6  and accurate transcription of all portions of evidence and
7  other proceedings requested in writing by counsel for the
8  parties, to be included in this volume of the Reporter's
9  Record, in the above-styled and -numbered cause(s), all of
10 which occurred in open court or in chambers and were reported
11 by me.
12     I further certify that this Reporter's Record of the
13 proceedings truly and correctly reflects the exhibits, if any,
14 admitted by the respective parties.
15     I further certify that the total cost for the
16 preparation of this Reporter's Record was paid by the
17 State/Defense.
18     WITNESS MY OFFICIAL HAND this the 30th day of
19 May , A.D., 2009.

BGBaraka
BELINDA G. BARAKA, CSR #5028
Official Court Reporter
133 N. Industrial
Dallas County, Texas 75207

25 Certification Expires: 12-31-09

*Belinda G. Baraka, Official Court Reporter*
*214.653.5803*