

CASE NUMBER AP-75,968
TRIAL COURT NUMBER F-07-50318-M

# BINDER 11 OF 11 BINDERS

*VOLUME 59*
*DEFENSE'S EXHIBITS 1 THROUGH 65*

STATE OF TEXAS

vs

WESLEY LYNN RUIZ

FILED IN
COURT OF CRIMINAL APPEALS

JUN 1 5 2009

Louise Pearson, Clerk

```
 1                    A P P E A R A N C E S

 2

 3    HON. ANDY BEACH
      Assistant District Attorney
 4    State Bar No. 01944900

 5
      HON. KEVIN BROOKS
 6    Assistant District Attorney
      State Bar No. 03070735
 7

 8    HON. ANDREA HANDLEY
      Assistant District Attorney
 9    State Bar No. 08898800

10

11    HON. MARSHALL MCCALLUM
      Assistant District Attorney
12    State Bar No. 24027485

13

14    HON. GRACE SHIN
      Assistant District Attorney
15    State Bar No. 24033062

16

17    HON. LISA SMITH
      Assistant District Attorney
18    State Bar No. 00787131

19

20    HON. JULIUS WHITIER
      Assistant District Attorney
21    State Bar No. 21397900

22                         FOR THE STATE OF TEXAS

23

24

25
```

Belinda G. Baraka, Official Court Reporter
214-653-5803

1                    A P P E A R A N C E S

2

3    HON.`PAUL BRAUCHLE
     Attorney at Law
4    State Bar No. 02918000

5

6    HON. WILLIAM "KARO" JOHNSON
     Attorney at Law
7    State Bar No. 10804500

8

9    HON. DOUGLAS PARKS
     Attorney at Law
10   State Bar No. 15520000

11                      FOR THE DEFENDANT

12

13

14                      * * * * *

15

16

17

18

19

20

21

22

23

24

25

```
 1              E X H I B I T    I N D E X

 2    DEFENSE'S EXHIBIT(S):      OFFERED:       ADMITTED:  VOL.

 3      A    Laboratory Report    62            62         40

 4      B    Not. to Supplement   76            77         40

 5      C    Sup. to Notice       76            77         40

 6      1    Procedures          109           109         42

 7      2    Document            107           107         43

 8      3    Document             94            94         45

 9      4    Casings             140           140         45

10      5    Casings             140           141         45

11      6    Casings             141           141         45

12      7    Casings             142           142         45

13      8    Spent/Fragments     147           147         45

14      9    Casings             149           149         45

15     10    Asp                 162           162         45

16     11    Death Certificate    38            38         46

17     12    Photograph           64            64         46

18     13    Photograph           64            64         46

19     14    Photograph           64            64         46

20     15    Photograph           64            64         46

21     16    Photograph           64            64         46

22     17    Photograph           64            64         46

23     18    Photograph           64            64         46

24     19    Diagram              64            64         46

25     20    Autopsy Report      123           123         46
```

| | | | E X H I B I T   I N D E X | | |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | DEFENSE'S EXHIBIT(S): | | OFFERED: | ADMITTED: | VOL |
| 3 | 21 | Typewritten Notes | 77 | 77 | 47 |
| 4 | 22 | Purposed Charge | 93 | | 47 |
| 5 | 23 | Handgun | 6 | 7 | 48 |
| 6 | 24 | 12.44 Motion Form | 65 | 66 | 52 |
| 7 | 26 | Photograph | 104 | 104 | 53 |
| 8 | 27 | Photograph | 104 | 104 | 53 |
| 9 | 28 | Photograph | 104 | 104 | 53 |
| 10 | 29 | Photograph | 104 | 104 | 53 |
| 11 | 30 | Photograph | 104 | 104 | 53 |
| 12 | 31 | Photograph | 104 | 104 | 53 |
| 13 | 32 | Photograph | 104 | 104 | 53 |
| 14 | 33 | Photograph | 104 | 104 | 53 |
| 15 | 34 | Photograph | 104 | 104 | 53 |
| 16 | 35 | Photograph | 104 | 104 | 53 |
| 17 | 36 | Photograph | 104 | 104 | 53 |
| 18 | 37 | Photograph | 104 | 104 | 53 |
| 19 | 38 | Photograph | 104 | 104 | 53 |
| 20 | 40 | Photograph | 104 | 104 | 53 |
| 21 | 41 | Photograph | 104 | 104 | 53 |
| 22 | 42 | Photograph | 104 | 104 | 53 |
| 23 | 43 | Photograph | 104 | 104 | 53 |
| 24 | 44 | Photograph | 104 | 104 | 53 |
| 25 | 45 | Photograph | 104 | 104 | 53 |

6

```
1                    E X H I B I T   I N D E X

2    DEFENSE'S EXHIBIT(S):        OFFERED:        ADMITTED:  VOL

3     46    Photograph           104             104        53

4     53    Photograph           104             104        53

5     54    Photograph           104             104        53

6     55    Photograph           104             104        53

7     56    Photograph           104             104        53

8     57    Photograph           104             104        53

9     58    Photograph           104             104        53

10    59    Photograph           104             104        53

11    60    Photograph           104             104        53

12    61    Photograph           104             104        53

13    62    Photograph           104             104        53

14    63    12.44 Motion          30              30        54

15    64    12.44 Motion          30              30        54

16    65    E-Mail                                36        54

17

18

19

20

21

22

23

24

25
```

1        CAUSE NO. F07-50318-M

2   THE STATE OF TEXAS          *    IN THE DISTRICT COURT

3   vs.                         *    194TH JUDICIAL DISTRICT

4   WESLEY LYNN RUIZ            *    DALLAS COUNTY, TEXAS

5

6

7   - - - - - - - - - - - - - - - - - - - - - - - - - - -

8

9

10              REPORTER'S RECORD

11              EXHIBIT INDEX

12          Volume 59 of 59 Volume(s)

13

14

15  - - - - - - - - - - - - - - - - - - - - - - - - - - -

16

17

18

19      BE IT REMEMBERED THAT on this the 27th day of May,

20  A.D, 2008, the above-styled and -numbered cause(s) came

21  on for hearing before the HONORABLE ERNEST B. WHITE, III

22  of the 194th Judicial District Court of Dallas County,

23  State of Texas, the following is a true and correct

24  transcription of the proceedings had, to-wit:

25  (Proceedings Reported by Computerized Machine Shorthand)

Belinda G. Baraka, Official Court Reporter
214-653-5803



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENSE'S EXHIBIT NO. A

LABORATORY REPORT

Belinda G. Baraka, Official Court Reporter
214-653-5803



SOUTHWESTERN

# INSTITUTE OF FORENSIC SCIENCES

## AT DALLAS

Trace Evidence Section

5230 Medical Center Drive
Dallas, Texas 75235

FILED MAY 15 2008

May 13, 2008

| | |
|---|---|
| Investigating Agency: Det. Jesus Briseno<br>Dallas Police Department<br>Crimes Against Persons<br>1400 Lamar Street 5th Floor<br>Dallas, Texas 75215 | Laboratory #: 07P0471 – S1<br>Agency #: 203348T<br>DCME #: 1022-07<br>Complainant: Mark Nix<br>Offense: Homicide |

## EVIDENCE:

Submitted by Marshall McLemore on March 28, 2007:

214.  Officer Nix's uniform shirt
   214A.  Uniform shirt
   214B.  Dallas Police Department Badge # 7906
   214C.  Fragment from left collar of uniform shirt (item 214A)
   214D.  Fragment from Dallas Police Department Badge # 7906 (item 214B)
   214E.  Part of metal clasp from insignia pin on left collar of uniform shirt (item 214A)

## RESULTS:

As previously reported (April 8, 2008), a series of defects was observed in the front of the left sleeve of the item 214A uniform shirt. The front left sleeve, upper left chest, top left shoulder and front left collar area was chemically tested for the presence of lead.

A large pattern of lead was detected on the collar and across the chest onto the front of the left sleeve. The lead residue was especially dense on the lower point of the left collar close to the original position of the "DPD" insignia pin and located jacket fragment (item 214C). A heavy concentration of lead residue was detected on the remaining collar and between the collar and the original position of the badge (item 214B). Even though lead residue was detected on the left sleeve, no specific "bullet wipe" was detected around the margins of the defects observed in the front of the left sleeve.



DEFENDANT'S
EXHIBIT
A

Examiner's Initials UH

FL # 07P0471 – S1
May 13, 2008
Page 2 of 2

## DISPOSITION OF EVIDENCE:

The above listed items will be released to the investigating agency.

Vicki Hall
Trace Evidence Examiner.
**Direct Line: 214-920-5948**
**Fax: 214-920-5813**
**E-mail: vhall@dallascounty.org**

cc:     DCME# 1022-07 (JKTP)
        Andy Beach – Dallas County D.A.'s Office

Examiner's Initials UH



DEFENSE'S EXHIBIT NO. B

NOTICE TO SUPPLEMENT

Belinda G. Baraka, Official Court Reporter
214-653-5803

NO.: F07-50318

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 194TH JUDICIAL |
| VS. | § | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## NOTICE TO SUPPLEMENT EXTRANEOUS OFFENSES
## AND TO "REVEAL THE DEAL"

On May 14, 2008, the State met with Hector Martinez, a close associate of Defendant, and Martinez's attorney, Charlie Humphries. In exchange for testifying fully and truthfully at both phases of the upcoming trial of Wesley Ruiz, the State has represented to Martinez and his attorney that he will not be sent to prison on any of his pending cases; F07-34698-T, F07-44942-T, and MB08-52439. Martinez was also promised immunity from prosecution for any criminal offenses touched upon during his testimony in this trial. Martinez will testify to the following extraneous offenses committed by the Defendant:

1) During the nine months preceding the murder of Mark Nix by the Defendant, Defendant admitted to the witness to "jacking" at gunpoint individuals of their money and/or drugs;

2) Shooting at an individual at Club Extreme in the months leading up to March 23, 2007;

3) To Defendant buying the murder weapon from witness' cousin;

4) To Ruiz making the statement on more than one occasion he wasn't going back to jail except in a box; and

5) To Ruiz coming by the witness' house on March 23, 2007, and borrowing witness' red/gray Chevy Caprice. Witness gave Ruiz a "blunt" and a bottle of liquid codeine.

The State, in light of today's agreement with Hector Martinez, has further decided to dismiss all pending cases against witness Carmen Delgadillo. This Notice further is to inform the Defendant the State's intention to call Hector Martinez as a witness at Ruiz's trial and to supplement State's List of Witnesses with the name of Hector Martinez, d.o.b. 08/07/87.

