IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WESLEY LYNN RUIZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-5112-N |
| | § | (Death Penalty Case) |
| LORIE DAVIS, DIRECTOR | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER DENYING RELIEF

Wesley Lynn Ruiz petitions the Court for a writ of habeas corpus, contending that his conviction and death sentence are unconstitutional due to trial errors, prosecutorial misconduct, and ineffective assistance of counsel. Because Ruiz has not shown that he is entitled to relief, the Court denies the requested relief.

## I. PROCEDURAL BACKGROUND

Ruiz was convicted and sentenced to death for the capital murder of Dallas police officer Corporal Mark Nix. *See State v. Ruiz,* No. F07-50318-M (194th Judicial District Court, Dallas County, Tex. July 11, 2008). The Texas Court of Criminal Appeals ("CCA") affirmed the conviction and death sentence. *See Ruiz v. State,* No. AP-75,968, 2011 WL 1168414 (Tex. Crim. App. Mar. 2, 2011), *cert. denied,* 565 U.S. 946 (Oct. 11, 2011). During the pendency of his direct appeal, Ruiz filed his first postconviction application for a writ of habeas corpus in the state trial court in writ number W07-50318-M(A) on August 25, 2010.

*See* State Habeas Clerk's Record ("SHCR") at 2-58 [ECF 31[33] at 5]. The trial court held an evidentiary hearing and entered findings of fact and conclusions of law recommending that the relief sought be denied[1] (the "State Court Findings"), which were adopted by the CCA, which also dismissed the supplemental application as a subsequent writ that did not meet any of the exceptions provided for in Article 11.071, § 5. *See Ex Parte Ruiz,* No. WR-78,129-01, 2012 WL 4450820, at *1 (Tex. Crim. App. Sept. 26, 2012).

Ruiz filed his original petition for a writ of habeas corpus in this Court on September 23, 2013, which was accompanied by an unopposed motion to stay these proceedings to exhaust his claim concerning the allegedly false prisoner classification testimony of A.P. Merillat and a related claim of ineffective assistance of trial counsel. *See* Pet. [ECF 14]; Mot. [ECF 15]. The Court found that the unopposed motion to stay complied with *Rhines v. Weber,* 544 U.S. 269 (2005), and stayed these proceedings to allow Ruiz to exhaust these claims. *See* Order (Oct. 1, 2013) [ECF 16]. Ruiz filed a subsequent state habeas application, which the CCA dismissed as an abuse of the writ without considering the merits of the claims. *See Ex parte Ruiz,* No. WR-78,129-03, 2014 WL 6462553, at *1 (Tex. Crim. App. Nov. 19, 2014).

---

[1]Curiously, the state trial court made two findings of fact and conclusions of law. The first is at 2 SHCR 365-405 [ECF 31[35] at 81-121], dated March 20, 2012. The second is at 2 SHCR 406-46 [ECF 31[35] at 122 through ECF 31[36] at 12], dated May 21, 2012. While the Court has not undertaken a line-by-line comparison, the two documents appear substantially identical except for the date. It is unclear why there are two documents. The Court will refer to the later order on the theory that, if there are any differences, the later order supercedes the earlier.

Following exhaustion, Ruiz returned to this Court, which reopened these proceedings.

*See* Order (Nov. 20, 2014) [ECF 20].  Ruiz filed his amended petition on January 17, 2015,

*see* Amd. Pet. [ECF 23], Respondent Davis filed her answer on April 16, *see* Ans. [ECF 28],

and Ruiz filed his reply on May 5, *see* Reply [ECF 32].

## II. FACTUAL BACKGROUND

The state court described the facts of the offense as follows:

On March 21, 2007, the homicide division of the Dallas Police Department issued a bulletin to its officers to be on the lookout for a 1996 four-door Chevy Caprice with dark tinted windows and chrome wheels, red and gray in color, that was suspected to have some involvement in a capital murder.  Two days later, on March 23rd, two plainclothes officers in an unmarked police vehicle spotted a car matching this description on Stemmons Freeway.  They summoned marked patrol cars to stop the suspect vehicle and followed it as it exited the freeway at Mockingbird Lane and drove into West Dallas.  Corporal Mark Nix arrived, positioning his patrol car directly behind the Caprice and activating his overhead lights and video camera.  The Caprice momentarily braked as if to pull over, but then suddenly raced off at high speed down the winding road, followed by Nix and at least one other patrol car in hot pursuit.  The ensuing events were recorded by Nix's video camera and that of the patrol car directly behind him, both of which recordings are in evidence.

