UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WESLEY RUIZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil No. 3:12-CV-5112-N |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent, | § | |

## MEMORANDUM OPINION AND ORDER DENYING RULE 60(b) MOTION AND TRANSFERRING PONTENTIALLY SUCCESSIVE PETITION

The matter before the Court is Ruiz's motion for relief from judgment pursuant to Rule 60(b), FED. R. CIV. P., filed January 25, 2023 (ECF no. 50). For the reasons set forth below, Ruiz is not entitled to any relief from this court, is not entitled to a Certificate of Appealability, and this cause will be transferred immediately to the Fifth Circuit pursuant to 28 U.S.C. § 1631 to avoid any further delay in disposing of Ruiz's claims prior to Ruiz's scheduled February 1, 2023 execution.[1]

---

[1] On January 27, 2023, Ruiz filed a motion for stay of execution (ECF no. 51) premised upon the legal claims contained in his Rule 60(b)(6) motion. The test for whether a prisoner is entitled to a stay of execution has four parts: (1) whether the prisoner has made a strong showing of likely success on the merits; (2) whether the prisoner will be irreparably injured in the absence of a stay; (3) whether a stay would injure other interested parties; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Buntion v. Lumpkin*, 31 F.4th 952, 958 (5th Cir. 2022). For the reasons set forth at length below, Ruiz is unlikely to succeed on the merits. Accordingly, the Court denies his motion for stay.

ORDER – PAGE 1

## BACKGROUND

In 2008 Ruiz was convicted in state court of fatally shooting a Dallas police officer at the conclusion of a high-speed chase. The jury answered the Texas capital sentencing special issues in a manner requiring the imposition of a sentence of death. The Texas Court of Criminal Appeals affirmed Ruiz's conviction and sentence on direct appeal. *Ruiz v. State*, AP-75,968, 2011 WL 1168414 (Tex. Crim. App. Mar. 2, 2011). The United States Supreme Court denied certiorari review. *Ruiz v. Texas*, 565 U.S. 946 (2011).

Ruiz filed a state habeas corpus application and a supplemental application. The Texas Court of Criminal Appeals denied Ruiz's initial application on the merits and dismissed his supplemental application as a subsequent writ pursuant to Article 11.071, §5 of the Texas Code of Criminal Procedure. *Ex parte Ruiz*, WR-78,129-01 & WR-78,129-02, 2012 WL 4450820 (Tex. Crim. Sept. 26, 2012).

Ruiz then filed his federal habeas corpus action (ECF no. 14) and an unopposed motion for stay and abatement to permit him to return to state court and exhaust state habeas corpus remedies on purportedly new claims (ECF no. 15). This court granted Ruiz's motion for stay (ECF no. 16).

Ruiz returned to state court and filed another state habeas application in which he asserted a variety of claims, including assertions that a prosecution expert witness testified falsely during the punishment phase of his capital murder trial regarding the details of the Texas Department of Criminal Justice's ("TDCJ's") inmate classification system. More specifically, Ruiz argued that prosecution classification expert A.P. Merillat erroneously testified at Ruiz's 2008 trial that, if sentenced to serve a term of life imprisonment without the possibility of parole, after serving a period of ten years' incarceration, Ruiz would be eligible for a reduction in his inmate classification status to a less restrictive level. For many years prior to September 1, 2005, Merillat's description

of the TDCJ inmate classification system would have been factually accurate. At the time of Ruiz's 2008 trial, however, his testimony was inaccurate. Effective September 1, 2005, TDCJ changed its inmate classification policy to provide that an inmate convicted of capital murder enters the TDCJ system for classification purposes at the G-3 level and remains ineligible for a reduction in classification status during the remainder of his term of incarceration. *Ruiz v. Davis*, 819 F. App'x 238, 241 (5th Cir. July 8, 2020); *Estrada v. State*, 313 S.W.3d 274, 286-88 (Tex. Crim. App. 2010). Merillat committed the same error in testimony he gave at several other Texas capital murder trials. *See, e.g., Estrada,* 313 S.W.3d at 286-87. Merillat's mistake was neither intentional nor malicious. *See Ruiz*, 819 F. App'x at 244 ("The Texas prison-classification system is complex."). In fact, at Ruiz's 2008 trial, Ruiz's own classification expert, Fitzgerald, erroneously agreed that Merillat had accurately described the TDCJ's inmate classification scheme, including Ruiz's eligibility for a reduction in classification level after ten years. The Texas Court of Criminal Appeals summarily dismissed what by then was Ruiz's third state habeas application under the Texas writ-abuse statute. *Ex parte Ruiz*, WR-78,129-03, 2014 WL 6462553 (Tex. Crim. App. Nov. 19, 2014).