Respectfully submitted,

ANDY BEACH
Assistant District Attorney
Dallas County, Texas
Bar No. 01944900

DEFENDANT'S
EXHIBIT
B

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing instrument was delivered to opposing counsel on the _____ day of _____, 2008.


_____

ANDY BEACH


_____

William Karo Johnson

1

2

3

4

5

6

7

8

9

10

11             DEFENSE'S EXHIBIT NO. C

12             SUPPLEMENT TO NOTICE

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEFENDANT'S EXHIBIT C**

**CAUSE NUMBER: F-0750318**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 194th CRIMINAL |
| VS. | § | DISTRICT COURT OF |
| WESLEY LYNN RUIZ | § | DALLAS COUNTY, TEXAS |

## SUPPLEMENT TO NOTICE OF EXTRANEOUS OFFENSES

Pursuant to **TEX. CODE CRIM. PRO. ART. 38.37, TEX. R. CRIM. EVID. 404(B), and CODE CRIM. PRO. ART. 37.07,** notice is given to defendant by and through his counsel that during presentation of State's case in chief and punishment phase in the above-captioned and numbered criminal action, the following crimes, convictions, wrongs or acts, other than the act alleged in the indictment, may be introduced:

Membership, participation and allegiance to criminal gangs Midnight Dreamers, Ledbetter 12, and Tango Blast beginning in the early 1990's and continuing until present day.

The defendant was either the primary actor or participant in the following actions:
On or about 3-29-93, Dallas County, Texas, Assault
On or about 8-4-93, Dallas County, Texas, Burglary Vehicle
On or about 8-4-93, Dallas County, Texas, Criminal Mischief
On or about 8-21-93, Dallas County, Texas, Assault
On or about 9-12-93, Dallas County, Texas, Robbery
On or about 12-26-93, Dallas County, Texas, Aggravated Assault
On or about 6-30-95, Dallas County, Texas, Theft of Motor Vehicle
On or about 7-18-95, Dallas County, Texas, Assault, Jason and Jesse Vasquez
On or about 7-18-95, Dallas County, Texas, Criminal Mischief
On or about 7-18-95, Dallas County, Texas, Harassment, Margaret Vasquez
On or about 8-9-95, Dallas County, Texas, Theft of Motor Vehicle
On or about 1-23-96, Dallas County, Texas, Assault
On or about 4-26-96, Dallas County, Texas, Aggravated Assault
On or about 8-14-96, Dallas County, Texas, Assault
On or about 1-2-97, Dallas County, Texas, Burglary of Motor Vehicle
On or about 1-2-97, Dallas County, Texas, Burglary of Motor Vehicle
On or about 1-2-97, Dallas County, Texas, Possession of Firearm
On or about 3-8-97, Dallas County, Texas Deadly Conduct
On or about 4-26-97, Dallas County, Texas Assault
On or about 5-25-97, Dallas County, Texas, Aggravated Assault
On or about 7-19-97, Dallas County, Texas, Theft under $500
On or about 9-26-97, Dallas County, Texas, Escape
On or about 2-18-00, Dallas County, Texas, Minor Curfew violation, Giving wrong name to law enforcement, Failure to Maintain Financial Responsibility, Failure to Appear, Unregistered Motor Vehicle, Failure to Maintain Financial Responsibility, No Drivers License, Failure to Appear, Failure to Maintain Financial Responsibility, Failure to Display Drivers License, Failure to Appear, Expired buyers Tags, Failure to Maintain Financial Responsibility, Failure to Display Drivers License, Failure to Appear, Seatbelt Violation.

These acts also evidence participation, allegiance, and membership in criminal gangs.

Said crimes and bad acts are specifically set out in the defendant's "gang file" from the Irving Police Department. Said "gang file" and reports reflecting these acts have previously been tendered to defense.

A continuing course of delivery of controlled substances and possession and use of firearms beginning on or about 1997 continuing to the date of the present offense: March 23, 2007.

On or about June 7, 2007, Lew Sterrett Justice Center, Possession of Contraband, U.S. Currency.

Respectfully submitted,

Kevin Brooks
Assistant District Attorney
Dallas County, Texas

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion has been [ ] hand-delivered, [ ] mailed, [ ] faxed, to the Attorney for the Defendant, Paul Brauchle at 4131 N Central Expy Ste 680 Dallas, TX, 75204-2171, on this the _11_ th day of April, 2008.

Kevin Brooks
Assistant District Attorney
Dallas County, Texas



1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 1

12                        PROCEDURES

13

14

15

16

17

18

19

20

21

22

23

24

25

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*

Patrol S.O.P.               POLICE INCIDENTS            Section 1800

**TRAFFIC STOPS**                       Procedure   **1834**
(FELONY)

| Date Issued | Date Effective | Revision Number | Page |
|---|---|---|---|
| March 27, 1991 | April 17, 1991 | 91-1 | 1 of 10 |

**1834   TRAFFIC STOPS (FELONY)**

    A.   Officer safety requires a different approach for high risk traffic stops traffic stops, and stops at the end of vehicle pursuits.

        1.   Reasons for use of High Risk Stop procedure.

            a.   By information received or by observation, the officer has reason to believe that persons occupying a vehicle will be a threat to the officer's safety if a traffic stop is made.

                (1)   Recognition of an occupant as a wanted person.

                (2)   Information by radio transmission or written bulletin, that the vehicle or an occupant of a vehicle is wanted on an offense or warrant.

                (3) End of vehicle pursuit stops.

        2.   When the decision has been made to conduct a traffic stop considered to be high risk, the following steps should be used:

            a.   **CONSIDERATIONS PRIOR TO MAKING STOPS.**

                (1)   The need to call for a cover element if you are one-officer, regardless of the number of occupants in the vehicle. The initial element should follow the suspect until the support element is in place to assist in the stop.

                (2)   Determine number of occupants of the



Case 3:12-cv-05112-N  Document 31-11  Filed 04/17/15  Page 19 of 156  PageID 3533

       (1)  Location and direction of travel.

       (2)  License number on vehicle.

       (3)  Vehicle description, including make, year, and color.

       (4)  Number and description of occupants.

  b.  Turn on the emergency lights on your vehicle. Tap your siren if necessary to gain attention of driver of suspect vehicle.

  c.  Be alert for reaction of all persons in suspect vehicle. Will the driver suddenly stop, causing you to stop too close; is there movement of passengers in the vehicle to either hide or retrieve an article? The vehicle could speed away.

       (1)  If the vehicle flees, go to Vehicle Pursuit, Procedure 1904.

  d.  If the vehicle stops, give the location to the dispatcher.

4.  Properly place your vehicle in relation to the suspect's vehicle.

  a.  Stop your vehicle 15-20 feet to the rear of the suspect's vehicle.

  b.  Your vehicle should be stopped in an offset position from the suspect vehicle so the driver officer can see the left side of the suspect's vehicle and the license plate.

       (1)  If you cannot see the license plate of the suspect vehicle while seated in the police vehicle, **YOU ARE TOO CLOSE**!

  c.  If at night, leave your high-beam lights on and aim the spotlight toward the driver's inside rearview mirror.

       (1)  The cloak of darkness behind the lights

Case 3:12-cv-05112-N  Document 31-11  Filed 04/17/15  Page 20 of 156  PageID 3534

    (1)   Cover officer in second vehicle can move from cover vehicle to passenger seat of first officer's vehicle. This will allow cover officer to better utilize the shotgun and will enhance communications at the scene. If factors such as known armed suspects exist, it would not be wise to leave cover and move to the first vehicle.

    (2)   If due to terrain or street width, parked vehicles, or environmental factors exist, the cover officer should consider parking on the left side of the first police vehicle. Cover officer can move to passenger side of vehicle and utilize shotgun, or use handgun from drivers side of the vehicle.

5.   Removing Occupants from Suspect Vehicle.

   a.   "DO NOT RUSH THE SUSPECT" –

      This is true for most types of felony stops, whether end of chase, or any other high risk stop. Remember, circumstances, at specific scenes, require different tactics. If the suspect vehicle wrecks, or is on fire, you may approach, but would still not rush the vehicle. Approach with caution regardless of the circumstances.

    (1)   Use the Public Address System in your vehicle, if necessary for communication. The initial officer will use loud, clear, specific verbal directions/commands to occupants of the vehicle.

       a.   If the command is not for all occupants, specify to whom the direction/command is for.

    (2)   The initial command, in preparation for vehicle extraction is to direct all occupants of the suspect vehicle to make their hands visible to the officer.

Case 3:12-cv-05112-N Document 31-11 Filed 04/17/15 Page 21 of 156 PageID 3535

with head toward the officer, face to the side, away from the officer.

(f) On a high risk, or felony stop, visibility - being able to view the suspects from cover, is the overriding factor. Placing the suspect(s) between the vehicles allows the officers to contain the scene.

(5) Continue the suspect extraction with any passenger(s) in the vehicle. With bench seat vehicles, you can have a front seat passenger move to drivers door and exit. Back seat passengers can also be directed to drivers door exit. With vehicles having bucket seats, use same method except exit would be from passenger side front seat passenger.

(a) Subsequent suspects will be directed between the vehicles, placed on the ground in a staggered line. None of the suspects should be in touching distance of one another.

6. Clearing the Vehicle.

a. If all suspects exit from the drivers side, the driver officer will maintain cover and the back up or passenger officer will approach the suspect vehicle from the right rear side.

(1) Reach forward with your off hand and attempt to pull up the trunk. Be prepared to kneel down and cover anyone that might be in the trunk if it opens. Officer should consider attempting to move away from the vehicle to the nearest position of cover available.

(2) From the right rear, move slowly forward looking in back seat. Make a quick peek of floorboard, then move slowly forward to make a thorough check of rear

Case 3:12-cv-05112-N   Document 31-11   Filed 04/17/15   Page 22 of 156   PageID 3536

Traffic Stops-Felony (cont.)         Procedure 1834     Page 9 of 10

will not handcuff with a handgun in his
hand.

(2)  If at any time during this contact, one
or more felons attempt to flee, notify
dispatcher of direction of travel.
Remember to leave enough cover to handle
prisoners still in custody. Chase
fleeing suspects only if sufficient cover
remains with those in custody.

(3)  If occupants of the vehicle neither exit
the vehicle nor comply with the officer's
voice commands, the incident should be
handled in the same manner as a
Barricaded Person - Procedure 1200.

d.  Search the suspect(s).

(1)  Male suspects taken into custody:
Thoroughly search them at the time of the
arrest.