Apparently taking a curve too fast, the Caprice hit the left-hand curb and spun out of control.  It barreled backwards down a slight incline on the right side of the street and came to rest facing the roadway, its back-end apparently blocked by a fence.  Nix followed the Caprice down the incline and pulled to a stop, directly hood to hood.  The patrol car behind Nix also pulled off the road and came to a halt on the passenger side of the Caprice, a short way off but close enough to effectively hem it in.  Corporal Nix jumped out of his patrol car and rushed to the front passenger side of the Caprice. There he began to swing his baton with his left hand, smashing it against the tinted front passenger window.  He paused momentarily to place his pistol on the ground so that he could use both hands to wield the baton and continued striking the window, punching a small hole through it.  A second later, a single gun shot shattered the rear passenger window, the bullet striking Nix's badge and

splintering. A fragment entered Nix's chest at the level of his clavicle, severing his left common carotid artery. The other officers responded with a hail of gunfire, then dragged Nix to cover and summoned the SWAT team. The appellant was eventually pulled from behind the wheel of the Caprice, wounded and unconscious, the pistol with which Nix had been shot found in his lap. Nobody else was in the car. Nix was pronounced dead at the hospital, but the appellant was able to survive his multiple wounds.

*Ruiz v. State,* 2011 WL 1168414, at *1 (footnotes omitted). These findings are entitled to

deference. *See* 28 U.S.C. § 2254(e)(1).

### III. CLAIMS

Ruiz presents six claims for relief in the following enumerated categories:

1.  The knowing failure of the State of Texas to correct the presentation of false testimony by A.P. Merillat[2] given at Mr. Ruiz's trial, violated his constitutional rights, *see* Amd. Pet. at 12;

2.  Mr. Ruiz's trial counsel was ineffective for failing to object to the false testimony of Mr. Merillat at the petitioner's sentencing, *see* Amd. Pet. at 26;

3.  Mr. Ruiz's appellate counsel was ineffective for failing to raise the issue of the false testimony of Mr. Merillat by reply brief or at the oral argument of his appeal, *see* Amd. Pet. at 27;

4.  Mr. Ruiz was denied his Sixth Amendment right to a fair and impartial trial because of the overwhelming presence of law enforcement in the courtroom during the punishment phase of the trial, *see* Amd. Pet. at 29;

5.  The Texas court refused to allow the sentencing jury to fully consider and give effect to the mitigating evidence by prohibiting the attorneys

---

[2] The petition refers to this person as "A.P. Merrilat," "Merrilat," and "Merillat." *See* Am. Pet. at 12, 26. Respondent refers to the same person as "A.P. Merillat" and "Merillat." *See* Ans. at 10, 22. The state court record refers to him as "A.P. Merrilott" and "Merrilott." *See* 51 RR at 135-36. This order will refer to him as "A.P. Merillat" and "Merillat."

representing the State, the defendant, and the defendant's counsel from informing the jurors or the prospective jurors of the effect of the failure of a jury to agree on the issues submitted in violation of the Sixth, Eighth, and Fourteenth Amendments, *see* Amd. Pet. at 36; and

6.   Mr. Ruiz's constitutional rights were violated by the punishment charge which required at least ten "no" votes for the jury to return a negative answer to the first special issue and at least ten "yes" votes for the jury to return an affirmative answer to the mitigation special issue, *see* Amd. Pet. at 38.

In his fifth and sixth claims, Ruiz also included cumulative error arguments. *See* Amd. Pet. at 38, 44. Ruiz also requests an evidentiary hearing, specifically on his first claim. *See* Amd. Pet. at 13. Respondent asserts that all of Ruiz's claims are procedurally barred and, in the alternative, lack merit. *See* Ans. at 22-95.

## IV. STANDARD OF REVIEW

Federal habeas review of these claims is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA sets forth the preliminary requirements that must be satisfied before reaching the merits of a claim made in a federal habeas proceeding.

### A. Exhaustion

Under AEDPA, a federal court may not grant habeas relief on any claim that the state prisoner has not first exhausted in the state courts. *See* 28 U.S.C. § 2254(b)(1)(A); *Harrington v. Richter*, 562 U.S. 86, 103 (2011). However, a federal court may deny relief on the merits notwithstanding any failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005).

## B. State-Court Procedural Determinations

If the state court denies a claim on state procedural grounds, a federal court will not reach the merits of the claim if it determines that the state-law grounds are independent of the federal claim and adequate to bar federal review. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). If the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows that an exception to the bar applies, the federal court must normally resolve the claim without the deference that 28 U.S.C. § 2254(d) otherwise requires. *See Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000); *but see Busby v. Dretke,* 359 F.3d 708, 721 n.14 (5th Cir. 2004) (affording deference to merits finding when state court "invoked a procedural bar as an alternative basis to deny relief"); *Rolan v. Coleman,* 680 F.3d 311, 319 (3rd Cir. 2012) (holding that "AEDPA deference [under section 2254(d)] applies when a state court decides a claim on procedural grounds and, alternatively, on the merits").