Ruiz then returned to this court, where he argued that Merillat's inaccurate testimony about the details of the TDCJ's inmate classification system constituted violations of his federal constitutional rights under the Supreme Court's holdings in (1) *Brady v. Maryland,* 373 U.S. 83, 97 (1963), (2) *Johnson v. Mississippi*, 486 U.S. 578 (1988), and (3) *Napue v. Illinois*, 360 U.S. 264, 269 (1959). This court concluded that all of these claims were procedurally defaulted and denied Ruiz a Certificate of Appealability ("CoA"). *Ruiz v. Davis*, 2018 WL 6591687, *5-*7 (N.D. Tex. Dec. 14, 2018). The Fifth Circuit likewise denied Ruiz a CoA. *Ruiz v. Davis*, 819 F.

App'x 238, 241-43 (5th Cir. July 8, 2020). The United States Supreme Court denied Ruiz's petition for writ of certiorari. *Ruiz v. Lumpkin*, 142 S. Ct. 354 (2021).

## RULE 60(b) MOTIONS GENERALLY

Rule 60(b) provides that a district court may grant relief from a final judgment, order, or proceeding for any of the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable, or

(6) any other reason that justifies relief.

Motions filed based upon reasons (1), (2), and (3) listed above must be filed within one year after entry of the judgment, order, or date of the proceeding. Rule 60(c)(1), FED. R. CIV. P. Unlike a Rule 59(e) motion, a motion made under Rule 60 does not affect the judgment's finality or suspend its operation. Rule 60(c)(2), FED. R. CIV. P. A Rule 60(b)(6) motion must (1) be made within a reasonable time and (2) establish extraordinary circumstances justifying the reopening of the final judgment. *Crutsinger v. Davis*, 936 F.3d 265, 267 (5th Cir. 2019); *In re Robinson*, 917 F.3d 856, 862 (5th Cir. 2019); *Clark v. Davis*, 850 F.3d 770, 779 (5th Cir. 2017). The Fifth Circuit has held that (1) a Rule 60(b)(6) motion must be made within a reasonable time unless good cause can be shown for the delay, *Clark*, 850 F.3d at 780; and (2) waiting twelve months after the

Supreme Court's decision in *Trevino v. Thaler* to raise a potential conflict of interest arising from the same attorney serving as both federal and state habeas counsel was not reasonable, *Id.*, 850 F.3d at 782-83. The Fifth Circuit has also held that a delay of eight months (after the Supreme Court's opinion in *McQuiggin v. Perkins*, 569 U.S. 383 (2013)) made a Rule 60(b)(6) motion untimely. *Tamayo v. Stephens*, 940 F.3d 986, 991 (5th Cir. 2014).

Factors a court should consider in ruling on a Rule 60(b) motion include: (1) that final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether, if the judgment was a default or a dismissal in which there was no consideration of the merits, the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits where the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. *Raby v. Davis*, 907 F.3d 880, 885 (5th Cir. 2018); *Diaz v. Stephens*, 731 F.3d 370, 377-78 (5th Cir. 2013); *In re Marinez*, 589 F.3d 772, 777 (5th Cir. 2009); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981); *United States v. Gould*, 301 F.2d 353, 355-56 (5th Cir. 1962).