(2)  Female suspects taken into custody:
Thoroughly search purses, luggage, and
hair. Male officers may search the coats
or other similar loosely fitting garments
of female prisoners. Under normal
circumstances a female officer will be
requested to conduct a full body search
of a female prisoner. If any officer has
adequate reason to believe that a female
has a weapon or contraband/evidence which
may be destroyed, that officer may search
the outer clothing (pants, blouse, dress)
of that prisoner.

e.  Advise the prisoner of his constitutional
rights.

f.  Place prisoners in police vehicle per
Procedure 1925 (A-6).

g.  Transport prisoner to jail.

(1)  Female prisoners will be transported by
two officers.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DEFENSE'S EXHIBIT NO. 2

DOCUMENT

Belinda G. Baraka, Official Court Reporter
214-653-5803

## FELONY MODULE
## EVALUATION REPORT
## FELONY TRAFFIC STOP

TIME MARKED OUT: _____          TIME CLEARED: _____
DATE: _____                                    ELEMENT: _____
DRIVER: _____   WRITE PASS OR FAIL IN BLANK ____
PARTNER: _____   WRITE PASS OR FAIL IN BLANK ____
EVALUATOR: _____

**THE FOLLOWING EVALUATION POINTS MUST BE SUCCESSFULLY COMPLETED FOR THE DRIVER OR PARTNER TO PASS THE PROBLEM. PLACE A CHECK MARK ON THE LINE BESIDE THE TASK IF IT IS SUCCESSFULLY COMPLETED.**

|  | DRIVER | PARTNER |
|---|---|---|
| 1. Did the officers use correct radio procedures when marking out on the <u>Felony Traffic Stop</u>? | _____ | _____ |
| 2. Did the officers utilize emergency equipment lights? | _____ | _____ |
| 3. Did the officers tactically position their vehicles? | _____ | _____ |
| 4. If applicable, did the driver utilize the vehicle's high beam and spotlights to illuminate the interior of the suspects vehicle? | _____ | _____ |
| 5. Did the driver offset the vehicle to create a safety zone? | _____ | _____ |
| 6. Did the officers remain in their vehicle and utilize cover? | _____ | _____ |
| 7. Did the officers cover the suspect(s) with pistol and/or shotgun? | _____ | _____ |
| 8. Did the driver utilize the PA system effectively? | _____ | _____ |
| 9. Did the driver use clear and concise verbal commands? | _____ | _____ |
| 10. Did the driver have the suspect put his hands where they can be seen? | _____ | _____ |
| 11. Did the driver have the suspect remove the keys from the vehicle and toss them on the ground? | _____ | _____ |

DEFENDANT'S
EXHIBIT
2
PENGAD-Bayonne, N.J.



1

2

3

4

5

6

7

8

9

10

11          DEFENSE'S EXHIBIT NO. 3

12                 DDOCUMENT

13

14

15

16

17

18

19

20

21

22

23

24

25

Patrol S.O.P.            PATROL POLICIES            SECTION 1900

EMERGENCY VEHICLE OPERATION            Procedure 1904

| Date Issued<br>April 25, 1996 | Date Effective<br>April 29, 1996 | Revision Number<br>96-2 | Page<br>1 of 12 |
|---|---|---|---|

## 1904 EMERGENCY VEHICLE OPERATION

A.    Authorized Emergency Vehicles

   1.    Only those vehicles equipped with a siren, and with red or red and blue emergency warning lights installed with and in a manner approved by the Chief of Police, will be authorized emergency vehicles.

   2.    Vehicles not equipped with serviceable emergency equipment as provided in Section 1 above will not be operated in an emergency manner.

B.    Authorized Operators - No police vehicle will be operated Code 3 unless operated by:

   1.    A sworn member of the Department;

   2.    A Reserve Officer of the Department when on duty and operating under the immediate order of a sworn officer or sworn supervisor, and only when such operation is essential to the preservation of life; or

   3.    A Dallas Police Department Security Officer who is a peace officer and authorized to operate a marked vehicle as part of the officer's job duties.

C.    The following list should be considered before starting a pursuit or deciding to continue one.

   1.    Weather conditions.

   2.    Seriousness of the crime.

   3.    Have you already established a positive identification?



DEFENDANT'S
EXHIBIT
3

4.   Can the helicopter follow the suspect and officer? Can you get directions from the helicopter and follow at a safe speed?

5.   Is there heavy vehicle or pedestrian traffic?

6.   Is your vehicle performing properly?

7.   Will you have sufficient cover when the chase reaches its conclusion?

8.   Are the speeds being reached too fast?

9.   If you have lost visual contact with the vehicle, **call off the chase!**

D.   Manner of Operation While in Pursuit of Violator Who Refuses to Stop:

1.   The decision to pursue must be based upon facts known to the officer, not upon assumptions.

2.   Pursuits may be initiated for traffic violations only, however the officer, in both cases of traffic-only violators as well as other Class C offenders, will immediately disregard the pursuit when it becomes apparent that the violator will do whatever necessary to evade the officer (e.g., high speeds, running traffic lights, extended distance outside the city, driving through yards, etc).

3.   Both the emergency warning lights and the siren will be used at all times while operating Code 3.

4.   Only police vehicles equipped with operable emergency lights and sirens will participate in the pursuit of a fleeing vehicle.

5.   Unmarked vehicles without roof mounted emergency light system will discontinue pursuit when a marked vehicle takes up the chase.   Supervisors in unmarked vehicles will follow the chase in a prudent manner and at a reasonable speed.

6.   If a pursuit is initiated by a motorcycle the solo officer will abandon the pursuit when a four wheel unit joins the pursuit.

7. During those instances where an officer is not dispatched Code 3, the operator will inform the dispatcher of a Code 3 situation and receive acknowledgment as soon as practical upon beginning a Code 3 operation.

8. Officers will hold Code 3 responses to the essential minimum and end a Code 3 response at the earliest possible time.

9. Some law enforcement goals may be better served if an officer does not alert an in-the-act offender of the officer's arrival. The authority to drive contrary to traffic regulations generally requires the emission of an audible signal. In most cases when the siren is turned off, the authority to drive contrary to traffic regulations ceases.

10. The authority to drive contrary to operator of the regulatory codes does not relieve the operator of the responsibility of exercising due regard for others. When regulating their speed, officers should give careful consideration to such thing as the nature and seriousness of the offense or suspected offense, weather conditions, traffic conditions, traffic control devices, character of the neighborhood, traffic volume, road and vehicle conditions.

11. Vehicles with passengers (prisoners, witnesses, suspects, complainants or other non-police personnel who have not signed a waiver of liability) will not become engaged in pursuits.

12. If visual contact is lost other than momentarily or if unfavorable weather, road, traffic or vehicle conditions warrant, officers will discontinue the pursuit.

E. Prohibited Practices during a pursuit:

1. Road blocks will not be setup to stop violators.

2. Attempting to force the vehicle from the roadway by driving alongside or in front of the fleeing vehicle;

3.   Bumping or ramming the fleeing vehicle in an attempt to force it from the road.

4.   Officers will not discharge their weapons at a moving vehicle unless an occupant of the vehicle is using or attempting to use deadly force against an officer or other person.

5.   Officers will not pursue suspects the wrong way on a freeway. This order is not intended to prohibit pursuit on an adjacent roadway where the officer is driving with traffic flow.

F.   Requirements of the Controlling Supervisor when an element becomes involved in a pursuit, a field supervisor will either volunteer or be assigned by the dispatcher as the Controlling Supervisor. The Controlling Supervisor will:

1.   Take command of the pursuit, assume the responsibility to discontinue the pursuit based upon his or her knowledge or upon a recommendation from the primary pursuit element; and ensure its safe conduct and proper disposition at its termination point within the limits of his or her knowledge of the situation;

2.   Command the pursuit from either a stationary position or while proceeding Code 1 toward the pursuit;

3.   Have the option of joining the pursuit (if another supervisor has not done so) and may request that the Controlling Supervisor responsibilities be assigned to a supervisor not engaged in the pursuit, if one is available.

4.   Monitor all radio communications to ensure that only those elements authorized and designated by the dispatcher participate in high speed pursuits;

5.   Consider the nature and seriousness of the offense for which the suspect is being pursued and assess the potential, if any, for identifying and arresting the fleeing offender at later time;

Case 3:12-cv-05112-N   Document 31-11   Filed 04/17/15   Page 30 of 156   PageID 3544

6.  Order a pursuit discontinued when:

   a.  The known circumstances or facts do not justify continuing the pursuit; or

   b.  The actions of other police agencies or individuals increase the danger to officers or the public. This includes actions of other police agencies that violate the Inter-Jurisdictional Pursuit Agreement, whether or not the violating agency is a signatory to that agreement.

   c.  Receiving a recommendation by:

      (1)  The primary pursuit element;

      (2)  The supervisor involved in the pursuit;

      (3)  A superior officer.

G.  Requirements for the Officer Initiating the Pursuit:

   1.  Any element initiating a pursuit will immediately notify the police dispatcher of the following information:

      a.  Element number;
      b.  Direction of travel;
      c.  Reason for pursuit;
      d.  Description and number of occupants.

   2.  **NO MORE THAN THE FOLLOWING THREE VEHICLES WILL BE INVOLVED IN A PURSUIT- THE PURSUIT ELEMENT, ONE SUPPORT ELEMENT, AND A SUPERVISOR (EITHER THE CONTROLLING SUPERVISOR OR ANOTHER SUPERVISOR).** The primary vehicle or the supervisor engaged in the pursuit may request approval from the Controlling Supervisor to add additional elements. The Controlling Supervisor may grant this request and has the option to approve additional elements based upon personal judgement. Factors to be considered before requesting or allowing additional elements to join the pursuit include, but are not limited to:

      a.  The nature of the offense;

b.  The number of suspects;

c.  Whether to add a third element to the pursuit if no supervisor is able to join it;

d.  Whether the participating elements have more than one officer per vehicle and;

e.  Any factor that could reasonably cause an increased hazard.

3.  Police vehicles not involved in the pursuit will not enter the pursuit to assume the lead or secondary vehicle position unless:

a.  The lead or secondary vehicles have fallen far enough behind the suspect's vehicle that it may be reasonably assumed that the lead or secondary vehicle cannot maintain with the suspect's vehicle, and

b.  The vehicle can enter the pursuit without causing other pursuing squad cars to take evasive action.

c.  If a police vehicle assumes the lead or second vehicle position (after meeting the above conditions), the vehicle entering the pursuit will immediately inform the dispatcher of the action taken. The last or third police vehicle will then leave the pursuit (unless it is a supervisor) and will notify the dispatcher of this action.