## C. State-Court Merits Determinations

If the state court denies a claim on the merits, a federal court may not grant relief unless it first determines that the claim was unreasonably decided by the state court, as defined in section 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In the context of a section 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. *See Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). This provision does not authorize habeas relief but restricts this Court's power to grant relief to state prisoners by barring claims in federal court that were not first unreasonably denied by the state courts. AEDPA limits rather than expands the availability of habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Richter*, 562 U.S. at 98. "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *See Williams*,

529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review "if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case." *White v. Woodall,* 572 U.S. 415, 425 (2014) (quoting *Williams*, 529 U.S. at 407-408). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions.'" *Id.* at 419 (quoting *Howes v. Fields,* 565 U.S. 499, 505 (2012)). The standard for determining whether a state court's application was unreasonable is an objective one and applies to federal habeas corpus petitions that, like the instant case, were filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before that state court first satisfies section 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 563 U.S. at 185. The evidence required under section 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## V. MERILLAT'S INACCURATE TESTIMONY

In his first three claims, Ruiz complains about the testimony of A.P. Merillat, the prosecution expert, regarding the classification of inmates in the Texas prison system. Ruiz first argues that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated because the State of Texas knowingly violated its duty to correct false testimony given by Merillat, which directly reflected upon and addressed the First Special Issue, i.e., whether Ruiz presented a future danger in prison society. *See* Amd. Pet. at 12-25. Ruiz first argues that the State's failure to disclose the nature of the false information violated *Brady v. Maryland,* 373 U.S. 83, 87 (1963), the State's presentation and failure to correct the false testimony violated *Napue v. Illinois,* 360 U.S. 264, 269 (1959), and the State's use of materially inaccurate evidence in punishment violated *Johnson v. Mississippi,* 486 U.S. 578 (1988). *See* Amd. Pet. at 22-25. In his second claim, Ruiz argues that his trial counsel provided ineffective assistance in failing to object to the false testimony. *See id.* at 26-27. And in his third claim, Ruiz argues that his counsel on direct appeal provided ineffective assistance in failing to raise the issue of Merillat's false testimony on appeal. *See id.* at 27-29.

Respondent asserts that these claims are procedurally barred by the state court's determination that it was barred in a successive habeas petition. *See* Ans. at 22, 27-40. In the alternative, Respondent asserts that the claim lacks merit. *See id.* at 22, 40-57. Because the Court agrees that the claims are procedurally barred, it does not reach the merits.

Ruiz argues that the delay in filing these claims was due to the negligence of his appellate attorney and his state habeas counsel. *See* Amd. Pet. at 12. Ruiz also asserts that he has established cause and prejudice to excuse the procedural default in that the prosecution team either knowingly or unwittingly allowed Merillat to provide inaccurate testimony on the issue of classification and then failed to correct the testimony either in its direct or rebuttal punishment case. *See* Amd. Pet. Br. at 2-5 [ECF 23[2]]. Ruiz also argues that his alternate claim of ineffective assistance of trial counsel comes within the exception to procedural bar created in *Martinez v. Ryan,* 566 U.S. 1 (2012), and applied to Texas cases in *Trevino v. Thaler,* 569 U.S. 413 (2013). *See* Amd. Pet. Br. at 5-8.

### A. Factual Background

During the punishment stage, the prosecution called A.P. Merillat, a "criminal investigator with the special prosecution unit out of Huntsville, Texas" to inform the jury based on his "experience as to the opportunities to commit violent crimes and how inmates are classified and what that is going to mean" depending on how the jury answered the two special issues in the punishment phase of this trial. 51 RR at 149, 155 [ECF 30 at 41, 42]. On direct examination, Merillat testified that Ruiz would enter the state prison system, the Institutional Division of the Texas Department of Criminal Justice (TDCJ), at a G-3 classification level if he was sentenced to life in prison and that this classification could be changed to a lower, less restrictive level after ten years. *See* Amd. Pet. at 14 (citing 51 RR at 160). Merillat also explained that persons entering at this level would be "able to work in a craft shop and make wallets or paint or do things like that" or work as "orderlies that . . .

sweep the floor, mop the floor, empty trash, such as that" as opposed to working "out in those fields hoeing weeds" as an incentive for good behavior and that "there is no restriction from it in the classification plan." *Id.* at 15 (citing 51 RR at 187-89).

Significantly, Ruiz also retained an expert, Fitzgerald, who agreed with Merillat's classification testimony.

On June 16, 2010, the Texas Court of Criminal Appeals issued its opinion in *Estrada v. State*, 313 S.W.3d 274 (Tex. Crim. App. 2010). In *Estrada*, the state confessed error on the same point raised here: Merillat's classification testimony was incorrect. Interestingly, in *Estrada*, the two side's experts were Merillat and Fitzgerald, just as here. Just as here, both testified that a life without parole inmate started at G-3, but after ten years could be reclassified to a less restrictive classification. *Id.* at 286. The problem was that, in July 2005, the Texas Department of Criminal Justice adopted a new regulation: "Effective 9/1/05, offenders convicted of Capital Murder and sentenced to 'life without parole' will not be classified to a custody less restrictive than G-3 throughout their incarceration." *Id.* at 287. Both sides requested the Court of Criminal Appeals to take judicial notice of the regulation, which it did. *Id.*[3] The Court thus remanded for a new punishment proceeding.