Rule 60(b)(6) is the grand reservoir of equitable power to do justice but applies only in extraordinary circumstances. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005); *Diaz*, 731 F.3d at 376; *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012); *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002). Such extraordinary circumstances will rarely occur in the habeas context. *Gonzalez*, 545 U.S. at 535; *Crutsinger*, 936 F.3d at 267; *In re Johnson*, 935 F.3d 284, 289 (5th Cir. 2019); *In*

re Robinson, 917 F.3d at 862; *Diaz*, 731 F.3d at 376; *Adams*, 679 F.3d at 319. Changes in decisional law do not constitute the extraordinary circumstances required for granting Rule 60(b)(6) relief. *Crutsinger*, 936 F.3d at 267, 270; *Priester v. JP Morgan Chase Bank, N.A.*, 927 F.3d 912, 913 (5th Cir. 2019); *Raby*, 907 F.3d at 884; *Clark*, 850 F.3d at 784; *Diaz*, 731 at 374; *Adams*, 679 F.3d at 319; *Hess*, 281 F.3d at 216. For example, the Fifth Circuit has repeatedly held that the Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), do not constitute extraordinary circumstances sufficient to warrant relief under Rule 60(b)(6). *See, e.g., In re Johnson*, 935 F.3d at 290; *Raby*, 907 F.3d at 884; *In re Edwards*, 865 F.3d 197, 208 (5th Cir. 2017); *Balentine v. Davis*, 692 F.3d 357, 357 (5th Cir. 2012). Instead, the Fifth Circuit has emphasized the need for a Rule 60(b)(6) movant to show that he can assert a good claim or defense if his case is reopened. *In re Johnson*, 935 F.3d at 289-90.

A Rule 60(b) motion that presents habeas claims should be treated as a successive petition subject to the advance Circuit Court authorization requirement of 28 U.S.C. § 2244(b)(3). *Gonzalez*, 545 U.S. at 531; *Jackson v. Lumpkin*, 25 F.4th 339, 340 (5th Cir. 2022). The Supreme Court's opinion in *Gonzalez* offered three illustrations of Rule 60(b) motions which should be treated as successive petitions: (1) motions seeking leave to bring a new claim of constitutional error that was previously omitted due to excusable neglect; (2) motions seeking to present newly discovered evidence in support of claims previously argued; and (3) motions based on a subsequent change of substantive law. *Gonzalez*, 545 U.S. at 530-31; *Jackson*, 25 F.4th at 340-41.

A Rule 60(b) motion is not a successive petition subject to the requirement of advance Circuit Court authorization in § 2244(b)(3) where it merely asserts that a previous procedural ruling which precluded a merits determination was in error (e.g., a ruling that a claim was foreclosed by a failure to exhaust state remedies, procedural default, or barred by the applicable

statute of limitations). *Gonzalez*, 545 U.S. at 535; *Jackson*, 25 F.4th at 341; *In re Robinson*, 917 F.3d at 863-64; *Adams*, 679 F.3d at 319.

Three requirements are imposed on second or successive habeas petitions by 28 U.S.C. § 2244(b): (1) any claim that has previously been adjudicated in a previous petition must be dismissed; (2) any claim that has not already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts that could not have been discovered previously through the exercise of due diligence and show a high probability of actual innocence; and (3) before the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)'s new rule or actual innocence provisions. *Clark*, 850 F.3d at 778-79.

The Fifth Circuit's analysis of the distinction between Rule 60(b) motions which present "habeas claims," and therefore require advance Circuit Court authorization, and those Rule 60(b) motions which are permissible has consistently been pragmatic in nature. For example, in *Will v. Lumpkim*, 970 F.3d 566, 571 (5th Cir. 2020), the Fifth Circuit held there are two circumstances in which a district court may properly consider a Rule 60(b) motion in a § 2254 proceeding, i.e., when the motion attacks (1) a defect in the integrity of the federal habeas proceeding or (2) a procedural ruling that precluded a merits determination. In *Will*, the district court's opinion found an unexhausted ineffective assistance claim was procedurally defaulted but went on to hold in the alternative, that the *Strickland* claim lacked merit. The Fifth Circuit concluded that, in such circumstances, *the district court's robust merits analysis in the alternative was a merits determination*; thus, the Rule 60(b) motion attacking the procedural ruling paired with an alternative merits analysis was a successive habeas petition. *Will*, 970 F.3d at 571-73. Thus, the Fifth Circuit employed a pragmatic approach in *Will*, recognizing that if the petitioner prevailed

on his Rule 60(b) challenge to the procedural ruling, the Rule 60(b) motion would then become a direct challenge to the efficacy of the district court's alternative merits determination.