4.  Officers involved in a pursuit will immediately inform the dispatcher of any collision or other injury observed by the officer as a result of the pursuit.

5.  Vehicles trailing a chase at a distance and at legal speed limits will not follow the chase beyond their Operations Division geographical boundaries, and will be available in the Operations Division in which the chase continues.

H.   Helicopter Involvement

1.  Whenever possible, the helicopter will join a pursuit after notification by the dispatcher. Upon joining the pursuit, the helicopter will:

a.  Advise the dispatcher and Controlling Supervisor of the helicopter's presence, ability to maintain contact while directing the pursuit, and the number of vehicles in the pursuit;

b.  Direct ground units to the fleeing vehicle's termination point.

2.  If practical and safe, the helicopter will:

a.  Maintain a position that allows the pilot and/or observer to see an area several blocks in front of and behind the suspect's vehicle;

b.  Notify pursuing officers of any upcoming traffic hazards; and

c.  Be aware of the number of police vehicles in the pursuit and notify the Controlling Supervisor and/or dispatcher of any changes in the number of vehicles involved in the pursuit.

I.   Requirements of the Dispatcher:

1.  The radio dispatcher will:

a.  Transmit all information pertinent to the pursuit to other police elements.

b.  Immediately identify the closest field supervisor (Patrol, Traffic, Special Operations) and designate that supervisor as the Controlling Supervisor.

c.  Notify the helicopter duty officer.

d.  Advise pursuit vehicles of any known or potential hazards in the path of the pursuit (accidents, street closures, repairs, etc.).

Case 3:12-cv-05112-N Document 31-11 Filed 04/17/15 Page 33 of 156 PageID 3547

e. Attempt to determine the reason why a vehicle is fleeing (e.g., a robbery that may have occurred near the initiation point of the chase, etc.).

2. When it becomes evident a pursuit may cross into another dispatch area with a different radio frequency, the originating dispatcher will notify the dispatcher responsible for the area into which the pursuit may continue. This dispatcher will activate the "Alert Tone" to warn elements in his or her dispatch area that an emergency radio traffic is forthcoming. Activation of the alert tone will include two short "beeps" of this signal followed by pertinent information regarding the pursuit.

3. When a pursuit enters another Operations Division, that channel's dispatcher will keep the division officers informed of the location of the pursuit. No officer will join a pursuit without obtaining approval from the dispatcher and/or the Controlling Supervisor of the channel and/or division where the pursuit originated. Normally, all pursuits will be maintained and controlled on the radio channel where the pursuit originated and under the direction of the original Controlling Supervisor.

The only exceptions to this policy will be:

a. If radio transmission become weak or unreadable, a Communications Division supervisor will direct elements to a channel where transmissions are improved;

b. If a pursuit continues for an excessive length of time, the Communications Division supervisor may direct elements to another channel so that operations on the primary channel may return to normal;

c. If the Controlling Supervisor advises that a pursuit should be broadcast on another channel for officers' safety, the Communications Division supervisor will direct the elements to another channel.

4.    If it becomes evident the pursuit might cross into another jurisdiction or if elements from another police agency become involved in the pursuit, the dispatcher will determine whether the jurisdiction being entered or agencies participating in the pursuit are signatories to the Inter-Jurisdictional Pursuit Agreement.    This information will immediately be broadcast to the pursuit vehicles and Controlling Supervisor.

J.    Inter-Jurisdictional Pursuit Policy

1.    Before a pursuit enters another jurisdiction, the dispatcher will notify the other agency with the following information:

a.    The pursuit is about to enter their jurisdiction;

b.    Reason for the pursuit and nature of violation;

c.    Location and direction of the pursuit;

d.    Complete description of occupants and vehicle;

e.    Number of elements involved in the pursuit;

f.    Whether or not assistance is needed;

g.    If applicable, notify that agency when the pursuit is leaving their jurisdictional boundaries or the location of termination.

2.    The initiating agency will have control and be responsible for the pursuit.  Other agencies will not participate unless requested to assist.

3.    **A TOTAL OF NO MORE THAN THREE VEHICLES FROM THE COMBINED JURISDICTION WILL BE INVOLVED IN ANY PURSUIT -- TWO ELEMENTS AND ONE SUPERVISOR.**

4. During a pursuit involving more than one agency, the following practices are prohibited:

   a. Roadblocks;

   b. Ramming;

   c. Forcing pursued vehicles off the roadway;

   d. Shooting at pursued vehicle (except to protect against the use of unlawful deadly force).

5. Responsibility of the initiating agency:

   a. Arraignment of arrested persons;

   b. Disposition of any passenger;

   c. Disposition of arrested person's vehicle;

   d. Coordination of all reports, citations and criminal charges.

6. An officer apprehending an offender will take the arrestee or have the arrestee taken without unnecessary delay, before:

   a. The magistrate who issued the warrant or before the magistrate named in the warrant, if the magistrate is in the same county where the person is arrested. If the issuing or named magistrate is in another county the person arrested will without unnecessary delay be taken before some magistrate in the county in which he or she was arrested; or

   b. Some magistrate of the county in which the arrest was made, or;

   c. If necessary to provide more expeditiously to the arrestee the required warnings, before a magistrate in a county bordering the county in which the arrest was made.

Case 3:12-cv-05112-N Document 31-11 Filed 04/17/15 Page 36 of 156 PageID 3550

7. As a matter of professional courtesy, a supervisor from the agency where the pursuit terminated will respond to the termination location to be informed of pertinent information regarding the chase.

K. Reporting Requirements

   1. Offense Report

      a. At the conclusion of each vehicular pursuit, officers will obtain a service number and prepare a direct entry Offense Report titled "Evading Arrest". This report will be prepared regardless of whether the suspect escaped or was arrested.

      b. The Offense Report will fully describe the particulars of the pursuit and actions taken by the officers involved.

      c. In instances where the suspect escapes, the Offense Report will contain as much information as available regarding suspect and vehicle description and any other pertinent identifying data.

      d. Information contained in the Offense Report will be used by detectives to develop a case against an offender who may escape. This information may result in the suspect being arrested at a later time and in a safer manner.

   2. Data Pursuit Form

      a. The Controlling Supervisor will complete a Data Pursuit Form within three working days of the date of pursuit. If a Controlling Supervisor is not assigned, the primary pursuit element will be responsible for completing this form.

      b. Completed Data Pursuit Forms will be forwarded to the Planning Unit, which compiles a Monthly Pursuit Report forwarded to all Organizational Commanders.

      c. Officers will also submit a Data Pursuit Form when they do not initiate a formal pursuit for a traffic violation in which the violator refuses to stop.

**L.** Review Procedures

    1. The Communications Division will route a copy of each Evading Arrest Offense Report to the Division Commander of the officer making the report and to the unit having report and to the unit having investigative responsibility for filing the prior offense for which the suspect is evading.

    2. The Division Commander will:

        a. Review each incident of vehicular pursuit;

        b. Insure that any appropriate follow-up action is taken; and

        c. Notify the Departmental Safety Officer of any recommendations that may enhance officer or citizen safety.

**M.** Procedures regarding Emergency Escort for Private Vehicles are outlined in Patrol S.O.P. 1815.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENSE'S EXHIBIT NO. 4

CASINGS

(NONREPRODUCIBLE)

Defense's 4



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DEFENSE'S EXHIBIT NO. 5

CASINGS

(NONREPRODUCIBLE)

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*

1
2
3
4
5
6
7
8
9
10          DEFENSE'S EXHIBIT NO. 6
11                  CASINGS
12             (NONREPRODUCIBLE)
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2

3

4

5

6

7

8

9

10                    DEFENSE'S EXHIBIT NO. 7

11                         CASINGS

12                     (NONREPRODUCIBLE)

13

14

15

16

17

18

19

20

21

22

23

24

25



1
2
3
4
5
6
7
8
9
10          DEFENSE'S EXHIBIT NO. 8
11              SPENT/FRAGMENTS
12             (NONREPRODUCIBLE)
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2

3

4

5

6

7

8

9          DEFENSE'S EXHIBIT NO. 9

10              CASINGS

11            (NONREPRODUCIBLE)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DEFENSE'S EXHIBIT NO. 10

ASP

(NONREPRODUCIBLE)

Belinda G. Baraka, Official Court Reporter
214-653-5803

Defense's 10

1

2

3

4

5

6

7

8

9

10

11          DEFENSE'S EXHIBIT NO. 11

12              DEATH CERTIFICATE

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF TEXAS — CERTIFICATE OF DEATH — STATE FILE NUMBER

| TEXAS DEPARTMENT OF STATE HEALTH SERVICES — VITAL STA…CS UNIT | |
|---|---|

**1. LEGAL NAME OF DECEASED** (Include AKA's if any) (First, Middle, Last)  (Maiden)
Mark    Nix

**2. DATE OF DEATH – ACTUAL OR PRESUMED**
March 23, 2007

**3. SEX** Male   **4. DATE OF BIRTH**   **5. AGE–Last Birthday (Years)**   IF UNDER 1 YR  | IF UNDER 1 DAY   **6. BIRTHPLACE** (City & State or Foreign Country)

**7. SOCIAL SECURITY NUMBER**   **8. MARITAL STATUS AT TIME OF DEATH** ☐ Married ☐ Widowed ☐ Divorced ☐ Never Married ☐ Unknown   **9. SURVIVING SPOUSE** (If wife, give name prior to first marriage)

**10a. RESIDENCE STREET ADDRESS**   **10b. APT NO**   **10c. CITY OR TOWN**

**10d. COUNTY**   **10e. STATE**   **10f. ZIP CODE**   **10g. INSIDE CITY LIMITS?** ☐ Yes ☐ No

**11. FATHER'S NAME**   **12. MOTHER'S NAME PRIOR TO FIRST MARRIAGE**

**13. PLACE OF DEATH (CHECK ONLY ONE)**

IF DEATH OCCURRED IN A HOSPITAL: ☐ Inpatient ☒ ER/Outpatient ☐ DOA    IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: ☐ Hospice Facility ☐ Nursing Home ☐ Decedent's Home ☐ Other (Specify)

**14. COUNTY OF DEATH** Dallas   **15. CITY/TOWN, ZIP** (If outside city limits, give precinct no)  Dallas   75235   **16. FACILITY NAME** (If not institution, give street address)  Parkland Memorial Hospital

**17. INFORMANT'S NAME & RELATIONSHIP TO DECEASED**   **18. MAILING ADDRESS OF INFORMANT** (Street and Number, City, State, Zip Code)

**19. METHOD OF DISPOSITION** ☐ Burial ☐ Cremation ☐ Donation ☐ Entombment ☐ Removal From State ☐ Other (Specify)

**20. SIGNATURE AND LICENSE NUMBER OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH**

**21.** ☐ Unknown
Section ___
Block ___
Lot ___
Space ___

**22. PLACE OF DISPOSITION** (Name of cemetery, crematory, other place)   **23. LOCATION** (City/Town, and State)

**24. NAME OF FUNERAL FACILITY**   **25. COMPLETE ADDRESS OF FUNERAL FACILITY** (Street and Number, City, State, Zip Code)

**26. CERTIFIER (Check only one):** ☐ Certifying Physician - To the best of my knowledge, death occurred due to the cause(s) and manner stated. ☒ Medical Examiner/Justice of the Peace – On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated.