---

[3]Oddly enough, neither side has requested this Court to take judicial notice of the regulation. It also does not appear that the regulation is in the voluminous record, or at least neither side points the Court to it. Notwithstanding some effort, the Court has not located the regulation in the usual online legal resources. What may be a copy of the regulation appears at https://www.aclu.org/pdfs/capital/tdcj_unit_classification.pdf (last visited 12/10/18). The Court will assume, as do the parties, that the Court of Criminal Appeals got the facts right.

## B. Procedural Bar

These claims were not raised in the direct appeal or initial state habeas proceeding. Instead, this Court granted an unopposed stay of these proceedings to allow them to be presented to the state court in a subsequent state habeas application. *See* Order (Oct. 1, 2013) [ECF 16]. During the abeyance, the state court dismissed the subsequent state application "as an abuse of the writ without considering the merits of the claims." *Ex parte Ruiz,* No. WR-78,129-03, 2014 WL 6462553, at *1 (Tex. Crim. App. Nov. 19, 2014).

This Court will not reach the merits of a claim that the state court denied on independent and adequate state procedural grounds, unless the habeas petitioner shows that an exception to the procedural bar applies. *See Davila v. Davis,* 137 S. Ct. 2058, 2064 (2017); *Sawyer*, 505 U.S. at 338; *Coleman*, 501 U.S. at 729. The United States Court of Appeals for the Fifth Circuit has repeatedly "held that 'the Texas abuse of the writ doctrine has been consistently applied as a procedural bar, and that it is an independent and adequate state ground for the purpose of imposing a procedural bar.'" *Canales v. Stephens,* 765 F.3d 551, 566 (5th Cir. 2014) (quoting *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008)).

## C. Ruiz's First Claim Is Procedurally Defaulted

Ruiz asserts that cause and prejudice is shown to excuse the procedural default of the first claim because of prosecutorial misconduct in withholding exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83 (1963), in that the State failed to disclose and correct the false testimony of its witness A.P. Merrilat. *See* Am. Pet. at 22-25. Ruiz also asserts cause

and prejudice in that the prosecutors intentionally presented false testimony in violation of *Napue v. Illinois*.[4]

The principal problem for Ruiz's argument is *Estrada v. State*. The opinion is dated June 16, 2010. Ruiz did not file his state habeas petition until December 6, 2010. "Cause" in this context means "cause for the default." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Assuming for the sake of argument that the State's failure to disclose or correct Merillat's incorrect testimony was a cause in fact of Ruiz's failure to raise the issue before June 16, 2010, it factually could not be a cause after June 16, 2010 – *Estrada* is a published opinion of the Texas Court of Criminal Appeals on precisely the same point, even with the same two witnesses. Ruiz cannot plausibly claim that the State's failure to disclose or correct Merillat's testimony caused him to omit this claim from his original state habeas petition

---

[4]Ruiz also argues that the presentation of inaccurate information in the punishment stage violated *Johnson v. Mississippi*, 486 U.S. 578 (1988). This appears to be a substantive argument on the merits of the first claim, rather than an argument that *Johnson* supports cause and prejudice excusing the procedural default.

after publication of *Estrada*.[5]  Thus, Ruiz fails to show cause and prejudice, and his first

claim is procedurally defaulted.[6]

### D. Ruiz's Ineffective Assistance of Trial Counsel Claim Is Procedurally Defaulted

Ruiz argues that his ineffective assistance of trial counsel claim is saved by *Martinez

v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013).  In order to establish

cause to excuse the procedural default, Ruiz must show "(1) that his claim of ineffective

assistance of counsel at trial is substantial – i.e., has some merit – and (2) that habeas counsel

was ineffective in failing to present those claims in his first state habeas proceeding."

*Segundo v. Davis*, 831 F.3d 345, 350 (5th Cir. 2016) (quoting *Garza v. Stephens*, 738 F.3d

669, 676 (5th Cir. 2013)).

Ruiz's underlying ineffective assistance of trial counsel claim is governed by the

familiar *Strickland* standard:

> To establish that he was denied constitutionally effective assistance of
> counsel, [Petitioner] must demonstrate that (1) counsel rendered deficient
> performance, and (2) counsel's actions resulted in prejudice.  *Strickland v.*

---

[5]*See McCoy v. United States*, 815 F.3d 292, 296 (7th Cir. 2016) (procedural default not
excused when new ground for relief was based on published Seventh Circuit decision issued
two weeks before hearing in district court on section 2255 motion); *cf. Moore v. Quarterman*,
533 F.3d 338, 341 (5th Cir. 2008) (per curiam) (petitioner had cause for procedural default
because at time of filing petition there was no published decision of Court of Criminal
Appeals explaining factual criteria that must be pled in *Atkins* petition); *Baldwin v.
Blackburn*, 653 F.2d 942, 951 (5th Cir. 1981) (cause existed for procedural default where
new ground for relief was based on Louisiana Supreme Court case decided before
petitioner's trial but not published until after trial) (pre-AEDPA).