## ANALYSIS OF RUIZ'S RULE 60(b) MOTION

Ruiz's filing on January 25, 2023, one week before his scheduled execution date of February 1, 2023, claims to be based upon (1) "newly discovered" evidence in the form of notes by an Assistant Dallas County District Attorney first made available to Ruiz's federal habeas counsel in April 2021 and (2) "newly discovered" evidence in the form of a pair of affidavits from two of Ruiz's petit jurors executed in August 2022 and an affidavit from Ruiz's expert linguistic anthropologist who claims the two jurors in question used words in their affidavits reflecting racial animus, bias, or stereotyping.

Ruiz argues the first category of "new evidence" supports his complaints about the erroneous testimony of prosecution witness A.P. Merillat by establishing that at least one of his prosecutors was subjectively aware at the time of trial of the erroneous nature of some aspects of Merillat's trial testimony about the details of the TDCJ's inmate classification policy. More specifically, Ruiz argues his prosecutors knew at the time of trial that, if sentenced to a term of life imprisonment without the possibility of parole, Ruiz would *not* be eligible for a reduction in classification status ten years after beginning his life sentence. Ruiz admits that he had access to the prosecutors notes in question as early as April 2021. He offers no rational explanation for his failure to file his Rule 60(b) motion until the eve of his scheduled execution, more than twenty months later.

Nor does Ruiz offer any rational explanation as to how this allegedly "new" evidence renders erroneous this court's procedural ruling that all of his complaints about Merillat's erroneous trial testimony were procedurally defaulted. In short, Ruiz fails to allege any specific

ORDER – PAGE 8

facts showing that this court's procedural ruling on Ruiz's Merillat-related claims was in error. As a result, Ruiz's first category of "new evidence" does not attack the validity of this court's *procedural* ruling and is essentially an attempt to present new evidence in support of a claim previously argued. It constitutes a paradigmatic example of a habeas claim masquerading as a request for relief under Rule 60(b). *Gonzalez*, 545 U.S. at 531; *Jackson*, 25 F.4th at 340-41 (claims premised on new evidence allegedly showing a violation of due process rights by presenting false testimony are fundamentally substantive in nature and present habeas claims); *In re Coleman*, 763 F.3d 367, 372 & n.17 (5th Cir. 2014) (holding the same). Moreover, as explained below, Ruiz's new evidence adds nothing of value to his procedurally defaulted complaints about Merillat's erroneous trial testimony.

    The second category of Ruiz's "new evidence" consists of affidavits dated August 2022 from a pair of Ruiz's petit jurors which contain statements Ruiz's linguistic anthropologist believes reflect racial animus, bias, or stereotyping. From this, Ruiz leaps to the conclusion that the verdict rendered by his petit jury fourteen years before the juror affidavits were executed was tainted by racial animus, bias, and stereotyping in violation of the principles set forth in the Supreme Court's intervening decisions in *Buck v. Davis*, 580 U.S. 100, 123-24 (2017) (holding District Court should have granted Rule 60(b) motion to permit litigation of petitioner's claim that his trial counsel rendered ineffective assistance by presenting racially biased trial testimony from a defense expert), and *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 225 (2017) (holding where a juror makes a clear statement that he or she relied on racial stereotypes or animus to convict a criminal defendant the Sixth Amendment requires the no-impeachment rule give way to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee). Ruiz states that he became aware in August 2022 of the juror affidavits on which he relies to support

his new constitutional claim but offers no rational explanation for decision to wait until practically the end of January 2023 on the eve of his execution to present his new claim to this court. Nor does Ruiz allege any specific facts showing any excusable neglect exists justifying his delay in asserting his racially biased juror claim. More importantly, Ruiz's new constitutional claim based on the Supreme Court's holdings in *Buck* and *Pena-Rodriguez* are paradigmatic "habeas" claims which require advance authorization from the Circuit Court. *Gonzalez*, 545 U.S. at 530-31; *Jackson*, 25 F.4th at 340-41.

Thus, all of the new constitutional claims or "new evidence" claims included in Ruiz's purported Rule 60(b) motion are "habeas" claims within the meaning of that term as used in *Gonzalez*. They require Circuit Court authorization before they may be filed in this court. This court will, therefore, direct the Clerk immediately to transfer this cause to the Fifth Circuit in conformity with 28 U.S.C. § 1631 for determination of whether Ruiz should be granted authority to file what is clearly a successive federal habeas corpus petition masquerading as a Rule 60(b) motion.