**27. SIGNATURE OF CERTIFIER** Townsend-Parchman MD   **28. DATE CERTIFIED** (Mo/Day/Yr) 3/24/07   **29. LICENSE NUMBER** H1421   **30. TIME OF DEATH** (Actual or presumed) 7:16 P.M.

**31. PRINTED NAME, ADDRESS OF CERTIFIER** (Street and Number, City, State, Zip Code)  J. K. Townsend-Parchman, M.D. 5230 Medical Center Dr. Dallas, TX 75235   **32. TITLE OF CERTIFIER** Medical Examiner

**33. PART 1. ENTER THE CHAIN OF EVENTS** – DISEASES, INJURIES, OR COMPLICATIONS – THAT DIRECTLY CAUSED THE DEATH. DO NOT ENTER TERMINAL EVENTS SUCH AS CARDIAC ARREST, RESPIRATORY ARREST, OR VENTRICULAR FIBRILLATION WITHOUT SHOWING THE ETIOLOGY. DO NOT ABBREVIATE. ENTER ONLY ONE CAUSE ON EACH LINE.   Approximate interval: Onset to death

| | CAUSE OF DEATH | |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | a. Gunshot wound | Unknown |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST. | b. Due to (or as a consequence of): | |
| | c. Due to (or as a consequence of): | |
| | d. | |

**PART 2. ENTER OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I.**

**34. WAS AN AUTOPSY PERFORMED?** ☒ Yes ☐ No

**35. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH?** ☒ Yes ☐ No

**36. MANNER OF DEATH** ☐ Natural ☐ Accident ☐ Suicide ☒ Homicide ☐ Pending Investigation ☐ Could not be determined

**37. DID TOBACCO CONTRIBUTE TO DEATH?** ☐ Yes ☒ No ☐ Probably ☐ Unknown

**38. IF FEMALE:** ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within the past year

**39. IF TRANSPORTATION INJURY, SPECIFY:** ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify)

**40a. DATE OF INJURY** (Mo/Day/Yr) 3-23-07   **40b. TIME OF INJURY** Unknown P.M.   **40c. INJURY AT WORK?** ☒ Yes ☐ No   **40d. PLACE OF INJURY** (e.g., Decedent's home; construction site, restaurant, wooded area) Roadway

**40e. LOCATION** (Street and Number, City, State, Zip Code) 4100 Bernal Dr.   Dallas, TX 75212   **40f. COUNTY OF INJURY** Dallas

**41. DESCRIBE HOW INJURY OCCURRED** Shot by another person(s).

**42a. REGISTRAR FILE NO.**   **42b. DATE RECEIVED BY LOCAL REGISTRAR**   **42c. REGISTRAR**

INFORMATION ON BACK OF THE FORM MUST BE COMPLETED IF APPLICABLE
INFORMATION BELOW IS FOR STATISTICAL PURPOSES ONLY AND IS NOT TO BE INCLUDED ON CERTIFIED COPIES

VS-112 REV 1/2006

COPY
DALLAS COUNTY
INSTITUTE OF FORENSIC SCIENCES


DEFENDANT'S EXHIBIT
PENGAD-Bayonne, N.J.

1
2
3
4
5
6
7
8
9
10
11          DEFENSE'S EXHIBIT NO. 12
12                 PHOTOGRAPH
13
14
15
16
17
18
19
20
21
22
23
24
25





DEFENSE'S EXHIBIT NO. 13

PHOTOGRAPH



1

2

3

4

5

6

7

8

9

10

11                  DEFENSE'S EXHIBIT NO. 14

12                      PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



24

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11                 DEFENSE'S EXHIBIT NO. 15
12                        PHOTOGRAPH
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*



DEFENDANT'S
EXHIBIT
15



1

2

3

4

5

6

7

8

9

10

11          DEFENSE'S EXHIBIT NO. 16

12               PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25

Belinda G. Baraka, Official Court Reporter
214-653-5803



DEFENDANT'S
EXHIBIT
16

1

2

3

4

5

6

7

8

9

10

11                DEFENSE'S EXHIBIT NO. 17

12                     PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



DEFENDANT'S
EXHIBIT
17

```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11                    DEFENSE'S EXHIBIT NO. 18

12                         PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25
```





DEFENSE'S EXHIBIT NO. 19

DIAGRAM

Belinda G. Baraka, Official Court Reporter
214-653-5803

## Dallas Police Department

| Drawn By | Location: |
|---|---|
| Sgt. JL Harris, #4362 | 4100 Bernal |
| Date Drawn | Incident Date: |
| 3/26/2007 | 3/23/2007 |
| Scale | Case |
| Not to scale | 203348T |



4100 Mart St.

4100 Bernal Dr.

0     25     50

CONTROL NO.

07 - 06 2

DEFENDANT'S EXHIBIT
19

Attachment
#14

1

2

3

4

5

6

7

8

9

10

11                        DEFENSE'S EXHIBIT NO. 20

12                            AUTOPSY REPORT

13

14

15

16

17

18

19

20

21

22

23

24

25





DEFENDANT'S EXHIBIT 20

SOUTHWESTERN
INSTITUTE OF FORENSIC SCIENCES
5230 Medical Center Drive
Dallas, Texas   75235

DALLAS COUNTY
INSTITUTE OF FORENSIC SCIENCES

Case No. 2351-02-1619JTP

Name: Ortiz, Jesus

Age: 22          Race: Latin          Sex: Male

Date of Death: 22 JUN 2002          Date of Examination: 22 and 23 JUN 2002
Time of Death: 3:22 am              Time of Examination: 1:05 pm and 7:30 am

Pronounced at: Methodist Medical Center
               Dallas, Dallas County, Texas

AUTOPSY REPORT:

ORGAN WEIGHTS:

| Brain | 1410 g | R. Lung | 440 g | R. Kidney | 175 g |
|-------|--------|---------|-------|-----------|-------|
| Heart | 410 g | L. Lung | 510 g | L. Kidney | 165 g |
| Liver | 1490 g | Spleen | 160 g | | |

EXTERNAL EXAMINATION:

Photographs, fingerprints, palm prints, and x-rays are taken. The hands are received bagged.

When first viewed, the body is nude. No clothing accompanies the body and no jewelry is present.

The body is that of a normally developed, Latin male appearing consistent with the recorded age of 22 years. The body is of average build and nutritional status, measuring 65 inches (165.1 cm) in length and weighing 174 pounds (78.9 kg). There is good preservation in the absence of embalming. There is posterior, blanching lividity and full rigidity. The body is cooler to the touch than room temperature.

The scalp hair is straight and black and measures up to 1-5/8 inches. A black beard and mustache are present. The scalp and ears are unremarkable. The eyes are closed and have clear corneae and brown irides. There is moderate edema of the conjunctivae. The nose and mouth are unremarkable and the natural teeth appear to be in good condition. The face is unremarkable. The neck contains injury to be described below. The chest is unremarkable. The abdomen contains treatment to be described below. The body hair is average in amount and distribution for an adult male. The genitalia are those of an uncircumcised adult male. The back contains injury to be described below. The limbs are equally and symmetrically developed and contain injury to be described below.

CONFIDENTIAL

Case No:   2351-02-1619JTP

Name:   Ortiz, Jesus


Page   2

DALLAS COUNTY
INSTITUTE OF FORENSIC SCIENCES

**IDENTIFYING MARKS AND SCARS:**

There are up to 1-1/4 inch scars on the forehead, left eyebrow, and left side of the scalp. There is a 1/2 inch scar on the anterior left shoulder. There are up to 3 inch scars on the lower extremities.

**EVIDENCE OF TREATMENT:**

There is a nasogastric tube in the right naris. An oral endotracheal tube and an oral airway are in place. There are ten EKG pads on the body. There is a translucent bandage over an 11-1/2 inch incision in the midline of the abdomen. Subsequent internal examination reveals five bloodsoaked laparotomy sponges, packing in a defect in the left lobe of the liver, and sutures in the transverse colon (segmentally resected), the small intestine (segmentally resected), the mesentery, and the stomach. There are puncture marks in the right antecubital fossa. There is an arterial line in the right wrist. There is an intravenous catheter in the right inguinal area. There is an intravenous catheter in the left antecubital fossa. There is a Foley catheter in the urethra. There are identification bands around the ankles.

**EVIDENCE OF INJURY:**

GUNSHOT WOUND:

There is a gunshot wound of entrance in the upper left buttock, which is a 5/8 inch in height x up to 7/8 inch in width transversely oriented oval defect that is centered 29-1/4 inches below the top of the head and 2-1/2 inches to the left of midline. There is no soot, stippling or marginal abrasion. No soot or gunpowder is seen within the entrance wound.

After perforating the skin, subcutaneous tissue, and musculature of the upper left buttock, the bullet sequentially perforates the left iliopsoas muscle, the mesentery (surgically treated), the small intestine (by history, surgically treated), the transverse colon (by history, surgically treated), the stomach (x2, surgically treated), and the left lobe of the liver (surgically treated).

Associated injury consists of contusion of the left hemidiaphragm overlying the defect and the left lobe of the liver.

By history, the bullet was recovered during surgery.

The bullet travels upward, back to front, and very slightly left to right.

INCISED WOUNDS:

There are four incised wounds in the anterior distal left forearm, anterior left wrist, and left thenar eminence, which are numbered 1 through 4 for purposes of identification without regard to possible chronological sequence.

CONFIDENTIAL

Case No:   2351-02-1619JTP

me:    Ortiz, Jesus

## Incised wound #1:

There is an incised wound in the anterior distal left forearm, which  is a 1-1/8 inch transversely oriented defect with smooth margins and sharp angles  which is centered 30 inches below the top of the head. Contiguous with the lateral angle, there is a 9/16 inch,  very superficial scabbed brown incised  wound. Contiguous with  the medial angle, there is a 1 inch,  very superficial  scabbed, brown incised wound. The defect is  full   thickness  and extends to  the  subcutaneous tissue.