[6]Ruiz requests an evidentiary hearing on this claim.  Because the Court is able to
dispose of the claim without reliance on any disputed facts, the Court denies that request.

*Washington*, 466 U.S. 668, 687–88, 690 (1984). Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong. *Id.* at 687. The deficient performance prong requires proof that, in light of all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* at 687–88. In determining whether counsel's performance was deficient, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). The Supreme Court has admonished that judicial scrutiny of counsel's performance "must be highly deferential," and avoid "the distorting effect of hindsight." *Id.* at 689–90. To demonstrate prejudice, the second prong, [Petitioner] must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court has further held that the likelihood of a different outcome must be "substantial, not just conceivable." *Harrington* [*v. Richter*], 131 S. Ct. [770,] 792 [(2011)].

*Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014).

Ruiz's claim fails at the first step: he cannot make a substantial showing of ineffective assistance of trial counsel.[7]

Ruiz argues that his trial counsel was ineffective for failing to object to Merillat's incorrect classification testimony. *See* Amd. Pet. at 26. This of necessity implies that Ruiz's trial counsel should have not only retained a classification expert (which he did), but also should have independently researched the classification regulations and determined that both Merillat and Ruiz's expert were wrong. The law is clear, however, that trial counsel was entitled to rely on his expert.

---

[7]It is something of a metaphysical question whether Ruiz fails to establish cause under *Martinez* and *Trevino*, or simply fails on the merits of his ineffective assistance of trial counsel claim.

*Segundo v. Davis* is extremely close to the facts of this case.  Segundo was found guilty of capital murder and sentenced to death.  At the punishment phase, Segundo's trial counsel retained a clinical neuropsychologist who testified that Segundo had significant brain dysfunction but that he was not intellectually disabled.  *See* 831 F.3d at 348.  In his petition for writ of habeas corpus in the federal district court, Segundo for the first time argued that this trial counsel was ineffective for failing fully to investigate his intellectual disability, supported by a declaration of a new expert who criticized Segundo's earlier expert.

The Court of Appeals denied a certificate of appealability on the district court's rejection of that claim, holding that Segundo failed to make a substantial claim of ineffective assistance of counsel:

> The record makes clear that Segundo's trial counsel obtained the services of a mitigation specialist, fact investigator, and two mental-health experts.  These experts and specialists conducted multiple interviews with Segundo and his family, performed psychological evaluations, and reviewed medical records.  Segundo claims that trial counsel failed to provide necessary social history, which would have changed the experts' conclusions that he is not intellectually disabled.  But none of the experts retained by trial counsel indicated that they were missing information needed to form an accurate conclusion that Segundo is not intellectually disabled.  "Counsel should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses without worrying that a reviewing court will substitute its own judgment, with the inevitable hindsight that a bad outcome creates, and rule that his performance was substandard for doing so."  *Smith v. Cockrell*, 311 F.3d 661, 676–77 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *see Turner v. Epps*, 412 Fed. Appx. 696, 704 (5th Cir. 2011) ("While counsel cannot completely abdicate a responsibility to conduct a pre-trial investigation simply by hiring an expert, counsel should be able to rely on that expert to alert counsel to additional needed information . . . .").

Given trial counsel's investigation and reliance on reasonable expert evaluations, Segundo cannot overcome the strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. Thus, we hold that Segundo fails to present a substantial IATC claim, resulting in the inapplicability of *Martinez*. And we conclude that there is no debatability of the underlying constitutional claim. Because reasonable jurists could not debate that Segundo's petition fails to state a valid claim, we deny a COA.

*Id.* at 352 (footnote omitted); *see also Hummel v. Davis*, 908 F.3d 987, 992 n.15 (5th Cir. 2018) ("Similarly, trial counsel was entitled to rely on another expert's opinion that Hummel did not exhibit post-traumatic stress disorder prior to committing the murders." (citing *Segundo*)); *King v. Davis*, 703 F. App'x 320, 334 (5th Cir. 2017) (unpub.) (same).

The problem for Ruiz is compounded by the fact that the experts for both sides agreed – albeit wrongly – on the classification issue. If the experts had disagreed, that might have been a "red flag" that would call for further investigation by Ruiz's trial counsel. As it was, their agreement reinforces the reasonableness of Ruiz's trial counsel's relying on the opinion of his own retained expert. *See Murphy v. Davis*, 737 F. App'x 693, 708 (5th Cir. 2018) (unpub.) ("Without a red flag that [defendant's mitigation expert's] evaluation was defective or an indication from [the expert] that he needed more information to properly evaluate [defendant], it is too much to insist that counsel second-guess her experts' conclusions.").

Finally, Ruiz makes no showing of what his lawyer might have found had he undertaken independently to research the Texas prison classification rules. Neither party here provides a citation to the 2005 regulation. The Texas Court of Criminal Appeals quotes the regulation without citation in *Estrada*. *See* 313 S.W.3d at 287. Other than a few citations

in post-*Estrada* cases to the text of *Estrada*, the regulation appears to be somewhat obscure.[8]
Ruiz fails to explain how a diligent search by Ruiz's trial counsel at the time of trial would
have discovered the regulation.