To avoid the necessity of a remand in the unlikely event the Fifth Circuit reverses this court's conclusions regarding the nature of Ruiz's claims, and given the close proximity of Ruiz's execution, this court will also explain why Ruiz is not entitled to relief under Rule 60(b)(6) even if this court were to examine the merits of his new claims. This is because Ruiz has failed to allege facts showing that (1) his Rule 60(b)(6) motion was filed within a reasonable time and (2) establish extraordinary circumstances justifying the reopening of the final judgment. *Crutsinger*, 936 F.3d at 267; *In re Robinson*, 917 F.3d at 862; *Clark*, 850 F.3d at 779. Ruiz waited more than twenty months before bringing his newly augmented due process complaint about Merillat's erroneous trial testimony to this court. He waited more than four months to present this court with his new

biased jurors claim just one week before his scheduled execution. He has not offered any rational explanation, much less good cause, for these delays. *See Clark*, 850 F.3d at 782-83 (waiting twelve months after the Supreme Court's decision in *Trevino v. Thaler* to raise a potential conflict of interest arising from the same attorney serving as both federal and state habeas counsel was not reasonable); *Tamayo v. Stephens*, 940 F.3d at 991 (delay of eight months after the Supreme Court's opinion in *McQuiggin v. Perkins*, 569 U.S. 383 (2013) made a Rule 60(b)(6) motion untimely). The Court therefore denies Ruiz's Rule 60(b)(6) motion as untimely.

Insofar as Ruiz attempts to bolster his procedurally defaulted complaints about the error in Merillat's trial testimony, his efforts to show extraordinary circumstances fall short. If anything, Ruiz's latest Rule 60(b) motion and its accompanying exhibits furnish further evidence justifying this court's determination that Ruiz procedurally defaulted on his Merillat-related claims. Ruiz argues that the 2005 amendments to the TDCJ's inmate classification system were a matter of public information at least as early as the date a TDCJ publication announcing the amended classification policy was issued by TDCJ in "Jan/Feb 2006." Furthermore, Ruiz still has no logical response to the Fifth Circuit's observation that the TCCA's opinion in *Estrada* was published six months before Ruiz filed his first state habeas application and while Ruiz's direct appeal was still pending before the TCCA. The fact that a TDCJ publication alerting the public to the 2005 changes in the TDCJ's inmate classification system had issued in Jan/Feb 2006 several years before Ruiz's trial and even longer before Ruiz filed his direct appeal and initial state habeas application furnishes further support for this court's conclusion that Ruiz procedurally defaulted on his Merillat-related claims. The fact that a prosecutor's cryptic notes disclosed to Ruiz's federal habeas counsel in 2021 suggest that prosecutors were aware in early 2008 of the fact TDCJ classification policies had changed (in unidentified ways) in 2005 or that Merillat was aware in

ORDER – PAGE 11

2009 that some of his 2008 trial testimony may have been inaccurate does not establish that prosecutors knowingly used false testimony from Merillat at Ruiz's trial. The fact that Ruiz's own classification expert agreed with Merillat's description of TDCJ classification policy tends to suggest TDCJ classification was as confusing in 2008 as the Fifth Circuiot noted in 2020.

Furthermore, Ruiz's newly augmented Merillat-related *Giglio/Napue* claim, like his Merillat-related *Brady* claim, suffers from a deficiency. In order to be entitled to relief under the Supreme Court's holdings in *Giglio v. United States*, 405 U.S. 150 (1972), and *Napue v. Illinois*, 360 U.S. 264 (1959), a criminal defendant must do more than merely identify allegedly false trial testimony. To succeed in showing a due process violation from the use of allegedly perjured testimony, a defendant has the burden of establishing that (1) the witness in question actually gave false testimony, (2) the falsity was material in that there was a reasonable likelihood that it affected the judgment of the jury, and (3) the prosecution used the testimony in question *knowing* that it was false. *Giglio*, 405 U.S. at 153-54.