## Incised wound #2:

In the anterior left wrist, there is a 1/16 inch very superficial incised  wound that is obliquely oriented from right  superior to left inferior. It is centered 30-3/4 inches below the top of the head.

## Incised wound #3:

In the anterolateral  left wrist, there is a 3/16  inch very superficial incised wound which is obliquely oriented from left superior to right inferior and which is centered 30-7/8 inches below the top of the head.

## Incised wound #4:

There is an incised wound in the left thenar eminence, which is a 1/2 inch  very superficial  defect that is  obliquely  oriented from  left  superior  to  right inferior and which is centered 32 inches below the top of the head.

Incised wounds 2 through 3 have sharp angles and smooth margins and are linear.

OTHER INJURIES:

On  the left side  of  the front  of the neck,  there is a  3/8 inch faint brown contusion.

On the anterior  top of the  right  shoulder,  there is a 1/2  inch  yellow-tan abrasion. On the anterior top of the left shoulder, there is a 1-1/4 inch  faint contusion, just lateral to which there are a few up to 7/8  inch  red  abrasions and inferior  to  which there is a 5/8 inch transversely  oriented thin, scabbed apparent abrasion. On the posterior top of the right  deltoid area,  there is a 1-1/4 inch faint contusion. On the posterior left shoulder, there are a  few up to 3-3/4 inch linear and curvilinear red abrasions.

On  the  posterior  right arm,  there  is  a 7 inch  area  of up  to  4-1/2  inch curvilinear red abrasions. On the posterior left arm, there is a 7-1/4 inch area of up to 5-1/2 inch linear and curvilinear red abrasions. On the right pretibial area, there is  a 3/4 inch  red-brown contusion.  On  the  left knee and  left pretibial area, there are a few 1/4 inch red abrasions.

These injuries, having been once described, will not be repeated.

CONFIDENTIAL

Case No:   2351-02-1619JTP                                    Page     4

'ame:       Ortiz, Jesus

## INTERNAL EXAMINATION:

NECK:  See previous description.  The  soft tissues  and prevertebral fascia are
unremarkable.  The hyoid bone is intact.  There  is no palpable fracture of  the
cervical vertebrae.

BODY CAVITIES:   There  are approximately 100  ml of clear serous  fluid in each
pleural  cavity.  There  are approximately  50 ml of  clear serous  fluid  in the
pericardial sac.

CARDIOVASCULAR SYSTEM: The  pericardium, epicardium, and endocardium are smooth,
glistening, and unremarkable. There are no thrombi in  the atria or  ventricles.
The foramen ovale  is  probe patent but  physiologically  closed. The  coronary
arterial system is right dominant and is free of atherosclerosis. The atrial and
ventricular septa are intact.  The cardiac valves  are unremarkable.  The
myocardium is dark red-brown and firm, with no focal abnormalities. The aorta is
of usual course and  caliber, and its  major branches and  the  great veins  are
normally  distributed. The intimal surface of  the abdominal  aorta  is free  of
atherosclerosis.

RESPIRATORY SYSTEM:  The upper airway is unobstructed. The mucosa of the  larynx
and  tracheobronchial tree  is smooth  and unremarkable  without petechiae. The
pulmonary arteries contain no emboli. The pleural surfaces are smooth and shiny.
'e bronchi are  normally  distributed. The major  bronchi  are  unremarkable.
.ctioning  of the lungs reveals a  pale  pink-purple, minimally  congested  and
.ildly edematous parenchyma.

HEPATOBILIARY SYSTEM:  See previous description.

GENITOURINARY SYSTEM:  See previous description.

MUSCULOSKELETAL SYSTEM:  See previous description.

Apart  from the features described above, examination of the organs  and tissues
which  comprise  the HEAD,  CENTRAL   NERVOUS  SYSTEM, NECK,  BODY   CAVITIES,
CARDIOVASCULAR,  RESPIRATORY,  HEPATOBILIARY,  GENITOURINARY,  GASTROINTESTINAL,
LYMPHORETICULAR, ENDOCRINE, and MUSCULOSKELETAL SYSTEMS reveals all to be within
the usual limits of size, character and position for age, sex, and development.

In particular, it is noted that the  gallbladder contains approximately  8 ml of
bile but no calculi.  The urinary bladder is empty. The stomach contains
approximately  50 ml of  bile stained  fluid.  No  tablets  or  capsules  are
identified. The appendix is present and unremarkable. The body wall fat measures
up to 3/4 inch in maximal thickness.

CONFIDENTIAL

Case No:   2351-02-1619JTP                                    Page    5

ne:    Ortiz, Jesus

**FINDINGS:**

1.  Gunshot wound of trunk:

    a.  Entrance wound:  upper left buttock.
    b.  Apparent range of fire:  distant range, based on absence of firearm
        residue on skin, clothing or in wound track.
    c.  Injuries:  perforations of mesentery (surgically treated), small
        intestine (by history, surgically treated), transverse colon (by
        history, surgically treated), stomach (x2, surgically treated), and
        liver (surgically treated) with contusion of left hemidiaphragm.
    d.  Recovery:  bullet recovered during surgery at hospital.
    e.  Path:  upward, back to front, and very slightly left to right.

2.  Incised wounds of left upper extremity.

3.  Abrasions and contusions of neck, shoulders, arms, and lower extremities.

4.  History that the deceased was shot while being chased on foot by police.

**CONCLUSION:**

Tt is our opinion that Jesus Ortiz, a 22-year-old Latin male, died as the result
a gunshot wound of the trunk.

.ANNER OF DEATH: Homicide.

J. K. Townsend-Parchman, M.D.
Medical Examiner

Jill E. Urban, M.D.
Medical Examiner

Lynn A. Salzberger, M.D.
Medical Examiner

Joni L. McClain M.D.
Medical Examiner

Sheila Spotswood, M.D.
Medical Examiner

David Dolinak, M.D.
Deputy Chief Medical Examiner

Jeffrey J. Barnard, M.D.
Chief Medical Examiner

**TOXICOLOGY:**

Antemortem Blood:
  Alcohols and Acetone - negative.

Postmortem Blood:
  Alcohols and Acetone - negative.
  Cannabinoid Screen - negative.
  Drug Screen - 0.040 mg/L morphine.

Vitreous:  Alcohols and Acetone - negative.

.otocol typed by Ellen Christopher

CONFIDENTIAL

THE SOUTHWESTERN INSTITUTE OF FORENSIC SCIENCES
AT DALLAS

Name _ORTIZ, Jesus_____   Case No. _2351-02_

Age _____   Date _____



GSW

CONFIDENTIAL

For report only:

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11                    DEFENSE'S EXHIBIT NO. 21
12                      TYPEWRITTEN NOTES
13
14
15
16
17
18
19
20
21
22
23
24
25
```

COMPLAINANT:**NIX**

FOR DET.  :Briseno

## INVESTIGATIVE INFORMATION

SUBMITTING OFFICER:JOHNSON      DATE03-25-07

INFO OBTAINED VIA:INTERVIEW

OBTAINED ON DATE:03-25-07      AT TIME:9:30.AM


TOPIC:O.I.S

NARRATIVE:WENT TO P.M.H #502N,AND INTERVIEWED RUIZ,WESLEY. UPON MY ARRIVAL I INTRODUCED MYSELF TO HIM. I ADVISED HIM THAT I WAS THERE TO TALK ABOUT THE SHOOTING HE WAS INVOLVED IN. I THEN READ HIM HIS MIRANDA WARNING. RUIZ STATED THAT THE OFFICERS GOT BEHIND HIM WITH THEIR LIGHTS ON WHEN HE WAS ON MOCKINGBIRD. RUIZ STATED THAT HE THEN STARTED TRYING TO GET AWAY FROM THE OFFICERS AND WRECKED OUT WHEN HE GOT TO WEST DALLAS. RUIZ STATED THAT HIS VEHICLE HIT A CURB AND THE OFFICERS RAN UP TO HIS VEHICLE AND BEGAN FIRING AT HIM. RUIZ DENIED FIRING AT OFFICERS AND STATED THAT HIS GUN WAS IN THE BACK SEAT IN A SACK. WHEN ASKED WHY HE WAS RUNNING FROM THE POLICE, RUIZ STATED THAT HE HAD RAN FROM THE POLICE THE DAY BEFORE IN OAK CLIFF WHEN HE WAS DRIVING A BLACK CAR. RUIZ STATED THAT HE WAS ENROUTE TO WEST DALLAS TO SELL THE GUN AND VEHICLE. WHEN I ASKED RUIZ FOR A WRITTEN STATEMENT HE REQUESTED TO SPEAK TO AN ATTORNEY. BOTH OF RUIZ`S ARMS WERE BANDAGED, ABRASIONS TO HIS FACE, AND A LARGE BANDAGE ON HIS ABDOMEN. RUIZ STATED HE WAS ALSO SHOT IN THE KNEE CAP. I CONTACTED SGT.SHAFFER IN THE JAIL AND ADVISED HIM THAT RUIZ WAS IN A ROOM.



DEFENDANT'S
EXHIBIT
24

1

Follow up required: Yes       No        Key words:_____

Supervisor Approval: _____     _____
RUIZ.INTERVIEW.doc

1

2

3

4

5

6

7

8

9

10

11          DEFENSE'S EXHIBIT NO. 22

12             PURPOSED CHARGE

13

14

15

16

17

18

19

20

21

22

23

24

25

194TH JUDICIAL DISTRICT COURT
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS        \*

VS                         \*     CAUSE NO. F07-50318-M

WESLEY LYNN RUIZ        \*

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

The Defendant, WESLEY LYNN RUIZ, stands charged by indictment with the offense of capital murder, alleged to have been committed on or about the 23rd day of March, A.D., 2007, in Dallas County, Texas.

To this charge, the Defendant has pled not guilty.

Our law provides that a person commits murder if he intentionally or knowingly causes the death of an individual; or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

A person commits capital murder when such person intentionally causes the death of a peace officer who is acting in the lawful discharge of an official duty and whom the person knows is a peace officer.

DEFENDANT'S
EXHIBIT
22

Court's Charge Page 1

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The term "individual" means a human being who has been born and is alive.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

"Deadly weapon" as used herein means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

A "firearm" is a deadly weapon.

To warrant a finding that the defendant is guilty of capital murder, you must find from the evidence beyond a reasonable doubt that:

1)      the defendant intentionally or knowingly caused the death of MARK NIX by shooting him with a firearm, a deadly weapon, and

2)      at the time of the shooting, if any, the deceased, MARK NIX, was then and there a peace officer, and

Court's Charge Page 2

3)    the defendant then and there knew, at the time of the shooting, if any, that MARK NIX was a peace officer, and

4)    at the time of the shooting, if any, the deceased was acting in the lawful discharge of an official duty.

If you should have a reasonable doubt as to the existence of any of the foregoing elements, then you cannot find the defendant guilty of capital murder.

In all criminal cases, the burden of proof is on the State. All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt; and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit the defendant and say by your verdict "not guilty."

You are instructed that if there is any testimony before you in this case regarding the defendant having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such offenses, if any were committed, and even then you may only consider the same in determining the intent of the defendant and knowledge of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

It is a defense to this prosecution if the defendant's conduct was justified by law.

Under the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or

attempted use of unlawful force.

The use of force against another is not justified in response to verbal provocation alone.

A person is justified in using deadly force against another if he would be justified in using force against the other person as above stated and, provided that a reasonable person in his situation would not have retreated, and when and to the degree he reasonably believes that deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

The term "deadly force" as used herein means force that is intended or known by the defendant to cause, or in the manner of its use or intended use, is capable of causing death or serious bodily injury.

The term "reasonable belief" as used herein means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant. When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes to be immediately necessary, viewed from his standpoint at the time, to protect himself

from such attack or attempted attack.

It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

Now, if you find from the evidence beyond a reasonable doubt that the defendant, WESLEY LYNN RUIZ, on or about the 23rd day of March, A.D., 2007, in the County of Dallas and State of Texas, did cause the death of MARK NIX, an individual, hereinafter called deceased, by shooting the deceased with a firearm, but you further find from the evidence that viewed from the standpoint of the defendant at the time, from the words or conduct or both of MARK NIX, it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the the hands of MARK NIX, and that acting under such apprehension, he reasonably believed that the use of deadly force on his part was immediately necessary to protect himself against MARK NIX'S use or attempted use of unlawful deadly force, and he caused the death of MARK NIX by shooting the

deceased with a firearm and that a reasonable person in the defendant's situation at that time would not have retreated, then you should acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on the occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict "not guilty."

Now, if you find from the evidence beyond a reasonable doubt that the defendant, WESLEY LYNN RUIZ, on or about the 23rd day of March, A.D., 2007, in the County of Dallas and State of Texas, did unlawfully then and there intentionally or knowingly cause the death of MARK NIX, an individual, hereinafter called deceased, by shooting the deceased with a firearm, a deadly weapon, and the said deceased was a peace officer, namely: a Dallas Police Officer then and there acting in the lawful discharge of an official duty, and the said defendant then and there knew the said deceased to be a peace officer, then you will find the defendant guilty of the offense of capital murder, as charged in the indictment, and you will make no finding in your verdict as to punishment.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit the defendant and say by your verdict "not guilty."

You are instructed that you may consider all relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense, if any.

The Grand Jury indictment is the means whereby a defendant is brought to trial in a felony prosecution. It is not evidence of guilt nor can it be considered by you in passing upon the question of guilt of the defendant. The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant.

You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions, and you must be governed thereby.

After you retire to the jury room, you should select one of your members as your Presiding Juror. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as Presiding Juror.

During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

No one has any authority to communicate with you except the officer who has you in charge. Do not attempt to talk to the officer who has you in charge, or the attorneys, or the Court, or anyone else concerning any questions you may have.

Your sole duty at this time is to determine the guilt or innocence of the defendant under the indictment in this cause and restrict your deliberations solely to the issue of guilt or innocence of the defendant.

Following the arguments of counsel, you will retire to consider your verdict.


_____

ERNEST B. WHITE, III, Judge Presiding

# VERDICT FORMS

We, the Jury, find beyond a reasonable doubt that the Defendant, WESLEY LYNN RUIZ, is guilty of the offense of capital murder as charged in the indictment.

_____
PRESIDING JUROR

_____
(PRINTED NAME)

<u>OR</u>

We, the Jury, find the Defendant, WESLEY LYNN RUIZ, not guilty.

_____
PRESIDING JUROR

_____
(PRINTED NAME)

Court's Charge  Page 10

# AFFIDAVIT IN ANY FACT

THE STATE OF TEXAS          §

COUNTY OF DALLAS          §

BEFORE ME, _MARIA E. VARKER_

On this day personally appeared _Raquel Sosa, DOB 7-6-86,_
_11808 Crumpton Dr., Balch Spring, Tx 75180, 972-557-6949._

Who, after being by duly sworn, on oath deposes and says:

_Friday night around 10:30 P.M., Jesus Ortiz_
_came by my house at 11808 Crumpton Dr. He_
_asked if I wanted to go for a drive with_
_him. I said yes and I said I would_
_drive. While Jesus was at my door, I_
_saw an injury on his left wrist. The_
_injury was an open cut and it was bleeding._
_He told me that something had happened earlier,_
_but he did not explain anything. I asked_
_him if we should stop at Eckerds for peroxide_
_for the cut and he said yes. We were now in_
_Oak Cliff close to an Eckerds at 12th Street_
_and Hampton when police officers were already_
_behind us. I had a strange feeling about this_

_Raquel Sosa_
(SIGNATURE OF PERSON MAKING STATEMENT)

"I, _Maria Varker_ , Badge Number _4582_ , a police officer for the Dall[...]
Department, as described in Article 2.12(3) of the Texas Code of Criminal Procedure, have admin[...]
the above noted individual while in the performance of my assigned duties, as authorized by Sectio[...]
the Texas Government Code."

STATE'S
EXHIBIT
_101_
PENGAD 800-631-6989

SWORN AND SUBSCRIBED BEFORE ME THIS _22_ DAY OF _June_ , 20 _02_

CONFIDENTIAL

_Maria E. Varker_
(POLICE OFFICERS SIGNATURE)

Page _1_ of _4_

# AFFIDAVIT IN ANY FACT

THE STATE OF TEXAS        §

COUNTY OF DALLAS          §

BEFORE ME, _____ MARia VARKER_____

On this day personally appeared _____ Continue -_____

Raquel Sosa_____

Who, after being by duly sworn, on oath deposes and says:

*So before reaching Hampton I took the right side lane and the Police Officers were still behind us. The officers turned their red lights on us and I asked Jesus if we should stop or go. We made the decision to go, so I sped off over the speed limit and didn't stop for the Police. About two or three minutes later, after coming up to a stop sign, I stopped and we switched drivers - Jesus took over and he sped off and went faster than I did. We went down to a Park and stopped there. We got out of the car and we ran off. I didn't see how many officers were behind us and I don't know if they said anything to us.*

_____
(SIGNATURE OF PERSON MAKING STATEMENT)

"I, _Maria E Varker_, Badge Number _4583_, a police officer for the Dallas Police Department, as described in Article 2.12(3) of the Texas Code of Criminal Procedure, have administered this oath to the above noted individual while in the performance of my assigned duties, as authorized by Section 602.002(7) of the Texas Government Code."

SWORN AND SUBSCRIBED BEFORE ME THIS _22_ DAY OF _June_, 20 _02_

CONFIDENTIAL

_____
(POLICE OFFICERS SIGNATURE)

Page _2_ of _4_

# AFFIDAVIT IN ANY FACT

THE STATE OF TEXAS        §

COUNTY OF DALLAS          §

BEFORE ME, _____ MARia Varlow _____

On this day personally appeared _____ - Continue - _____

Raquel Sosa

Who, after being by duly sworn, on oath deposes and says:

I kept falling on the ground because I
was bare for and didn't have shoes on.
I left my flip-flops in the grass, in the park.
Jesus helped me get up, whenever I fell on
the ground and I tried to keep up with him.
We ran through a small tunnel and came out
and I fell again. I heard the cop comming
and Chuy ran off. A female officer came
up on me and told me to get up and go through
the tunnel and told me not to try and run.
The male police officer was standing close to me
when I heard about seven shots fired. I
didn't see the shooting and I don't know who
shot first. I didn't think that "Chuy" had a gun on him.

(SIGNATURE OF PERSON MAKING STATEMENT)

"I, _Maria Varlow_, Badge Number _4583_, a police officer for the Dallas Police
Department, as described in Article 2.12(3) of the Texas Code of Criminal Procedure, have administered this oath to
the above noted individual while in the performance of my assigned duties, as authorized by Section 602.002(7) of
the Texas Government Code."

SWORN AND SUBSCRIBED BEFORE ME THIS _22_ DAY OF _June_, 20_02_

CONFIDENTIAL

(POLICE OFFICERS SIGNATURE)

Page _3_ of _4_

# AFFIDAVIT IN ANY FACT

THE STATE OF TEXAS    §

COUNTY OF DALLAS    §

BEFORE ME, _____ Maria Varker

On this day personally appeared _Raquel Sosa_

_— Continue —_

Who, after being by duly sworn, on oath deposes and says:

I didn't see "Chuy" with a gun that evening and I thought that the officer was the only one shooting. They took me to a police car and I stayed there for 15 minutes. The officer told me that "Chuy" had been caught. I was told by plain clothes officer that "Chuy" had been shot. I saw Chuy's family at. I saw Chuy's brother close to the Ambulance and he followed the Ambulance to the hospital. I was not with Chuy during the day and I don't know anything about what happened before he picked me up that Night. I call Jesus by nickname of "Chuy".

_Raquel Sosa_
(SIGNATURE OF PERSON MAKING STATEMENT)

"I, _Maria EVVarker_, Badge Number _4583_, a police officer for the Dallas Police Department, as described in Article 2.12(3) of the Texas Code of Criminal Procedure, have administered this oath to the above noted individual while in the performance of my assigned duties, as authorized by Section 602.002(7) of the Texas Government Code."

SWORN AND SUBSCRIBED BEFORE ME THIS _22_ DAY OF _June_, 20 _02_

CONFIDENTIAL

_Maria Varker_
(POLICE OFFICERS SIGNATURE)

ATTACH

Page _4_ of _6_

1

2

3

4

5

6

7

8

9

10            DEFENSE'S EXHIBIT NO. 23

11                   HANDGUN

12              (NONREPRODUCIBLE)

13

14

15

16

17

18

19

20

21

22

23

24

25

Belinda G. Baraka, Official Court Reporter
214-653-5803

1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 24

12                       12.44 MOTION FORM

13

14

15

16

17

18

19

20

21

22

23

24

25

THE STATE OF TEXAS

VS.

CAUSE NO. F _____ -

_____ DISTRICT COURT ___

DALLAS COUNTY, TEXAS

**STATE'S MOTION TO FIND DEFENDANT GUILTY OF A STATE JAIL FELONY AND IMPOSE SENTENCE FOR A CLASS A MISDEMEANOR AS PROVIDED IN SECTION 12.44(A) OF THE TEXAS PENAL CODE**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now the District Attorney of Dallas County, Texas, by and through the undersigned Assistant District Attorney, and in the above cause would respectfully show that Defendant is charged herein with a State Jail Felony Offense, and moves the Court to consider the gravity and circumstances of this case and consider the history, character and rehabilitative needs of the defendant and upon finding the Defendant guilty of the State Jail Felony charges, impose a punishment for Class A misdemeanor as provided in Section 12.44(a) of the Texas penal Code.

Respectfully Submitted,
Craig Watkins, District Attorney
Dallas County, Texas

By: _____

    Assistant District Attorney

Comes now Defendant in the above cause, and agrees to the above Motion and moves the Court to find him guilty of a State Jail Felony as charged and impose punishment for a Class A Misdemeanor as provided in Section 12.44(a) of the Texas Penal Code

_____    _____
Attorney for Defendant    Defendant

The foregoing Motion is granted and the court find Defendant guilty of a State Jail Felony as charged herein and does impose sentence for a Class A Misdemeanor as provided in Section 12.44(a) of the Texas Penal Code.

_____
Judge Presiding

DEFENDANT'S
EXHIBIT
24



1

2

3

4

5

6

7

8

9

10

11          DEFENSE'S EXHIBIT NO. 26

12                PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*



35



DEFENSE'S EXHIBIT NO. 27

PHOTOGRAPH

Belinda G. Baraka, Official Court Reporter
214-653-5803





1

2

3

4

5

6

7

8

9

10

11              DEFENSE'S EXHIBIT NO. 28

12                   PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



DEFENDANT'S
EXHIBIT
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DEFENSE'S EXHIBIT NO. 29

PHOTOGRAPH

Belinda G. Baraka, Official Court Reporter
214-653-5803



DEFENDANT'S
EXHIBIT
29



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DEFENSE'S EXHIBIT NO. 30

PHOTOGRAPH



1
2
3
4
5
6
7
8
9
10
11          DEFENSE'S EXHIBIT NO. 31
12              PHOTOGRAPH
13
14
15
16
17
18
19
20
21
22
23
24
25



1

2

3

4

5

6

7

8

9

10

11          DEFENSE'S EXHIBIT NO. 32

12              PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25





1

2

3

4

5

6

7

8

9

10

11                     DEFENSE'S EXHIBIT NO. 33

12                          PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25





1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 34

12                         PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25

Belinda G. Baraka, Official Court Reporter
214-653-5803



1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 35

12                         PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



DEFENDANT'S
EXHIBIT
35

1
2
3
4
5
6
7
8
9
10
11              DEFENSE'S EXHIBIT NO. 36
12                   PHOTOGRAPH
13
14
15
16
17
18
19
20
21
22
23
24
25



1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 37

12                          PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 38

12                           PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 40

12                          PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENSE'S EXHIBIT NO. 41

PHOTOGRAPH

Belinda G. Baraka, Official Court Reporter
214-653-5803



DEFENDANT'S
EXHIBIT
41