This is similar to the facts of *Maryland v. Kulbicki*, 136 S. Ct. 2 (2015) (per curiam).
That case involved a forensic technique called Comparative Bullet Lead Analysis ("CBLA").
*See id.* at *3. An FBI expert testified for the government that a bullet fragment associated
with the defendant matched the composition of a bullet fragment from the brain of the
decedent. *See id.* Eleven years later, CBLA had fallen out of favor. The Maryland Court
of Appeals granted habeas relief on the basis that the defendant's trial counsel was
ineffective for having failed to find a report by the testifying FBI expert from four years
before the trial that arguably called CBLA into question.[9] *See id.* The report apparently was
obscure. *See id.* at *4 ("there is no reason to believe that a diligent search would even have
discovered the supposedly crucial report"). The Supreme Court reversed:

> Given the uncontroversial nature of CBLA at the time of Kulbicki's trial, the
> effect of the judgment below is to demand that lawyers go "looking for a
> needle in a haystack," even when they have "reason to doubt there is any
> needle there." *Rompilla v. Beard*, 545 U.S. 374, 389 (2005). The Court of
> Appeals demanded something close to "perfect advocacy" — far more than the
> "reasonable competence" the right to counsel guarantees. *Yarborough v.
> Gentry*, 540 U.S. 1, 8 (2003) (per curiam ).

*Id.* at *4-5.

---

[8]*See supra* note 3.

[9]Though the report's ultimate conclusion was that CBLA was a valid investigative
technique. *See id.*

The same is true here. Given the agreement of the two experts, the absence of any red flag to suggest further research was necessary, and the obscurity of the regulation, it is unreasonable to expect Ruiz's trial counsel to have gone looking for a needle in a haystack when he had reason to doubt any needle was there. Ruiz fails to make a substantial showing of ineffective assistance of trial counsel. This claim is thus procedurally barred under *Martinez* and *Trevino*.

### E. Ruiz's Ineffective Assistance of Appellate Counsel is Procedurally Defaulted

Ruiz also argues that his state appellate counsel was ineffective for having failed to raise *Estrada* in his reply brief on direct appeal. This claim is also not exhausted. As with his claim for ineffective assistance of trial counsel, Ruiz argues that his procedural default is excused by *Martinez* and *Trevino*. After Ruiz filed his briefing in this case, however, the Supreme Court decided *Davila v. Davis*, 137 S. Ct. 2058 (2017). In *Davila*, the Supreme Court declined to extend *Martinez* and *Trevino* to an underlying claim of ineffective assistance of appellate counsel. *See id.* at 2064-70. Ruiz makes no other argument to excuse his procedural default. Ruiz's claim for ineffective assistance of appellate counsel is thus barred as procedurally defaulted.

## VI. Law Enforcement Spectators

In his fourth claim, Ruiz contends that he was denied his Sixth Amendment right to a fair and impartial trial because of the "overwhelming presence of law enforcement" in the courtroom during the punishment phase of his trial. Amd. Pet. at 29-36. Respondent argues that the state court reasonably denied this claim and that it lacks merit. *See* Ans. at 63-81.

While Ruiz raised a variety of related claims in his state habeas application,[10] before this

Court he argues only that the presence of a large number of off-duty police officers in the

gallery deprived him of a fair and impartial trial.

The state habeas court first held that this claim was procedurally barred. *See* State

Court Findings ¶¶ 73, 76. It then found the claim lacked merit. *See id.* ¶¶ 80-86. It found,

first, that the presence of spectator police officers was not barred by the Supreme Court

jurisprudence on state-sponsored courtroom practices. *See id.* ¶¶ 82-83. Alternatively, it

found that the officer-spectators were neither inherently nor actually prejudicial. *See id.* ¶¶

84-86. The Court will proceed to the merits without addressing the exhaustion argument.

*See* 28 U.S.C. § 2254(b)(2).

This Court has recently rejected a similar argument in *Sparks v. Davis*, 2018 WL

1509205 (N.D. Tex. Mar. 27, 2018), *aff'd*, — F. App'x —, 2018 WL 6418108 (5th Cir. Dec.

4, 2018) (COA denied):

> Sparks relies upon *Holbrook v. Flynn,* 475 U.S. 560 (1986), in which
> the Supreme Court held that a prisoner was not denied his constitutional right
> to a fair trial when, at his trial with five codefendants, customary courtroom
> security force was supplemented by four uniformed state troopers sitting in
> first row of spectator section. Sparks also relies upon *Carey v. Musladin,* 549
> U.S. 70, 75-77 (2006), in which the Supreme Court reversed a grant of relief
> by the Ninth Circuit Court of Appeals and held that state appellate court

---

[10]Before the state court, Ruiz also complained of: (1) a larger number than usual of
sheriff's deputies (bailiffs) present in the courtroom for security, (2) the presence of a metal
detector at the entrance to the courtroom, and (3) the exclusion of his family from the first
row of seating immediately behind the bar behind defense counsel table. Although the State
responds to those other claims, it does not appear to the Court that Ruiz raises them before
this Court.

determination that habeas petitioner was not inherently prejudiced when spectators wore buttons depicting murder victim was not contrary to or unreasonable application of clearly established law.