Ruiz argues that Merillat's false testimony about the details of the TDCJ's classification policy was relevant, material, and possibly critical to his jury's affirmative answer to the Texas capital sentencing statute's future dangerousness special issue. The evidence from Ruiz's capital murder trial belies that argument, however. Ruiz had identified absolutely no evidence in the trial record showing that he ever accepted responsibility, expressed sincere remorse, or displayed genuine contrition for his murder of officer Nix. The trial record is bereft of any evidence showing that Ruiz's murder of officer Nix was an isolated or aberrational act of violence in an otherwise peaceful and law-abiding life. On the contrary, as explained by the Texas Court of Criminal Appeals in its opinion affirming Ruiz's conviction and sentence on direct appeal, in addition to the horrific facts of Ruiz's capital offense, the evidence at trial established that Ruiz was "a veteran

criminal and gang member fully immersed in a life of drugs, guns, and violence." *Ruiz*, 2011 WL 1168414, *5. There is no reasonable probability that, but for the failure of Ruiz's prosecutors to alert Ruiz's trial counsel to the fact that both Merillat and the defense's own classification expert Fitzgerald were mistaken about some details of the TDCJ's post-2005 classification policy, the outcome of the punishment phase of Ruiz's capital murder trial would have been any different. Merillat's erroneous testimony, *purportedly corroborated by Ruiz's own defense expert*, was quite possibly harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993) (the test for harmless error in federal court is "whether the error had a substantial and injurious effect or influence in determining the jury's verdict"). Regardless of whether it was harmless, there is no reasonable probability that the outcome of the punishment phase of Ruiz's capital murder trial would have been different had the prosecution corrected Merillat's erroneous testimony or alerted Ruiz's trial counsel to the correct details of the TDCJ classification policy as described in those policies and TCDJ publications available years prior Ruiz's trial. Accordingly the Court denies Ruiz's Rule 60(b)(6) motion based on Merillat's testimony.

Finally, Ruiz's reliance on *Buck* and *Pena-Rodriguez* is misplaced. *Buck* involved an ineffective assistance claim premised upon a criminal defense counsel calling an expert witness who gave testimony reflecting racial animus or bias against the defendant's ethnic group. Ruiz does not suggest that his own trial counsel injected any racial animus or bias into Ruiz's trial. *Pena-Rodriguez* involved a situation in which two members of a criminal petit jury advised defense counsel immediately after trial that they had personally observed a third member of the jury make multiple racially biased comments during deliberations about the Hispanic defendant and an Hispanic alibi witness proffered by the defense. Neither of the affidavits furnished by the

two jurors in Ruiz's trial identify any clear statement that they or anyone else on Ruiz's jury made during deliberations evidencing overt racial bias, as required by *Pena-Rodriguez*:

> Not every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry. For the inquiry to proceed, there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict. To qualify, the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict.

*Pena-Rodriguez*, 580 U.S. at 225-26.

Ruiz does not identify any statements made by any of his jurors during deliberations which satisfy the foregoing standard. Instead, he argues that the August 2022 affidavits of the two jurors in question, which tend to focus on their impressions of Ruiz as a violent, dangerous criminal and that many of the individuals who sat in the gallery during Ruiz's trial appeared to be gang members (like the evidence at trial showed Ruiz to be). One juror also reveals an incident in which he was followed in his car by someone he feared might be a gang member. While one juror also reveals that another juror informed her during deliberations that he believed Ruiz was a dangerous criminal, such conversation is hardly clear evidence of racial animus - Ruiz's jurors were compelled by the Texas capital sentencing special issues to deliberate and render a verdict on the question of whether there was a probability Ruiz would commit future acts of violence that would constitute a continuing threat to society. As the Texas Court of Criminal Appeals accurately noted in its opinion affirming Ruiz's conviction and sentence, the evidence at trial established without any reasonable doubt that Ruiz had been immersed for much of his life in a world of drugs, guns, and violence. It is hardly surprising (or evidence of racial animus or stereotyping) that Ruiz's jurors concluded from that evidence that Ruiz was a violent and dangerous criminal. Accordingly, the affidavits of Ruiz's jurors, even when supplemented by the affidavit of Ruiz's linguistic

anthropology expert are insufficient to satisfy the standard announced in *Pena-Rodriguez* for disregarding Rule 606(b) of the Federal Rules of Evidence.