```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11                    DEFENSE'S EXHIBIT NO. 42

12                          PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25
```



1

2

3

4

5

6

7

8

9

10

11                         DEFENSE'S EXHIBIT NO. 43

12                                PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25





1

2

3

4

5

6

7

8

9

10

11                  DEFENSE'S EXHIBIT NO. 44

12                        PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25

Defense's 44

*Belinda G. Baraka, Official Court Reporter*
*214-653-5803*



1

2

3

4

5

6

7

8

9

10

11                              DEFENSE'S EXHIBIT NO. 45

12                                    PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 46

12                        PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



DEFENDANT'S
EXHIBIT
46

1

2

3

4

5

6

7

8

9

10

11                      DEFENSE'S EXHIBIT NO. 53

12                           PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11                DEFENSE'S EXHIBIT NO. 54
12                      PHOTOGRAPH
13
14
15
16
17
18
19
20
21
22
23
24
25
```



DEFENDANT'S
EXHIBIT
54

1

2

3

4

5

6

7

8

9

10                      DEFENSE'S EXHIBIT NO. 55

11                            PHOTOGRAPH

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11              DEFENSE'S EXHIBIT NO. 56

12                   PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



58

1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 57

12                         PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



1
2
3
4
5
6
7
8
9
10
11
12              DEFENSE'S EXHIBIT NO. 58
13                    PHOTOGRAPH
14
15
16
17
18
19
20
21
22
23
24
25

Belinda G. Baraka, Official Court Reporter
214-653-5803



1

2

3

4

5

6

7

8

9

10

11              DEFENSE'S EXHIBIT NO. 59

12                    PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11              DEFENSE'S EXHIBIT NO. 60

12                    PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 61

12                           PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11                    DEFENSE'S EXHIBIT NO. 62

12                         PHOTOGRAPH

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11          DEFENSE'S EXHIBIT NO. 63

12              12.44 MOTION

13

14

15

16

17

18

19

20

21

22

23

24

25

Offense date 9/1/95

| THE STATE OF TEXAS | § | CAUSE NO. _F05-57476 M_ |
|---|---|---|
| V. | § | 194TH  JUDICIAL DISTRICT COURT |
| _Wesley Lynn Ruiz_ | § | DALLAS COUNTY, TEXAS |

**STATE'S MOTION TO FIND DEFENDANT GUILTY OF A STATE JAIL FELONY AND IMPOSE SENTENCE FOR A CLASS A MISDEMEANOR AS PROVIDED IN SEC. 12.44 (a) OF THE PENAL CODE OF THE STATE OF TEXAS**

Comes now the District Attorney of Dallas County, Texas, by and through the undersigned Assistant District Attorney, and in the above cause would respectfully show that the Defendant is charged herein with a STATE JAIL felony offense, and moves the court to consider the gravity and circumstances of this case and consider the history, character and rehabilitative needs of the defendant and upon finding the defendant guilty of the STATE JAIL felony charged, impose confinement for a Class A misdemeanor as provided in Section 12.44(a) of the Texas Penal Code.

Respectfully submitted

BILL HILL, District Attorney
Dallas County, Texas

By: _____
Assistant District Attorney

Comes now the Defendant and agrees to the above Motion and moves the court to find him guilty of a STATE JAIL felony as charged and impose confinement for a Class A misdemeanor as provided in Sec. 12.44(a) of the Texas Penal Code.

_____        _____
Attorney for Defendant          Defendant

The foregoing Motion is granted and the court finds Defendant guilty of a STATE JAIL felony as charged herein and does impose sentence for a Class A misdemeanor as provided in Sec. 12.44(a) of the Texas Penal Code.

DEFENDANT'S EXHIBIT 63

_____
JUDGE



1

2

3

4

5

6

7

8

9

10

11          DEFENSE'S EXHIBIT NO. 64

12               12.44 MOTION

13

14

15

16

17

18

19

20

21

22

23

24

25

Defense's 64

Offense date 9/1/95

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | CAUSE NO. _F04-58062X M_ |
| V. | § | 194TH  JUDICIAL DISTRICT COURT |
| _Wosley Ruiz_ | § | DALLAS COUNTY, TEXAS |

STATE'S MOTION TO FIND DEFENDANT GUILTY OF A
STATE JAIL  FELONY AND IMPOSE SENTENCE FOR A
CLASS A MISDEMEANOR AS PROVIDED IN SEC. 12.44
(a) OF THE PENAL CODE OF THE STATE OF TEXAS

Comes now the District Attorney of Dallas County, Texas, by and through the undersigned Assistant District Attorney, and in the above cause would respectfully show that the Defendant is charged herein with a STATE JAIL felony offense, and moves the court to consider the gravity and circumstances of this case and consider the history, character and rehabilitative needs of the defendant and upon finding the defendant guilty of the STATE JAIL felony charged, impose confinement for a Class A misdemeanor as provided in Section 12.44(a) of the Texas Penal Code.

Respectfully submitted,

BILL HILL , District Attorney
Dallas County, Texas

By: _____
Assistant District Attorney

Comes now the Defendant and agrees to the above Motion and moves the court to find him guilty of a STATE JAIL felony as charged and impose confinement for a Class A misdemeanor as provided in Sec. 12.44(a) of the Texas Penal Code.

_____
Attorney for Defendant

_____
Defendant

The foregoing Motion is granted and the court finds Defendant guilty of a STATE JAIL felony as charged herein and does impose sentence for a Class A misdemeanor as provided in Sec. 12.44(a) of the Texas Penal Code.

DEFENDANT'S
EXHIBIT
64

_____
JUDGE



1

2

3

4

5

6

7

8

9

10

11        DEFENSE'S EXHIBIT NO. 65

12                E-MAIL

13

14

15

16

17

18

19

20

21

22

23

24

25

Belinda G. Baraka, Official Court Reporter
214-653-5803

Case 3:12-cv-05112-N  Document 31-11  Filed 04/17/15  Page 155 of 156  PageID 3669

**From:**     Maria Ross
**To:**       Sweet, Leslie
**Date:**     7/10/2008 6:04:28 AM
**Subject:**  Re: Wesley Ruiz #07022486

No Disciplinary Record...

>>> Leslie Sweet 07/09/08 5:02 PM >>>
any discipline ?



DEFENDANT'S
EXHIBIT
65

PENGAD-Bayonne, N. J.

```
 1    THE STATE of TEXAS   )

 2    COUNTY of DALLAS     )

 3

 4        I, BELINDA G. BARAKA, Official Court Reporter in

 5    and for the 194th Judicial District Court  of Dallas

 6    County, State of Texas, do hereby certify that the

 7    exhibits included herein constitute true and complete

 8    duplicates of the original exhibits, excluding physical

 9    evidence, offered into evidence during the proceedings

10    in the above-entitled and -numbered cause(s), as set out

11    herein.

12        I further certify that the total cost for the

13    preparation of this Reporter's Record is included in the

14    original volume.

15        WITNESS MY OFFICIAL HAND this the 28th day of

16    May            , A.D., 2009.

17

18                        BGBaraka
                          BELINDA G. BARAKA, CSR #5028
19                        Official Court Reporter
                          194th Judicial District Court
20                        133 N. Industrial Blvd.
                          Dallas County,  Texas  75207
21

22

23

24

25    Certification Expires:  12-31-09
```

Belinda G. Baraka, Official Court Reporter
214-653-5803