In *Musladin*, the Supreme Court distinguished between the "government-sponsored practices" governed by the standard set out in *Flynn* and in *Estelle v. Williams,* 425 U.S. 501 (1976), and "spectator conduct" that does not yet have an established governing standard.

> In contrast to state-sponsored courtroom practices, the effect on a defendant's fair-trial rights of the spectator conduct to which Musladin objects is an open question in our jurisprudence. This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial. And although the Court articulated the test for inherent prejudice that applies to state conduct in *Williams* and *Flynn*, we have never applied that test to spectators' conduct. Indeed, part of the legal test of *Williams* and *Flynn*–asking whether the practices furthered an essential state interest–suggests that those cases apply only to state-sponsored practices.

*Musladin,* 549 U.S. at 76 (footnote omitted). The Supreme Court then concluded that the state court could not have unreasonably applied clearly established federal law as determined by the Supreme Court because the Supreme Court had not established a standard for spectator's conduct. "No holding of this Court required the California Court of Appeal to apply the test of *Williams* and *Flynn* to the spectators' conduct here. Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established federal law." *Id.* at 77.

### b. Analysis

Sparks relies upon *Musladin*, in which the Supreme Court held that it never applied the standard set forth in *Williams* and *Flynn* to the conduct of bystanders rather than government actors. The very case he relies upon reveals the lack of clearly established federal law to support relief under section 2254(d). Sparks has not shown that the state court decision was an unreasonable adjudication of his claim under section 2254(d). Therefore, the third claim is DENIED for lack of merit.

*Id.* at *9.

Likewise, here, because the Supreme Court has not established standards for spectator conduct, the Court of Criminal Appeals' decision was not an unreasonable adjudication under section 2254(d).  The Court therefore denies relief on Ruiz's fourth claim.

## VII. INFORMING JURORS OF EFFECT OF FAILURE TO REACH VERDICT

In his fifth claim, Ruiz complains that the Texas death penalty procedures violate the Sixth, Eighth, and Fourteenth Amendments by not informing the jurors that the failure to come to a unanimous verdict will result in a life sentence.  *See* Amd. Pet. at 36-38. Respondent argues that this claim is both unexhausted and fails on the merits.  The Court agrees.

Ruiz did not raise this argument in his direct appeal, *see* Brief of Appellant [ECF 30] or in his timely state habeas petition.  *See* Application for Post Conviction Writ of Habeas Corpus under TEX. CODE CRIM. PROC. § 11.071 [ECF 31[43] at 5].  This claims is thus unexhausted and barred unless Ruiz can show cause and prejudice.

Ruiz makes a perfunctory contention of ineffective assistance of counsel: "In addition, all prior counsel provided ineffective assistance of counsel for failure to raise the bases for relief alleged in these claims.  *Strickland*, 466 U.S. 668."  Amd. Pet. at 38.  Ruiz does not otherwise cite any legal authority or anything in the record to support this contention.  In particular, Ruiz fails to identify any specific counsel who was ineffective, fails to identify any applicable standard of care, and fails to identify what action (or inaction) of counsel fell below that standard of care.  "Where a habeas petitioner fails to brief an argument

adequately, we consider it waived." *Lookingbill v. Cockrell*, 293 F.3d 256, 263 (2002) (citing *Lockett v. Anderson*, 230 F.3d 695, 711 n. 27 (5th Cir. 2000); *Trevino v. Johnson*, 168 F.3d 173, 181 n.3 (5th Cir. 1999); *East v. Scott*, 55 F.3d 996, 1007 n.8 (5th Cir. 1995)); *accord Devoe v. Davis*, 717 F. App'x 419, 429 (5th Cir. 2018). Ruiz has inadequately briefed his claim of ineffective assistance on this point, and it is therefore waived. The Court holds that Ruiz's fifth claim is unexhausted and barred.

In the alternative, Ruiz's fifth claim lacks merit. Federal law does not require that a death penalty jury be informed that a single holdout juror in the penalty phase will result in a life sentence.

In *Allen v. Stephens,* 805 F.3d 617, 631-32 (5th Cir. 2015), *abrogated in part on other grounds by Ayestas v. Davis*, 138 S. Ct. 1080 (2018), the petitioner argued that his "sentencing process was confusing and violated *Mills v. Maryland,* 486 U.S. 367 (1988), because it gave the jurors the misimpression that they did not have an individual ability to prevent a death sentence based upon their personal view of the mitigating evidence." The Court of Appeals rejected that argument, holding that the Supreme Court has declined to give *Mills* such a "broad construction." *Id.* at 632 (citing *Smith v. Spisak,* 558 U.S. 139, 148-49 (2010)).