Rule 606(b), FED. R. EVID., precludes this court from considering the affidavits of Ruiz's jurors. *Young v. Davis*, 835 F.3d 520, 528-29 (5th Cir. 2016) (Rule 606(b) forbids consideration of juror affidavits in federal habeas corpus proceedings). More specifically, Rule 606(b)(1) provides that during an inquiry into the validity of a verdict or indictment (including a collateral attack upon a judgment), a juror may not testify about (1) any statement made or incident that occurred during the jury's deliberations, (2) the effect of anything on that juror's or another juror's vote; or (3) any juror's mental processes concerning the verdict or indictment. *Austin v. Davis*, 876 F.3d 757, 789 (5th Cir. 2017) (quoting Rule 606(b)(1)); *Young*, 835 F.3d at 529. "The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." *Austin*, 876 F.3d at 789. The only exceptions noted in the Rule itself are for testimony regarding (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) an outside influence was improperly brought to bear on any juror, or (3) a mistake was made in entering the verdict on the verdict form. Rule 606(b)(2).

In *Warger v. Shauers*, 574 U.S. 40, 43-48 (2014), the Supreme Court held that Rule 606(b) applies to juror testimony during a proceeding in which a party seeks to secure a new trial on the ground that a juror lied during voir dire. *Austin*, 876 F.3d at 789 (citing *Warger*). The only exception the Supreme Court has recognized is "when, after the jury is discharged, a juror comes forward with compelling evidence that another juror made clear and explicit statements indicating that racial animus was a significant motivating factor in his or her vote to convict." *Austin*, 876 F.3d at 790 (citing *Pena-Rodriguez*). Ruiz has not made any fact-specific allegation of a clear statement of race-based animus by any juror sufficient to invoke the exception recognized in *Pena-*

ORDER – PAGE 15

*Rodriguez*. Accordingly, the Court denies Ruiz's Rule 60(b)(6) motion based on the juror affidavits.

Ruiz has failed to establish that exceptional circumstances exist which warrant reopening the judgment in his federal habeas corpus action. The new claims he asserts are bereft of any justification for finding this court's finding of procedural default was in error. Ruiz's objections to language contained in the footnotes of the Fifth Circuit's opinion denying Ruiz a CoA do not in any rational manner draw into question the validity of this court's conclusion that Ruiz procedurally defaulted on his Merillat-related claims. Ruiz's new claims in his purported Rule 60(b) motion are paradigmatic habeas claims identified by the Supreme Court in *Gonzalez* which require advance Circuit Court authorization under Section 2244(b).

## CERTIFICATE OF APPEALABILITY

Under AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under § 2254, the petitioner must obtain a Certificate of Appealability ("CoA"). *Miller-El v. Johnson*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. § 2253(c)(2). Likewise, under AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted). In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted. *Crutcher*, 301 F.3d at 658 n.10; 28 U.S.C. § 2253(c)(3).

A CoA will not be granted unless a petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537

U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard*, 542 U.S. at 282; *Miller-El*, 537 U.S. at 336. This Court is required to issue or deny a CoA when it enters a final Order such as this one adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

Reasonable jurists could not disagree with this court's conclusions that (1) Ruiz's Rule 60(b) motion is untimely; (2) Ruiz has filed to establish the existence of extraordinary circumstances warranting relief under Rule 60(b); and (3) Ruiz's Rule 60(b) motion is in fact a successive federal habeas corpus petition as described in *Gonzalez*. Ruiz is not entitled to a CoA on any of his claims in this cause or the denial of his Rule 60(b) motion.

It is hereby ORDERED that:

1. Ruiz's purported Rule 60(b) motion is in all respects DENIED.

2. Ruiz is DENIED a Certificate of Appealability on all his claims herein and the denial of his Rule 60(b) motion.

3. Pursuant to 28 U.S.C. Section 1631, the Clerk is directed immediately to TRANSFER this cause to the Fifth Circuit for a determination by that court as to whether Ruiz is entitled to authorization to file a successive federal habeas corpus petition under 29 U.S.C. Section 2244(b).

4. Ruiz is DENIED a stay of execution.

ORDER – PAGE 17

Signed January 27, 2023.

_____
David C. Godbey
Chief United States District Judge