> *Mills* error occurs only where jurors are led to believe that they are "precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence **of a particular such circumstance**." *Id.* (quoting *Mills,* 486 U.S. at 384, 108 S.Ct. 1860) (emphasis added).

> Allen points to no instruction in his case that would have led jurors to believe that they were required to agree on the existence of any particular mitigating

> circumstance. Indeed, the instructions in Allen's case specifically provided
> that jurors "need not agree on what particular evidence supports an affirmative
> finding on" the mitigation special issue.

*Id. See also Jones v. United States*, 527 U.S. 373, 381 (1999) (Eighth Amendment does not require death penalty jury to be instructed on consequence of deadlock); *Young v. Davis*, 835 F.3d 520, 528 (5th Cir. 2016) (same, citing *Jones*); *Reed v. Stephens*, 739 F.3d 753, 779 (5th Cir. 2014) (same, construing instruction on lack of unanimity as challenge to "12-10 Rule"); *Turner v. Quarterman*, 481 F.3d 292, 300 (5th Cir. 2007) (Fifth Circuit precedent forecloses argument that Eighth Amendment and due process require death penalty jury be informed of consequence of deadlock) (citing *Alexander v. Johnson*, 211 F.3d 895, 897 n.5 (5th Cir. 2000) (per curiam)).

Accordingly, the Court holds, in the alternative, that Ruiz's fifth claim fails on the merits.

## VIII. TEXAS'S "10-12" RULE IS CONSTITUTIONAL

In his sixth claim, Ruiz complains that the Texas death penalty procedures violate the Fifth, Sixth, Eighth, and Fourteenth Amendments because the punishment charge, required at least ten "no" votes for the jury to return a negative answer to the first special issue and at least ten "yes" votes for the jury to return an affirmative answer to the mitigation special issue. *See* Am. Pet. at 39-44; TEX. CODE CRIM. PROC. art. 37.071 §§ 2(d)(2), 2(f)(2).

In support of this claim, Ruiz invokes the Fifth, Sixth, Eighth, and Fourteenth Amendment to the Constitution. *See* Amd. Pet. at 39. Ruiz did not make any Fifth or Sixth Amendment arguments in support of this claim in the state habeas proceeding, so those

arguments are unexhausted. Ruiz makes the same perfunctory argument regarding ineffective assistance of counsel as with his fifth claim, which is waived for the same reason. Thus, any Fifth or Sixth Amendment arguments relating to this claim are procedurally barred.[11]

Ruiz raised this issue on his direct appeal, and the Court of Criminal Appeals rejected it on the merits: "We have rejected this challenge to the so-called '10-12 rule' on many prior occasions, and we reject it today as well." *Ruiz v. State*, 2011 WL 1168414, at *8 (Tex. Crim. App. 2011) (citing *Russeau v. State*, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005)). This ruling is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d).

The Court of Criminal Appeals' disposition of this issue is consistent with the Fifth Circuit's jurisprudence.[12] *See Blue v. Thaler*, 665 F.3d 647, 669-70 (5th Cir. 2011) ("*Jones* [*v. United States*] insulates the 10-12 Rule from constitutional attack."); *Druery v. Thaler*, 647 F.3d 535, 542-43 (5th Cir. 2011) (upholding Texas's 10-12 rule; holding *Teague v. Lane*, 489 U.S. 288 (1989), barred extending *Mills v. Maryland*, 486 U.S. 367 (1988), to Texas's 10-12 rule); *Hughes v. Dretke*, 412 F.3d 582, 594 (5th Cir. 2005) (same). This Court cannot

---

[11]Ruiz fails to brief any Fifth or Sixth Amendment claims on the merits (other than the perfunctory reference to ineffective assistance of counsel), so any claims under those amendments are likewise waived on the merits for failure to brief.

[12]The actual question, of course, is whether the Court of Criminal Appeals' disposition was contrary to or an unreasonable application of Supreme Court precedent. The Fifth Circuit's cases are, at the least, informative to this Court of the Supreme Court's precedent.

say that the Court of Criminal Appeals' disposition was contrary to or an unreasonable application of Supreme Court precedent, so the Court denies Ruiz's sixth claim on the merits.

## IX. CUMULATIVE ERROR

Ruiz also argues cumulative error in connection with his fifth and sixth claims. Because the Court has found no error, there likewise is no cumulative error. *See Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Twenty times zero equals zero.").

## CONCLUSION

The Court denies Ruiz's amended petition for a writ of habeas corpus.

In accordance with Federal Rule of Appellate Procedure 22(b) and 28 U.S.C. § 2253(c), and after considering the record in this case, the Court denies Ruiz a certificate of appealability because he has failed to make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell,* 537 U.S. 322, 338 (2003); *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000); 28 U.S.C. § 2253(c)(2). If Ruiz files a notice of appeal, he may proceed in forma pauperis on appeal.

Signed December 14, 2018.

David C. Godbey
United States District Judge